LESLIE MARK STOVALL, ESQ.
Nevada Bar No. 2566
ROSS H. MOYNIHAN, ESQ.
Nevada Bar No. 11848
LARISSA DROHOBYCZER
Nevada Bar No. 12316
STOVALL & ASSOCIATES
2301 Palomino Lane
Las Vegas, NV 89107
Telephone: (702) 258-3034
Facsimile: (702) 258-0093
court@lesstovall.com
*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## CLARK COUNTY, NEVADA

KATHRYN MAYORGA,

               Plaintiff,

vs.

CRISTIANO RONALDO,

               Defendant,

CASE NO.:   2:19-cv-00168

### NOTICE OF PROOF OF SERVICE

    COMES NOW, Leslie Mark Stovall, Esq., and hereby files this Notice Proof of Service in the above-referenced matter. Attached hereto as *Exhibit 1* and incorporated herein by reference is the Article 10 Hague Service Convention proof of service upon Cristiano Ronaldo.

    DATED this _____ day of June, 2019.

                         STOVALL & ASSOCIATES

                         LESLIE MARK STOVALL, ESQ.
                         Nevada Bar No. 2566
                         ROSS H. MOYNIHAN, ESQ.
                         Nevada Bar No. 11848
                         2301 Palomino Lane
                         Las Vegas, Nevada 89107
                         *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on June 18th, 2019 I electronically file the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being serve this day on all counsel of record or pro se parties identified on the attached service list in the manner specified eighter via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to received electronically Notices of Electronic Filing.

Dated June 18th, 2019

/s/ Maria Hernandez

An employee of STOVALL & ASSOCIATES          .

2

# EXHIBIT 1



# Giardini·Mazza·Sanvido&Associati

**STUDIO LEGALE**

Diritto Civile Amministrativo Penale Tributario

Avv. UMBERTO GIARDINI
*già Avvocato dello Stato*
*patrocinante in Cassazione*
*revisore contabile*
Avv. ALESSANDRO MAZZA
*patrocinante in Cassazione*
Avv. MANUELA SANVIDO
*patrocinante in Cassazione*
Avv. EMANUELE IUDICI
Avv. ALBERTO ALESSANDRO CARETTA

Avv. FILIPPO MARIA CHRISTILLIN
*patrocinante in Cassazione*
Avv. ADELINA PISANO
Avv. LUISA DE SANTIS
Avv. DANIELA MISTRETTA
Dott. ENRICO DI LUZIO
Dott. ALESSANDRO ALBESANO

Turin, 2019, 14th June

Stovall & Associates
2301 Palomino Lane
Las Vegas, NV 89107

*2019153/ 11208*

*to the kind attention of Ms Hernandez*

**Subject**: Service to Cristiano Ronaldo pursuant to art. 10, lett. c) of The Hague Convention.

Dear Sirs,

With reference to the service above mentioned, I'm providing you with the following sets of documents:

- n. 1 certified copy of the complaint and summons, with n. 1 Italian certified translation, with the 4th June Turin P.A. "visto" (visa) affixed on the first page;
- n. 1 notification report in Italian dated 2019, 7th June;
- n. 1 serving certificate under art. 6 of the Hague Convention dated 2019, 7th June;
- n. 1 Italian letter from me to the Bailiff (in order to have back the served documents with urgency);
- n. 1 Italian internal note between to employee of the Turin Bailiff Office;
- n. 1 letter of appointment both in English and in Italian from Mr Stovall to me (the same you sent me some time ago).

Should you need any further information or clarification, please do not hesitate to contact me. If I can be of any further assistance, please let me know as well.

Yours, sincerely

Avv. Alessandro MAZZA

**Attestation**   CERTIFICATE   *Zustellungszeugnis*   Attestazione

L'autorité soussignée a l'honneur d'attester conformément à l'article 6 de ladite Convention,
THE UNDERSIGNED AUTHORITY HAS THE HONOUR TO CERTIFY, IN CONFORMITY WITH  ARTICLE 6 OF THE CONVENTION,
*Die unterzeichnete Behörde beehrt sich, nach Artikel 6 des Übereinkommens zu bescheinigen,*
L'autorità sottoscritta si pregia attestare in conformità all'art. 6 di detta Convenzione,

1. **que la demande a été exécutée[1]**         THAT THE DOCUMENT HAS BEEN SERVED[1]
   *dass das Ersuchen erledigt worden ist[1]*   che la domanda è stata eseguita[1]
   - **le (date)** - THE (DATE) - *am (Datum)*  - il (data)   7|6|19
   - **à (località, rue, numéro)**  - AT (PLACE, STREET, NUMBER)   TORINO
   - *in (Ort, Strasse, Nummer)* - a (località, via, numero)   C.so Picco 34
   - **dans une des formes suivantes prévues à l'article 5:**   - IN ONE OF THE FOLLOWING METHODS AUTHORISED BY ARTICLE 5:
     *in einer der folgenden Formen nach Artikel 5:*   - in una delle seguenti forme previste dall'articolo 5:
   a) **selon les formes légales (article 5, alinéa premier, lettre a)[1].**
      - IN ACCORDANCE WITH THE PROVISIONS OF SUB-PARAGRAPH (A) OF THE FIRST PARAGRAPH OF ARTICLE 5 OF THE CONVENTION[1].
      - *in einer der gesetzlichen Formen (Art. 5 Abs. 1 Bst. a)[1].*
      - secondo le forme di legge (art. 5 comma 1 lett. a)[1].
   b) **selon la forme particulière suivante[1]:**   ............................................
      - IN ACCORDANCE WITH THE FOLLOWING PARTICULAR METHOD[1]:   ............................................
      - *in der folgenden besonderen Form[1]:*   ............................................
      - secondo la forma particolare seguente[1]:   ..................1..........................
   c) **par remise simple[1].**   - BY DELIVERY TO THE ADDRESSEE, WHO ACCEPTED IT VOLUNTARILY[1]
      - *durch einfache Übergabe[1].*   - mediante semplice consegna[1].

**Les documents mentionnés dans la demande ont été remis à:**
THE DOCUMENTS REFERRED TO IN THE REQUEST HAVE BEEN DELIVERED TO:
*Die in dem Ersuchen erwähnten Schriftstücke sind übergeben worden an:*
I documenti di cui alla domanda sono stati consegnati a:
- **(Identité et qualité de la personne):**   (IDENTITY AND DESCRIPTION OF   SANASTA SIMONE STEFANO
- *(Name und Stellung der Person):*   - (identità e qualità della persona):   DIPENDENTE INCARICATO RITIRO AT
- **liens de parenté, de subordination ou autres, avec le destinataire de l'acte:**   ............................................
- RELATIONSHIP TO THE ADDRESSEE (FAMILY, BUSINESS OR OTHER):   ............................................
- *Verwandtschafts-, Arbeits- oder sonstiges Verhältnis zum Zustellungsempfänger:*   ............................................
- rapporto di parentela, di subordinazione od altro, con il destinatario dell'atto:   ............................................

**2. que la demande n'a pas été exécutée, en raison des faits suivants[1]:**   ............................................
THAT THE DOCUMENT HAS NOT BEEN SERVED, BY REASON OF THE FOLLOWING FACTS[1]:   ............................................
*dass das Ersuchen aus folgenden Gründen nicht erledigt werden konnte[1]:*   ............................................
che la domanda non è stata eseguita, per i seguenti motivi[1]:   ............................................

**Conformément à l'article 12, alinéa 2, de ladite Convention, le requérant est prié de payer ou de rembourser les frais dont le détail figure au mémoire ci-joint[1].**
IN CONFORMITY WITH THE SECOND PARAGRAPH OF ARTICLE 12 OF THE CONVENTION, THE APPLICANT IS REQUESTED TO PAY OR
REIMBURSE THE EXPENSES DETAILED IN THE ATTACHED STATEMENT[1].
*Nach Artikel 12 Absatz 2 des Übereinkommens wird die ersuchende Stelle gebeten, die Auslagen, die in der beiliegenden Aufstellung im einzelnen angegeben sind, zu zahlen oder zu erstatten[1].*
In conformità all'articolo 12 comma 2 di detta Convenzione, il richiedente è pregato di pagare o rimborsare le spese indicate dettagliatamente nella memoria allegata[1].

**Annexes:**  ANNEXES:  *Beilagen:*  Allegati:   ............................................
**Pièces renvoyées:**   DOCUMENTS RETURNED:   ............................................
*Zurückgesandte Schriftstücke:*  Atti restituiti:   ............................................
**Le cas échéant, les documents justificatifs de l'exécution:**   IN APPROPRIATE CASES, DOCUMENTS ESTABLISHING THE SERVICE:
*Gegebenenfalls Erledigungsstücke:*   Se del caso, gli atti che ne comprovano l'esecuzione:
.........................................................................................
.........................................................................................
.........................................................................................
.........................................................................................
.........................................................................................

**Fait à / le** 7|6|19  DONE AT / THE   **Signature et/ou cachet**   FUNZIONARIO UNEP
*Ausgefertigt in / am*  *Fatto a / il*   SIGNATURE AND/OR STAMP   dessa Silvia Ionno
TORINO   *Unterschrift und/oder Stempel*   CORTE D'APPELLO TORINO
..............................   Firma e/o timbro

1)  **Rayer les mentions inutiles**   DELETE IF INAPPROPRIATE   *Unzutreffendes streichen*   Cancellare le annotazioni inutili



## RELAZIONE DI NOTIFICAZIONE

Su istanza dell'Avv. Alessandro MAZZA del Foro di Torino, nella sua qualità di incaricato quale corrispondente dello studio legale Stovall&Associates, sito in Las Vegas, Palomino Lane n. 2301, c.a.p. 89107, Nevada, USA, in forza dell'art. 10, lett. c) della Convenzione dell'Aja del 15 novembre 1965, entrata in vigore in Italia con Legge 6 Febbraio 1981, n. 42, io sottoscritto Ufficiale Giudiziario, addetto all'U.N.E.P. presso la Corte d'Appello di Torino, ho notificato, a tutti gli effetti di legge, il suesteso atto di citazione in azione civile al sig. Cristiano RONALDO, residente in Toto-Casa, Corso Alberto Picco, V. n°34 c.a.p. 10131, Torino (TO), ivi consegnandone copia conforme all'originale a mani di

Torino, lì

SAVASTA SIMONE STEFANO

dipendente incaricato ritiro atti t.a.

Torino 7/6/19 h.18.00

FUNZIONARIO UNEP
d.ssa Silvia Ionna
CORTE D'APPELLO TORINO



# Stovall & Associates
**Attorneys at Law**

May 20, 2019

<u>**Sent via USPS**</u>
Giardini Mazza Sanvido & Associati
Attn: Avv. Alessandro Mazza
Via Grassi, 9
10138 Torino

Dear Mr. Mazza,

I represent Kathryn Mayorga in case 2:19-CV-00168-JAD-CWH titled Mayorga v. Ronaldo. This lawsuit is filed in the United States District Court.

The defendant Christian Ronaldo resides in Turin Italy. Federal Rule of Civil Procedure (FRCP 4) provides for service of a defendant residing in Italy to be accomplished under Article 10 of the Hague Service Convention.

By way of this letter I appoint you as Counsel/Attorney Avv. Alessandro Mazza in this matter, and authorize you to serve in Italy, Christian Ronaldo the summons and complaint in case 2:19-CV-00168-JAD-CWH,, in accordance with the provisions of Article 10 of the Hague Service Convention.

Sincerely,

Leslie Mark Stovall, Esq.

LMS/tl

**2301 Palomino Lane**
**Las Vegas, Nevada 89107**

**Telephone: (702) 258-3034**
**Fax: (702) 258-0093**

**www.lesstovall.com**



**Day** Translations

Certified Translation

# Certificate of Accuracy

Emily Della Fera
Translator/Interpreter

Translated documents:
1) Certificates of Service for Cristiano Ronaldo from 4/10/19, 4/12/19, 4/15/19, 4/8/19 issued in Turin on the previously stated dates.
2) Delivery Receipts from Apr 12, 2019; Apr 15, 2019; Apr 10, 2019; and Apr 8, 2019 issued by the Court of Appeals in Turin.
3) Notification Letters for Cristiano Ronaldo from 3/26/19 with Prot Nos. 1628, 1630, 1627, and 1629 issued by the Appointed UNEP Official Dr. Rosa NISTA

As a translator for Day Translations, Inc., I, Emily Della Fera declare I am a bilingual translator who is thoroughly familiar with the English and Italian languages. I have translated the attached document to the best of my knowledge from Italian to English and the English text is an accurate and true translation of the original document presented to the best of my knowledge and belief.

Signed on May 24, 2019

*Emily Della Fera*

Emily Della Fera

*Professional Translator for Day Translations, Inc.*


American Translators Association # 243874




ASSOCIATION OF TRANSLATION COMPANIES
LANGUAGE SERVICE PROVIDERS


BBB. A+ ACCREDITED BUSINESS


EUATC
European Union of Associations of Translation Companies

415 Madison Ave., 15th Floor New York, NY 10017 | Toll Free: 1-800-969-6853  Fax: 1-800-856-2759
E-mail: contact@daytranslations.com | www.daytranslations.com

# Stovall & Associates
### Avvocati

20 maggio 2019

<u>Inviato via USPS</u>
Giardini Mazza Sanvido & Associati
Attn: Avv. Alessandro Mazza
Via Grassi, 9
10138 Torino


Gentile Mr. Mazza.

Io rappresento Kathryn Mayorga nel caso 2:19-CV-00168-JAD-CWH titolato Mayorga v. Ronaldo. Questa causa è depositata presso la Corte Distrettuale degli Stati Uniti.

Il convenuto, Cristiano Ronaldo, risiede a Torino in Italia. La Regola di Procedura Civile Federale (FRCP 4) prevede il Servizio di un convenuto residente in Italia che deve essere eseguito ai sensi dell'Articolo 10 della CLA.

Con questa lettera, lo nomino Avv. Alessandro Mazza in questa materia, e lo autorizzo a servire Cristiano Ronaldo in Italia la citazione e il reclamo nel caso 2:19-CV-00168-JAD-CWH, in conformità con le disposizioni dell'articolo 10 della CLA.


Cordiali Saluti,

Leslie Mark Stovall, Esq.


LMS/tl

2301 Palomino Lane
Las Vegas, Nevada 89107

Telefono: (702) 258-3034
Fax: (702) 258-0093

MAZZA

All' attenzione della DSSa
Tonme, ricordat di
compilere il cerlificato di
avvenuta modifica ai fini della

Velidita della modifica,
Semple a Sue disposizion,

Domenico

STUDIO GIARDINI MAZZA SANVIDO & ASSOCIATI

AVV. ALESSANDRO MAZZA

VIA GRASSI N. 9

011 433 5686

CHIEDIAMO LA RESTITUZIONE

DELL'ATTO CON ESTREMA URGENZA

PER AVV. MAZZA

Francesco Corrani

COMP
LESLIE MARK STOVALL, ESQ.
Nevada Bar No. 2566
ROSS H. MOYNIHAN, ESQ.
Nevada Bar No. 11848
LARISSA DROHOBYCZER
Nevada Bar No. 12316
STOVALL & ASSOCIATES
2301 Palomino Lane
Las Vegas, NV 89107
Telephone: (702) 258-3034
Facsimile: (702) 258-0093
court@lesstovall.com
*Attorneys for Plaintiff*

NOTIFICA URGENTE
6.6.2019
Francesco Cecini

I hereby attest and certify on 5/21/19
that the foregoing document is a full, true
and correct copy of the original on file in my
legal custody.

CLERK, U.S. DISTRICT COURT
DISTRICT OF NEVADA

By _____ Deputy Clerk

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

V° 10 PM

AUTO R22A

= 4 GIU 2019

IL PROCURATORE DELLA REPUBBLICA SOST.
Dr. Dionigi TIBONE

KATHRYN MAYORGA,

　　　　　　　　　　　Plaintiff,

vs.

CRISTIANO RONALDO,

　　　　　　　　　　　Defendant,

CASE NO.:

**COMPLAINT**

COMES NOW Plaintiff, by and through her attorneys, STOVALL & ASSOCIATES, and for her complaint, alleges as follows:

**PARTIES**

**I.**

That plaintiff is, and at all times mentioned herein was, a resident of Clark County Nevada

**II.**

That defendant Cristiano Ronaldo is, and are all times mentioned herein was, a citizen of Portugal reportedly living in Turin, Italy.

**JURISDICTION**

**III.**

This court has subject jurisdiction pursuant to 28 USC 1332 (a) in that the amount in controversy exceeded the sum of $75,000 exclusive of interest and cost, and the diversity of the

parties is based upon the defendant being a Portuguese citizen reportedly living in Italy.

### IV.

Venue is proper in this district pursuant to 25 USC 1391 (b) in that the alleged acts of the defendant as alleged in the complaint occurred in the Clark County, Nevada

### FACTS

### V.

That on June 12, 2009 the plaintiff was invited by a friend to go to Rain Nightclub located in the Palms Hotel and Casino where she met Cristiano Ronaldo.

### VI.

That on June 13, 2009 Cristiano Ronaldo invited a group of people, including the plaintiff, to his penthouse suite to enjoy the view of the Las Vegas strip.

### VII.

While visiting Cristiano Ronaldo's penthouse suite the plaintiff was invited to join guests going into a hot tub located on the balcony of the penthouse suite and plaintiff declined not having a bathing suit or other suitable clothing.

### VIII.

That defendant Cristiano Ronaldo offered plaintiff clothing she could wear in the hot tub, plaintiff accepted, followed Cristiano Ronaldo into a room where he provided her athletic shorts and a T-shirt, and directed her to a bathroom to change her clothing.



### IX.

That while changing her clothing Cristiano Ronaldo entered the bathroom, exposed his erect penis and asked the plaintiff to perform fellatio.

### X.

That plaintiff refused and stated she wanted to leave the hotel suite.

### XI.

That upon leaving the bathroom, Cristiano Ronaldo pulled the plaintiff into a bedroom and onto a bed and attempted to engage in sexual intercourse.

### XII.

2

That plaintiff refused to engage in sexual intercourse and covered herself in an attempt to prevent sexual penetration.

## XIII.

That Cristiano Ronaldo turned plaintiff onto her side and while screaming "no, no, no" she was sodomized by Cristiano Ronaldo

## XIV.

That the sexual assault by Cristiano Ronaldo caused plaintiff to suffer severe emotional and bodily injuries including but not limited to anal contusions, posttraumatic stress disorder, and major depression.

## XV.

That during the sexual assault, the plaintiff experienced emotional shock characterized by passivity in response to the real and perceived threat to her life and well-being by Cristiano Ronaldo.

## XVI.

That when Cristiano Ronaldo completed the sexual assault of the plaintiff, he allowed her to leave the bedroom stating he was sorry, he was usually a gentleman.

## XVII.

That plaintiff drove to her parent's home where she disclosed the sexual assault by Cristiano Ronaldo to her friend.

## XVIII.

That on June 13, 2009, the same day of the sexual assault by Cristiano Ronaldo, the plaintiff reported the sexual assault to the Las Vegas Metropolitan Police Department, incident number LVV090613001815, identifying the perpetrator as a famous soccer player, but refused to provide a name out of fear of public humiliation and retaliation.

## XIX.

That on June 13, 2009, the same day of the sexual assault by Cristiano Ronaldo, the plaintiff submitted to a sexual assault medical examination at the University Medical Center where physical evidence of the sodomy was documented and photographed.

## XX.

That during the examination at University Medical Center, the plaintiff heard the nurse tell her that she would be subjected to retaliation and publicly humiliated by Cristiano Ronaldo, or individuals acting on his behalf, as a woman who had consensual sex, and who is now attempting to extort money by falsely accusing Cristiano Ronaldo of sexual assault.

## XXI.

That within weeks of the initial report of the sexual assault to the Las Vegas Metropolitan Police Department, a police detective conducted an interview of the plaintiff, during which she identified Cristiano Ronaldo as the individual who sexually assaulted her on June 13, 2009 at the Palms Hotel and Casino.

## XXII.

That during the investigative interview by the Las Vegas Metropolitan Police Department the plaintiff heard the detective reiterate prior warnings that plaintiff would be the subject of public humiliation as a victim of a sexual assault, and that Cristiano Ronaldo, and individuals associated with him, would further humiliate her by publicly characterizing her as a woman who consented to sexual intercourse and because of his wealth and fame was now attempting to extort money from Cristiano Ronaldo by falsely accusing him of sexual assault.

## XXIII.

That following the investigative interview of the plaintiff, the Las Vegas Metropolitan Police Department initiated no further contact with the plaintiff.

## XXIV.

That the psychological trauma of the sexual assault, the fear of public humiliation and retaliation and the reiteration of those fears by law enforcement and medical providers left plaintiff terrified and unable to act or advocate for herself.

## XXV.

That plaintiff's family eventually arranged for the plaintiff to consult with a lawyer, who only had several years of experience, and this lawyer agreed to represent the plaintiff to pursue a claim for civil damages against Cristiano Ronaldo.

## XXVI.

That Cristiano Ronaldo hired a team of "fixers", known as "personal reputation protection specialists" (defendants DOES I-XV and ROE Corporations I-XV, and hereafter referred to as the "team"), to:

1. Investigate, assess and monitor the plaintiff, plaintiff's lawyer, friends and associates to avoid public disclosure of the sexual assault;

2. Assess and monitor the law enforcement agencies responsible for the investigation and prosecution of the sexual assault;

3. Develop and implement a strategy to prevent or delay public disclosure of the sexual assault;

4. Develop and implement a strategy to prevent or delay criminal prosecution of Cristiano Ronaldo for the sexual assault of the plaintiff; and

5. Develop and implement a strategy to delay, diminish or eliminate plaintiff's claim for civil damages arising from the sexual assault on June 13, 2009.

## XXVII.

That the "team" reported to Cristiano Ronaldo that the plaintiff prior to the sexual assault, was:

1. Raised in a middle-class family in which her father was employed as a fireman and her mother remained home as the homemaker;

2. A university graduate with a degree in journalism;

3. Variously employed as a schoolteacher, model and sales/product representative;

4. Married, separated from her husband and was openly dating; and

5. Engaged in a typical social life of a young woman born and raised in Las Vegas Nevada prior to the sexual assault.

## XXVIII.

That the "team" reported to the Cristiano Ronaldo that after the sexual assault the plaintiff:

1. Suffered severe psychological injury as a result of the sexual assault by Cristiano Ronaldo;

5

2.     Would not allow her lawyer to identify the friend who visited Ronaldo's suite with her, because she and her friend were terrified of retaliation by Cristiano Ronaldo, or persons acting on his behalf;

3.     Was terrified of being publicly humiliated by being identified as a victim of sexual assault;

4.     Was terrified of further public humiliation by Cristiano Ronaldo, or individuals acting on his behalf, accusing her of consenting to sex and then falsely accusing Cristiano Ronaldo of sexual assault for financial gain;

5.     Was receiving treatment for the psychological injuries caused by Cristiano Ronaldo's sexual assault;

6.     Was exhibiting erratic behavior, emotional instability, indecisiveness, anxiety, and depression, alcohol abuse and suicidal ideation;

7.     Was unable, or had difficulty, making decisions generally and specifically regarding Cristiano Ronaldo and the sexual assault;

8.     Was unemployed since the sexual assault;

9.     Submitted to a sexual assault examination on June 13, 2009 at University Medical Center where anal contusions and abrasions were documented and photographed; and

10.    That plaintiff reported that she repeatedly tried to avoid the sexual assault by screaming "no, no, no", attempting to cover herself to avoid sexual penetration and was sodomized during the sexual assault.

### XXIX.

That the "team" reported to Cristiano Ronaldo an assessment of the Las Vegas Metropolitan Police Department, the law enforcement agency responsible for the investigation of the sexual assault and referral of Cristiano Ronaldo for prosecution, as:

1.     The police will not view the sexual assault of the plaintiff as a "violent crime";

2.     The police would characterize the sexual assault as "harassment" ;

3.     The police would put plaintiff's case on the "back burner";

4.   The "team" had a confidential source within the Las Vegas Metropolitan Police Department; and

5.   Their confidential police source confirmed that the police would "happily" close their investigative file if a financial settlement between the plaintiff and the defendant was arranged.

## XXX.

That at various times the "team" submitted written questions to Cristiano Ronaldo, and in the answers attributed to Cristiano Ronaldo, he stated:

1.   He engaged in sexual intercourse with the plaintiff.

2.   "She was laying on the bed. I went from behind";

3.   "She said no and stop several times";

4.   A denial of "anal" penetration; and

5.   That plaintiff's rectal injuries were caused by another person after the plaintiff had vaginal intercourse with him.

## XXXI.

That plaintiff's lawyer did not follow up with the Las Vegas Metropolitan Police Department's investigation of the sexual assault of the plaintiff by Cristiano Ronaldo.

## XXXII.

That Cristiano Ronaldo and the "team" knowing that the plaintiff was a "vulnerable person", suffering severe emotional injuries, and terrified of public disclosure as a victim of sexual assault and of retaliation, repeatedly threatened to falsely and publicly accuse the plaintiff of consenting to sexual intercourse with the defendant in order to accuse the defendant of sexual assault to obtain money, if there was:

1.   Public disclosure of the sexual assault from any sources,

2.   Any further contact or information disclosed of the sexual assault to the police from any source, or

3.   Further investigation by the police of the sexual assault

## XXXIII.

That the "team" communicated these threats to the plaintiff for the purpose, and with the intent to:

1.     Prevent, or delay, any further contact with the Las Vegas Metropolitan Police Department by the plaintiff, her friends, family, or lawyer;

2.     Prevent, or delay, any further contact with the Las Vegas Metropolitan Police Department to undermine and damage plaintiff's credibility as a victim of sexual assault;

3.     To engage in purported settlement negotiations with the plaintiff to undermine and damage plaintiff's credibility as a victim of sexual assault;

4.     Prevent, or delay, further criminal investigation of the June 13, 2009 sexual assault of the plaintiff by Cristiano Ronaldo;

5.     Cause further emotional distress to plaintiff by enhancing and reinforcing her sense of helplessness and vulnerability to public humiliation by being characterized as an individual making a false accusation of sexual assault for financial gain against a wealthy and famous person; and

6.     To delay, diminish or eliminate plaintiff's claim for civil damages against the defendant.

## XXXIV.



That the "team" communicated with plaintiff's lawyer purportedly to negotiate a settlement of plaintiff's claims for civil damages against the defendant, during which they repeatedly:

1.     Sought assurances that the plaintiff, her family, friends and lawyer were not in contact with the police;

2.     Sought assurances that plaintiff, her family, friends and lawyer were not communicating any information regarding the sexual assault to any third party;

3.     Falsely accused the plaintiff of fabricating information about the facts and circumstances of the sexual assault to undermine the plaintiff's credibility;

4.     Threatened to publicly and falsely accuse the plaintiff of consenting to sexual intercourse in order to accuse Cristiano Ronaldo of sexual assault to obtain money;

and

5.  Failed to make any meaningful offers of settlement.

### XXXV.

That plaintiff was incompetent and lacked the mental capacity to participate in negotiations and settlement of her claims due to the injuries suffered during the initial sexual assault by Cristiano Ronaldo, the subsequent threat to publicly and falsely accuse her of extortion and false accusations that she fabricated the facts and circumstances of the sexual assault.

### XXXVI.

That plaintiff's lawyer having observed and commented upon the emotional instability of the plaintiff, failed to have the competency or disability of the plaintiff evaluated, to seek accommodation of any such disability, or have a personal representative appointed to represent the interest of the plaintiff in this case of incompetency.

### XXXVII.

That plaintiff's lawyer and the "team" agreed to participate in a private mediation.

### XXXVIII.

That the plaintiff agreed to participate in the private mediation on the condition that Cristiano Ronaldo be present so that plaintiff could personally confront him with the consequences of the sexual assault that she suffered.

### XXXIX.



That a private mediation was conducted in Las Vegas, Nevada in which:

1.  Cristiano Ronaldo did not appear, and plaintiff was not informed that Cristiano Ronaldo would not attend until the day of the mediation;

2.  That plaintiff's family came to the mediation to provide emotional support and advice to her, but were excluded from the mediation by the defendant's "team" and the mediator;

3.  That during the mediation the plaintiff was extremely emotional, emotionally unstable, indecisive, irritable, agitated, hyper vigilant and erratic; and

4.  That defendant's "team" reported that the plaintiff exhibited an extremely volatile

9

and emotional state of mind, was emotionally fragile and unpredictable, the mediator spent a considerable amount of time to prevent her from walking out, and a state of mind that made it not possible to conclude the entire settlement within the confines of the mediation.

## XL.

That during the mediation the plaintiff experienced severe emotional trauma which she haracterized as re-experiencing the sexual assault by Cristiano Ronaldo, extreme fearfulness, omplete helplessness and eventually a sense of passivity where she would do anything just to be ble to leave/escape/avoid revisiting the sexual assault by continuing the mediation.

## XLI.

That defendant's "team" and the mediator knew that the plaintiff suffered severe psychological injuries as a result of the sexual assault, and having observed plaintiff's severe behavioral problems during the mediation, knew or should of known that the plaintiff was ncompetent or suffered a disability impairing her competency to participate in the mediation, and hey failed to take any steps to have the plaintiff's condition evaluated, accommodated or to have a personal representative appointed to represent the interest of the plaintiff to assure that a mediated/negotiated agreement would be based upon the mutual assent of the parties or approved by a court.

## XLII.

That in complete disregard of the plaintiff's acute emotional condition and severe behavioral problems during the mediation and knowing the plaintiff was incompetent or suffering a disability mpairing her competency, and concerned that the plaintiff would stop the mediation process, the defendants "team", the mediator and plaintiff's lawyer agreed to a "partial settlement", which the defendants "team" later characterized as an incomplete and cryptic settlement memo.

## XLIII.

That the further psychological injury and trauma caused by the mediation process, which manifested itself in plaintiff experiencing intrusive thoughts, an increased sense of extreme anxiety and fearfulness, complete helplessness and passivity, prevailed during the purported post-mediation

egotiations between plaintiff's attorney and the "team" representing Cristiano Ronaldo.

## XLIV.

That the plaintiff was incompetent, and lacked the capacity, to agree to any term negotiated during or after the mediation and incorporated into the purportedly final "settlement and non-disclosure agreement".

## XLV.

That defendant's "team" asserted that the settlement and non-disclosure agreement was intended to and did prevent plaintiff, her family, friends and lawyer from speaking to anyone, including the police about the sexual assault and should she or anyone associated with her do so, she would suffer severe legal and financial consequences and penalties.

## XLVI.

That the "team" reported that they accomplished the goal of their conspiracy to obstruct and prevent the criminal investigation and prosecution of Cristiano Rinaldo and plaintiff's civil claims, writing:



At the end of the day, given the type of claims which MK [the plaintiff] has asserted in this case, in our opinion we have obtained an incredibly favorable settlement which will result not only in the release of any and all civil claims and in MK [the plaintiff] choosing not to pursue a criminal case which could have resulted in Topher [Cristiano Ronaldo] being imprisoned for a life sentence for sexual assault (or having the catastrophic effect of his not being able to travel to the US to play), but which will also avert the devastating impact which such claims would have on his personal and professional reputation, endorsement and professional opportunities. We would not have been able to persuade either MK [the plaintiff], her attorney or the mediator of the weakness of MK's claims or the strength of Topher's [Cristiano Ronaldo] defenses had it not been for the invaluable work which was done in this case, which was not only useful and integral for purposes of

mediation and settlement, but also necessary for the overall case, in terms of being able to protect Topher [Cristiano Ronaldo] personally and professionally, under the fullest extent of the law, whether or not MK [the plaintiff] went forward with her claims. To this end, we have fully succeeded, and now that we appear to have persuaded MK [the plaintiff] and Trammel [plaintiff's lawyer] of our positions on the material settlement terms of confidentiality and related tax issues, we anticipate being able to wrap this up and close this matter in short order.

### XLVII.

That the June 13, 2009 sexual assault and the ongoing and continuous conspiracy to obstruct and prevent the criminal prosecution of Cristiano Ronaldo and plaintiff's civil claims caused the plaintiff continued and ongoing severe post traumatic stress disorder and major depression, manifesting in difficulty maintaining employment, difficulty forming and maintaining interpersonal relationships, intrusive thoughts, abuse of alcohol, suicidal ideation, difficulty performing the normal activities of daily living and to feel emotionally adrift and frightened.

### XLVIII.



That in 2017, a series of articles were published in Europe concerning the arrest of Cristiano Ronaldo for the sexual assault of a woman in Manchester England, the sexual assault of a woman in Italy, and the sexual assault of another woman (the plaintiff) in Las Vegas Nevada in 2009.

### XLIX.

That the articles published in Europe during 2017 referred to, and quoted from documents and communications which were in the exclusive possession and control of Cristiano Ronaldo and his "team" pertaining to the sexual assault of the plaintiff, and were contemporaneous to the defendant's investigations, assessments and negotiations of the purported settlement agreement in 2009 and 2010.

### L.

That in 2017 Cristiano Ronaldo and his "team", in furtherance of the conspiracy to obstruct

12

he criminal investigation of the sexual assault and plaintiff's civil claims, publicly denied the sexual assault of the plaintiff by Cristiano Ronaldo, and falsely and intentionally characterized reporting of a sexual assault of the plaintiff, as:

1. Journalistic fiction;
2. Untruthful and false; and
3. Unattributed and unsubstantiated

## LI.

That in 2018 the plaintiff submitted to a forensic psychiatric examination which determined that as a result of the June 13, 2009 sexual assault, she:

1. Suffered post traumatic stress disorder and major depression;
2. Was incompetent and lacked the capacity to participate in negotiations or enter into an agreement for settlement in 2009 and 2010; and
3. Continued to suffer severe post traumatic stress disorder and major depression.

## LII.

That in 2018 the plaintiff contacted the Las Vegas Metropolitan Police Department stating her desire and willingness to participate in the criminal investigation and prosecution of Cristiano Ronaldo for the sexual assault that occurred on June 13, 2009 at the Palms Hotel and Casino in Las Vegas Nevada, and submitted a copy of the forensic psychiatric evaluation of the plaintiff describing psychological injuries she suffered as a result of the sexual assault and the consequences of those injuries.

## LIII.

That in 2018 the plaintiff obtained from Football Leaks copies of documents and communications between defendant Cristiano Ronaldo and his "team" contemporaneous to their:

1. Investigation and assessment of the plaintiff, plaintiff's lawyer, the Las Vegas Metropolitan Police Department, mediator, and Cristiano Ronaldo;
2. The strategy adopted and implemented to delay and prevent criminal prosecution of Cristiano Ronaldo;
3. The strategdy adopted and implemented to undermine plaintiff's credibility as a



victim of sexual assault;

4.    The strategy adopted and implemented to delay, diminish or eliminate plaintiffs claim for civil damages; and

5.    The negotiations before, during and after the mediation leading to the "purported" agreements for settlement and non-disclosure of the 2009 sexual assault of the plaintiff.

### LIV.

That on August 25, 2018 the plaintiff delivered to the Las Vegas Metropolitan Police Department copies of documents and communications obtained from Football Leaks, between defendant Cristiano Ronaldo and his "team" as evidence of:

1.    The criminal sexual assault of the plaintiff by Cristiano Ronaldo on June 13, 2009 at the Palms Hotel and Casino for which the time limit for prosecution was removed by the plaintiff's reporting of the crime in 2009 pursuant to NRS 171.180;

2.    An ongoing criminal conspiracy to obstruct and prevent the criminal investigation and prosecution of Cristiano Ronaldo for the sexual assault of the plaintiff on June 13, 2009 at the Palms Hotel and Casino, including the following acts in furtherance of that conspiracy;

3.    A fraudulent misrepresentation of purpose and process leading to the agreements for settlement and non-disclosure and that those agreements subjected the plaintiff to severe legal and financial penalties and sanctions should she communicate with anyone, including the police, about the sexual assault;

4.    A libel by falsely and publicly releasing statements to the press in 2017 -2018 that the plaintiff was not the victim of a sexual assault by Cristiano Ronaldo and any such allegations were false; and

A request that Cristiano Ronaldo; and the individuals acting on behalf of Cristiano Ronaldo, (the "team") be investigated for criminal conspiracy to obstruct justice, obstruction of justice, fraud and libel.

### LV.

14

That as a direct and proximate result of the aforementioned acts of the defendant, plaintiff as deprived compensatory damages for injuries suffered during the June 13, 2009 sexual assault y Cristiano Rondalo.

### LVI.

That as a direct and proximate result of the aforementioned acts of the defendants, plaintiff ustained severe bodily and psychological injuries, all or some of which conditions may be ermanent and disabling and all to Plaintiff's damage in a sum in excess of $50,000.00.

### LVII.

That as a direct and proximate result of the aforementioned acts of the defendants, plaintiff id receive medical and other treatment for her injuries and that said services, care and treatment re continuing and shall continue in the future, all to the plaintiff's damage in a sum in excess of 50,000.00.

### LVIII

That the injuries complained of herein, diminished the plaintiff's ability and capacity to ngage in activities to the same extent as prior to the aforementioned acts of the defendants which s the subject of this complaint, all to the plaintiff's damage in a sum in excess of $50,000.00.



// 
//

### LIX.

That the aforementioned acts of the defendants were malicious, oppressive, coercive and raudulent, intended to cause injury to the plaintiff and causing the intended injury to the plaintiff, hereby justifying the imposition of punitive damages upon the defendant in a sum in excess of 50,000.00.

### LX.

That plaintiff be awarded her attorney fees and costs for this action to recover her damages rom the defendants.

### LXI.

That the aforementioned acts of the defendant Cristiano Ronaldo, and Does I-XX and Roe

15

orporations I-XX(the "team") tolled the running of any applicable statutes of limitation on the aintiff's civil claims as set forth herein, including but not limited to the following:

1.  Defendants are foreign nationals, remaining outside of the State of Nevada and the United States;

2.   Plaintiff lacked capacity;

3.  Defendants engaged in a continuous and ongoing fraud and conspiracy to obstruct and conceal their unlawful activities which plaintiff did not discover until mid-2017;

4.  Any time limitations related to the claim of sexual assault was removed by the reporting of the crime; and

5.  That the parties agreed to toll the running of any time limits on plaintiff's claims arising from the 2009 sexual assault.

## FIRST CAUSE OF ACTION

## BATTERY

## LXII.

That plaintiff incorporates each paragraph set forth in paragraphs I – LXI as though fully set orth at this herein.



## LXIII.

That the aforementioned sexual assault and sodomy of the plaintiff by the defendant ristiano Ronaldo on June 13, 2009 constitutes a battery of the plaintiff and as a direct and roximate result thereof the plaintiff has suffered damages in a sum in excess of $50,000.00.

## LXIV.

That the aforementioned acts of the defendant were malicious, oppressive, coercive and raudulent, intended to cause injury to the plaintiff, and caused the intended injury to the plaintiff, hereby justifying the imposition of punitive damages upon the defendant in a sum in excess of 50,000.

## SECOND CAUSE OF ACTION

## INTENTIONAL INFLECTION OF EMOTIONAL DISTRESS

## LXV.

Case 2:19-cv-00168-JAD-CWH Document 17 Filed 06/20/19 Page 28 of 83

That plaintiff incorporates paragraphs I – LXIV of the complaint as though fully set forth herein.

## LXVI.

That the aforementioned acts of the defendants and Cristiano Ronaldo constitutes an ongoing and continuous intentional infliction of emotional distress upon the plaintiff, including but not limited to:

1. The June 13, 2009 sexual assault and sodomy;

2. The repeated threats to falsely and publicly accuse the plaintiff of engaging in consensual sex in order to claim sexual assault to obtain money from the defendant;

3. The continuous and ongoing fraud and conspiracy to obstruct and conceal the 2009 sexual assault, obstruct and prevent the criminal prosecution of Cristiano Ronaldo and plaintiff's civil claims, and her discovery thereof;

4. Releasing documents and information pertaining to the 2009 sexual assault disclosed in the European publications in 2017-2018; and



5. Publicly and falsely denying that Cristiano Ronaldo sexually assaulted the plaintiff in 2009 in response to the articles published in 2017-2018.

## LXVII.

That as a direct and proximate result of the aforementioned intentional infliction of emotional distress, the plaintiff has suffered bodily and economic injuries, all to her damages in a sum in excess of $50,000.

## LXVIII.

That the aforementioned acts of the defendant were malicious, oppressive, coercive and fraudulent, intended to cause injury, and causing the intended injury to the plaintiff thereby justifying imposition of punitive damages upon the defendant in a sum in excess of $50,000

## THIRD CAUSE OF ACTION

## COERCION AND FRAUD

17

### LXIX.

The plaintiff incorporates paragraphs I – LXVIII of the complaint as though each said paragraph was fully set forth herein.

### LXX.

That defendants repeatedly and continuously threatened to falsely and publicly accuse the plaintiff of engaging in consensual sex with the defendant in order to claim a sexual assault to extort money from the defendant.

### LXXI.

That the plaintiff had a reasonable belief that the defendant would carry out this threat if she did not comply with the defendant's demand to settle her claim of sexual assault.

### LXXII.

That the defendants and his "team" falsely represented that the purpose of settlement negotiations, mediation and the settlement agreement was to compensate the plaintiff for injuries suffered during the June 13, 2009 sexual assault by Cristiano Ronaldo.

### LXXIII.



That the defendants falsely represented that the settlement agreement precluded plaintiff's communication and cooperation with the police department's criminal investigation of the sexual assault upon her person by Cristiano Ronaldo on June 13, 2009 at the Palm's Hotel and Casino, and should she or anyone associated with her, do so she would suffer severe financial and legal consequences.

### LXXIV.

That from the circumstances surrounding the negotiations and mediation, the plaintiff to the extent she was capable of doing so, formed a reasonable belief that the process leading to the agreement and the agreement for settlement and non-disclosure were lawful.

### LXXV.

That the plaintiff purportedly entered into an agreement settling her claims against the defendant for the June 13, 2009 sexual assault in exchange for a payment of $375,000, and non-disclosure of the sexual assault.

Case 2:19-cv-00168-JAD-CWH   Document 17   Filed 06/30/19   Page 30 of 83

## LXXVI.

That the "team" reported that they accomplished the goal of their conspiracy to obstruct and prevent the criminal investigation and prosecution of Cristiano Rinaldo by writing:

At the end of the day, given the type of claims which MK [the plaintiff] has asserted in this case, in our opinion we have obtained an incredibly favorable settlement which will result not only in the release of any and all civil claims and in MK [the plaintiff] choosing not to pursue a criminal case which could have resulted in Topher [Cristiano Ronaldo] being imprisoned for a life sentence for sexual assault (or having the catastrophic effect of his not being able to travel to the US to play), but which will also avert the devastating impact which such claims would have on his personal and professional reputation, endorsement and professional opportunities. We would not have been able to persuade either MK [the plaintiff], her attorney or the mediator of the weakness of MK's claim claims or the strength of Topher's [Cristiano Ronaldo] defenses had it not been for the invaluable work which was done in this case, which was not only useful and integral for purposes of mediation and settlement, but also necessary for the overall case, in terms of being able to protect Topher [Cristiano Ronaldo] personally and professionally, under the fullest extent of the law, whether or not MK [the plaintiff] went forward with her claims. To this end, we have fully succeeded, and now that we appear to have persuaded MK [the plaintiff] and Trammel [plaintiff's lawyer] of our positions on the material settlement terms of confidentiality and related tax issues, we anticipate being able to wrap this up and close this matter in short order.



## LXXVII.

That the defendants' representations regarding the purpose of the process leading to the agreement for settlement were false, and were made in furtherance of a conspiracy to:

1.  Obstruct the criminal investigation and prosecution of Cristiano Ronaldo for sexual assault by concealing and suppressing the plaintiff's evidence of that crime; and

2.  Thereby interfere, diminish or eliminate plaintiff's claim for civil damages arising

from the aforementioned sexual assault.

### LXXVIII.

That defendants material misrepresentation of the process and agreement for settlement rendered the settlement agreement void as a matter of law.

### LXXIX.

That the concealment of a crime or evidence thereof, and the obstruction of a criminal investigation and prosecution of a crime in exchange for money are crimes, rendering the settlement and non-disclosure agreement unlawful and void as a matter of law.

### LXXX.

That the plaintiff did not discover the aforementioned fraudulent misrepresentations of the defendants regarding the purported process and settlement agreement until mid 2017 when the plaintiff sought legal advise regarding the articles published in Europe discussing cases of alleged sexual assault by Cristiano Ronaldo, including her sexual assault in 2009.

### LXXXI.



That the plaintiff's discovery of defendants tortious and fraudulent acts caused the plaintiff to suffer severe emotional distress and an aggravation of the severe psychological injuries she suffered as a result of the June 13, 2009 sexual assault, all to her damages in a sum in excess of $50,000.

### LXXXII.

That as a direct and proximate result of the defendants conspiracy, fraud and coercion the plaintiff was deprived of recovery of compensatory damages for the injuries she sustained in the sexual assault on June 13, 2009 by Cristiano Ronald, and all to her damages in a sum in excess of $50,000.

### LXXXIII.

That the defendants acts were malicious, fraudulent, coercive, and aggressive, intended to cause injury to plaintiff, and causing the intended injury to plaintiff, thereby justifying imposition and punitive damages upon the defendant in a sum in excess of $50,000.

20

## FOURTH CAUSE OF ACTION
## ABUSE OF A VULNERABLE PERSON

### LXXXIV.

That the plaintiff incorporates paragraphs I-LXXXIII of this complaint as though fully set forth herein.

### LXXXV.

That the plaintiff, Kathryn Mayorga is, and all times mention herein, was a "vulnerable person" as defined by NRS 200.5092(8).

### LXXXVI.

That the aforementioned acts of defendant Cristiano Ronaldo and his "team" constitutes the abuse and exploitation of a vulnerable person as defined by NRS 200.5092(2)(a) and (c), and NRS 200.5092(3)(a), and as a direct and proximate result thereof, plaintiff suffered bodily and economic injuries, all the her damages in a sum in excess of $50,000.

### LXXXVII.

That the acts of defendants were malicious, fraudulent, oppressive and intended to cause injury to plaintiff, and caused the intended coercive injury to plaintiff, thereby justifying imposition of punitive damages upon the defendants in a sum in excess of $50,000.



## FIFTH CAUSE OF ACTION
## RACKETEERING AND CIVIL CONSPIRACY

### LXXXVIII.

That plaintiff incorporates paragraphs I through LXXXVII of the complaint as though fully set forth herein

### LXXXIX.

That defendant Cristiano Ronaldo and his "team" combined to form and operate an enterprise for the purpose of engaging in racketeering activities and a civil conspiracy.

### XC.

That in furtherance of their enterprise the defendants engaged in the following racketeering activities as defined by NRS 207.360(6) (sexual assault) and (10)(extortion to coerce plaintiff's participation in their schemes), to obstruct the criminal investigation and prosecution of Cristiano Ronaldo for the sexual assault of the plaintiff on June 13, 2009 and thereby interfere, reduce, or eliminate plaintiff's claim for civil damages arising therefrom.

### XC.

The defendants aforementioned racketeering activities and civil conspiracy caused:

1. The delay, or prevented, the criminal investigation and prosecution of Cristiano Ronaldo for the sexual assault of the plaintiff on June 13, 2009;

2. The delay, and prevented Plaintiff's recovery of compensatory damages for injuries sustained in the June 13, 2009 sexual assault, all to her damages in a sum amount excess of $50,000.00; and

3. Aggravated and continued the severe emotional distress of the plaintiff, all to her damages in a sum amount excess of $50,000.00.

### XCI.



That pursuant to NRS 207.470 the defendants are liable to the plaintiff for three times the actual damages sustained by the plaintiff and payment of the plaintiff's attorneys fees and cost related to this claim.

### XCII.

That the aforementioned acts of the defendants were malicious, fraudulent, oppressive, and coercive, intended to cause injury to the plaintiff, and in fact caused the intended injury to the plaintiff, thereby justifying an award of punitive damages and some in excess of $50,000.

### SIXTH CAUSE OF ACTION

### DEFAMATION

### XCIII.

That plaintiff incorporates paragraphs I through XCII of the complaint as though fully set forth herein.

## XCIV.

That in 2017 articles were published in Europe that referred to and quoted documents and communications which were in the exclusive possession and control of Cristiano Ronaldo and his team" pertaining to the sexual assault of the plaintiff and contemporaneous to the defendant's investigation of the plaintiff in 2009 and the process leading to the agreement of a settlement in 2010.

## XCV.

That these 2017 articles contain sufficient information to identify of the plaintiff, and plaintiff learned of these articles from third parties who identified her from the information contained therein.

## XCVI.

That in 2017 and 2018 Cristiano Ronaldo, and individuals acting on his behalf, and in furtherance of the conspiracy to obstruct and prevent disclosure of the 2009 sexual assualt, the criminal prosecution of Cristiano Ronaldo and plaintiff's civil claims published responses to these articles that falsely denied that a sexual assault of the plaintiff by Cristiano Ronaldo occurred, and falsely characterized the reported sexual assault of the plaintiff, as:



1. Journalistic fiction,

2. Untruthful and false, and

3. Containing unattributable and unsubstantiated allegations.

## XCVII.

That the defendants' publication of the false and defamatory statements harmed the plaintiff's reputation, discouraged third persons from associating with her, and imputed to the plaintiff the commission of a crime, dishonesty and immoral behavior.

## XCVIII.

That these false and defamatory statements were published by the defendants with actual malice, having knowledge of the falsity of these statements, or with a reckless disregard for their truth.

23

## XCIX.

That as a direct and proximate result of the defendants publication of false and defamatory ements with actual malice, the plaintiff has been subjected to great ridicule and embarrassment, been harmed both professionally and personally, and suffered severe emotional distress, all to plaintiff's damages in a sum in excess of $50,000.

## C.

That the defendants publication of false and defamatory statements regarding the plaintiff s done with actual malice, intended to cause harm to the plaintiff and caused the intended harm he plaintiff, thereby justifying imposition of punitive damages upon the defendant in a sum in ess of $50,000.

## SEVENTH CAUSE OF ACTION
## ABUSE OF PROCESS

## CI.

That plaintiff incorporates paragraphs I through C of the complaint as though fully set forth rein



## CII.

That alternative dispute resolution, including mediation, is a legal process recognized and otected by Nevada statutes.

## CIII.

That defendant agreed to participate in alternative dispute resolution by mediation to urportedly seek settlement of the plaintiffs civil claims for injuries suffered during the sexual ssault by Cristiano Ronaldo that occurred on June 13, 2009.

## CIV.

That defendants' participation in alternative dispute resolution by mediation was for the terior purpose of furthering the conspiracy to obstruct the criminal investigation and prosecution f Cristiano Ronaldo for sexual assault by concealing and suppressing the plaintiff's evidence of

24

at crime and to thereby interfere, diminish or eliminate the plaintiff's claim for civil damages arising from the aforementioned sexual assault.

## CV.

That defendants wilfully and intentionally, threatened to publicly and falsely accuse plaintiff of consenting to sexual intercourse in order to accuse Cristiano Ronaldo of sexual assault to obtain money to coerce plaintiffs participation in this process.

## CVI.

That defendants willfully and intentionally, falsely accused plaintiff of fabricating information about the circumstances of the assault to coerce her participation in the mediation process, undermine her credibility at the mediation and coerce plaintiffs acceptance of an agreement or settlement and non-disclosure.

## CVII.

The defendants willfully and intentionally excluded plaintiff's family from the mediation to deprive her of emotional support and advice, to further emotionally injure the plaintiff and place her at an unfair disadvantage during the mediation and coerce her acceptance of an agreement for settlement and non-disclosure.

## CVIII.



That the defendants knew that the plaintiff suffered severe psychological injuries as a result of the sexual assault and observed plaintiff's severe behavioral problems during the mediation, knew or should have known the plaintiff was incompetent or suffered a disability impairing her ability to participate in the mediation and failed to take any steps to have the plaintiff's condition evaluated, accommodated or to have a personal representative appointed to represent the interest of the plaintiff to assure that the mediation agreement would be based upon mutual assent of the parties or approval by a court.

## CIX.

That in complete disregard of the plaintiff's acute emotional condition and severe behavioral problems during the mediation and knowing the plaintiff was incompetent or suffering a disability impairing her competency, the defendants purportedly obtained plaintiff's agreement to a

ument that they later described as an incomplete and cryptic settlement agreement, and therefor
tinued "purported" negotiations to obtain a "final agreement" purportedly for settlement and
disclosure of the 2009 sexual assault.

### CX.

That the aforementioned acts of the defendants constitute abuse of process, and as a direct
proximate result thereof, the plaintiff suffered:

1. Severe emotional distress all her damages in the sum in excess of $50,000.

2. Loss of compensatory damages for injuries sustained in the June 13, 2009 sexual
   assault all to her damages in a sum of excess of $50,000.00

### CXI.

The aforementioned acts of the defendants were malicious, fraudulent, coercive and
ressive, intended to cause injury to the plaintiff, and caused the intended injury to the plaintiff,
eby justifying imposition of punitive damages upon the defendant of the sum in excess of
,000.




### EIGHTH CAUSE OF ACTION
### DECLARATORY RELIEF-
### (DECLARATION THAT THE SETTLEMENT AND NON-DISCLOSURE
### AGREEMENT IS VOID OR VOIDABLE ON THE BASIS OF INCOMPETENCY,
### UNDUE INFLUENCE, COERCION AND /OR FRAUD)
### CXII.

That plaintiff incorporates paragraphs I through CXI of the complaint as though fully set
th herein.

### CXIII.

That pursuant to NRS 30.040 plaintiff seeks a determination of the validity of the settlement and nondisclosure agreement of 2010.

### CXIV.

That the plaintiff contends she was incompetent and lacked the capacity to enter into an agreement for the settlement and nondisclosure of the 2009 sexual assault thereby rendering it void or voidable.

### CXV.

That the plaintiff contends the defendants exerted undue influence and coercion to obtain purported agreement for settlement and nondisclosure of the 2009 sexual assault thereby rendering it void or voidable.

### CXVI.

That the plaintiff contends the defendants committed a fraud to obtain her agreement for settlement and non-disclosure of the 2009 sexual assault thereby rendering it void or voidable

### CXVII.

That the plaintiff contends that the agreement for settlement and non-disclosure of the 2009 sexual assault was for unlawful and criminal purposes thereby rendering it void or voidable.

### CXVIII.

That based upon the aforementioned acts of the defendants the plaintiff seeks this court's judgment declaring the agreement for settlement and non-disclosure of the 2009 sexual assault void and unenforceable.

### NINTH CAUSE OF ACTION

### DECLARATORY RELIEF

### DECLARATION THAT THE PLAINTIFF IS EXCUSED FROM PERFORMANCE UNDER THE SETTLEMENT AND NONDISCLOSURE AGREEMENT DUE TO DEFENDANT'S BREACH

### CXIX.

That plaintiff incorporates paragraphs I through CXVIII of the complaint as though fully



forth herein.

## CXX.

That alternatively, pursuant to NRS 30.040 plaintiff seeks declaration of her obligations under the settlement and non-disclosure agreement of 2010.

## CXXI.

That a material term of the agreement was that Cristiano Ronaldo personally read a letter from defendant.

## CXXII.

That a material term of the agreement required defendants to maintain information and documents relating to the 2009 sexual assault and the agreement for settlement and non-disclosure the strictest confidence.

## CXXIII.



That defendants materially breached this agreement by failing to maintain information and documents relating to the 2009 sexual assault and the agreement for settlement and non-disclosure the strictest confidence resulting in the publication of articles in Europe in 2017 pertaining to the sexual assault of the plaintiff.

## CXXIV.

That defendants materially breached the agreement by not reading the plaintiff's letter.

## CXXV.

That defendants materially breached the agreement by making public statements regarding sexual assault in 2017-2018.

## CXXVI.

That the plaintiff contends that defendants material breach the agreement by failing to maintain information and documents relating to the 2009 sexual assault and agreement for settlement and nondisclosure in the strictest confidence, and Cristiano Ronaldo's refusal or failure to read the plaintiff's letter, excused and released the plaintiff from any obligations under the terms of the agreement for settlement and non-disclosure of the 2009 sexual assault of the plaintiff.

## CXXVII.

That based upon the aforementioned acts of the defendant the plaintiff seeks this court's judgment declaring that defendant's breach of the agreement for settlement and non-disclosure, excused and released the plaintiff from any obligations under the terms of the agreement for settlement and non-disclosure of the 2009 sexual assault of the plaintiff.

## TENTH CAUSE OF ACTION

## NEGLIGENCE

### CXXVIII.

That plaintiff incorporates paragraphs I through CXXVII of the complaint as though fully set forth herein.

### CXXIX.

That defendant assumed the duty and obligation under the agreement for settlement and non-disclosure of the sexual assault to maintain information and documents relating to the 2009 sexual assault of the plaintiff in the strictest confidence.

### CXXX.

That defendant negligently maintained the information and documents related to the 2009 sexual assault of the plaintiff, and as a direct and proximate result thereof, information and documents related to the 2009 sexual assault of the plaintiff were publicly disclosed.

### CXXXI.

That has a direct and proximate result of the aforementioned negligence of the defendants plaintiff has suffered severe emotional distress, all to her damages in a sum in excess of $15,000.

## ELEVENTH CAUSE OF ACTION

## BREACH OF CONTRACT

### CXXXII.

That plaintiff incorporates paragraphs I through CXXXI of the complaint as though fully set forth herein.

### CXXXIII.

That alternatively, the aforementioned acts of the defendants materially breached the

greement for settlement and non-disclosure by releasing documents and information pertaining to the 2009 sexual assault of the plaintiff to the public and not reading the plaintiff's letter.

### CXXXIV.

That plaintiff compromised her actual damages sustained in the 2009 sexual assault in xchange for the agreement of settlement and non-disclosure.

### CXXXV.

That plaintiff agreed not to pursue her actual damages against the plaintiff in exchange for e agreement of settlement and non-disclosure thereby tolling any applicable statute of limitation claims arising from the 2009 sexual assault.

### CXXXVI.

That as a direct and proximate result of the defendants' material breach of the agreement settlement and non-disclosure the plaintiff is excused and released from her obligations reunder.

### CXXXVII.

Tha s a direct and proximate result of the defendants' material breach of the agreement settlement and non-disclosure, the plaintiff has suffered damages equivalent to her actual and iquidated damages suffered in the 2009 sexual assault by the defendant Cristiano Ronaldo, a sum xcess of $50,000.

### CXXXVII.

That the plaintiff be awarded her attorney fees and costs to bring this action to recovery her ages from the defendants.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff reserving the right to amend the complaint prior to or during trial of this matter prays judgment against the defendants as follows:

1. General damages in the sum in excess of $50,000;
2. Special damages in the sum in excess of 50,000;
3. Punitive damages in a sum in excess of $50,000;
4. Statutory penalties in a sum in excess of $50,000;

5.    Declaration of rights as set forth above:

6.    Attorneys fees and cost of litigation:

7.    Interest at the statutory rate;

8.    Such other and further relief the court deems reasonable under the premises.

DATED this _____ day of January, 2019.

STOVALL & ASSOCIATES

LESLIE MARK STOVALL, ESQ.
Nevada Bar No. 2566
ROSS H. MOYNIHAN, ESQ.
Nevada Bar No. 11848
LARISSA DROHOBYZCER
Nevada Bar No. 12316
2301 Palomino Lane
Las Vegas. Nevada 89107
Attorneys for Plaintiff

31



## Day Translations

Traduzione certificata

# Certificato di Accuratezza

Ivana Durisic

Traduttore

...umento tradotto: Citazione in giudizio per Cristiano Ronaldo del 28/09/2018 con ...cusa di violenza sessuale ai danni di Kathryn Mayorga, avvenuta il 13 giugno ...9. Nel documento vengono esplicati i fatti, i capi d'imputazione e infine l'istanza ...sarcimento danni civili a favore della querelante.

...qualità di traduttore della Day Translations, Inc., la sottoscritta, Ivana Durisic, ...iara di essere un traduttore bilingue che ha assoluta padronanza delle lingue ...ana e inglese. Dichiara altresì di aver tradotto il documento allegato al meglio delle ...capacità e conoscenze dall'inglese in italiano e il testo italiano è una traduzione ...urata e veritiera del documento originale, presentato al meglio della sua conoscenza ...ompetenza.

Firmato in data 12 gennaio 2019

*Ivana Durisic*

_____

Ivana Durisic

Traduttore professionista di lingua italiana per DayTranslations, Incorporated

    

1 South Dearborn St., Suite 2100 Chicago, Illinois, 60603 | Toll Free: 1-800-969-6853  Fax: 1-800-856-2759
E-mail: contact@daytranslations.com | www.daytranslations.com

**Day**
Translations

tified Translation

# Certificate of Accuracy

Ivana Durisic
Translator

nslated document: Subpoena for Cristiano Ronaldo of 09/28/18 for the accusation
exual aggression on Kathryn Mayorga, which took place on June 13, 2009. In the
ument there is a timeline of the events, the causes of action and also the Prayer
elief with claim for damages in favor of the plaintiff.

translator for Day Translations, Inc., I, Ivana Durisic, declare that I am a bilingual
slator who is thoroughly familiar with the Italian and English languages. I have
slated the attached document to the best of my knowledge from English into Italian
the Italian text is an accurate and true translation of the original document
ented to the best of my knowledge and belief.

Signed on January 12, 2019

*Durisic Ivana*

Ivana Durisic

*Professional Translator for Day Translations, Inc.*

    

415 Madison Ave., 15th Floor New York, NY 10017 | Toll Free: 1-800-969-6853  Fax: 1-800-856-2759
E-mail: contact@daytranslations.com | www.daytranslations.com

Emesso in forma elettronica
28/09/2018 16:17

*TRIBUNALE DISTRETTUALE*
*CONTEA DI CLARK, NEVADA*

N MAYORGA                                )

                                         )       CASO NO.: A-18-781869-C
           Querelante,                           DIPARTIMENTO N.: 14

                                         )
                                         )

O RONALDO, individualmente,                      **CONVOCA (CIVILE)**
e Roe Corporationsl-XX;                  )
                                         )
           Accusati.                     )

_____              )

### CRISTIANO RONALDO

EI È STATO CITATO IN GIUDIZIO. IL TRIBUNALE PUÒ EMETTERE SENTENZA CONTRO DI LEI
R SENTITO LA SUA VERSIONE A MENO CHE LEI NON DIA RISPOSTA ENTRO 20 GIORNI. LEGGA
TI INFORMAZIONI.

ATO:        **CRISTIANO RONALDO**

ha iniziato un procedimento civile contro di Lei per l'istanza esplicata nella Querela.

Nel caso volesse difendersi da questa accusa, entro 20 giorni dalla data di notifica della presente citazione,
escluso il giorno di ricezione, dovrà fare quanto segue:
a.      Presentare al Cancelliere di questo Tribunale, il cui indirizzo trova di seguito, una risposta formale
        scritta alla Querela in conformità con quanto stabilito dal Tribunale.
b.      Fornire una copia della sua risposta all'avvocato il cui nome e indirizzo sono indicati qui di seguito.

Senza una risposta da parte sua, verrà giudicato in contumacia su richiesta del querelante e questo Tribunale
potrà emettere sentenza contro di Lei per l'istanza esplicata nella Querela, il che potrebbe portare nella
richiesta risarcimento economico oppure sequestro di proprietà o altro, come richiesto nella Querela.

Se intende rivolgersi a un avvocato per questo caso, La invitiamo a farlo quanto prima al fine di poter
presentare la sua risposta in tempo.

UFFICIALE DEL TRIBUNALE DISTRETTUALE
28/09/2018



Da: Vice Ufficiale            Data

                                        Ondina Amos
Centro Regionale di Giustizia, Tribunale della Contea
200 Lewis Avenue
Las Vegas, Nevada 89101

uando la notifica viene fatta a mezzo pubblicazione, aggiungere una breve dichiarazione
ll'oggetto dell'azione legale.
Regole del Procedimento Civile, Regole 4(b)

Registrato Elettronicamente
28/09/2018 17:11
Steven D. Grierson
UFFICIALE TRIBUNALE

MP
LIE MARK STOVALL, ESQ.
ada Bar No. 2566
S H. MOYNIHAN, ESQ.
ada Bar No. 11848
ISSA DROHOBYCZER
ada Bar No. 12316
VALL & ASSOCIATES
Palomino Lane
Vegas, NV 89107
fono: (702) 258-3034
imile: (702) 258-0093
t@lesstovall.com
cati del Querelante

## TRIBUNALE DISTRETTUALE

## CONTEA DI CLARK, NEVADA

|  |  |
|---|---|
| HRYN MAYORGA, individualmente ) | |
|  ) | |
| Querelante, ) | CASO NO.:   A-18-781869-C |
|  ) | DIP. NO.:   Dipartimento 14 |
|  ) | |
| TIANO RONALDO, individualmente, ) | |
| I-XX and Roe Corporations I-XX; ) | **ESENTE DA ARBITRATO** |
|  ) | |
| Accusato (i). ) | |
|  ) | |

## QUERELA VERIFICATA

SI PRESENTA DI FRONTE A NOI la Querelante, da e attraverso i suoi avvocati, STOVALL & ASSOCIATES, e per la sua querela afferma quanto segue:

### I.

Che la querelante è, ed è in ogni situazione qui indicata, stata residente nella Contea di Clark, Nevada

### II.

Che l'accusato Cristiano Ronaldo è, ed è in ogni situazione qui indicata, stato residente del Portogallo.

### III.

Che i nomi veri e capacità, che siano individuali, enti giuridici, partnership, joint venture o altro, degli accusati qui indicati come Does I – XX o Roe Corporations I – XX, e, al momento, nessuno di loro risulta noto al querelante, inclusi individui, enti giuridici, partnership, joint venture o altri che hanno preso parte alla cospirazione

ostacolare l'indagine e il procedimento giudiziario contro Cristiano Ronaldo per violenza ...suale nei confronti della querelante il 13 giugno 2009 e per aver interferito, sminuito o ...cellato, in maniera illegale, la richiesta di risarcimento danni civili, della querelante, derivanti ...a violenza sessuale summenzionata. Per tali motivi, la querelante cita in giudizio Does and Roe ...porations con detti nomi fittizi. Quando i loro veri nomi e capacità verranno accertati, la ...relante modificherà la querela al fine di identificare ciascun accusato.

## IV.

...e in ogni situazione qui indicata, ciascun accusato, inclusi Does I – XX and Roe Corporations I ...XX, erano agenti, dipendenti, impiegati, partner o joint venture di ciascun accusato qui ...nzionato, e che stavano agendo in nome e per conto di detta agenzia, occupazione, partnership ...int venture, con la consapevolezza e il consenso di tutti gli accusati, cospirando per ostacolare ...dagine e il procedimento giudiziario contro Cristiano Ronaldo per violenza sessuale nei ...fronti della querelante avvenuta il 13 giugno 2009 e per aver interferito, sminuito o cancellato, ...maniera illegale, la richiesta di risarcimento danni civili, della querelante, derivanti dalla ...enza sessuale summenzionata.

## V.

Che il 12 giugno 2009 la querelante è stata invitata da un'amica al Rain Nightclub presso il ...ms Hotel and Casino dove ha incontrato Cristiano Ronaldo.

## VI.

...e il 13 giugno 2009 Cristiano Ronaldo ha invitato un gruppo di persone, inclusa la querelante, ...suo attico per ammirare la vista sulla Las Vegas strip.

## VII.

...ntre stava visitando l'attico di Cristiano Ronaldo, la querelante è stata invitata a raggiungere gli ...ti nella vasca idromassaggio sul balcone dell'attico e la querelante ha rifiutato poiché ...vvista di costume da bagno o altri indumenti più adeguati.

## VIII.

...e l'accusato Cristiano Ronaldo ha offerto alla querelante dei vestiti affinché potesse accedere ...vasca idromassaggio, la querelante ha accettato, ha seguito Cristiano Ronaldo in una stanza ...a quale lui le ha fornito degli shorts sportivi e una maglietta, e le ha indicato il bagno nel quale ...biarsi.

///

### IX.

Che mentre si stava cambiando, Cristiano Ronaldo è entrato in bagno, mostrato il suo pene in erezione e ha chiesto alla querelante di procedere con la fellatio.

### X.

Che la querelante si è rifiutata e gli ha detto di voler uscire dalla suite.

### XI.

Che dopo aver lasciato il bagno, Cristiano Ronaldo ha trascinato la querelante nella camera da letto e poi sul letto dove ha cercato di avere un rapporto sessuale.

### XII.

Che la querelante si è rifiutata di avere un rapporto sessuale e si è coperta per impedirgli di penetrarla.

### XIII.

Che Cristiano Ronaldo ha girato la querelante da dietro e, mentre lei continuava a urlare "no, no, no", la stessa veniva sodomizzata da Cristiano Ronaldo

### XIV.

Che la violenza sessuale compiuta da Cristiano Ronaldo ha provocato forti danni emotivi e fisici alla querelante, oltre a contusioni anali, disturbo post-traumatico e forte depressione.

### XV.

Che durante la violenza sessuale, la querelante ha subito un forte shock emotivo caratterizzato da passività in risposta a minacce reali e possibili alla sua vita e salute da Cristiano Ronaldo.

### XVI.

Che Cristiano Ronaldo, dopo aver compiuto la violenza sessuale sulla querelante, le ha permesso di lasciare la stanza e si è scusato, perché di solito ha modi da gentiluomo.

### XVII.

Che la querelante ha guidato fino alla casa dei suoi genitori dove ha informato la sua amica della violenza sessuale compiuta da Cristiano Ronaldo.

4

## XVIII.

il 13 giugno 2009, lo stesso giorno della violenza sessuale compiuta da Cristiano Ronaldo, querelante ha denunciato la violenza sessuale al Dipartimento Metropolitano della Polizia di Las Vegas, registrato come caso numero LVV090613001815, identificando come autore un famoso giocatore, però si è rifiutata di fornire il nome dello stesso per paura di subire una pubblica umiliazione e delle ritorsioni.

## XIX.

il 13 giugno 2009, lo stesso giorno della violenza sessuale compiuta da Cristiano Ronaldo, la querelante si è sottoposta, presso il Centro Medico Universitario, al "Rape Kit", una visita medica specifica per le vittime di violenza sessuale, durante la quale le prove fisiche di sodomia sono state documentate e fotografate.

## XX.

durante la visita presso il Centro Medico Universitario, la querelante si è sentita dire, dall'infermiera, che sarebbe stata soggetta a vendetta e a pubblica umiliazione da parte di Cristiano Ronaldo, o di individui che avrebbero agito per conto di lui, come una donna che è stata cosciente durante il rapporto sessuale, e che ora cerca di estorcere soldi a Cristiano Ronaldo con false accuse di violenza sessuale.

## XXI.

poche settimane dopo la denuncia per violenza sessuale fatta al Dipartimento Metropolitano di Polizia di Las Vegas, un detective della polizia ha fatto delle domande alla querelante, e lei ha identificato Cristiano Ronaldo come colui che ha abusato sessualmente di lei il 13 giugno 2009 al Palms Hotel and Casino.

## XXII.

durante l'intervista preliminare del Dipartimento Metropolitano della Polizia di Las Vegas la querelante è stata messa in guardia dal detective che le ha detto che sarebbe stata pubblicamente additata come vittima di violenza sessuale, e che Cristiano Ronaldo, e gli individui collegati a lui, avrebbero umiliata pubblicamente definendola una donna che ha consentito ad avere rapporti sessuali e che, dato lo status economico e la fama del personaggio, ora sta cercando di estorcere soldi a Cristiano Ronaldo, muovendo false accuse di violenza sessuale.

///

5

### XXIII.

dopo l'intervista preliminare della querelante, il Dipartimento Metropolitano della Polizia di Vegas non ha più avuto contattati con la querelante.

### XXIV.

il trauma psicologico derivante dalla violenza sessuale, la paura della pubblica umiliazione e sioni e il rafforzamento di tali paure, derivante dal fatto che le forze dell'ordine e i medici ano terrorizzato la querelante rendendola incapace di agire o difendersi.

### XXV.

la famiglia della querelante ha trovato un avvocato per la querelante, però costui aveva solo ni anni di esperienza, e questo avvocato ha accettato di rappresentare la querelante nella esta per risarcimento danni civili a Cristiano Ronaldo.

### XXVI.

e Cristiano Ronaldo ha assunto un team di "aggiustatori", conosciuti come "specialisti per la tezione della reputazione personale" (gli accusati DOES I-XV and ROE Corporations I-XV, ra in avanti "team"), per:

1. Indagare, valutare e monitorare la querelante, l'avvocato della querelante, gli amici e persone associate a lei per evitare la diffusione pubblica della violenza sessuale;

2. Valutare e monitorare le forze dell'ordine responsabili dell'indagine e del procedimento giudiziario per violenza sessuale;

3. Sviluppare e mettere in atto una strategia per prevenire o ritardare la diffusione pubblica della violenza sessuale;

4. Sviluppare e mettere in atto una strategia per prevenire o ritardare il procedimento criminale contro Cristiano Ronaldo per violenza sessuale sulla querelante; e

5. Sviluppare e mettere in atto una strategia per prevenire o ritardare, ridurre o cancellare la richiesta della querelante di risarcimento danni civili derivanti della violenza sessuale avvenuta il 13 giugno 2009.

### XXVII.

Che il "team" ha riferito a Cristiano Ronaldo che la querelante, prima della violenza sessuale, era

1.    Cresciuta in una famiglia di classe media, di padre vigile del fuoco, e di madre casalinga che sta in casa;

2.    Laureata in giornalismo;

3.    Ha lavorato come docente scolastica, modella, addetta alle vendite, promoter;

4.    Sposata, separata dal marito e aveva appuntamenti; e

5.    Conduceva una tipica vita sociale di una donna nata e cresciuta a Las Vegas, Nevada, prima della violenza sessuale.

## XXVIII.

Che il "team" ha riferito a Cristiano Ronaldo che dopo la violenza sessuale subita la querelante:

1.    Ha riportato danni psicologici in seguito alla violenza sessuale compiuta da Cristiano Ronaldo;

2.    Non ha permesso all'avvocato di identificare l'amica con la quale ha visitato la suite di Ronaldo, perché lei e l'amica avevano paura della vendetta di Cristiano Ronaldo, o delle persone che avrebbero agito per conto suo;

3.    Era preoccupata dalla possibilità di essere pubblicamente umiliata se fosse stata identificata come vittima di violenza sessuale;

4.    Era preoccupata di un'ulteriore pubblica umiliazione da Cristiano Ronaldo, o da persone che avrebbero agito per conto suo, accusandola di aver consentito al rapporto sessuale per poi muovere false accuse contro Cristiano Ronaldo per violenza sessuale al fine di ottenere un ritorno economico;

5.    Era in cura per i danni psicologici causati dalla violenza sessuale compiuta da Cristiano Ronaldo;

6.    Aveva un comportamento strano, era emotivamente instabile, indecisa, ansiosa, e depressa, abusava di alcool e nutriva pensieri suicidi;

7.    Non era in grado, o aveva difficoltà nel prendere una decisione in generale e anche nel caso di Cristiano Ronaldo e della violenza sessuale subita;

8.    Non ha lavorato dalla violenza sessuale;

9.    Si è sottoposta a un "Rape Kit", visita medica per le vittime di violenza sessuale, il 13 giugno 2009 presso il Centro Medico Universitario, dove sono state documentate e

6

fotografate le contusioni e abrasioni anali;

10.	Che la querelante ha avvertito di aver subito ripetutamente una violenza sessuale urlando "no, no, no", cercando di coprirsi per evitare la penetrazione sessuale ed è stata sodomizzata durante la violenza sessuale.

## XXIX.

Che il "team" ha riferito a Cristiano Ronaldo la valutazione del Dipartimento Metropolitano della Polizia di Las Vegas, le forze dell'ordine responsabili dell'indagine per violenza sessuale e rinvio a giudizio di Cristiano Ronaldo, in quanto:

1.	La polizia non vedrà la violenza sessuale subita dalla querelante come un "crimine violento";

2.	La polizia definirebbe la violenza sessuale come "molestia";

3.	La polizia metterebbe il caso della querelante in "secondo piano";

4.	Il "team" aveva una fonte all'interno del Dipartimento Metropolitano della Polizia di Las Vegas; e

5.	La loro fonte interna ha confermato che la polizia chiuderebbe "volentieri" l'indagine se si arrivasse a un accordo di risarcimento economico tra la querelante e l'accusato.

## XXX.

Che in diverse occasioni il "team" ha trasmesso domande scritte a Cristiano Ronaldo che, nelle risposte attribuite a Cristiano Ronaldo, avrebbe dichiarato:

1.	Lui ha avuto un rapporto sessuale con la querelante.

2.	"Lei era sdraiata sul letto. Le sono venuto da dietro";

3.	"Ha detto no e fermati più volte";

4.	Nego la penetrazione "anale"; e

5.	Le ferite nel retto della querelante sono state provocate da un'altra persona dopo che la querelante ha avuto un rapporto sessuale vaginale con lui.

## XXXI.

[l'av]vocato della querelante non ha ricevuto aggiornamenti dal Dipartimento Metropolitano della [Polizi]a di Las Vegas in merito all'indagine sulla violenza sessuale compiuta da Cristiano Ronaldo [nei c]onfronti della querelante.

8

Che Cristiano Ronaldo e il "team", sapendo che la querelante era una "persona vulnerabile" che aveva subito forti danni emotivi, e spaventata dalla divulgazione pubblica, in quanto vittima di violenza sessuale e di ritorsioni, minacciando di accusare la querelante di aver denunciato l'accusato di violenza sessuale per ottenere soldi, qualora ci fosse stata:

1.     Divulgazione pubblica della violenza sessuale da qualsiasi fonte,

2.     Ogni altro contatto o informazione fornita, riguardo alla violenza sessuale, alla polizia, da parte di qualunque fonte, o

3.     Ulteriori indagini della polizia sulla violenza sessuale

### XXXIII.

Che il "team" ha comunicato queste minacce alla querelante con l'obiettivo di:

1.     Prevenire, o ritardare, ogni altro contatto con il Dipartimento Metropolitano della Polizia di Las Vegas da parte della querelante, dei suoi amici, famiglia o avvocato;

2.     Prevenire, o ritardare, ogni altro contatto con il Dipartimento Metropolitano della Polizia di Las Vegas per minare e intaccare la credibilità della querelante in quanto vittima di violenza sessuale;

3.     Di iniziare un negoziato con l'intento di raggiungere un accordo con la querelante per minare e intaccare la credibilità della querelante in quanto vittima di violenza sessuale;

4.     Prevenire, o ritardare, ulteriori indagini riguardo alla violenza sessuale subita dalla querelante da Cristiano Ronaldo;

5.     Provocare ulteriori danni emotivi alla querelante facendo si che si senta completamente impotente e vulnerabile alla pubblica umiliazione identificandola come un soggetto che muove false accuse di violenza sessuale per ottenere un ritorno economico da una persona famosa e benestante; e

6.     Ritardare, diminuire o cancellare la richiesta della querelante di risarcimento danni civili contro l'accusato.

9

Che il
in merito alla richiesta di risarcimento danni civili all'accusato, durante il quale hanno ripetutamente:

1.  Chiesto conferma del fatto che la querelante, la sua famiglia, i suoi amici e l'avvocato non fossero in contatto con la polizia;

2.  Chiesto conferma del fatto che la querelante, la sua famiglia, i suoi amici e l'avvocato non avessero fornito, a terze parti, dati riguardanti la violenza sessuale;

3.  Accusato la querelante di aver inventato tutto riguardo ai fatti della violenza sessuale per minare la credibilità della querelante;

4.  Minacciato che avrebbero accusato pubblicamente la querelante di aver consentito al rapporto sessuale al fine di poter accusare Cristiano Ronaldo di violenza sessuale per ottenere dei soldi;

e

5.  Non hanno fatto alcuna ragionevole offerta di accordo.

## XXXV.

Che la querelante era incapace di intendere e che non era in grado di partecipare alle negoziazioni per raggiungere l'accordo sulle sue richieste a causa delle lesioni provocate durante la violenza sessuale iniziale compiuta da Cristiano Ronaldo, la conseguente minaccia di diffondere pubblicamente e accusarla falsamente di estorsione e di aver mosso false accuse, dato che si è inventata i fatti e le circostanze della violenza sessuale.

## XXXVI.

Che l'avvocato della querelante, dopo aver osservato e commentato l'instabilità emotiva della querelante, non è riuscito a far valutare la capacità o disabilità della querelante, o a trovare una sistemazione per tale disabilità, o a trovare un esperto per difendere gli interessi della querelante in questo caso di incompetenza.

## XXXVII.

Che l'avvocato della querelante e il "team" si sono accordati per parlare in mediazione privata.

## XXXVIII.

Che la querelante è d'accordo per partecipare alla mediazione privata a patto che sia presente anche Cristiano Ronaldo, in modo che la querelante possa confrontarlo sulle conseguenze

10

**XXXIX.**

Che la mediazione privata ha avuto luogo a Las Vegas, Nevada durante la quale:

1.      Cristiano Ronaldo non è comparso, e la querelante è stata informata solo il giorno prima del fatto che lui non avrebbe preso parte alla mediazione privata;

2.      Che la famiglia della querelante è venuta alla mediazione al fine di fornire supporto emotivo e consigli a lei, però il "team" dell'accusato e il mediatore non gli hanno concesso di partecipare;

3.      Che durante la mediazione la querelante si è mostrata molto sensibile, emotivamente instabile, indecisa, irritabile, agitata, ipervigile e strana; e

4.      Che il "team" ha riferito che la querelante si è mostrata alquanto volatile e sensibile, emotivamente fragile e imprevedibile, il mediatore ha passato molto tempo a cercare di convincerla a non andarsene, ed era in uno stato d'animo tale da rendere impossibile arrivare a un accordo durante la mediazione.

**XL.**

rante la mediazione la querelante ha avuto un forte trauma emotivo che lei ha definito come ｅ la violenza sessuale compiuta da Cristiano Ronaldo, aveva molta paura, si sentiva ｔamente impotente e infine aveva una sensazione di passività con la quale avrebbe fatto ｓi cosa pur di lasciare/fuggire/evitare di ripercorrere la violenza sessuale se la mediazione ｎdata avanti.

**XLI.**

"team" dell'accusato e il mediatore erano a conoscenza del fatto che la querelante ｒiportato danni psicologici a causa della violenza sessuale subita, e avendo visto ｄisturbi comportamentali della querelante durante la mediazione, sapevano o ｅ ro dovuto sapere che la querelante era incapace di intendere o che aveva una ｔà che ostacolava la sua capacità di prendere parte alla mediazione, e loro non ｄ ti in grado di fare qualcosa per far valutare le condizioni della querelante, ｒ o a nominare un rappresentante personale che difendesse gli interessi della ｎte per far si che si arrivasse a un accordo mediato/negoziato basato sul mutuo ｏ delle parti o approvato

11

12

bunale.

## XLII.

senza tenere conto della difficile situazione emotiva e dei gravi disturbi comportamentali che la querelante ha mostrato durante la mediazione, il "team" dell'accusato, il mediatore e l'avvocato della querelante, essendo preoccupati che la querelante avrebbe fermato il processo di mediazione, hanno raggiunto un "accordo parziale", che il "team" dell'accusato avrebbe definito come una nota incompleta e vaga.

## XLIII.

Le ulteriori lesioni psicologiche e i traumi causati dal processo di mediazione, dati i pensieri suicidi della querelante, la forte sensazione di ansia e paura, la sensazione di completa impotenza e passività, hanno prevalso durante la presunta negoziazione post-mediazione tra l'avvocato della querelante e il "team" che rappresenta Cristiano Ronaldo.

## XLIV.

la querelante era incapace di intendere, e non era in grado di concordare con le proposte avanziate durante o dopo la mediazione per poi giungere "all'accordo finale e alla non-divulgazione".

## XLV.

il "team" dell'accusato ha affermato che l'accordo di patteggiamento e la non-divulgazione è stato fatto per far si che la querelante, la sua famiglia e l'avvocato non parlassero con nessuno, inclusa la polizia, della violenza sessuale e nel caso lei o qualcuno vicino a lei dovesse fare ciò, lei andrebbe incontro a grandi conseguenze e penali legali ed economiche.

## XLVI.

il "team" ha riferito di aver raggiunto l'obiettivo alla base della loro cospirazione per ostacolare e prevenire l'indagine criminale e il procedimento giudiziario contro Cristiano Rinaldo e le richieste di risarcimento danni civili fatte dalla querelante, come scritto:

> Alla fine, data la tipologia di richieste fatte da MK [la querelante] in
> questo caso, secondo noi siamo riusciti a ottenere un accordo molto
> favorevole con il quale si avrà la rinuncia

13

a qualsiasi e ognuna richiesta di risarcimento danni civili e MK [la querelante] ha scelto di non procedere con una causa penale che avrebbe portato Topher [Cristiano Ronaldo] in prigione con una condanna all'ergastolo per violenza sessuale (o con effetto catastrofico del non poter più viaggiare negli USA per giocare), ma che scongiura anche l'impatto devastante che tali richieste avrebbero sulla sua reputazione personale e professionale, sugli incarichi e opportunità professionali. Non saremmo riusciti a persuadere MK (la querelante), il suo avvocato o il mediatore della debolezza delle richieste di MK o della forza di Topher [Cristiano Ronaldo] e della sua difesa, se non fosse stato per l'inestimabile lavoro che è stato fatto su questo caso, che non solo è da reputare utile e parte integrativa ai fini della mediazione e dell'accordo, ma anche necessario per il caso in se, al fine di proteggere Topher [Cristiano Ronaldo] personalmente e professionalmente, nella massima misura consentita dalla legge, che MK [la querelante] abbia o no deciso di procedere con le sue richieste. A tal fine, siamo riusciti, e ora che sembra che siamo riusciti a persuadere MK [la querelante] e Trammel [avvocato della querelante] della nostra posizione riguardo all'accordo materiale in termini di politica sulla privacy e sulle tasse connesse, possiamo affermare che saremo in grado di chiudere questo caso a breve.

## XLVII.

la violenza sessuale del 13 giugno 2009 e la cospirazione per ostacolare e prevenire il cedimento giudiziario contro Cristiano Ronaldo, e le richieste di risarcimento danni civili no causato alla querelante continui disturbi da stress post traumatico e forte depressione, che ono manifestati nel non riuscire a mantenere un lavoro, difficoltà nel trovare e mantenere porti interpersonali, pensieri intrusivi, abuso di alcool, pensieri suicidi, difficoltà nel svolgere mali attività quotidiane e a sentirsi emotivamente alla deriva e impaurita.

## XLVIII.

Che nel 2017, in Europa, è uscita una serie di articoli riguardo all'arresto di Cristiano

14

Ronaldo per violenza sessuale di una donna a Manchester in Inghilterra, violenza sessuale di una donna in Italia, e violenza sessuale di una donna (la querelante) a Las Vegas, Nevada nel 2009.

### XLIX.

Che gli articoli pubblicati in Europa nel 2017 riguardavano, e venivano citate parti di documenti e comunicazioni in possesso esclusivo e sotto controllo di Cristiano Ronaldo e del suo "team", riguardanti la violenza sessuale sulla querelante, e risalivano all'epoca delle indagini sull'accusato, valutazioni e negoziazioni del presunto accordo del 2009 e 2010.

### L.

Che nel 2017 Cristiano Ronaldo e il suo "team", con l'avanzamento della cospirazione per ostacolare l'indagine sulla violenza sessuale compiuta da Cristiano Ronaldo, e le richieste di risarcimento danni fatte a Cristiano Ronaldo, e hanno falsamente e intenzionalmente definito quanto asserito sulla violenza sessuale della querelante, come:

1.      Finzione giornalistica;

2.      Non vero e Falso; e

3.      Non attribuibile e infondato

### LI.

Che nel 2018 la querelante si è sottoposta a una visita psichiatrica della scientifica che ha determinato che come risultato della violenza sessuale del 13 giugno 2009, lei:

1.      Ha sofferto di disturbi da stress post traumatico e forte depressione;

2      Non è stata capace di intendere e non è riuscita a partecipare alle negoziazioni o a fare un accordo nel 2009 e 2010; e

3.      Continua a soffrire del disturbo da stress post traumatico e di forte depressione.

### LII.

Che nel 2018 la querelante ha contattato il Dipartimento Metropolitano della Polizia di Las Vegas affermando la sua volontà di prendere parte alle indagini e alla causa giudiziaria contro Cristiano Ronaldo per la violenza sessuale avvenuta il 13 giugno 2009 presso il Palms Hotel and Casino a Las Vegas, Nevada, ed ha fornito una copia della valutazione psichiatrica forense della querelante

escrivendo i danni psicologici che ha riportato come risultato della violenza sessuale e le conseguenze di tali ferite.

## LIII.

Che nel 2018 la querelante ha ottenuto da Football Leaks, piattaforma digitale, copie di documenti e comunicazioni tra l'accusato Cristiano Ronaldo e il suo "team" all'epoca della loro:

1.      Indagine e valutazione della querelante, dell'avvocato della querelante, del Dipartimento Metropolitano della Polizia di Las Vegas, del mediatore, e di Cristiano Ronaldo;

2.      La strategia adottata e implementata per ritardare e prevenire il procedimento giudiziario contro Cristiano Ronaldo;

3.      La strategia adottata e implementata per minare la credibilità della querelante come vittima di violenza sessuale;

4.      La strategia adottata e implementata per ritardare, ridurre o cancellare la richiesta di risarcimento danni civili della querelante;

5.      Le negoziazioni prima, durante e dopo la mediazione che ha portato a un "presunto" accordo e la non-divulgazione della violenza sessuale subita dalla querelante.

## LIV.

Che il 25 agosto 2018, la querelante ha consegnato al Dipartimento Metropolitano della Polizia di Las Vegas copie di documenti e comunicazioni ottenute da Football Leaks, tra l'accusato, Cristiano Ronaldo, e il suo "team" come prova del fatto che:

1.      La violenza sessuale subita dalla querelante, da parte di Cristiano Ronaldo, il 13 giugno 2009 presso il Palms Hotel and Casino, per la quale è stato rimosso il limite di prescrizione con la denuncia della querelante per il crimine del 2009 secondo il NRS 171.180;

2.      Una cospirazione ancora in atto per ostacolare e prevenire l'indagine criminale su Cristiano Ronaldo per la violenza sessuale subita dalla querelante il 13 giugno 2009 presso il Palms Hotel and Casino, inclusi i seguenti atti che avanzano con quella cospirazione;

3.      Una fraudolenta e incorretta interpretazione dell'obiettivo e del procedimento che

porta a accordi per

la non-divulgazione, e tali accordi hanno portato la querelante a incorrere a ingenti multe legali ed economiche qualora avesse riferito a qualcuno, inclusa la polizia, della violenza sessuale;

4.      Una diffamazione per aver falsamente e pubblicamente rilasciato dichiarazioni alla stampa nel 2017-2018 che la querelante non era stata vittima della violenza sessuale compiuta da Cristiano Ronaldo e che tali affermazioni erano false; e

la richiesta che Cristiano Ronaldo e i soggetti che agiscono per conto di Cristiano Ronaldo, (il "team") fossero messi nel registro degli indagati per cospirazione criminale per ostacolare la giustizia, ostacolo alla giustizia, frode e diffamazione.

## LV.

Come conseguenza diretta e risultato degli atti summenzionati, compiuti dall'accusato, la querelante è stata privata del risarcimento danni per lesioni subite durante la violenza sessuale del 13 giugno 2009 compiuta da Cristiano Rondalo.

## LVI.

Come conseguenza diretta e risultato degli atti summenzionati, compiuti dall'accusato, la querelante ha riportato forti lesioni fisiche e psicologiche, e queste potrebbero essere condizioni permanenti e disabilitanti, e per un risarcimento danni alla Querelante di $50,000.00.

## LVII.

Come conseguenza diretta e risultato degli atti summenzionati, compiuti dall'accusato, la querelante ha ricevuto cure mediche e altri trattamenti per le sue lesioni e che tali servizi, cure e trattamenti continuano e continueranno in futuro, e il risarcimento danni alla querelante eccede i $50,000.00.

## LVIII

Le lesioni qui menzionate, hanno ridotto l'abilità e la capacità della querelante di svolgere attività come faceva prima delle azioni summenzionate, compiute dall'accusato, che è anche l'oggetto di questa denuncia, e il risarcimento danni alla querelante eccede i $50,000.00.

27      / / /

/ / /

## LIX.

azioni, summenzionate, compiute dagli accusati sono state dolose, gravi, coercitive e udolente, con l'intento di provocare lesioni alla querelante e provocando dette lesioni alla erelante, giustificando così il risarcimento danni chiesti all'accusato per un importo superiore a 0,000.00.

## LX.

a querelante dovrà essere risarcita per le spese sostenute per l'avvocato e per le spese legali di uesta causa per la richiesta di risarcimento danni fatta agli accusati.

## LXI.

Le summenzionate azioni dell'accusato Cristiano Ronaldo, e di Does I-XX and Roe Corporations -XX (il "team") che hanno applicato tutto ciò che era possibile per sospendere le limitazioni sulla richiesta della querelante, incluso, ma non solo quanto segue:

1. Gli accusati sono di nazionalità estera, quindi fuori dallo Stato del Nevada e degli Stati Uniti d'America;

2. L'incapacità di intendere della querelante;

3. Gli accusati hanno e continuano a portare avanti frodi e cospirazioni per ostacolare e nascondere le loro attività illegali che la querelante ha scoperto solo a metà 2017;

4. Qualsiasi limite per la prescrizione in relazione alla denuncia di violenza sessuale è stato rimosso al momento della denuncia del fatto; e

5. Le parti hanno concordato di riunirsi per sospendere le limitazioni alle richieste della querelante derivanti dalla violenza sessuale del 2009.

## PRIMO CAPO D'IMF JTAZIONE

## AGGRESSIONE

## LXII.

La querelante integra ciascun paragrafo esplicato nei paragrafi I – LXI di questa denuncia come documento pienamente dettagliato.

## LXIII.

Che la violenza sessuale e sodomizzazione compiuta dall'accusato Cristiano Ronaldo sulla querelante

19

il 13 giugno 2009 costituisce l'aggressione della querelante e di conseguenza la querelante ha subito danni per un importo superiore a $50,000.00.

### LXIV.

Che le azioni summenzionate, compiute dall'accusato sono state dolose, gravi, coercitive e fraudolente, con l'intento di provocare lesioni alla querelante e provocando dette lesioni alla querelante, giustificando così il risarcimento danni chiesti all'accusato per un importo superiore a $50,000.00.

### SECONDO CAPO D'IMPUTAZIONE
### STRESS EMOTIVO INTENZIONALE

### LXV.

9      La querelante integra ciascun paragrafo esplicato nei paragrafi I – LXIV di questa denuncia come documento pienamente dettagliato.

### LXVI.

Che le azioni summenzionate, compiute dagli accusati e da Cristiano Ronaldo, rappresentano lo stress emotivo inflitto intenzionalmente alla querelante, come anche:

1.      La violenza sessuale e sodomizzazione del 13 giugno 2009;

2.      Le continue minacce che la querelante sarebbe stata accusata di aver avuto un rapporto sessuale consenziente per poi denunciare la violenza sessuale al fine di ottenere soldi dall'accusato;

3.      La frode e la cospirazione per ostacolare e nascondere la violenza sessuale del 2009, per ostacolare e prevenire il procedimento giudiziario contro Cristiano Ronaldo e le richieste di risarcimento danni civili, e la scoperta;

4.      Divulgazione di documenti e informazioni riguardanti la violenza sessuale del 2009, pubblicati dai giornali in Europa nel 2017-2018; e

5.      Aver negato pubblicamente che Cristiano Ronaldo aveva abusato sessualmente della querelante nel 2009 in risposta agli articoli pubblicati nel 2017-2018.

27     / / /

/ / /

## LXVII.

Come risultato diretto dello stress emotivo inflitto intenzionalmente, la querelante ha riportato lesioni fisiche e danni economici, per danni da oltre $50,000.

## LXVIII.

Che le azioni summenzionate, compiute dall'accusato sono state dolose, gravi, coercitive e fraudolente, con l'intento di provocare lesioni alla querelante e provocando dette lesioni alla querelante, giustificando così il risarcimento danni chiesti all'accusato per un importo superiore a $50,000.00.

### TERZO CAPO D'IMPUTAZIONE

### COERCIZIONE E FRODE

### LXIX.

La querelante integra ciascun paragrafo esplicato nei paragrafi I – LXVIII di questa denuncia come documento pienamente dettagliato.

### LXX.

L'accusato ha ripetutamente e continuamente minacciato che avrebbe pubblicamente accusato la querelante di aver consentito al rapporto sessuale con l'accusato, per poi poterlo accusare di violenza sessuale ed estorcere soldi all'accusato.

### LXXI.

La querelante aveva ragione di credere che l'accusato avrebbe tenuto fede alle minacce fatte qualora lei non avesse accettato l'accordo di patteggiamento dell'accusato sulla denuncia di violenza sessuale.

### LXXII.

L'accusato e il suo "team" hanno falsamente presentato l'obiettivo delle negoziazioni, mediazione e accordo di patteggiamento per raggiungere l'accordo sul risarcimento per le lesioni che ha subito la querelante durante la violenza sessuale del 13 giugno 2009 compiuta da Cristiano Ronaldo.

### LXXIII.

Gli accusati hanno falsamente riferito che il patteggiamento avrebbe precluso ogni comunicazione e cooperazione da parte della querelante con il dipartimento di polizia per le indagini criminali riguardo alla violenza sessuale che lei ha subito da Cristiano Ronaldo il 13 giugno 2009 presso il Palm Hotel and Casino, e

qualora una delle persone vicine a lei, dovessero farlo lei riporterebbe gravi difficoltà economiche conseguenze legali.

## LXXIV.

alle circostanze riguardanti le negoziazioni e la mediazione, la querelante, per quanto capace di rlo, ha creduto che il processo che ha portato all'accordo e al patteggiamento e alla non-vulgazione fossero legali.

## LXXV.

a querelante ha sottoscritto un accordo con il quale patteggiava la denuncia nei confronti ell'accusato per la violenza sessuale del 13 giugno 2009 in cambio del pagamento di $375,000, e ella non-divulgazione della violenza sessuale.

## LXXVI.

Che il "team" ha riferito di aver raggiunto l'obiettivo alla base della loro cospirazione per ostacolare e prevenire l'indagine criminale e il procedimento giudiziario contro Cristiano Rinaldo, come scritto:

> Alla fine, data la tipologia di richieste fatte da MK [la querelante] in questo caso, secondo noi siamo riusciti a ottenere un accordo molto favorevole con il quale si avrà la rinuncia a qualsiasi e ognuna richiesta di risarcimento danni civili e MK [la querelante] ha scelto di non procedere con una causa giudiziaria che avrebbe portato Topher [Cristiano Ronaldo] in prigione con una condanna all'ergastolo per violenza sessuale (o con effetto catastrofico del non poter più viaggiare negli USA per giocare), ma che scongiura anche l'impatto devastante che tali richieste avrebbero sulla sua reputazione personale e professionale, sugli incarichi e opportunità professionali. Non saremmo riusciti a persuadere MK (la querelante), il suo avvocato o il mediatore della debolezza delle richieste di MK o della forza della difesa di Topher [Cristiano Ronaldo] se non fosse stato per l'inestimabile lavoro che è stato fatto su questo caso, che non solo è da reputare utile e parte integrativa si fini della mediazione e dell'accordo, ma anche necessario per il caso in se, al fine di proteggere Topher [Cristiano Ronaldo] personalmente e professionalmente, nella massima misura consentita dalla legge, che MK [la querelante] abbia o no deciso di procedere con le sue richieste. A tal fine, siamo riusciti, e ora che sembra che siamo riusciti a persuadere MK [la querelante]

22

e Trammel [avvocato della querelante] della nostra posizione riguardo all'accordo materiale, politica della privacy e le tasse connesse, possiamo affermare che saremo in grado di chiudere questo caso a breve.

### LXXVII.

La rappresentazione degli accusati riguardo all'obiettivo del processo che ha portato all'accordo di patteggiamento era falsa, e fatta come cospirazione per:

1.   Ostacolare l'indagine criminale e il procedimento giudiziario contro Cristiano Ronaldo per violenza sessuale nascondendo e eliminando le prove della querelante di quel crimine; e

2.   Quindi hanno interferito, ridotto o cancellato la richiesta di risarcimento danni civili da parte della querelante, derivanti dalla summenzionata violenza sessuale.

### LXXVIII.

La falsa dichiarazione degli accusati in merito al procedimento e all'accordo di patteggiamento ha reso l'accordo nullo secondo la legge.

### LXXIX.

L'occultamento del crimine o delle prove collegate, e l'ostacolamento di un'indagine criminale e procedimento giudiziario per un crimine in cambio di soldi sono da ritenersi crimini, rendendo così il patteggiamento e l'accordo di non-divulgazione illegali e nulli secondo la legge.

### LXXX.

La querelante non ha scoperto le summenzionate false dichiarazioni degli accusati riguardo al procedimento e all'accordo di patteggiamento prima della metà del 2017, quando la querelante si è rivolta a un legale per chiedere consigli sugli articoli pubblicati in Europa, nei quali venivano discussi i casi di presunte violenze sessuali compiute da Cristiano Ronaldo, inclusa la violenza sessuale subita da lei nel 2009.

### LXXXI.

La querelante ha scoperto delle azioni illecite e fraudolenti degli accusati e ciò ha portato la querelante ha soffrire di stress emotivo e un peggioramento delle forti lesioni

psicologiche causate dalla violenza sessuale del 13 giugno 2009, per un risarcimento danni a suo favore per l'importo di oltre $50,000.

### LXXXII.

Come conseguenza diretta e risultato degli atti summenzionati della cospirazione dell'accusato, frode e coercizione, la querelante è stata privata del risarcimento danni per le lesioni subite durante la violenza sessuale il 13 giugno 2009, compiuta da Cristiano Ronaldo, un risarcimento danni a favore di lei per l'importo di oltre $50,000.

### LXXXIII.

Che le azioni summenzionate, compiute dall'accusato, sono state dolose, gravi, coercitive e fraudolente, fatte con l'intento di provocare lesioni alla querelante e provocando dette lesioni alla querelante, giustificando così il risarcimento danni chiesti all'accusato per un importo superiore a $50,000.00.

### QUARTO CAPO D'IMPUTAZIONE
### ABUSO DI UNA PERSONA VULNERABILE

### LXXXIV.

La querelante integra ciascun paragrafo esplicato nei paragrafi I-LXXXIII di questa denuncia come documento pienamente dettagliato.

### LXXXV.

La querelante, Kathryn Mayorga è, in ogni situazione menzionata, ed è stata "una persona vulnerabile" in accordo con NRS 200.5092(8).

### LXXXVI.

Le summenzionate azioni dell'accusato Cristiano Ronaldo e del suo "team" costituiscono l'abuso e lo sfruttamento di una persona vulnerabile come definito da NRS 200.5092(2)(a) e (c), e NRS 200.5092(3)(a), ed è da ritenersi causa diretta e immediata delle lesioni fisiche ed economiche, un risarcimento per l'importo superiore a $50,000.

### LXXXVII.

Che le azioni summenzionate, compiute dall'accusato sono state dolose, gravi, coercitive e fraudolente, fatte con l'intento di provocare lesioni alla querelante e provocando dette lesioni alla querelante, giustificando così il risarcimento danni chiesti all'accusato per un importo superiore a $50,000.00.

27      ///

///

25

## QUINTO CAPO D'IMPUTAZIONE
### RACKET E COSPIRAZIONE CIVILE
### LXXXVIII.

a querelante integra ciascun paragrafo esplicato nei paragrafi I-LXXXVII di questa denuncia ome documento pienamente dettagliato.

### LXXXIX.

l'accusato Cristiano Ronaldo e il suo "team" si sono uniti facendo squadra per mettere in atto zioni di racket e cospirazione civile.

### XC.

Al fine di far avanzare la loro squadra, gli accusati hanno dato inizio alle seguenti azioni di racket come definite da NRS 207.360(6) (violenza sessuale) e (10)(estorsione per forzare la querelante a partecipare alle loro macchinazioni), per ostacolare l'indagine criminale e il procedimento giudiziario contro Cristiano Ronaldo per violenza sessuale sulla querelante il 13 giugno 2009 e quindi di interferire, ridurre o cancellare la richiesta di risarcimento per danni civili, della querelante, che ne derivano.

### XC.

Le attività di racket e cospirazione civile dei summenzionati accusati hanno causato:

1.      Il ritardo, o scongiurato l'indagine criminale e il procedimento giudiziario contro Cristiano Ronaldo per la violenza sessuale sulla querelante il 13 giugno 2009;

2.      Il ritardo, e hanno impedito alla Querelante di ricevere il risarcimento danni per lesioni subite durante la violenza sessuale il 13 giugno 2009, un risarcimento per l'importo superiore a $50,000; e

3.      Aggravati e continui disturbi da stress emotivo della querelante, un risarcimento per l'importo superiore a $50,000.

### XCI.

Che secondo la NRS 207.470 gli accusati sono da ritenere responsabili, nei confronti della querelante, tre volte i danni subiti dalla querelante e il pagamento delle spese per l'avvocato e i costi di questa denuncia.

28      / / /

26

### XCII.

Che le azioni summenzionate, compiute dall'accusato sono state dolose, gravi, coercitive e fraudolente, fatte con l'intento di provocare lesioni alla querelante e provocando dette lesioni alla querelante, giustificando così il risarcimento danni chiesti all'accusato per un importo superiore a $50,000.00.

### SESTO CAPO D'IMPUTAZIONE

### DIFFAMAZIONE

### XCIII.

La querelante integra ciascun paragrafo esplicato nei paragrafi I a XCII di questa denuncia come documento pienamente dettagliato.

### XCIV.

Nel 2017 sono stati pubblicati degli articoli che facevano riferimento a e citavano documenti e comunicazioni, che erano di proprietà esclusiva e sotto il controllo di Cristiano Ronaldo e del suo "team", riguardo alla violenza sessuale sulla querelante, e all'epoca delle indagini dell'accusato sulla querelante nel 2009 e il processo che ha portato all'accordo per il patteggiamento del 2010.

### XCV.

Questi articoli del 2017 contengono informazioni sufficienti per identificare la querelante, e la querelante è venuta a conoscenza di questi articoli da terze parti che l'avevano identificata attraverso le informazioni ivi contenute.

### XCVI.

Nel 2017 e 2018 Cristiano Ronaldo, e i soggetti che agiscono a suo nome, per portare avanti la cospirazione per ostacolare e prevenire la divulgazione della violenza sessuale del 2009, il procedimento giudiziario contro Cristiano Ronaldo e della richiesta di risarcimento per danni civili, hanno pubblicato risposte a questi articoli e falsamente negato che la violenza sessuale sulla querelante fosse stata compiuta da Cristiano Ronaldo, e hanno falsamente definito la violenza sessuale sulla querelante come:

1. Finzione giornalistica,

2. Non vero e falso, e

3. Contenente affermazioni non imputabili e infondate.

27

## XCVII.

a pubblicazione di dichiarazioni false, rese dall'accusato, ha leso la reputazione della querelante, oraggiato terze persone a essere associate a lei, e la querelante si è vista accusare di aver compiuto n crimine, di disonestà e di comportamento immorale.

## XCVIII.

Queste dichiarazioni false e diffamatorie sono state pubblicate dagli accusati, con malizia, dato che apevano che queste dichiarazioni erano false, con totale indifferenza per la verità.

## XCIX.

Come risultato diretto della pubblicazione delle dichiarazioni false e diffamatorie, rese con malizia, la querelante è stata messa in ridicolo e ciò è stato fonte di imbarazzo per lei, poiché è stata lesa professionalmente e personalmente, e ha riportato disturbi da stress emotivo, alla querelante spetta un risarcimento per l'importo superiore a $50,000.

## C.

La pubblicazione delle dichiarazioni false e diffamatorie fatte dagli accusati, riguardo alla querelante, sono state rese con malizia, con l'intento di ferire la querelante e hanno ferito la querelante, quindi l'imposizione di pagare il risarcimento danni alla querelante per l'importo di oltre $50,000 è giustificata.

## SETTIMO CAPO D'IMPUTAZIONE

## ABUSO DEL PROCEDIMENTO

## CI.

La querelante integra ciascun paragrafo esplicato nei paragrafi I a C di questa denuncia come documento pienamente dettagliato.

## CII.

La risoluzione alternativa delle controversie, inclusa la mediazione, fa parte dei procedimenti riconosciuti e protetti dallo statuto del Nevada.

27      / / /

/ / /

## CIII.

'accusato ha accettato di partecipare alla risoluzione alternativa della controversia tramite mediazione per cercare di trovare un accordo sulla richiesta di risarcimento danni civili chiesti dalla querelante per le lesioni subite durante la violenza sessuale compiuta da Cristiano Ronaldo il 13 jugno 2009.

## CIV.

a partecipazione degli accusati alla risoluzione alternativa della disputa attraverso la mediazione veva come ulteriore obiettivo il perpetrare della cospirazione per ostacolare l'indagine criminale e il procedimento giudiziario contro Cristiano Ronaldo per violenza sessuale, nascondendo e facendo sparire le prove, della querelante, inerenti a quel crimine e quindi di interferire, ridurre o cancellare la richiesta di risarcimento danni civili fatta dalla querelante per la summenzionata violenza sessuale.

## CV.

Gli accusati hanno deliberatamente e intenzionalmente, minacciato che avrebbero pubblicamente e falsamente accusato la querelante di aver avuto un rapporto sessuale consenziente al fine di poter accusare Cristiano Ronaldo di violenza sessuale per ottenere dei soldi per forzare la querelante a partecipare nel procedimento.

## CVI.

Gli accusati hanno deliberatamente e intenzionalmente accusato la querelante di essersi inventata le informazioni sulle circostanze della violenza sessuale, per forzarla a partecipare al procedimento di mediazione, hanno minato la sua credibilità durante la mediazione e forzato la querelante ad accettare l'accordo di patteggiamento e la non-divulgazione.

## CVII.

Gli accusati hanno deliberatamente e intenzionalmente escluso la famiglia della querelante dalla mediazione per toglierle il supporto emotivo e consigli, per ferire ulteriormente la querelante a livello emotivo e metterla, ingiustamente, in una posizione di svantaggio durante la mediazione e forzarla ad accettare l'accordo per il patteggiamento e la non-divulgazione.

## CVIII.

Gli accusati sapevano che la querelante aveva subito forti lesioni psicologiche a causa della violenza sessuale e hanno osservato i disturbi comportamentali della querelante durante la mediazione, sapevano o avrebbero dovuto sapere che la querelante era incapace o riportava una disabilità che comprometteva la sua

capacità di partecipare alla mediazione e non hanno fatto niente per far valutare le condizioni della querelante, aiutarla o nominare un rappresentante personale che potesse rappresentare gli interessi della querelante al fine di avere la certezza che l'accordo di mediazione fosse basato sul mutuo consenso delle parti o approvato dal tribunale.

## CIX.

Senza tenere conto dell'acuta condizione emotiva della querelante e dei disturbi comportamentali avuti durante la mediazione, e sapendo che la querelante era incapace di intendere o che aveva una disabilità che comprometteva la sua capacità, gli accusati hanno così ottenuto l'accordo della querelante sul documento che poi hanno descritto come accordo di patteggiamento incompleto e criptico, e quindi hanno continuato le "presunte" negoziazioni per ottenere un "accordo finale" sul presunto patteggiamento e la non-divulgazione della violenza sessuale del 2009.

## CX.

Le summenzionate azioni degli accusati costituiscono l'abuso del procedimento, e, come diretta conseguenza, la querelante ha subito:

1.    Forte stress emotivo e i danni ammontano a oltre $50,000.

2.    Perdita del risarcimento danni per le lesioni della violenza sessuale subita il 13 giugno 2009 e i danni ammontano a oltre $50,000.00

## CXI.

Che le azioni summenzionate, compiute dagli accusati, sono state dolose, fraudolente, coercitive e oppressive, con l'intento di provocare lesioni alla querelante e provocando dette lesioni alla querelante, giustificando così il risarcimento danni chiesti all'accusato per un importo superiore a $50,000.00.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## OTTAVO CAPO D'IMPUTAZIONE

## DICHIARAZIONI RESE

## (DICHIARAZIONE CHE L'ACCORDO DI PATTEGGIAMENTO E DI NON-DIVULGAZIONE E' NULLO O ANNULLABILE SULLA BASE DELL'INCAPACITA', INFLUENZA INDEBITA, COERCIZIONE E/O FRODE)

### CXII.

a querelante integra ciascun paragrafo esplicato nei paragrafi I a CXI di questa denuncia come locumento pienamente dettagliato.

### CXIII.

Secondo la NRS 30.040 la querelante chiede di determinare la validità dell'accordo di patteggiamento e non-divulgazione del 2010.

### CXIV.

La querelante afferma che era incapace e non era in grado di sottoscrivere un accordo di patteggiamento e non-divulgazione per la violenza sessuale del 2009, rendendolo nullo e annullabile.

### CXV.

La querelante afferma che gli accusati hanno esercitato indebita influenza e coercizione per ottenere da lei un accordo di patteggiamento e non-divulgazione per la violenza sessuale del 2009, rendendolo nullo o annullabile.

### CXVI.

La querelante afferma che gli accusati hanno commesso frode al fine di ottenere da lei l'accordo di patteggiamento e la non-divulgazione per la violenza sessuale del 2009, rendendolo nullo o annullabile.

### CXVII.

La querelante afferma che l'accordo di patteggiamento e non-divulgazione della violenza sessuale del 2009 era stato concluso per scopi illegali e criminali, rendendolo nullo o annullabile.

### CXVIII.

Sulla base delle azioni summenzionate degli accusati, la querelante chiede al tribunale di emettere sentenza e rendere nullo e inapplicabile l'accordo di patteggiamento e non-divulgazione per la violenza sessuale del 2009.

## NONO CAPO D'IMPUTAZIONE

### DICHIARAZIONI RESE

### 4   (DICHIARAZIONE CHE LA QUERELANTE E' ESONERATA DAGLI ADEMPIMENTI IMPOSTI DALL'ACCORDO DI PATTEGGIAMENTO E NON-DIVULGAZIONE DATE LE INFRAZIONI DELL'ACCUSATO)

#### CXIX.

La querelante integra i paragrafi I a CXVIII di questa denuncia come documento pienamente dettagliato.

#### CXX.

In alternativa, secondo la NRS 30.040 la querelante chiede la dichiarazione riguardo ai suoi obblighi indicati nell'accordo di patteggiamento e non-divulgazione del 2010.

#### CXXI.

Il termine materiale dell'accordo era che Cristiano Ronaldo avrebbe dovuto leggere personalmente la lettera.

#### CXXII.

Il termine materiale dell'accordo presupponeva che gli accusati avrebbero mantenuto la massima segretezza sulle informazioni e i documenti collegati alla violenza sessuale del 2009 e anche sull'accordo di patteggiamento e non-divulgazione.

#### CXXIII.

Gli accusati hanno materialmente violato questo accordo perché non sono stati in grado di mantenere la massima segretezza sulle informazioni e i documenti collegati alla violenza sessuale del 2009, e anche sull'accordo di patteggiamento e non-divulgazione, e il risultato è stato la pubblicazione degli articoli in Europa nel 2017 in relazione alla violenza sessuale subita dalla querelante.

#### CXXIV.

Gli accusati hanno materialmente violato questo accordo perché non hanno letto la lettera della querelante.

#### CXXV.

Gli accusati hanno materialmente violato questo accordo perché hanno fatto delle dichiarazioni pubbliche riguardo

lla violenza sessuale nel 2017-2018. 2

## CXXVI.

a querelante afferma che la violazione materiale di questo accordo da parte degli accusati, non

ssendo riusciti a mantenere la massima segretezza delle informazioni e dei documenti collegati

lla violenza sessuale e all'accordo di patteggiamento e non-divulgazione, il fatto che Cristiano

Ronaldo si sia rifiutato di leggere la lettera della querelante, esonera la querelante da qualsiasi

obbligo di rispettare i termini indicati nell'accordo di patteggiamento e non-divulgazione della

violenza sessuale subita dalla querelante.

## CXXVII.

Sulla base delle azioni, summenzionate, dell'accusato, la querelante chiede al tribunale di emettere

sentenza dichiarando la violazione dell'accordo di patteggiamento e non-divulgazione, esonerare

la querelante da qualsiasi obbligo di rispettare i termini indicati nell'accordo di patteggiamento e

non-divulgazione della violenza sessuale subita dalla querelante nel 2009.

## DECIMO CAPO D'IMPUTAZIONE

### NEGLIGENZA

### CXXVIII.

La querelante integra i paragrafi I a CXXVI di questa denuncia come documento pienamente

dettagliato.

### CXXIX.

Gli accusati si erano impegnati, con l'accordo di patteggiamento e non-divulgazione della

violenza sessuale, di mantenere la massima segretezza sulle informazioni e documenti collegati

alla violenza sessuale subita dalla querelante nel 2009,.

1

### CXXX.

L'accusato è stato negligente nella custodia delle informazioni e dei documenti collegati alla

violenza sessuale sulla querelante, di conseguenza, le informazioni e i documenti sulla violenza

sessuale subita dalla querelante nel 2009 sono state rese di pubblico dominio.

13

### CXXXI.

Come conseguenza della negligenza dell'accusato, la querelante ha subito un forte stress emotivo,

e il risarcimento danni ammonta a oltre

;50,000.

## UNDICESIMO CAPO D'IMPUTAZIONE
## VIOLAZIONE DEL CONTRATTO

### CXXXII.

La querelante integra i paragrafi I a CXXXI di questa denuncia come documento pienamente dettagliato.

### CXXXIII.

In alternativa, le summenzionate azioni degli accusati hanno portato alla violazione dell'accordo di patteggiamento e non-divulgazione avendo reso note al pubblico le informazioni e i documenti collegati alla violenza sessuale sulla querelante e non aver letto la lettera della querelante.

### CXXXIV.

La querelante ha compromesso i danni subiti nel 2009 per la violenza sessuale in cambio dell'accordo di patteggiamento e non-divulgazione.

### CXXXV.

La querelante ha accettato di non chiedere i danni effettivi subiti in cambio dell'accordo di patteggiamento e non-divulgazione quindi ponendo limitazioni sulle richieste derivanti dalla violenza sessuale del 2009.

### CXXXVI.

Come conseguenza diretta della violazione materiale, da parte degli accusati, dell'accordo di patteggiamento e non-divulgazione, la querelante è esonerata dalle obbligazioni ivi contenute.

5                              ### CXXXVII.

Come conseguenza diretta della violazione materiale, da parte degli accusati, dell'accordo di patteggiamento e non-divulgazione, la querelante ha subito danni che equivalgono ai danni non risarciti nel 2009 per violenza sessuale compiuta dall'accusato Cristiano Ronaldo, un importo superiore a $50,000.

17

18

19

20          27      / / /

28   / / /

## CXXXVII.

.lla querelante spetta il risarcimento per le spese sostenute per l'avvocato e i costi di questa ausa che ha intentato per ottenere il risarcimento danni dagli accusati.

### ISTANZA DI RISARCIMENTO

CON LA QUALE, la querelante ha il diritto di rettificare la denuncia prima o dopo il processo per questa questione, si emette istanza di risarcimento contro gli accusati come segue:

1. Danni generali per un importo superiore a $50,000;

2. Danni speciali per un importo superiore a 50,000;

3. Danni punitivi per un importo superiore a $50,000;

4. Sanzioni Legali per un importo superiore a $50,000;

5. Dichiarazione dei diritti come su indicato;

6. Spese per l'avvocato e per la causa;

7. Interessi secondo i tassi previsti;

8. Il Tribunale ritiene tutto ciò indicato come ragionevole.

4 Settembre 2018

STOVALL & ASSOCIATES

LEST: É MARK S OVALL, ESQ.
Nevada Bar No. 2 66
ROSS H. MOYNI AN, ESQ.
Nevada Bar No. 11848
LARISSA DROHOBYZCER
Nevada Bar No. 12316
2301 Palomino Lane
Las Vegas, Nevada 89107
Attorneys for Plaintiff

## VERIFICATION

STATO DEL NEVADA )
                           ) SS
CONTEA DI CLARK )

      KATHERINE MAYORGA, dopo il solenne giuramento, secondo la legge, depone e dice:

Di aver letto la **DENUNCIA VERIFICATA** e che conosce il suo contenuto; che la stessa corrisponde al vero al meglio delle sue conoscenze, o al meglio delle informazioni in suo possesso, e per quanto riguarda la questione, la reputa vera.

Eseguito il 18 settembre 2018

_____
KATHERINE MAYORGA

Sottoscritto e giurato di fronte a me
il 18 settembre 2018.

_____
Notary Public in and for Said
County and State

3

9

0

1

2

3

24

25

26

27

28

ORIGINALE DA RESTITUIRE
ORIGINAL TO RETURN

U.N.E.P
Corte d'Appello
TORINO
otifica Modello A-1 /19
N. Cron **25755**
del 06-06-19
destinatari atto = 1
CITAZIONE

**URGENTE**

Zona notif. E16
Specifica Atto (chir d)
Diritti           - €    3.87
Trasferte               6.12
    Totale              9.99
6 Parti                 0.61
    Totale             10.60
Sp.Post - 0             0.00
Totale Atto - €        10.60
Pagam  modo virtuale
assa 10%. DM 9/3/57

23.390 10 345 299