PETER S. CHRISTIANSEN, ESQ.
Nevada Bar No. 5254
pete@christiansenlaw.com
KENDELEE L. WORKS, ESQ.
Nevada Bar No. 9611
kworks@christiansenlaw.com
CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
Tel: (702) 240-7979
Fax: (866) 412-6992
*Attorneys for Defendant Cristiano Ronaldo*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

KATHRYN MAYORGA,

                    Plaintiff,

vs.

CRISTIANO RONALDO,

                    Defendant.

Case No. 2:19-cv-00168-JAD-CWH

**DEFENDANT CRISTIANO RONALDO'S MOTION TO DISMISS KATHRYN MAYORGA'S COMPLAINT [ECF NO. 1] PURSUANT TO FED.R.CIV.P. 12(B)(6)**

## I.  INTRODUCTION

This case arises from a sexual encounter alleged to have occurred in 2009, for which the statutes of limitation have long since expired. The two-year period of limitations for the alleged sex assault expired in 2011. Additionally, Plaintiff and Defendant reached a pre-litigation resolution of her claims in 2010, pursuant to which each party waived all claims against the other. Any dispute regarding the enforceability of that agreement, while also time-barred, should nevertheless, be determined by an arbitrator. *See generally* Defendant Cristiano Ronaldo's Motion to Compel Arbitration and Stay Proceedings (ECF No. 26). Lastly, Plaintiff lacks standing to pursue civil relief under RICO and as such, Mr. Ronaldo should not be forced to litigate that claim in any forum. Accordingly, Defendant Cristiano Ronaldo hereby seeks dismissal of Plaintiff's First, Second, Third, Fourth, Fifth, and Seventh Causes of Action.

*CHRISTIANSEN LAW OFFICES*
*810 S. Casino Center Blvd., Suite 104*
*Las Vegas, Nevada 89101*
*702-240-7979 • Fax 866-412-6992*

1

CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd, Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

## II.   RELEVANT FACTS AND PROCEDURAL HISTORY

### A.   Plaintiff Alleges she was Sexually Assaulted on June 13, 2009 – Nearly a Decade Before she Filed the Complaint in this Case.

The Complaint in this case contains eleven causes of action – all are premised upon state law and derived from the underlying accusation that Plaintiff was sexually assaulted at the Palms Hotel and Casino on June 13, 2009. Plaintiff asserts today, as she did in 2009,[1] that Mr. Ronaldo sexually assaulted her and immediately apologized. Compl. at ¶¶ XIII – XVI.  Plaintiff claims she then drove to her parents' home, where she described the alleged sexual assault to a friend before reporting to the Las Vegas Metropolitan Police Department("LVMPD") that she had been sexually assaulted by a "famous soccer player." *Id.* at ¶¶ XVII – XVIII. Plaintiff contends before Mr. Ronaldo and his "team" were even aware of the allegations against him, nurses from the University Medical Center ("UMC") were already working in conjunction with LVMPD to dissuade Plaintiff from telling her story. *Id.* at ¶¶ XVII – XXIV. The Complaint is silent as to why nurses and detectives whose life work is to investigate, document and prosecute reports of sexual assault would engage in such conduct to protect her <u>unidentified</u> assailant.  *See generally id.*

Despite claims she was terrified and unable to advocate for herself, Plaintiff, along with the help of her family, retained a lawyer to "pursue a claim for civil damages," against Mr. Ronaldo. *Id.* at ¶¶ XXIV – XXV.  On January 12, 2010, approximately eight months after the alleged sexual encounter, the Parties participated in private mediation in Las Vegas, Nevada. Settlement and Confidentiality Agreement ("SCA") at ¶ 6.4.  A copy of the SCA was previously provided to the Court for *in camera* review contemporaneous with the filing of the Motion to Seal (ECF No. 11) and is being filed herewith under seal as **Exhibit A**; a copy of the related Side Letter Agreement is being filed herewith under seal as **Exhibit B**.  Although Plaintiff points out Mr. Ronaldo was not physically present, she nevertheless contends he continued to somehow

---

[1]  Plaintiff did not initially identify Mr. Ronaldo as her purported assailant to authorities but contends she provided his name to law enforcement weeks later.  Compl. at ¶¶ XVII-XVIII. LVMPD records are at odds with that assertion.  *See* Clark County District Attorney's Press Release declining to prosecute, attached hereto as **Exhibit E.**

CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

victimize her throughout the mediation. Compl. at ¶ XXXIX.  Notably, Plaintiff acknowledges her family accompanied her to the mediation. *Id.* Moreover, given the number of times she "threatened to walk out," Plaintiff undoubtedly understood she was free to leave at any time and accordingly, settlement was optional.

While Plaintiff lays blame with the mediator and her lawyer for not recognizing her so-called "incompetency," she acknowledges that at the time of mediation the Parties agreed to resolve their dispute absent litigation. The terms of the settlement were to be later memorialized in writing – the SCA.

**B.**    **Plaintiff and Defendant Signed off on the SCA to Resolve their Claims in 2010.**

Despite claims she lacked capacity to enter into the SCA, Plaintiff concedes she was represented by counsel during mediation and throughout continued negotiations regarding the final written terms of the SCA. Plaintiff faults her prior attorney for failing to have a personal representative appointed to represent her interests. Compl. at ¶ XXXVI. Curiously however, Plaintiff alleges that to date, she continues to suffer "severe post-traumatic stress disorder and major depression," (as she did in 2009 and 2010), yet she brought the instant lawsuit individually, not via a personal representative or court approved guardian. *See* Compl. at ¶ LI.[2]

The Parties and their counsel did not sign off on the final SCA until August 2010, approximately eight months after the mediation.  SCA at p. 16. The Complaint affirms Plaintiff was undergoing psychological treatment in 2009 and 2010, but she does not allege any physician instructed her she lacked legal "capacity" or was in any way "incompetent" during the months leading up to signing of the SCA.  Compl. at ¶¶ XXXVIII, XXXV and LI.  Tellingly, Plaintiff

---

[2]  Plaintiff filed her duplicate state court complaint on September 27, 2018, in her individual capacity.  On March 5, 2019, Plaintiff filed an unrelated state court action arising out of an auto accident, which she also brought in her own name and not through a guardian.  A copy of the first page of the file stamped complaint is attached hereto as **Exhibit C.** On May 8, 2019, Plaintiff filed a notice of voluntary dismissal of the state court action – never having obtained a guardian. *See* Notice of Voluntary Dismissal, attached hereto as **Exhibit D**.

1  also does not claim she ever attempted to rescind her agreement to settle or renegotiate the terms

2  prior to signing the final written agreement. *Id.*

3      The SCA described the dispute in controversy as one over "███████████████████

4  ███████████████████████████████████████████████████" (thereafter defined in the

5  SCA as "the Incident"). SCA at ¶ 1.1. The Parties further specified that Plaintiff alleged she

6  suffered "personal and physical injuries and physical sickness" as a result of the Incident. *Id.*

7  Both parties expressly denied the allegations of the other but nevertheless agreed to resolve their

8  dispute absent litigation. *Id.* at ¶ 1.2. Mr. Ronaldo paid Plaintiff the sum of $375,000.00 and both

9  parties agreed to be bound by explicit confidentiality and non-disparagement obligations. *Id.* at ¶

10  2.1.1. Nowhere in the Complaint does Plaintiff contend she was not paid the full $375,000.00,

11  nor that she has or is willing and financially able to disgorge that sum.

12      Plaintiff and Mr. Ronaldo expressly and mutually released each other and their various

13  agents, heirs, representatives and families from "████████████████████████████

14  ██████████████████████████████████████████████████████████████

15  ███████████████████████████████████████████████" *Id.* at

16  ¶ 8.1. The terms of the SCA are to be governed, interpreted and enforced pursuant to Nevada law.

17  *Id.* at ¶ 13.9. As to confidentiality, the language of the SCA made clear that confidentiality of the

18  allegations surrounding the Incident and the agreement itself was of utmost significance to Mr.

19  Ronaldo and the purpose for which he was entering into the SCA:



23  *Id.* at ¶1.4.

24

25      Although Plaintiff alleges "Defendants [sic] falsely represented that the settlement

26  agreement precluded plaintiff's communication and cooperation with the police department's

27  criminal investigation of the sexual assault upon her...," the SCA confirmed Plaintiff had in fact,

28  already made a report of the "███████████████████████████████████████████

CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

1  ███████████████ " Compl. at ¶ I.XXIII; SCA at ¶ 9.1.1.3.  Additionally, the SCA provided

2  for compliance with any "███████████████████████████████████████████

3  ██████████ " SCA at ¶ 3.5. Both Parties were required to provide the other with advanced notice

4  and an opportunity to object to the subpoena or other legal process, but nothing in the SCA

5  precluded compliance should Plaintiff be legally obligated to communicate with authorities.  Of

6  note, the Complaint yet again lays blame with Plaintiff's lawyer at the time for failing to follow

7  up with LVMPD. Compl. at ¶ XXXI.

8      In sum, Plaintiff's entire Complaint is premised upon an alleged Incident that took place

9  nearly ten years before the instant action was filed AND nine years after she entered into the SCA

10  resolving all of her claims for injuries purportedly sustained as a result of the Incident. Because

11  the statutes of limitation have long since expired and Plaintiff has no standing to bring a RICO

12  claim, Mr. Ronaldo now respectfully requests that this Court dismiss the First through Fifth and

13  Seventh Causes of Action.  Given the substantial passage of time, Mr. Ronaldo should not be

14  forced to defend these stale claims in any forum. The Parties should be compelled to arbitrate any

15  claims not subject to dismissal.

16  **III.**   **LEGAL STANDARD**

17      To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a plaintiff must allege facts

18  that, if taken as true, demonstrate "a plausible entitlement to relief." *Bell Atlantic Corp. v. Twombly*,

19  550 U.S. 544, 559 (2007) (interpreting pleading standards required under Fed. R. Civ. P. 8(a)(2)).

20  A complaint fails to plead a "plausible" claim and must be dismissed if the facts alleged are "merely

21  consistent  with  a  defendant's  liability."  *Ashcroft v. Iqbal*,  556  U.S.  662,  678  (2009)  (internal

22  quotations omitted).  The Complaint in this case is replete with unwarranted inferences and claims

23  that are simply not plausible, many of which are absolutely undermined by the express language of

24  the SCA.

25      While a district court generally may not consider any material beyond the pleadings in ruling

26  on a Rule 12(b)(6) motion, materials submitted as part of the Complaint may be considered without

27  converting the motion to dismiss into one for summary judgment. *Branch v. Tunnell*, 14 F.3d 449,

28  453-54 (9th Cir. 1994), overruled on other grounds by *Galbraith v. County of Santa Clara*, 307 F.3d

1   1119 (9th Cir. 2002).  Where the contents of a document are alleged in a complaint, but the physical

2   document is not attached, the court may consider that document so long as neither party questions

3   the authenticity of the document.  *Id.* at 454.

4        Although Plaintiff does not identify the SCA by its specific document title, she does

5   reference the agreement throughout the Complaint and in fact, in requesting declaratory relief, asks

6   that this Court deem their agreement unenforceable. Plaintiff also brought an alternative cause of

7   action for breach of contract in the event the Court deems the subject agreement to be enforceable.

8   Thus, the SCA is not a matter "outside the pleadings" and this Court should consider its contents in

9   ruling on the instant Motion to Dismiss.

10  **IV.**    **ARGUMENT**

11      **A.**    **PLAINTIFF FAILS TO ASSERT ANY LEGALLY VALID BASIS**

12           **FOR TOLLING OF THE EXPIRED PERIODS OF LIMITATION.**

13       Generally, a cause of action accrues when the wrong occurs and a party sustains injury

14  for which they could seek relief. *Petersen v. Bruen*, 792 P.2d 18, 20 (Nev. 1990).  The "discovery"

15  rule provides for an exception to the statute of limitations, which is tolled until "the injured party

16  discovers or reasonably should have discovered facts supporting a cause of action." *Id.* A plaintiff

17  who relies upon the delayed discovery rule must allege: 1) the time and manner of discovery; and

18  2) the circumstances excusing the delayed discovery.  *Id.* (citing *Prescott v. United States*, 523 F.

19  Supp. 918, 940-41) (D. Nev. 1981), *aff'd* 731 F.2d 1388 (9th Cir. 1984)).

20       Undoubtedly recognizing the applicable statutes of limitation on Plaintiff's claims have

21  long since expired, the Complaint offers five reasons why those statutes should be tolled. Quite

22  simply, Plaintiff's tolling arguments are a legal fiction and wholly unsupported by Nevada law.

23  At the outset, Plaintiff fails to meet even the first prong of the analysis because there can be no

24  plausible assertion Plaintiff was not aware of the alleged wrong(s) and purported injuries upon

25  which her complaint is based. Given that within one year of the alleged assault, Plaintiff had

26  retained legal counsel and participated in a mediation of her claims, she cannot plausibly maintain

27  she was unaware of the facts supporting a cause of action based on the purported Incident.

28

CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd, Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

Nevertheless, Plaintiff alleges the following somehow relieved her of the obligation to timely file the instant Complaint:

1. Defendants [sic] are foreign nationals, remaining outside of the State of Nevada and the United States;
2. Plaintiff lacked capacity;
3. Defendants [sic] engaged in a continuous and ongoing fraud and conspiracy to obstruct and conceal their unlawful activities which plaintiff did not discover until mid-2017;
4. Any time limitations related to the claim of sexual assault was removed by the reporting of the crime; and
5. That the parties agreed to toll the running of any time limits on Plaintiff's claims arising from the 2009 sexual assault.

Compl. at ¶ LXI.

First, the Complaint names only one Defendant – Mr. Ronaldo, who could not, as a matter of law, "conspire" with himself.[3] As such, Plaintiff's conspiracy-based causes of action (including RICO) and tolling arguments fail as a matter of law. Second, Mr. Ronaldo's status as a foreign national does not excuse Plaintiff's failure to either file or serve a civil action for nearly a decade after the alleged sexual assault. Although Nev. Rev. Stat §11.300 does allow for tolling where a defendant remains outside the jurisdiction, the statute does not apply here because Mr. Ronaldo was amenable to service of process under the laws and rules of Nevada. *See Seely v. Illinois-California Express, Inc.*, 541 F.Supp. 1307, 1311 (D. Nev. 1982)(noting this Court's belief that Nev Rev. Stat. § 11.300 was "meant to protect claims of plaintiffs who were unable to bring a particular defendant into court…" but, "the plaintiff should not be able to assert a stale claim based on archaic notions of a particular defendant's 'absence' from the jurisdiction"). Indeed, Mr.

---

[3] "Nevada law defines a conspiracy as 'an agreement between two or more persons for an unlawful purpose.'" *Bolden v. State*, 124 P.3d 191, 194 (Nev. 2005) (*quoting Doyle v. State*, 921 P.2d 901, 911 (Nev. 1996), overruled on other grounds by *Kaczmarek v. State*, 91 P.3d 16 (Nev. 2005)).

CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd, Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

Ronaldo responded to Plaintiff's accusations by mediating and settling her claims in Nevada, rendering the statute wholly inapplicable.[4]

Plaintiff's assertion the Parties agreed to toll the running of any time limits is especially troubling given that the SCA contains no such provision and quite to the contrary, waives any and all claims against the other.[5] Consequently, this Court may summarily dispose of reasons 1, 3, and 5 in short order. Plaintiff's assertions that she lacked capacity to contract or that reporting of the purported crime somehow removed any time limitations, also fail as a matter of law.

### 1. Plaintiff fails to allege any facts sufficient to support the conclusion she lacked "capacity" to contract under Nevada law.

Pursuant to Nev. Rev. Stat. § 11.190(4)(c), an action for battery must be filed within two years. Plaintiff contends she was sexually assaulted on June 13, 2009. Compl. at ¶ XVIII. Thus, by Plaintiff's own account, the statute of limitations on her battery claim expired on June 13, 2011. While Plaintiff asserts the statute of limitations on her claim was somehow tolled, her contentions fail as a matter of law. Nevada law does not provide for a tolling of ANY statute of limitations under the circumstances alleged in the Complaint.

Plaintiff argues the statute(s) should be tolled in part because she lacked "capacity." While a lack of capacity may be a basis to rescind a contract, Plaintiff does not allege why her lack of capacity to contract would toll the period of limitations on any of her untimely causes of action, particularly here where there can be no plausible assertion that Plaintiff was somehow unaware

---

[4] The SCA also provides for a method of service of ▮▮▮▮▮▮▮▮▮▮▮▮ SCA at ¶ 12.1. Both Parties could "serve on" or deliver any such documents via their respective counsel as specified in the agreement. *Id.* Mr. Ronaldo provided the mailing and physical address, facsimile number and email address of counsel located in Los Angeles, California. *Id.* Despite Plaintiff's failure to even attempt to utilize such method of service, Mr. Ronaldo was nevertheless subject to service of process and is now before this Court, responding to the Complaint.

[5] The SCA addresses tolling in a very limited circumstance, which Plaintiff does not allege has transpired, nor could it based on the plain language of the agreement. *See* SCA at ¶ 6.0. Thus, the Parties indeed contemplated the concept of tolling but only in very narrowly tailored circumstances, none of which occurred or are even alleged to have occurred.

of her alleged injuries. The SCA specifically noted Plaintiff had reported the Incident to law enforcement and Plaintiff undisputedly retained a lawyer and pursued and recovered civil damages.  SCA at ¶ 9.1.1.3. Moreover, even if a lack of "capacity" could toll any statute of limitations, Plaintiff fails to allege any facts to support a finding of legal incapacity. Thus, there is no basis for tolling or rescission of the SCA.

Under Nevada law, a natural person who manifests assent to an agreement has full legal capacity to contract unless she is 1) under guardianship; 2) an infant; or 3) mentally ill or defective; or 4) intoxicated. *General Motors v. Jackson*, 900 P.2d 345, 348 (Nev. 1995)(citing Restatement (Second) of Contracts § 12 (1981)).  In defining the term "mentally defective," the Nevada Supreme Court has held that, "Where one of the parties, for any reason, is incapable of understanding the force and effect of the alleged agreement, there is no contract; but mere mental weakness falling short of such incapacity will not invalidate a contract." *Id.* at 349 (citing 17 C.J.S. *Contracts* § 133(1)(a) (1963)). Particularly relevant here, the Court further acknowledged:

> Where a person possesses sufficient mental capacity to understand the nature of the transaction and is left to exercise his own free will, his contract will not be invalidated because he was of a lesser degree of intelligence than his co-contractor, because he was fearful, worried or nervous, or lacked ability to concentrate.

*Id.*

In *Jackson*, the Nevada Supreme Court considered whether there was substantial evidence to support a hearing officer's decision that a worker's compensation claimant lacked capacity to enter into a stipulated settlement with her employer. *Id.* at 348. The hearing officer heard testimony from both the claimant and her attorney, who had represented her throughout the process and explained the terms of the settlement.  *Id.*  Because the attorney had used legal terms the claimant did not understand in explaining the consequences of settlement, the hearing officer found she had not been made directly aware of the "consequences of the agreement's terms" and thus, lacked capacity.  *Id.* at 349.

On appeal, the Court concluded the hearing officer's interpretation of capacity differed from the law on capacity. *Id.* In particular, the hearing officer had found the claimant failed to

CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

1 understand the *consequences* of the agreement, whereas capacity involves whether one had the

2 *ability* to understand the agreement. *Id.* Whether the claimant understood the consequences of the

3 agreement may have gone to the issue of unilateral or mutual mistake but was not determinative

4 of her capacity to contract. *Id.* Accordingly, the Court reversed the underlying decision to set

5 aside the stipulated settlement. *Id.*

6      Here, even accepting Plaintiff's allegations as true, she still has failed to allege sufficient

7 facts to establish she lacked "capacity" as a matter of law.  Rather, Plaintiff complains during

8 mediation, she experienced extreme fearfulness, helplessness and "eventually a sense of

9 passivity." Compl. at ¶ XL. She further contends during the post mediation negotiations of the

10 final SCA, she experienced, "intrusive thoughts, an increased sense of extreme anxiety and

11 fearfulness, complete helplessness and passivity." *Id.* at ¶ XLIII.  Just as the *Jackson* Court noted,

12 the SCA cannot be invalidated because Plaintiff was worried, fearful or lacked the ability to

13 concentrate. Plaintiff does not once allege she lacked the ability to understand the agreement

14 itself. Thus, even accepting the accusations in the Complaint as true, Plaintiff has failed, as a

15 matter of law, to sufficiently allege the basis for any claim she lacked capacity to contract or to

16 bring a lawsuit.

17     **2.**    **Nevada law does not provide for tolling of the statute of**
18               **limitations where the victim is an adult at the time of the alleged**
               **sexual assault.**

19      To the extent Plaintiff contends she should be excused from timely filing her Complaint

20 because her purported "incapacity" or "incompetence" rendered her unable to make the legal

21 decision to bring this case, that argument fails from both a factual and legal standpoint based on

22 Plaintiff's own allegations. The insistence Plaintiff was incapacitated or incompetent to file suit

23 within the applicable statute of limitations is completely belied by the undisputed fact that she

24 immediately reported the alleged Incident to LVMPD and within months, indeed made civil

25 claims against Mr. Ronaldo. With the assistance of a lawyer, Plaintiff settled those claims for

26 $375,000 – a sum which she has retained to date.  Equally as significant, Nevada law allows

27 certain exceptions to the statute of limitations for minor victims of sexual assault, but such

28

CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

1  exceptions do not apply when the victim was an adult at the time of the alleged assault.  *See*

2  *Bruen*, 792 P.2d at 24-25; *see also Houtz v. State*, 893 P.2d 355, 358 (Nev. 1995)(tolling

3  provisions for criminal prosecution of "secret" sexual assault are also applied only in cases where

4  the alleged victim is a minor and only until he or she reaches the age of majority).

5  In *Bruen*, the lower court dismissed the plaintiff's complaint as time-barred based on the

6  two-year statute of limitations applicable to sexual assault claims. 792 P.2d at 19. The plaintiff,

7  an adult survivor of child sex abuse ("CSA"), appealed arguing the court erred in refusing to

8  apply the "discovery" rule to toll the statute. *Id.* Bruen abused the plaintiff for a period of eight

9  years beginning when he was 7 years old. *Id.* Approximately four years after the last incident of

10  molestation, the plaintiff began psychotherapy and during that process, reported the alleged

11  crimes to law enforcement. *Id.* Bruen was convicted of multiple sex offenses including sexual

12  assault, attempted sexual assault and lewdness with a minor under the age of 14. *Id.*

13  In opposing the motion to dismiss, the plaintiff submitted an affidavit averring he had

14  blocked out the eight years of sexual abuse until vividly recalling it during therapy. *Id.* He also

15  recalled consenting to Bruen's touching, not considering the acts offensive at the time and not

16  having suffered any physical injuries as a result. *Id.* The plaintiff argued the statute of limitations

17  should be tolled because he did not discover the nexus between the defendant's behavior and his

18  emotional distress until 1987 (four years after the last incident) and that because he filed in 1988,

19  less than two years after that discovery, his action was timely.  *Id.* The Court agreed.

20  In reversing dismissal of Bruen's claims, the Court undertook an in-depth analysis of the

21  unique issues facing survivors of CSA and tolling based on the "discovery" rule. The Court

22  reiterated the public policy concerns underlying the discovery rule:

23  
24  > The rationale behind the discovery rule is that the policies served by statutes of limitation do not outweigh the equities reflected in the proposition that plaintiffs should not be foreclosed from judicial remedies ***before they know that they have***
25  > ***been injured and can discover the cause of their injuries.***  Plaintiffs should be put on notice before their claims are barred by the passage of time.
26  

27  *Id.* at 20 (citing *Fidler v. Eastman Kodak Co.*, 714 F.2d 192 (1st Cir. 1983))(emphasis added).

28  Ultimately, the Court held that no existing statute of limitations applies to bar the action of an

11

CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

1   adult survivor of CSA where the abuse is shown by clear and convincing evidence. *Id.* at 24-25.

2   The holding was specifically limited to adults who had suffered sexual abuse as a child as the

3   Court reasoned:

> 4   Unlike almost all other complainants subjected to statutes of limitation, child
> 5   victims of sexual abuse suffer from a form of personal intrusion on their mental
>     and emotional makeup that interferes with normal emotional and personality
> 6   development.

7   *Id.* at 24 (internal citations and quotations omitted).

8   In stark contrast to *Bruen* and other cases involving adults who were victimized as a child,

9   Plaintiff here was 27 years old at the time of the alleged sexual assault, was undoubtedly aware

10   of what had occurred and that she claimed to have suffered injuries as a result. Indeed, she

11   contends she reported the Incident that same day to both a friend and law enforcement and

12   underwent a medical examination as a result. Compl. at ¶ XVII – XVIII. Plaintiff also took steps

13   to retain a lawyer and sought civil redress for her claims against Mr. Ronaldo. Within just months,

14   Plaintiff participated in mediation and a little over a year after the alleged Incident, Plaintiff

15   received payment, which she has never disgorged.  Thus, Plaintiff's argument that she was

16   somehow "incompetent" to initiate this action is not conceivable, much less plausible based on

17   her own allegations with respect to Plaintiff's post-Incident conduct.

18   As a blanket proposition, Nevada law does not provide for a tolling exception to the statute

19   of limitations on sexual assault where the purported victim was an adult at the time of the alleged

20   Incident.  Moreover, even if an argument could be made to extend such an exception in the case

21   of adult sexual assault, it certainly would not be warranted here. Plaintiff 's own version of events

22   leaves no doubt she was fully aware of her potential cause of action and alleged injuries nearly

23   ten years before filing the instant Complaint.

24       **3.**    **Reporting sexual assault may toll the period of limitations for**
25           **the filing of criminal charges under certain circumstances but**
             **that limited exception does not apply in the civil context.**

26   Plaintiff avers, "Any time limitations related to the *claim* of sexual assault was removed

27   by the reporting of the crime."  Compl. at ¶ LXI (emphasis added).  Presumably Plaintiff derives

28

this misstatement of Nevada law from Nev. Rev. Stat. § 171.083, which expressly applies not to civil **_claims_**, but to criminal **_prosecutions_**. The statute provides that where a victim of sex assault or someone authorized to act on her behalf, "files with a law enforcement officer a written report concerning the sexual assault...the period of limitation prescribed in NRS 171.085 [which enumerates the statute of limitations for **_felony prosecutions_**]...is removed and there is no limitation of the time in which a **_prosecution_** for the sexual assault or sex trafficking must be commenced." Nev. Rev. Stat. § 171.083(1)(emphasis added). Notably, the Nevada State Legislature amended this statute as recently as the current 2019 legislative session. *See* 2019 Nevada Laws Ch. 86 (S.B. 9).

Although the Legislature saw fit to make amendments with respect to the criminal statute of limitations, it has not promulgated any such tolling exception with respect to Nev. Rev. Stat § 11.190(4)(c), which codifies the period of limitations for civil assault claims. The Nevada State Legislature's decision to not modify the civil statute of limitations on sexual assault while specifically addressing tolling in the criminal context is consistent with the Nevada Supreme Court's decisions in both *Houtz* and *Bruen*.

In *Bruen*, the Nevada Supreme Court explicitly invited the Nevada Legislature to address the statutes of limitation regarding civil claims for sexual assault [specific to survivors of child sexual abuse]. 792 P.2d at 25. The Legislature's silence on the issue is telling. While certain exceptions may apply in the context of child sexual assault, those same grounds for tolling do not apply to civil claims brought by a plaintiff who is an adult at the time of the alleged assault. As such, Plaintiff's tolling argument based on the alleged reporting of sexual assault fails as a matter of law.

**B.    PLAINTIFF HAS FAILED TO SUFFICIENTLY ALLEGE <u>"MENTAL INCAPACITATION" AND THUS, HER CLAIM FOR</u> <u>ABUSE OF A VULNERABLE PERSON ALSO FAILS.</u>**

Plaintiff alleges she was a "vulnerable" person, as defined by Nev. Rev. Stat. § 200.5092(8)[6], at all times complained of in the Complaint and remains that way today. Compl. at

---

[6] Of note, NRS 200.5092(8) is a criminal statute and inapplicable to Plaintiff's civil causes of

CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

¶ LXXXV.   Pursuant to Nev. Rev. Stat. § 200.5092(8), a "vulnerable person" is defined as a person, 18 years or older who, "suffers from a condition of physical or mental incapacitation because of a developmental disability, organic brain damage or mental illness…" First, the Complaint is brought in Plaintiff's individual capacity and not via a guardian or court appointed representative. Thus, her own Complaint contradicts the allegation she is incapacitated. Second, the factual contention that she has been in a state of "mental incapacitation" for the last ten years is simply not plausible in light of the other allegations in the Complaint.

Third and perhaps more importantly, even assuming Plaintiff's factual allegations to be true, she does not meet the legal definition of "incapacitation" under Nevada law. To be clear, there is no allegation that Plaintiff was a "vulnerable person" immediately prior to or at the time of the alleged Incident in 2009. Plaintiff also does not contend, nor would it be plausible, that she lacked the mental ability to comprehend she was the victim of an alleged assault or that it resulted in her purported injuries. To the contrary, Plaintiff had the mental wherewithal to report the alleged Incident to LVMPD (without identifying her assailant by name or providing the location of the encounter) and then to seek out and retain an attorney to bring a civil claim for damages against Mr. Ronaldo. Additionally, Plaintiff does not assert that she had the inability to understand the SCA. *See Jackson*, 900 P.2d at 349.

In short, Plaintiff's assertion that she is and was at all times a "vulnerable person" is nothing more than a conclusory allegation of law which is not only unsupported by any plausible facts, but contrary to Plaintiff's own factual allegations. Such claims have not crossed the line from conceivable to plausible and Plaintiff's Fourth Cause of Action for Abuse of a Vulnerable person should be dismissed.

C.   **PLAINTIFF'S THIRD CAUSE OF ACTION FOR "FRAUD AND COERCION" LACKS SPECIFICITY AND IS CONTRADICTED BY THE EXPRESS TERMS OF THE SCA.**

Plaintiff's fraud claim is premised upon three primary allegations: 1) Mr. Ronaldo threatened to "falsely and publicly accuse" her of engaging in consensual sex with him in order

---

action.

CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd, Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

1  to then claim sexual assault so that she could extort money from Mr. Ronaldo; 2) He and his

2  "team" falsely represented the purpose of the settlement was to compensate her for injuries

3  sustained as a result of the alleged assault; and 3) The [SCA] precluded her from communicating

4  and cooperating with law enforcement with respect to the criminal investigation of the Incident.

5  Compl. at ¶¶ LXIX – LXXIII. Plaintiff's "fraud and coercion" claim fails because the assertion

6  that Mr. Ronaldo would defend himself by denying Plaintiff's sexual assault is not an unlawful

7  threat, but rather a truthful assertion that he intended to defend himself. Moreover, the alleged

8  fraudulent representations with respect to the purpose of mediation and settlement and Plaintiff

9  being precluded from cooperating with law enforcement are both contrary to the express terms of

10  the SCA. Additionally, even if these statements could constitute the basis for a fraud claim, such

11  an action would be time-barred.

12       Under Nevada law, a common law cause of action for fraud requires proof of four

13  elements: 1) A false representation made by the Defendant; 2) Defendant's knowledge or belief

14  that the representation is false; 3) Defendant's intention to induce the Plaintiff to act or refrain

15  from acting in reliance upon the misrepresentation; 4) Plaintiff's justifiable reliance upon the

16  misrepresentation; and 5) Damages to Plaintiff resulting from such reliance. *Local Ad Link, Inc.,*

17  *v. AdzZoo, LLC*, 2009 WL 10694069 *11 (D. Nev. Dec. 15. 2009)(citing *Bulbman Inc. v. Bell*,

18  825 P.2d 588, 592 (Nev. 1992)). Under Rule 9(b), Plaintiff must state with particularity the

19  circumstances constituting the fraud. *Id.* Courts have construed this particularity requirement to

20  mean a plaintiff must "state precisely the time, place and nature of the misleading statements,

21  representations and specific acts of fraud." *Id.* (citing *Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th

22  Cir. 1994). *cert. denied*, 516 U.S 810 (1995)). A plaintiff is also required to "set forth an

23  explanation as to why the statement was false and misleading." *Id.* (citing *In re GlenFed Sec.*

24  *Litig.*, 42 F.3D 1541, 1548 (9th Cir. 1994)).

25       As to allegedly false representations, the Nevada Supreme Court has consistently held that

26  fraudulent inducement "cannot be something that conflicts with the [contract's] express terms, as

27  the terms of the contract are the embodiment of all oral negotiations and stipulations." *Road &*

28  *Highway Builders, LLC v. Northern Nev. Rebar, Inc.*, 284 P.3d 377, 380 (Nev. 2012) (citing

15

CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

1  *Tallman v. First Nat'l Bank*, 208 P.2d 302, 307 (Nev. 1949)).  The Court further held that, "[w]hen

2  the plaintiff pleads that the writing…does not express the intentions of the parties to it at the time,

3  [s]he pleads something which the law will not permit [her] to prove." *Id.* at 381 (reversing

4  fraudulent inducement claims where alleged misrepresentations directly contradicted terms of the

5  parties' final contract); *see also Soffer v. Five Mile Capital Partner, LLC*, 2013 WL 638832 at *9

6  (D. Nev. Feb. 19, 2013)("fraudulent inducement claim fails as a matter of law where it directly

7  contradicts the terms of an express written contract.")).

8      As a preliminary matter, Plaintiff's fraud cause of action fails at the outset because she

9  has not stated her claim with the requisite particularity. The Complaint does not precisely state

10  the time, place and nature of the allegedly misleading representations, nor does Plaintiff attempt

11  to explain how the subject statements are misleading. In fact, Plaintiff does not even identify who

12  specifically made the subject misrepresentations. Rather, she alleges that "defendants repeatedly

13  and continuously threatened to falsely and publicly accuse" her of having consensual sex with

14  Mr. Ronaldo only to be able to bring a false claim of sexual assault against him. Compl. at ¶ LXX.

15  While Plaintiff has named only Mr. Ronaldo as a Defendant, she repeatedly refers to a "team" of

16  unknown fixers throughout her Complaint. Plaintiff does not identify which of the "team"

17  members specifically made such threats, nor state when or where these alleged threats were made.

18      Plaintiff goes on to assert "the defendants and his "team" falsely represented the purpose

19  of settlement negotiations, mediation and the [SCA]. *Id.* at ¶ LXXII. Plaintiff again fails to

20  identify the time, place or by whom such representations were made. Additionally, counter to the

21  assertion that Mr. Ronaldo himself made any misrepresentations regarding settlement, Plaintiff

22  complains that much to her dismay, Mr. Ronaldo did not actually attend the mediation. *Id.* at ¶

23  XXIX. Thus, the allegation that Mr. Ronaldo in any way misrepresented the basis for settlement

24  at the time of mediation is simply not plausible given Plaintiff asserts he was not present.

25      Nevertheless, even if these so-called threats and misrepresentations could be attributed to

26  Mr. Ronaldo, either personally, or by way of his agents, the "fraud and coercion" cause of action

27  still fails as a matter of law. Plaintiff retained an attorney to bring a civil claim against Mr.

28  Ronaldo as a result of the alleged assault. She now claims when he responded by denying her

allegations, insisting the encounter was consensual and maintaining he would defend his innocence should litigation ensue, that his conduct somehow amounted to fraud or coercion. Yet, there is nothing unlawful in defending himself. In reality, the so called "threat" was not false, misleading, or a "threat" at all – Mr. Ronaldo has and will continue to maintain his innocence. This is borne out by Plaintiff's own Complaint, which alleges Mr. Ronaldo defamed her by maintaining their encounter was consensual.

Plaintiff's remaining two purported misrepresentations are directly contradicted by the terms of the SCA and pursuant to *Soffer*, fail as a matter of law.   Notwithstanding Plaintiff's assertion that, "defendants and his 'team' <u>falsely</u> represented that the purpose of the settlement, negotiations, mediation and the settlement agreement was to compensate the plaintiff for injuries…," the SCA made clear Mr. Ronaldo disputed Plaintiff's allegations and in no way conceded she was injured.[7] To the contrary, the SCA stated in no uncertain terms that Mr. Ronaldo was agreeing to pay Plaintiff a sum of money in order to maintain the confidentiality of their dispute:



SCA at ¶ 1.4 (emphasis added). Plaintiff agreed to accept the monetary settlement for injuries she alleged but Mr. Ronaldo never conceded she actually sustained any injury.

Plaintiff's last alleged misrepresentation likewise contradicts the terms of the SCA. Plaintiff complains, "defendants falsely represented that the settlement agreement precluded plaintiff's communication and cooperation with the police department's criminal investigation of the sexual assault upon her person…" Compl. at ¶ LXXIII.  The SCA did not prevent Plaintiff from communicating with law enforcement, and confirmed Plaintiff had already made a report of

---

[7]  Within the Recitals of the SCA, the Parties specified Plaintiff alleged she suffered "████████" as a result of the Incident. *Id.* at ¶ 1.1.  In the very next Recital, both parties expressly denied the allegations of the other but nevertheless agreed to resolve their dispute absent litigation. *Id.* at ¶ 1.2.

CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

1   the "alleged events and circumstances relating to the Incident to law enforcement authorities."

2   Compl. at ¶ I.XXIII; SCA at ¶ 9.1.1.3. Although the purpose of the SCA was to resolve the

3   Parties' dispute confidentially, the SCA nevertheless provided for cooperation with any

4   "subpoena or legal process which may require disclosure of Confidential information." SCA at

5   ¶ 3.5. While either Party was required to provide the other with advanced notice and an

6   opportunity to object to the subpoena or other legal process, nothing in the agreement precluded

7   compliance in the event Plaintiff was legally obligated to communicate with authorities.

8        Additionally, an action seeking relief on the basis of fraud or mistake must be filed within

9   three years of the date on which the aggrieved party discovers the facts constituting the fraud or

10  mistake. Nev. Rev. Stat. §11.190(3)(d). Here, Plaintiff was aware Mr. Ronaldo intended to deny

11  her accusations and accuse her of fabricating her story at or before the time of the mediation in

12  January 2010. The SCA itself makes clear that Mr. Ronaldo was entering into the agreement for

13  the purpose of resolving the dispute confidentially but also allowed for Plaintiff to cooperate with

14  law enforcement if required by law to do so. Of course, these so-called misrepresentations cannot

15  be the basis for a fraud claim but even if they could, such statements were known to Plaintiff by

16  the time she executed the final SCA in August 2010. As a result, the statute of limitations on such

17  a fraud claim expired at the latest, in August 2013.

18       In sum, Plaintiff's allegations of fraud are not only time-barred but based on purported

19  misrepresentations that are either: 1) completely undermined by the terms of the SCA; or 2) were

20  truthful and not misrepresentations based on the conduct alleged in the Complaint. Because

21  Plaintiff's "fraud and coercion" claim is time-barred and a fraudulent inducement claim that

22  contradicts the terms of the written agreement fails as a matter of law, Plaintiff's Third Cause of

23  Action does not state a claim upon which relief may be granted.

24       **D.   Plaintiff has no standing to bring a RICO claim and the Complaint
25            lacks sufficient particularity.**

26       Plaintiff's Fifth Cause of Action for "Racketeering and Civil Conspiracy" is brought under

27  Nevada law and fails for a lack of specificity and because Plaintiff has no standing. The Complaint

28  does not contain *any* specificity as to *any* of the predicate activities or members of the so-called

18

CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

1   criminal enterprise. Moreover, even if Plaintiff was permitted to amend in an attempt to provide the

2   requisite specificity, Plaintiff can never cure her lack of standing to bring such a claim. Plaintiff has

3   no standing to bring a RICO claim under either federal or state law because she has neither alleged

4   nor suffered any injury to business or property. *See* Nev. Rev. Stat. § 207.470; *Hunt v. Zuffa, LLC*,

5   361 F.Supp.3d 992, 1000 (D. Nev. 2019)(internal citations omitted); *see also Century Surety*

6   *Company v. Prince*, 265 F. Supp.3d 1182, 1190 (D. Nev. 2017) (citing *Living Designs Inc., v. E.I.*

7   *Dupont de Nemours & Co.*, 431 F. 3d 353, 361 (9th Cir. 2005)(internal citations omitted)).

8       The Nevada racketeering statutes are patterned after the federal RICO statutes and Nevada

9   courts have long interpreted the state RICO laws consistently with the federal RICO provisions.

10  *Prince,* 265 F.Supp.3d. at 1190 (citing *Steele v. Hosp. Corp. of Am.*, 36 F.3d 69, 71 (9th Cir.

11  1994)(citing *Allum v. Valley Bank of Nev.*, 849 P.2d 297, 298 n. 2 (1993), *cert. denied*, 510 U.S. 857

12  (1993)). To plead a civil RICO claim, a plaintiff must allege: 1) conduct 2) of an enterprise 3)

13  through a pattern 4) of racketeering activity (known as predicate acts) 5) causing injury to plaintiff's

14  business or property. *Hunt*, 361 F.Supp.3d at 1000. To recover civilly for a RICO violation, Plaintiff

15  must first establish standing by demonstrating: 1) her alleged harm qualifies as injury to her business

16  or property; and 2) the alleged RICO violation(s) proximately caused her harm. *Id.*

17      Here, Plaintiff has neither alleged nor suffered any injury to business or property.

18  Accordingly, this Court need not reach the second prong of the analysis with respect to proximate

19  cause. However, assuming, *arguendo*, Plaintiff could establish standing by way of injury to business

20  or property, she has failed to sufficiently allege predicate acts that would constitute a RICO violation

21  in the first instance. Plaintiff has sued only Mr. Ronaldo, but not any other member of the so-called

22  "enterprise," to which Plaintiff refers to only as the "team." Plaintiff not only failed to name as

23  defendants the other members of the alleged enterprise, she does not even identify those individuals.

24  Plaintiff further fails to provide any of the requisite specificity with respect to any purported "pattern"

25  of predicate acts.

26

27

28

**1.    Plaintiff's personal injuries are not compensable under RICO**

"Whether a plaintiff has alleged an injury to business or property giving rise to standing under RICO is a question of law for the Court to determine and may be raised on a motion to dismiss." *Keel v. Schwarzenegger*, 2009 WL 1444644 at *5 (C.D. Cal. May 19, 2009) (citing *Oscar v. University Students Co-Op Ass'n*, 965 F.2d 780, 785 (9th Cir. 1992)(en banc), *cert. denied,* 506 U.S. 1020 (1992)). The Court must carefully consider the nature of the asserted harm when determining whether a plaintiff has sufficiently alleged injury to his business or property. *Canyon County v. Syngenta Seeds, Inc.*, 519 F.3d 969, 975 (9th Cir. 2008).

The Ninth Circuit has expressly held, "[p]ersonal injuries are not compensable under RICO." *Hunt*, 361 F.Supp.3d at 1000(citing *Ove v. Gwinn*, 264 F.3d 817, 825 (9th Cir. 2001)). In *Hunt*, this Court reiterated that "even the economic consequences of personal injuries are not compensable under RICO." *Id.* (dismissing professional fighter's claim that he suffered physical injury resulting in lost income as the result of a RICO violation)(citing *Allman v. Philip Morris, Inc.*, 865 F. Supp. 665 668 (S.D. Cal. 1994)). Purported damage to one's reputation is also not compensable under RICO because it is just another form of personal injury. *See C&M Cafe v. Kinetic Farm, Inc.*, 2016 WL 6822071, at *8 (N.D. Cal. Nov. 11, 2016)(citing *Hamm v. Rhone-Poulenc Rorer Pharms.*, 187 F.2d 941, 954 (8th Cir. 1999)("Damage to reputation is generally considered personal injury and thus, not an injury to 'business or property' within the meaning of 18 U.S.C. § 1964(c).").

Here, Plaintiff alleges she has suffered only personal injuries predicated upon the alleged sexual assault. Specific to her Seventh Cause of Action, Plaintiff asserts the racketeering and civil conspiracy caused: 1) the delay and or prevention of the criminal prosecution of Mr. Ronaldo; 2) the delay and prevention of Plaintiff's recovery of compensatory damages for injuries sustained in the alleged assault; and 3) her aggravated and continued severe emotional distress. Compl. at ¶ XC. Setting aside that Plaintiff undisputedly received a $375,000.00 monetary settlement pursuant to the SCA, the fact remains that none of these categories of purported damages constitutes a cognizable business or property interest under well settled RICO jurisprudence. As a result, Plaintiff has no standing to assert a RICO claim, and on that basis alone, her Seventh Cause of Action for "Racketeering and Conspiracy" should be dismissed.

CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

**2.** **Plaintiff has no standing, but if she did, she still has failed to allege with sufficient specificity any requisite predicate acts or the identity of the members of the alleged "criminal enterprise."**

Plaintiff contends the predicate acts underlying her Racketeering and Conspiracy Cause of Action are "sexual assault" and "extortion," yet nowhere in her Complaint has she actually plead a cause of action for extortion, nor even attempted to recite the elements of extortion under Nevada law.[8]  In articulating the pleading standard applicable to RICO claims brought under state law before a federal court, this Court has concluded that because such claims involve underlying fraudulent acts, Rule 9(b)'s heightened pleading standard applies. *Prince*, 265 F. Supp. 3d at 1190.  Thus, in order to sufficiently plead a RICO cause of action, a plaintiff "must specify the time, place, and content of the alleged underlying fraudulent acts and statements as well as the parties involved and their individual participation." *Id.* (citing *Edwards v. Martin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)); *see also Hale v. Burkhardt*, 764 P.2d 866, 870 (Nev. 1988). The Nevada Supreme Court requires the plaintiff to articulate the factual allegations constituting the RICO claim directly under the portion of the Complaint that pertains to the RICO claim. *Burkhardt*, 764 P.2d at 869-70. Additionally, when pleading a claim for civil conspiracy, a plaintiff must state with particular specificity, "the manner in which the defendant joined the conspiracy and how he participated in it." *Prince*, 265 F.Supp.3d at 1194.

Within the Seventh Cause of Action, Plaintiff baldly asserts that Mr. Ronaldo and his "team combined to form and operate an enterprise for the purpose of engaging in racketeering activities

---

[8] Nevada law defines extortion in relevant part as:

> A person who, with the intent to extort or gain any money or other property or to compel or induce another to make, subscribe, execute, alter or destroy any valuable security or instrument or writing affecting or intended to affect any cause of action or defense, or any property…threatens directly to or indirectly injure a person or property… is guilty of extortion.

*G.K. Las Vegas Limited Partnership v. Simon Property Group, Inc.*, 460 F.Supp.2d 1222, 1236 (D. Nev. 2006)(citing Nev. Rev. Stat. § 205.320)(finding that even assuming the allegation that a defendant had threatened frivolous action to be true, that was nevertheless not a predicate act of extortion upon which to state a RICO claim).

CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd, Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

and civil conspiracy." Compl. at ¶ LXXXIX. Plaintiff goes on to allege (again in conclusory fashion):

> That in furtherance of their enterprise the defendants engaged in the following racketeering activities as defined by NRS 207.306(6)(sexual assault) and (10)(extortion to coerce plaintiff's participation in their schemes), to obstruct the criminal investigation and prosecution of Cristiano Ronaldo for the sexual assault of the plaintiff on June 13, 2009 and thereby interfere, reduce, or eliminate plaintiff's claim for civil damages arising therefrom."

*Id.* at ¶ XC.

Plaintiff's Seventh Cause of Action does not contain any reference to the time, place and content of the alleged underlying fraudulent acts and statements and does not identify the specific parties involved nor their individual participation or the manner in which any joined the alleged conspiracy or enterprise. In fact, the Complaint names only Mr. Ronaldo as a Defendant and does not identify any individual members of the alleged conspiracy other than to claim Mr. Ronaldo hired a team of "fixers," known as "personal reputation specialists." Compl. at ¶ XXVI.  Plaintiff then refers to this purported team of fixers as the "team" throughout her Complaint.  *See generally Id.* Accordingly, even if Plaintiff did have standing to assert a RICO claim (which she does not), she has nevertheless failed to plead such a claim as a matter of law and the Seventh Cause of Action must be dismissed.

E.    **PLAINTIFF'S CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS FOR THE ALLEGED SEXUAL ASSAULT IS TIME-BARRED.**

In the Second Cause of Action, Plaintiff presents this Court with five (5) contentions upon which she asserts an "ongoing and continuous" infliction of emotional distress ("IIED"). The first two of those five contentions are time-barred based on the face of the Complaint. The statute of limitations on an IIED claim is two years.  Nev. Rev. Stat. §11.190(4)(e). Accordingly, the period of limitations for IIED based on the alleged sexual assault expired on June 13, 2011.

Likewise, the parties mediated their dispute in January 2010 and reached a final agreement in August 2010. As such, any threats to "falsely and publicly accuse the plaintiff" of having consensual sex with Mr. Ronaldo simply so she could later fabricate a rape claim to obtain money

1   would have had to have been made prior to the finalized SCA. Accordingly, the period of

2   limitations on the second instance of alleged misconduct expired by August 2012 at the latest.

3       **F.   BECAUSE DEFENDANT NEVER USED ANY "LEGAL**

4       **PROCESS," HE CANNOT BE LIABLE FOR ABUSE OF PROCESS.**

5           In support of her claim for "abuse of process," Plaintiff contends Mr. Ronaldo's agreement

6   to participate in "alternative dispute resolution by mediation" was for an ulterior purpose. Compl.

7   at ¶¶ CI – CIV.  Ignoring that it was Plaintiff who retained a lawyer to pursue civil damages

8   *against* Mr. Ronaldo and thus, he had the right to defend himself, a voluntary agreement to

9   mediate a dispute outside the purview of the courts simply cannot amount to an "abuse of

10  process." To prevail on an abuse of process claim, a plaintiff must prove: 1) an ulterior purpose

11  by the party abusing the process, ***other than resolving a legal dispute;*** and 2) a willful act in the

12  use of ***legal*** process not proper in the regular conduct of the proceeding.  *Land Baron Inv. v.*

13  *Bonnie Springs Family LP*, 356 P.3d 511, 519 (Nev. 2015)(internal citations omitted) (emphasis

14  added).

15          As to the first element, a plaintiff may not rely on conjecture that the defendant had some

16  ulterior purpose other than resolving the dispute. *Id.* (citing *LaMantia v. Redisi*, 38 P.3d 877, 880

17  (Nev. 2002)). Rather, plaintiff must provide facts substantiating the defendant actually intended

18  to use the legal process for an ulterior motive. *Id.* Particularly relevant in this case, the utilized

19  process "***must be judicial***, as the tort protects the integrity of the court." *Id.* (internal citations

20  omitted)(emphasis added).

21          Tellingly, in agreement with other jurisdictions, the Nevada Supreme Court has held that

22  even an unfounded complaint before an administrative agency would not constitute "legal

23  process" because "courts are not usually involved in the conduct of administrative agencies." *Id.*

24  at 520 (internal citations omitted). Thus, "legal process," by definition, is founded upon court

25  authority.  *Id; see also Bull v. McCuskey*, 615 P.2d 957, 960 (Nev. 1980)(recognizing that the

26  "legal process" properly giving rise to an abuse of process action was a complaint and summons);

27  *Banerjee*, 2016 WL 5939748 at *4 (D.Nev. October 11, 2016)(dismissing an abuse of process

28

CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

1  claim where plaintiff had been charged criminally but the charges had been brought by the state

2  and defendants had not filed any civil complaint to constitute a use of "legal process").

3       In this case, Plaintiff does not allege Mr. Ronaldo ever made any willful act to initiate any

4  judicial or "legal process," nor does she assert that *any* civil complaint was ever filed before the

5  Parties agreed to mediate their dispute. The SCA is also notably devoid of any reference to any

6  civil action having been filed by either party. Rather, Plaintiff baldly asserts, "[t]hat alternative

7  dispute resolution, including mediation, is a legal process recognized and protected by Nevada

8  statutes," and "defendant agreed to participate in alternative dispute resolution by mediation…"

9  Compl. at ¶¶ CII – CIII. However, Plaintiff's own accusations confirm that contrary to being

10 subject to any "court authority," the mediation process was a voluntary one that transpired in the

11 absence of any "legal process." Plaintiff initiated the accusations at issue during the mediation;

12 she contends Mr. Ronaldo "agreed" to mediate; and further asserts she herself threatened to walk

13 out on the process numerous times. Mr. Ronaldo never initiated or utilized any "legal" or "judicial"

14 process."

15      Plaintiff's Abuse of Process claim is also barred by the 2-year statute of limitations given

16 that it is premised upon a mediation that took place more than nine years before Plaintiff filed the

17 instant Complaint. *See* NRS 11.090(4). As a result, the Seventh Cause of Action for Abuse of

18 Process fails to state a claim upon which relief may be granted and should be dismissed.

19 **V.   CONCLUSION**

20      For the reasons set forth above, Plaintiff has failed to state any claim upon which relief

21 may be granted.  Accordingly, Defendant Cristiano Ronaldo respectfully requests that this Court

22 dismiss Plaintiff's First, Second, Third, Fourth, Fifth, and Seventh Causes of Action.

23      DATED this 16th day of August, 2019.

24                              CHRISTIANSEN LAW OFFICES

25

26                              By
                                   PETER S. CHRISTIANSEN, ESQ.
27                                 KENDELEE L. WORKS, ESQ.
                                   *Attorneys for Defendant Cristiano Ronaldo*
28

CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

1

**CERTIFICATE OF SERVICE**

2     Pursuant to FRCP 5 and LR-5.1, I certify that I am an employee of CHRISTIANSEN

3  LAW OFFICES, and that on this 16th day of August, 2019, I caused the foregoing document

4  entitled **DEFENDANT CRISTIANO RONALDO'S MOTION TO DISMISS KATHRYN**

5  **MAYORGA'S COMPLAINT [ECF No. 1] PURSUANT TO FED.R.CIV.P. 12(B)(6)** to be

6  filed and served via the Court's CM/ECF electronic filing system upon all registered parties and

7  their counsel.

8

9

10

11                                    An employee of Christiansen Law Offices

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## INDEX OF EXHIBITS

2

| Exhibit A | Settlement and Confidentiality Agreement |
|-----------|-------------------------------------------|
| Exhibit B | Confidential Side Letter Agreement |
| Exhibit C | First Page of Complaint in *Kathryn Mayorga v. Maheswor Ghimire*, Case No. A-19-790452-C, Eighth Judicial District Court, Clark County, Nevada |
| Exhibit D | Notice of Voluntary Dismissal |
| Exhibit E | Clark County District Attorney's Press Release |

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CHRISTIANSEN LAW OFFICES**
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992