PETER S. CHRISTIANSEN, ESQ.
Nevada Bar No. 5254
pete@christiansenlaw.com
KENDELEE L. WORKS, ESQ.
Nevada Bar No. 9611
kworks@christiansenlaw.com
KEELY A. PERDUE, ESQ.
Nevada Bar No. 13931
keely@christiansenlaw.com
CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
Telephone:     (702) 240-7979
Facsimile:     (866) 412-6992
*Attorneys for Defendant Cristiano Ronaldo*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| KATHRYN MAYORGA,<br><br>          Plaintiff,<br><br>vs.<br><br>CRISTIANO RONALDO,<br><br>          Defendant. | Case No. 2:19-cv-00168-JAD-DJA<br><br>**DEFENDANT'S MOTION TO STRIKE AND MAINTAIN UNDER SEAL INADMISSIBLE DOCUMENTS ATTACHED TO PLAINTIFF'S OPPOSITION TO MOTION TO COMPEL ARBITRATION [ECF 44]** |

Defendant Cristiano Ronaldo, through his attorneys, Peter S. Christiansen, Esq., Kendelee L. Works, Esq. and Keely A. Perdue, Esq., hereby moves to strike documents attached to Plaintiff's Opposition to Defendant's Motion to Compel Arbitration [ECF 44] within Exhibits 4-5 thereto and identified as Bates Nos. 0003-0257 (hereinafter "Documents 0003-257") as well as any references to such documents.  Plaintiff improperly obtained documents from an alleged cyber hacker from whom her counsel specifically sought attorney-client communications and work product.  Plaintiff then attached the ill-begotten documents to her Opposition, knowingly disclosing what she asserts are communications among Defendant, his counsel and investigators.

Plaintiff cannot authenticate these documents and Defendant does not concede that such documents have not been altered or in some instances, even fabricated.  Nevertheless, the subject documents contain what are purported to be privileged communications and work product, which

would not be discoverable, much less admissible. Because the subject documents are privileged and were improperly obtained, they should never have been attached as exhibits to a judicial filing and are not properly before this Court. Plaintiff's attempts to unlawfully circumvent the attorney-client privilege should not be condoned.

Tellingly, the subject documents are not even relevant to whether this Court should compel arbitration. Plaintiff contends Exhibits 4 and 5 are evidence that Defendant's counsel was aware of Plaintiff's "emotional condition," but ignores that the relevant inquiry is whether Plaintiff was in fact, legally incapacitated.[1] In short, these documents are privileged and hold very little, if any probative value to the issue at hand. As such, Defendant's interest in maintaining the attorney-client privilege substantially outweighs any public right of access. To that end, Defendant further requests that the subject documents and all references thereto within the relevant briefings and at the time of any hearing on this matter, be sealed.

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.   RELEVANT FACTS AND PROCEDURAL HISTORY**

    **A.   Plaintiff unlawfully obtained privileged and inadmissible documents and without any redaction, attached those documents to a filing before this Court.**

Plaintiff filed her Opposition to Defendant's Motion to Compel Arbitration entirely under seal, with Documents 003-257 included within Exhibits 4 and 5 attached thereto. *See* ECF 44. Both Parties then stipulated to maintain under seal Documents 0003-257 pending this Court's decision on the instant Motion to Strike. ECF 45. This Court approved the Parties' stipulation and ordered that Defendant file his motion to strike on or before November 6, 2019. ECF 47.

Plaintiff has indicated that "Documents 0003-0121 and 0121 and 0175-0275 [sic] are documents that Plaintiff's Counsel received from "Football Leaks" pertaining to Defendant [Mr. Ronaldo]." ECF 45. Plaintiff represents that Documents 0122 – 0174 are news publications that

---

[1] As detailed in Defendant's Reply in support of compelling arbitration [ECF 50] and incorporated herein by reference, Plaintiff has failed to establish legal incapacity sufficient to excuse her from her arbitration obligations under the Settlement and Confidentiality Agreement ("SCA") among the Parties. Additionally, because Plaintiff challenges the validity of the SCA in its entirety and not merely the arbitration provision, that issue should be determined by an arbitrator and not this Court.

2

Plaintiff's Counsel provided to the Las Vegas Metropolitan Police Department. *Id.* The first page of Plaintiff's Exhibit 4 to the Opposition to Defendant's Motion to Compel is an email from Plaintiff's Counsel to "Football Leaks," which is dated July 25, 2018. *See* ECF 44 at Exhibit 4, Bates 0001-2. Within the email, Plaintiff's Counsel informs the recipient that he represents "Katie Mayorga" and has been retained to file a lawsuit against Defendant Cristiano Ronaldo for injuries suffered as a result of an alleged sexual assault. *Id.* Plaintiff's Counsel specifically requested, in relevant part, that "Football Leaks" provide him with "any communications, emails, text messages, social media postings, documents or other information… including but not limited to:

1. the sexual assault.
2. the **employment of attorneys and investigators** by Ronaldo to investigate my client, her family, witnesses and friends after the sexual assault
3. the **employment of attorneys and investigators to represent and defend** Ronaldo after the sexual assault of my client
4. the **reporting and communications of the attorneys and investigators** that investigated Katie Mayorga, her family, witnesses, friends and the attorney Katie hired to represent her.
5. the **reporting and communications of the attorneys and investigators representing and defending** Ronaldo following the sexual assault **thru the negotiations and conclusion of the settlement** and non disclosure agreement.
3. [sic] the **negotiations leading up to the agreement to mediate**
4. [sic] the **mediation itself**
….
6. The **evaluation or assessment of the attorney** representing Katie Mayorga, before, during and after the mediation.
7. the terms of the settlement and non-disclosure agreement
…

*Id.* (emphasis added). In response to Counsel's email request for attorney-client communications and attorney work product, the individual identified as "Football Leaks" sent an attachment of documents, stating, "In the Attachment you can find all relevant information in my possession. I hope that helps." ECF 44 at Exhibit 4, Bates 0001.

In opposing arbitration, Plaintiff argues she was not legally competent to enter into the SCA and thus, challenges the agreement in its entirety. Ignoring that Defendant's knowledge of her purported mental state is not probative of whether Plaintiff was in fact, without legal capacity to contract, she attaches hundreds of pages of documents that "plaintiff's counsel received from

3

'John at Footbal [sic] Leaks,'" which counsel asserts consist of "communications between the defendant, attorneys and sports managers representing the defendant." ECF 44 at 6:16-18. Plaintiff's Counsel apparently received a second transmission of documents which contained "defendant's [purported] answers to questions pertaining to the sexual assault of the plaintiff." ECF 44 at 6:25-27. Plaintiff attached those documents as Exhibit 5 and references them as Bates Nos. 0175-257. *Id.* Plaintiff fails to mention that Bates Nos. 0254-257 are not part of what appears to be the alleged question and answer document but rather, what purports to be a letter between co-counsel for Defendant and contains the subject/reference line:

> Personal & Confidential
>
> Privileged Attorney-Client Communication
>
> Attorney Work Product

ECF 44 at Exhibit 5, Bates Nos. 0254-257. That letter goes on to address billing and then describes in detail the attorney work provided by counsel, the reasons for such tasks and the end result. *Id.*

A cursory review of what Plaintiff describes as "answers to questions pertaining to the sexual assault," reveals that the document is replete with what appear to be attorney thoughts and commentary analyzing the questions, responses and various legal implications as well as necessary follow up investigation. *See* Exhibit 5 to ECF 44 at 0175-253 (by way of example, Bates 0182, 0189, 0193, 0194, 0195, 0197, 0201, 0207, 0208, 0209, 0220, 021, 0222, 0224, 0225, 0233, 0234, 0235, 0242, 0246, 0247, 0248, 0250, and 0251, all contain attorney notes, commentary and other thoughts regarding legal issues and necessary investigation in addition to attorney-client communications). Even if these so-called questions and answers appear in their accurate form, which Defendant does not concede, the entire document was undoubtedly prepared by counsel as part of their investigation of Plaintiff's allegations and viable defenses to her claims – all of which is the hallmark of privileged attorney work product in addition to protected attorney-client communications.

With little to any explanation as to relevance to the Motion to Compel Arbitration, Plaintiff also attached various correspondence and billing statements between Defendant's counsel and investigators hired by counsel. *See* ECF 44 at Exhibit 4, Bates Nos. 0003-32  These communications contain not merely billing amounts and an allotment of time spent, but also summaries of tasks performed and correspondence detailing the reason for such investigation, analysis of outcomes and necessary follow-up. *Id.*

Also devoid of any relevance to whether the parties should be compelled to arbitrate, Plaintiff disclosed to this Court correspondence between Defense counsel and the client which includes numerous billing statements detailing the attorney tasks performed and references to attorney thought processes and analyses regarding significant legal issues.  ECF 44 at Exhibit 4, Bates Nos. 0033-73.[2]  Plaintiff further obtained and disclosed correspondence between co-counsel for Defendant, which includes, but is not limited to: detailed analyses of the issues at mediation, negotiation of the SCA, assessment of Plaintiff's claims and available legal defenses, as well as overall case strategy.  ECF 44 at Exhibit 4, Bates Nos. 0074-0122.

Consistent with Plaintiff's attempts to improperly place at issue documents and communications that are purportedly attorney-client privilege and work product, Plaintiff attached numerous news publications citing to and summarizing the "Football Leaks" documents.  ECF 44 at Exhibit 4, Bates Nos. 0127-0174.[3]  While the news publications themselves are not subject to the attorney-client or attorney work product privileges, the focal point of the articles summarizes, and in many instances, directly quotes privileged and confidential documents, including work product and the SCA itself, which this Court has deemed sealed. ECF 23.  These

---

[2] Bates Nos. 0033-73 are between the law firm of Lavely & Singer and the client contact at Multisports & Image Management (M.I.M), who is a party to the SCA and was also included within Defendant's Certificate of Interested Parties on file herein.  ECF 9.

[3] Defendant withdraws his request to have Bates Nos. 0121-126 sealed because those articles are already public and do not appear to contain references to documents or communications subject to the attorney-client or work product privileges.  However, Defendant maintains that such evidence is inadmissible and should be stricken from the record and not considered by this Court.  Fed. R. Evid. 402 [relevance]; Fed. R. Evid. 403 [unduly prejudicial]; Fed. R. Evid. 404 [prior bad acts]; Fed. R. Evid. [character evidence].   As will be addressed in further detail below, these documents pertain to unproven allegations of prior bad acts that are alleged to have taken place in 2005 and entirely unrelated to the incident giving rise to this case.  *Id.*

5

confidential and privileged documents were hacked and not disclosed by Defendant or his attorneys and/or agents, and thus, should not be considered by this Court.

In sum, Exhibits 4 and 5 to Plaintiff's Opposition consist almost entirely of what purport to be communications among counsel and/or investigators hired at the direction of Defendant's prior counsel; internal communications among counsel; attorney work-product; and attorney-client communications; and/or the unlawful publication of purported attorney-client communications and attorney work-product. While Defendant does not believe such documents are without alteration, he nevertheless has never agreed to waive any of the protections of the attorney-client privilege or attorney work product doctrine.

## II.   LEGAL ARGUMENT

Pursuant to Fed. R. Evid. ("FRE") 104, this Court is tasked with deciding any preliminary question regarding whether a privilege exists and whether evidence is admissible. FRE 104(a). In so doing, the court is "not bound by evidence rules, except those on privilege." Under FRE 502, even an inadvertent disclosure of evidence subject to the attorney-client privilege or work product doctrines will not amount to a waiver of such privileges. FRE 502(b).

Plaintiff's Counsel here took affirmative steps to obtain documents protected by both the attorney-client privilege and work product doctrines and then knowingly attached those documents to a judicial filing. This misconduct not only violates Rule 4.4 of the Nevada Rules of Professional Conduct,[4] but ignores FRE 104, 501 and 502, in addition to Nevada law defining the scope of the attorney-client and attorney work product privileges. Because the Football Leaks documents contain attorney-client privilege and work product for which Defendant never waived his privilege against disclosure, the content of these documents should never have been before this Court, and thus, should be stricken from the record entirely. Plaintiff's attempt to knowingly invade the protections of the attorney client privilege and work product doctrines should not be tolerated and constitute compelling reasons to maintain the subject documents under seal.

---

[4] Rule 4.4 of the Nevada Rules of Professional Conduct provides that in representing a client, a lawyer shall not "use methods of obtaining evidence that violate the legal rights of such a person."

**A.  The "Leaked Documents" and related news articles consist of documents purported to be attorney-client communications and work product for which Defendant has never waived the privilege.**

It is axiomatic that the attorney-client privilege is intended to protect confidential communications between a party and its attorney to encourage "full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Premiere Digital Access, Inc. v. Central Telephone Co.*, 360 F. Supp.2d 1168, 1172 (D. Nev. 2005)(citing *Upjohn Co. v. U.S.*, 449 U.S. 383, 101 S.Ct. 677, 682 (1981)).  A party asserting the privilege must make a prima facie showing that the privilege protects the information intended to be withheld.  *Id.* (citing *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992)).  Under FRE 501, state law will govern an assertion of privilege where the privileged communication goes to a claim or defense governed by state law.  *Id.*  Here, all of Plaintiff's claims are brought under state law and thus, Nevada law will govern whether a communication or document is protected by the attorney-client or work product privilege.

Under NRS 49.095, the following "confidential communications" are protected by the attorney-client privilege:

1. Between the client or the client's representative and client's lawyer or the representative of the client's lawyer.
2. Between the client's lawyer and the lawyer's representative.
3. Made for the purpose of facilitating the rendition of professional legal services to the client, by the client or the client's lawyer to a lawyer representing another in a matter of common interest.

A "confidential communication is defined as one that is "not intended to be disclosed to third persons other than those to whom disclosure is in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication."  NRS 49.095.  A "representative of the lawyer" means a person "employed by the lawyer to assist in the rendition of professional legal services."  NRS 49.085.

The attorney work product privilege exists to "promote the adversary system by safeguarding the fruits of an attorney's trial preparations from the discovery attempts of the

opponent." *Cotter v. Eighth Judicial Dist. Court*, 134 Nev. 247, 250 (2018)(citing *United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1299 (D.C. Cir. 1980)). With respect to attorney work product, Nevada law protects "an attorney's mental impressions, conclusions, or legal theories concerning the litigation, as reflected in memoranda, correspondence, interviews, briefs, or in other tangible and intangible ways." *Id.* (citing *Wardleigh v. Second Judicial Dist. Court*, 111 Nev. 345, 350, 891 P.2d 1180, 1183 (1995); NRCP 26(b)(3)).

Documents 0033-73 and 0254-257 are correspondence between counsel and their client(s) made in furtherance of the rendition of legal services. There is nothing to indicate those documents were intended to be disclosed to any third party, nor that Defendant made any inadvertent disclosure. *See* ECF 44 at Exhibits 4-5. Likewise, Documents 0003-32 are communications between Defendant's counsel and investigators who were hired by his lawyers to assist counsel with their rendition of legal services and thus, by definition "representatives of the lawyer." *Id.* Documents 0003-73 and 0254-257 are replete with references to and reflect counsel's mental impressions, legal theories and conclusions and thus, constitute both protected attorney-client communications and attorney work product. *Id.*

Documents 0074-0122 are comprised entirely of correspondence between co-counsel for Defendant in which they provide a detailed analysis of their investigation, interviews, mental impressions, conclusions, legal theory and strategy in furtherance of providing Defendant with legal advice and services. *Id.* Again, there is zero indication that Defendant ever intentionally or inadvertently disclosed these documents to a third party.

Plaintiff contends that Documents 0175-253 are documentation of a question and answer session with Defendant. Plaintiff cannot authenticate these documents and Defendant does not concede that these documents have not been altered, nor that they are an accurate representation of his communications with counsel. However, even assuming arguendo that the documents are what Plaintiff purports them to be, then they go to the very heart of the attorney-client privilege – that is to facilitate and protect candid communications between the attorney and client to promote the administration of justice. Moreover, Documents 0175-253 not only contain what

Plaintiff asserts are attorney-client communications, they are abound with notes containing impressions of counsel, strategy and legal theories.

Although Defendant withdraws his request to have Documents 0121-126 sealed because those articles are already public and do not appear to contain references to documents or communications subject to the attorney-client or work product privileges, they are nevertheless inadmissible and should not be considered by this Court. *See* FRE 402 [relevance]; FRE 403 [unduly prejudicial]; FRE 404 [prior bad acts]; FRE 405 [character evidence]. Documents 0121-126 pertain to unproven allegations of a past assault alleged to have taken place in 2005. No charges were filed and those accusations are entirely unrelated to the incident giving rise to this case. *Id.*

Defendant never willingly waived the attorney-client or work product privileges which safeguard against disclosure of the subject documents. There is no evidence that Defendant or his counsel ever intentionally or inadvertently disclosed any of these privileged documents to anyone and certainly not opposing counsel. Rather, Plaintiff's Counsel took affirmative steps to wrongfully obtain the privileged documents from a so-called cyber hacker. Contrary to both federal and state law and rules of professional conduct, Plaintiff then disclosed these privileged documents in a judicial filing. Such misconduct cannot be tolerated, and this Court should strike the subject documents, which should never have become part of any judicial record in the first instance.

**B.    Compelling reasons weigh in favor of sealing.**

A district court's denial of access to its records is reviewed for abuse of discretion. *Valley Broadcasting Co. v. United States Dist. Court*, 798 F.2d 1289, 1294 (9th Cir.1986). "Every court has supervisory power over its own records and files", and a district court's decision to seal its records is within its inherent supervisory power. *Hagestad v. Tragesser*, 49 F.3d 1430, 1433–34 (9th Cir. 1995) (quoting *Nixon*, 435 U.S. at 598). The decision whether to deny access to judicial records is best left to the sound discretion of the trial court – "a discretion to be exercised in light

of the relevant facts and circumstances of the particular case." *Nixon v. Warner Communic'ns, Inc.*, 435 U.S. 589, 599 (1978))

There is a strong presumption of public access to judicial records. *See Kamakana v. City and Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006); *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003). Public access is not, however, absolute. *Kamakana*, 447 F.3d at 1178. When ruling on a motion to seal, the district court must weigh the competing interests of the public and the party seeking to seal judicial records. *Id.* at 1179. While compelling reasons generally must exist to seal records attached to a dispositive motion, a lesser standard of good cause is to be applied to non-dispositive motions. *Id.*

Recently, the Ninth Circuit clarified "public access to filed motions and their attachments does not merely depend on whether the motion is technically 'dispositive.'"[5] *Center for Auto Safety v. Chrysler Group, LLC*, 809 F.3d 1092, 1101 (9th Cir. 2016). The test is "whether the motion is more than tangentially related to the merits of a case." *Id*. If the motion at issue is "more than tangentially related to the merits of a case" then the "compelling reasons" test applies. *Id*. at 1102. To overcome the strong presumption of public access to judicial records, the moving party "must articulate compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure." *Kamakana*, 447 F.3d at 1178-79.

"'[C]ompelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets.'" *Id*. at 1179 (*citing Nixon v. Warner Commc'ns Inc.*, 435 U.S. 589, 598 (1978)). Where "compelling reasons" exist, the Court may seal the judicial record of a dispositive motion. *Id*.

Here, even if Defendant's Motion to Compel Arbitration is analogous to a dispositive motion and more than tangentially related to the merits of Plaintiff's case, compelling reasons

---

[5] The Ninth Circuit has considered motions to compel arbitration and motions for summary judgment to be the "functional equivalent" of one another. *See Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008).

10

1  exist to maintain the confidentiality of Documents 003-0275 included within Exhibits 4 and 5 to
2  Plaintiff's Opposition [ECF 44].  These documents consist entirely of privileged attorney-client
3  communications and/or attorney work product, can never be presented in an admissible form at
4  trial, and have no relevancy to the Court's determination of the arbitrability of this dispute.

5        Preservation of the attorney-client and work product privileges is a cornerstone of
6  American jurisprudence.  Not sealing the subject documents would undoubtedly transcend this
7  Court's files into a vehicle for an improper purpose – that is, evisceration of the protections of the
8  attorney-client privilege and work product doctrine.  Nevada law also supports the sealing of
9  records containing privileged attorney-client communications in the absence of any waiver of the
10 privilege.  *See Howard v. State*, 128 Nev. 736, 746 (2012).

11       Further, although the subject documents were leaked as part of the "Football Leaks"
12 scandal and portions have been the subject of news publications, this third-party disclosure of
13 privileged and confidential information does not render the information publicly known.  The
14 Ninth Circuit has held that, even after accurate confidential information has been disclosed in
15 national newspapers, the subjects of the leaked confidential data retained their interests in
16 preventing further disclosures. *See United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d
17 1162, 1174 (9th Cir.2010)(en banc)(holding that the court did not abuse its discretion in
18 concluding that "equitable considerations" required sequestration and the return of copies of
19 illegally seized evidence, even though some professional baseball players' positive drug tests had
20 already been reported in the New York Times and other newspapers)).  Therefore, compelling
21 reasons exist to maintain these records under seal, as the public has no right to access privileged
22 attorney-client communications and work product.

23 **III.**    **CONCLUSION**

24       Defendant respectfully requests that this Court enter an order striking documents attached
25 to Plaintiff's Opposition to Defendant's Motion to Compel Arbitration [ECF 44] within Exhibits
26 4-5 thereto and identified as Bates Nos. 0003-0257 as well as any references to such documents.
27 Defendant further requests that the subject documents and all references to those documents,
28

1   remain sealed with the exception of Bates Nos 0121-26, which do not contain reference to
2   privileged documents already within the public domain.
3       Plaintiff improperly obtained documents from an alleged cyber hacker after her counsel
4   specifically sought attorney-client communications and work product.  Plaintiff, through counsel,
5   then knowingly disclosed what she asserts are communications among Defendant, his counsel
6   and investigators.  Plaintiff cannot authenticate these documents, which would not be
7   discoverable, much less admissible.  Because the subject documents are privileged and were
8   unlawfully obtained, they should never have been attached as exhibits to a judicial filing and are
9   not properly before this Court.  Plaintiff's improper attempts to eviscerate the attorney-client
10  privilege and use this Court as a vehicle to disclose confidential and privileged documents should
11  not be tolerated.
12      Dated this 6th day of November, 2019.

CHRISTIANSEN LAW OFFICES

By _____
PETER S. CHRISTIANSEN, ESQ.
KENDELEE L. WORKS, ESQ.
KEELY A. PERDUE, ESQ.
*Attorneys for Defendant Cristiano Ronaldo*

**CERTIFICATE OF SERVICE**

Pursuant to FRCP 5 and LR-5.1, I certify that I am an employee of CHRISTIANSEN LAW OFFICES, and that on this 6th day of November, 2019, I caused the foregoing document entitled **DEFENDANT'S MOTION TO STRIKE AND MAINTAIN UNDER SEAL INADMISSIBLE DOCUMENTS ATTACHED TO PLAINTIFF'S OPPOSITION TO MOTION TO COMPEL ARBITRATION [ECF 44]** to be filed and served via the Court's CM/ECF electronic filing system upon all registered parties and their counsel.

