PETER S. CHRISTIANSEN, ESQ.
Nevada Bar No. 5254
pete@christiansenlaw.com
KENDELEE L. WORKS, ESQ.
Nevada Bar No. 9611
keely@christiansenlaw.com
CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
Telephone:      (702) 240-7979
Facsimile:      (866) 412-6992
*Attorneys for Defendant Cristiano Ronaldo*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| KATHRYN MAYORGA,<br><br>            Plaintiff,<br><br>vs.<br><br>CRISTIANO RONALDO,<br><br>            Defendant. | Case No. 2:19-cv-00168-JAD-DJA<br><br>**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO STRIKE AND MAINTAIN UNDER SEAL INADMISSIBLE DOCUMENTS ATTACHED TO PLAINTIFF'S OPPOSITION TO MOTION TO COMPEL ARBITRATION [ECF 44]** |

In opposing the instant Motion, Plaintiff exceeded the 24 page limit for her response but neglected entirely to seek leave to exceed page limits pursuant to Local Rule II 7-3. Accordingly, Plaintiff's response should be stricken and procedurally barred. *See* LR IC 7-1. Plaintiff's opposition also fails on a substantive level. Plaintiff concedes her lawyer intentionally sought out documents purported to be privileged attorney-client communications and attorney work product. Plaintiff does not dispute that these confidential documents were obtained from a known cyber hacker who currently faces criminal prosecution, in part for his role in unlawfully obtaining such documents.[1] Not surprisingly, Plaintiff also fails in her attempt to authenticate the stolen documents.

---

[1] *See* https://www.reuters.com/article/us-portugal-footballleaks-crimes/football-leaks-whistleblower-faces-more-than-100-charges-idUSKBN1W42RZ

CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

Tellingly, Plaintiff does not contend the documents were in Defendant Ronaldo's possession or control when stolen. Nevertheless, Plaintiff ignores the misdeeds of counsel and asserts Defendant somehow waived the attorney client and work product privilege because his lawyers allegedly failed to safeguard against the criminal conduct of cyber hackers. Plaintiff further contends that Defendant waived the attorney client privilege because communications were disclosed to Multisports Image Management, Inc., ("MIM") – Defendant Ronaldo's management company, which was a party to Defendant Ronaldo's common defense as well as the Settlement and Confidentiality Agreement ("SCA"). Lastly, Plaintiff asserts the crime-fraud exception where there exists no evidence of any continuing or ongoing fraudulent scheme. Accordingly, the ill-begotten and purportedly privileged documents should be stricken from the record and maintained under seal.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   LEGAL ARGUMENT IN REPLY

As a preliminary matter, Plaintiff has failed to comply with LR II 7-3, which limits responsive briefs (except those opposing summary judgment) to no more than 24 pages. Plaintiff's Response in opposition totals 29 pages, of which nearly 14 pages are comprised almost entirely of single spaced block quotes. If the brief were properly spaced, it would far surpass even 29 pages. Althought a party is required to seek leave of court showing good case for exceeding page limits on or before the subject deadline, Plaintiff has still yet to file a motion seeking such relief. As the Court has previously reiterated in this case, a motion to exceed page limits is disfavored and will not be granted absent a showing of good cause. *See* ECF No. 23 at 7:20-8:2 (citing LR 7-3(c)). Because Plaintiff has simply ignored these procedural requirements, this Court should strike Plaintiff's Response for non-compliance.

In the event this Court is inclined to consider Plaintiff's non-compliant response, her arguments nevertheless fail to justify denying the relief that Defendant requests. This Court should strike the subject purportedly privileged documents because there is zero evidence that

CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

Defendant ever waived the protections of the attorney-client or work product privileges, nor that the crime fraud exception applies in this case.

### A.   Nevada law does not allow an attorney to obtain confidential privileged documents to gain an advantage in litigation.

Ignoring entirely that Plaintiff's counsel violated the rules of professional conduct and Nevada law, Plaintiff urges this Court to violate a basic tenet of American jurisprudence and allow Plaintiff to benefit from the use of confidential privileged documents. In representing a client, a lawyer "shall not…use methods of obtaining evidence that the violate the legal rights," of an opposing party. NRPC 4.4(a). It is "professional misconduct for a lawyer to "engage in conduct that is prejudicial to the administration of justice. NRPC 8.4(d).

Even where an attorney receives privileged documents ***unsolicited*** from an ***anonymous source***, the attorney must promptly notify opposing counsel "or risk being in violation of his ethical duties and/or disqualified as counsel." *See Merits Incentives, LLC v. Eighth Judicial Dist. Court*, 127 Nev. 689, 697 (2011). Although Defendant is not seeking disqualification of Plaintiff's counsel by way of the instant motion, that remedy is certainly available under Nevada law. At a minimum, this Court should decline Plaintiff's invitation to ratify such egregious misconduct.

The Court should ignore Plaintiff's attempts to bolster the reliability of the purported attorney-client communications by citing to a barrage of articles quoting the media outlets that published the stolen documents. Citations to hearsay statements by individuals who have significant incentive to misrepresent the reliability of stolen documents they published are not sufficient authentication. *See* Nev. Rev. Stat. 52.025. Defendant does not concede that the subject documents were published without alteration.

### B.   The attorney-client privilege is not waived through public disclosure of a stolen privileged document.

Plaintiff does not dispute that her counsel obtained the subject purportedly privileged documents from a cyber hacker, who is currently the target of an international criminal

CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

prosecution.  Plaintiff does however, assert that Defendant's alleged failure to properly guard against such cyber theft somehow constitutes a waiver of the privilege.  In making that argument, Plaintiff relies primarily on "*Teradata Corp. v. SAP SE*, 2019 US Dist. LEXIS 100337 (N.D. Cal.., Dec. 12, 2018)."  However, a review of the court's December 12, 2018 decision reveals that order is not the ruling on which Plaintiff purports to rely.  Upon request for clarification from Defense Counsel, Plaintiff's counsel provided a copy of a June 14, 2019 decision in the *Teradata* matter.  *See* email correspondence and attached June 14, 2019 opinion (2019 U.S. Dist. LEXIS 100337), true and accurate copies of which are attached hereto as Exhibit "A."  Plaintiff's summary of that order within the opposing brief is distorted at best and even worse, fails to mention subsequent discovery orders issued in the *Teradata* case that are directly on point to the issues at play here – all of which undermine Plaintiff's arguments regarding waiver of the attorney client and work product privileges.

Much like this case, Teradata brought suit against Defendant SAP based in significant part, upon information that the media outlet, Der Spiegel, published after SAP's internal documents and correspondence were hacked.   2019 U.S. Dist. Lexis 103337 at *2.  Although the magistrate there did initially find that SAP had waived any applicable privileges, the district judge overruled the magistrate's finding noting that the sole authority on which the finding of waiver was based "does not apply in the context of ***involuntary disclosure to a media outlet***." *Id.* at *5-6 (citing to *Dukes v. Wal-Mart Stores*, 01-cv-252 CRB(JSC), 2013 U.S. Dist. LEXIS 42740, 2013 WL 1282892 (N.D. Cal. March 26, 2013)(emphasis added)).

In *Dukes*, an attorney-client memo had been involuntarily leaked to the NY Times, which had then published an article discussing the memo at length.  Approximately eight months after the article was published, an unknown individual sent plaintiff's counsel a copy of the leaked memo.  Recognizing the memo was marked as privileged [just as are the attorney-client communications and work-product in this case], plaintiff's counsel in *Dukes* sequestered the memo, did not further review it and promptly sought a ruling on waiver from the court.  *Id.*

CHRISTENSEN LAW OFFICES
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

The district judge determined that waiver must be determined by the steps taken to maintain confidentiality prior to a leak, not based on whether anything was done to retrieve the privileged document[s] from the media outlet. *Id.*

The district judge in *Teradata* adopted this analytical framework from *Dukes* and returned the issue of waiver to the magistrate to resolve, "whether the steps SAP took with respect to the audit related [leaked] documents prior to the disclosure to Der Spiegel or the steps it took once it was on sufficient notice of the use of privileged information ***in this litigation*** were reasonable to maintain its assertion of privilege." 2019 U.S. Dist. LEXIS 100337*8(emphasis added). Ultimately, the magistrate concluded that because SAP had taken appropriate measures to maintain the confidentiality of the subject documents, it had not waived the applicable privileges. Case 3:18-cv-03670-WHO, ECF No. 172 (September 9, 2019) at 32-34. In particular, SAP required employee signatures on employment agreements promising to maintain the confidentiality of SAP materials, restricted access to the audit [leaked] materials and conspicuously designated audit related materials as confidential. *Id.* at 32.

SAP had also acted promptly upon learning that Teradata had possession of the privileged documents that had been stolen and was relying upon them in the litigation. *Id.* at 33-34. Shortly after receiving Teradata's production containing the privileged documents, counsel for SAP emailed opposing counsel alerting him to the privilege issue, sought return of the documents and requested relief from the court when Teradata refused. *Id.* Ultimately, the court concluded that SAP had taken appropriate precautions in safeguarding its confidential documents and had acted reasonably when it learned Teradata intended to use those documents against it in litigation. *Id.* at 36.

Plaintiff here has not proffered a shred of evidence that Defendant Ronaldo was ever even in possession of the subject documents. Plaintiff aptly points out that she herself was precluded from maintaining copies of the SCA and other documents related to the dispute but omits that Defendant Ronaldo was also likewise precluded from possessing such documents and

only counsel for both sides were to maintain the agreements.  ECF 57 at ¶ 13.11.   Plaintiff has also not offered any evidence the documents were leaked by Defendant or any of his agents for that matter.  In any case, procedural safeguards were negotiated by both sides and memorialized within the SCA.

Additionally, Defendant's counsel here likewise had numerous protections in place to secure client data and confidential communications  Defendant's lawyers maintained extensive, state-of-the-art safeguards and security measures to protect and secure client data and confidential communications, including the confidential data at issue in the instant matter.  *See* Declaration of Carlos Osorio De Castro, a copy of which is being submitted in camera herewith to maintain the confidentiality of Counsel's security measures and systems.  Moreover, all documents were marked "confidential" and/or "attorney-client privilege" or "attorney work product."  *See generally* Documents 0003-257, included within Exhibits 4-5 to Plaintiff's Opposition to Defendant's Motion to Compel Arbitration.

Defendant also promptly acted to protect the privileged documents from use in this litigation upon receipt of Plaintiff's Opposition to the Motion to Compel Arbitration, which attached the subject documents.  Within twenty four hours of receipt, Defense Counsel emailed Plaintiff's Counsel to inform him that documents purporting to invade the attorney-client and work product privileges had been attached to the opposition and should not be disclosed to either the public or this Court.  *See* Email from Peter S. Christiansen, Esq. to Les Stovall, Esq., dated September 24, 2019, and attached hereto as Exhibit "B."  The Parties thereafter met and conferred and Plaintiff's counsel agreed to stipulate that the subject documents remain sealed until this Court could decide the instant motion to strike and seal.

Prior to Plaintiff's counsel filing the subject documents with the Court, there was no reason to anticipate Plaintiff would attach privileged documents to a court filing.  At the time of the Futbol Leaks, there was no way to know this litigation would ensue, much less that Plaintiff's counsel would take affirmative steps to obtain stolen and purportedly privileged

CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

communications.  Futbol Leaks is already the subject of criminal prosecution and the instant matter had long ago been resolved by way of the SCA.

### C.    Defendant has never placed attorney-client communications or work product at issue in this case.

Despite that Defendant has consistently maintained the subject documents are not only privileged but also entirely *irrelevant* to whether this Court must compel arbitration,[2] Plaintiff contends Defendant has somehow waived the privilege by putting the documents at issue.  More specifically, Plaintiff asserts Defendant has placed at issue the substance of the documents purported to be privileged attorney client communications and work product by: 1) requiring Plaintiff to destroy evidence and communications related to the alleged assault; 2) responding to Plaintiff's insistence that she was incapacitated by asserting the attorney client and work product privileges to strike internal communications regarding Defendant's alleged knowledge regarding Plaintiff's state of mind; and 3) responding to Plaintiff's argument that the SCA is void for illegality by claiming privilege to strike internal communications that Plaintiff contends establish the purpose of the agreement was for an unlawful purpose.

The Nevada Supreme Court has consistently held the "at-issue" waiver doctrine only applies where *the client places at issue* the substance or content of a privileged communication. *Wynn Resort, Ltd., v. Eighth Judicial Dist. Court*, 133 Nev. 369, 380 (2017)(citing *Wardleigh v. Second Judicial Dist. Court*, 111 Nec. 345, 354 (1995)).  The advice of counsel is placed at issue where a client asserts a particular defense and then attempts to prove that defense by disclosing or describing an attorney client communication.  *Id.* (internal citations omitted).  Mere testimony that the communications occurred without actual disclosure of the subject matter, will not render the privilege waived.  *Id.* at 381(citing *Lisle v. State*, 113 Nev. 679, 701,

CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

---

[2]  This issue is more fully briefed in Plaintiff's Reply in Support of Motion to Compel Arbitration and Stay Proceedings, ECF No. 50, at Section B and E.  For the sake of brevity, Plaintiff does not repeat those arguments and instead, hereby incorporate them herein by reference.

941 P.2D 459, 474 (1997)(overruled on other grounds by *Middleton v. State*, 114 Nev. 1089, 1117 n. 9); *United States v. O'Malley*, 786 F.2d 786, 794 (7th Cir. 1986)).

Defendant maintains the subject privileged documents are not relevant to whether this Court should compel arbitration.  Any knowledge that Defendant and/or his counsel may have possessed regarding Plaintiff's mental state would have been speculative at best and cannot establish whether or not she was legally incapacitated.  Defendant and his counsel had no direct knowledge or interaction with Plaintiff, who was represented by counsel and under the care of a licensed therapist.  However, even if the subject documents had some marginal relevance, it is only the Plaintiff that has put such documents at issue by asserting incapacity, not Defendant.

Defendant has never disclosed any attorney-client communications or work product.  Far from relying on any such documents, Defendant has steadfastly maintained the subject documents are irrelevant, privileged, inadmissible and should be stricken from the record.  By contrast, Plaintiff's counsel affirmatively sought out Defendant's privileged attorney client communications and work product and now attempts to rely on those stolen and privileged documents to support Plaintiff's claims.  Defendant has never disclosed the subject documents and in no way intends to rely on attorney-client communications or work product.  Accordingly, Defendant has never waived his right to assert the attorney-client or work product privileges.

**D.    The crime fraud exception does not apply under the facts of this case.**

Plaintiff asserts that the crime fraud exception to the attorney-client privilege applies in this case because Defendant's attorneys represented him in procuring the SCA, which memorialized the civil settlement between Plaintiff and Defendant.  Despite that Plaintiff obtained counsel to bring a civil claim and it was her counsel that initially reached out to Defendant's lawyers,[3] Plaintiff now asserts that mediation and settlement of her claim somehow amounts to a continuing scheme by Defendant to defraud Plaintiff and conceal the alleged

---

[3] *See* email correspondence from Michaela Tramel to Simon Smith, a copy of which is attached hereto as Exhibit "C."

CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

commission of an assault.[4]  For the first time, Plaintiff accuses Defendant's lawyers of the "crimes of compounding, misprison of a felony and obstruction of justice." ECF No. 61 at 28:7-11.

These very serious allegations appear nowhere in Plaintiff's Complaint and none of Defendant's lawyers or agents are named as defendants in this action.  This Court should also note that Plaintiff, in 2018, requested that the Las Vegas Metropolitan Police Department ("LVMPD") reopen the investigation into her allegations.  In July 2019, the Clark County District Attorney's office issued a press release stating that the investigation had been completed and no criminal charges would be filed against Defendant.  *See* Press Release attached hereto as Exhibit "D."  Tellingly, no charges have ever been filed against Defendant's lawyers or agents.

A party asserting the crime fraud exception must show that 1) the client was engaged in or planning a criminal or fraudulent scheme when it sought the advice of counsel in order to further that scheme; and 2) the attorney-client communications at issue are sufficiently related to and were made in furtherance of the intended or present continuing illegality.  *In re Napster, Inc., v. Copyright Litig.*, 479 F.3d 1078, 1090 (9th Cir. 2007), *abrogated on other grounds by Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100 (2009)).  Before a court engages in even an *in camera review* of privileged documents to assess whether the crime-fraud exception applies, there must be a factual basis adequate to support a reasonable person's good faith belief that such inspection will reveal evidence to establish the exception should be applied.  *U.S. v. Zolin*, 491 U.S. 554, 572 (1989)(citing *Caldwell v. Dist. Court*, 644 P.2d 26, 33 (Colo. 1982)).

When determining whether to conduct an in camera review, the court is not to consider materials that have been determined to be privileged.  *Id.* at 573.  Particularly relevant here, the

---

[4]  Defendant's Motion to Dismiss Plaintiff's fraud and coercion claims has been fully briefed and remains pending at this time.  ECF No. 29 (Motion to Dismiss) and ECF No. 52 (Reply in Support of Motion to Dismiss).  For the sake of brevity, Defendant incorporates by reference herein, ECF No. 29 at Sections II, III  IV(A), IV(C) and IV(D)(2); and ECF No. 52 at I(A)(1), I(A)(3) and I(C).

CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

1   Ninth Circuit has consistently recognized that "[t]he fact that a party has taken steps to structure

2   a business transaction to limit its liability does not suffice, without more, to establish that the

3   crime fraud exception applies. *In re Napster*, 479 F.3d at 1098 (citing *In re BankAmerica Corp.*

4   *Sec. Litig.*, 270 F.3d 639, 643-44 (8th Cir. 2001)).

5           Plaintiff did not seek this Court's guidance as to the applicability of the crime-fraud

6   exception prior to obtaining the subject documents and attaching them to court filings.  Plaintiff

7   did however, agree to maintain the subject documents under seal until pending a determination

8   of the instant motion.  Plaintiff does not specify whether she is seeking to have this Court

9   conduct an *in camera* review to assess application of the privilege or whether she is requesting

10  approval for outright disclosure.  Given Plaintiff's failure to seek advance permission to obtain

11  the purportedly privileged documents in the first instance, this Court should decline to review

12  the documents and strike them entirely.

13          Defendant maintains there is zero evidence of fraud or any ongoing criminal conduct but

14  this Court is nevertheless not permitted to consider the privileged documents in order to assess

15  whether to conduct an *in camera* review.  Plaintiff cannot point to a shred of independent

16  evidence of any ongoing crime or fraud.  Rather, this Court may look only to the express

17  language of the SCA, which cannot constitute the basis for fraud because it is nothing more than

18  evidence the parties mutually agreed to resolve their dispute, which inherently serves to limit a

19  defendant's liability.

20          Moreover, by Plaintiff's logic, no defendant facing a civil lawsuit for allegations of

21  assault would ever be able to retain counsel to defend himself – rather the mere act of retaining

22  counsel to defend and resolve the plaintiff's claim would constitute a conspiracy to conceal the

23  alleged wrongdoing.  In 2009, Defendant Ronaldo was never contacted by law enforcement

24  regarding Plaintiff's allegations – presumably because she never gave his name to the detectives

25  assigned to her case.  *See* Press Release, attached hereto as Exhibit "D."  Instead, just one

26  month and three days after the alleged assault, Plaintiff's former lawyer reached out not to law

CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

enforcement, but to an individual she believed to be Defendant Ronaldo's lawyer and informed him she represented a plaintiff in Las Vegas "in a case against Christiano [sic] Ronaldo." *See* Exhibit "C." There is zero indicia Defendant Ronaldo retained counsel in order to further a criminal or fraudulent scheme. By contrast, it was Plaintiff who initiated a civil claim, which caused Defendant to have to retain counsel to defend himself, ultimately resulting in the parties agreeing to mediate and enter into a civil settlement.

E. **MIM is a party to the SCA along with Defendant Ronaldo and all communications and work product are protected by the common interest privilege.**

In Plaintiff's last bid to utilize stolen purported attorney-client communications and work product, she claims disclosure to MIM, a so-called "third party" waived the applicable privileges. Far from an outside third party, MIM is a party to the SCA and the owner of the rights to Defendant Ronaldo's public image. Defendant disclosed MIM as an interested party at the outset of this litigation. *See* ECF No. 9 (Certificate of Interested Parties). With respect to Plaintiff's claims, mediation and negotiation of the SCA, both MIM and Defendant Ronaldo were represented by the same law firm, operating under a joint defense. *See* ECF No. 57, Exhibits A and B (SCA and Confidential Side Letter Agreement). The Confidential Side Letter Agreement expressly indicates that Defendant Ronaldo and MIM were represented by the same counsel. *Id.* at Exhibit B, p. 3.

The Ninth Circuit has long held that the joint defense privilege is "an extension of the attorney-client privilege." *U.S. v. Gonzalez*, 669 F.3d 974, 978 (9th Cir. 2012) (citing *U.S. v. Henke*, 222 F.3d 633, 637 (9th cir 2000)). The joint defense privilege protects confidential communications between parties and counsel and applies where a joint defense effort or strategy has been decided upon and undertake by the parties and their respective counsel. *Id.* Thus, the joint defense privilege would apply even if Defendant Ronaldo and MIM were represented by separate counsel. It certainly applies here where both were represented by the same lawyers, both were parties to the same settlement agreements and both were subject to the

CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

1  same confidentiality and non-disclosure provisions.  As such, any disclosure of attorney client

2  communications and work product to MIM cannot constitute waiver of Defendant Ronaldo's

3  privileges.

4  **II.    CONCLUSION**

5        Defendant respectfully requests that this Court enter an order striking documents attached

6  to Plaintiff's Opposition to Defendant's Motion to Compel Arbitration [ECF 44] within Exhibits

7  4-5 thereto and identified as Bates Nos. 0003-0257 as well as any references to such documents.

8  Defendant further requests that the subject documents and all references to those documents,

9  remain sealed with the exception of Bates Nos 0121-26, which do not contain reference to

10  privileged documents already within the public domain.

11        Plaintiff improperly obtained documents from an alleged cyber hacker after her counsel

12  specifically sought attorney-client communications and work product.  Plaintiff, through counsel,

13  then knowingly disclosed what she asserts are communications among Defendant, his counsel

14  and investigators.  Plaintiff cannot authenticate these documents, which would not be

15  discoverable, much less admissible.  Because the subject documents are privileged and were

16  unlawfully obtained, they should never have been attached as exhibits to a judicial filing and are

17  not properly before this Court.  Plaintiff's improper attempts to eviscerate the attorney-client

18  privilege and use this Court as a vehicle to disclose confidential and privileged documents should

19  not be tolerated.

20        Dated this 11th day of December, 2019.

21

22                              CHRISTIANSEN LAW OFFICES

23  By_____

24        PETER S. CHRISTIANSEN, ESQ.
        KENDELEE L. WORKS, ESQ.

25        *Attorneys for Defendant Cristiano Ronaldo*

26

27

28

1

**CHRISTIANSEN LAW OFFICES**
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

Pursuant to FRCP 5 and LR-5.1, I certify that I am an employee of CHRISTIANSEN LAW OFFICES, and that on this 11th day of December, 2019, I caused the foregoing document entitled **DEFENDANT'S REPLY IN SUPPORT OF MOTION TO STRIKE AND MAINTAIN UNDER SEAL INADMISSIBLE DOCUMENTS ATTACHED TO PLAINTIFF'S OPPOSITION TO MOTION TO COMPEL ARBITRATION [ECF 44]** to be filed and served via the Court's CM/ECF electronic filing system upon all registered parties and their counsel.



# Exhibit "A"

# Exhibit "A"

| **Subject:** | RE: CR adv Mayorga - opp to motion to strike |
|---|---|
| **Date:** | Tuesday, December 3, 2019 at 1:59:16 PM Pacific Standard Time |
| **From:** | Maria Hernandez |
| **To:** | Kendelee Works, Les Stovall |
| **CC:** | Peter S. Christiansen, Jonathan Crain |
| **Attachments:** | image001.jpg, 2019_12_03_13_55_44.pdf |

Hi Kendelee,

Enclosed please find the case/order cited in our opposition to strike.

Should you have any questions or concerns, please do not hesitate to contact me.

Sincerely,

**Maria Hernandez**



maria@lesstovall.com
www.lesstovall.com
**Stovall & Associates**
2301 Palomino Lane
Las Vegas, NV 89107
P: (702) 258-3034
F: (702) 258-0093

THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED, AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND/OR EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING THE MESSAGE TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED

**From:** Kendelee Works <kworks@christiansenlaw.com>
**Sent:** Tuesday, December 3, 2019 1:24 PM
**To:** Maria Hernandez <maria@lesstovall.com>; Les Stovall <les@lesstovall.com>
**Cc:** Peter S. Christiansen <pete@christiansenlaw.com>; Jonathan Crain <jcrain@christiansenlaw.com>
**Subject:** CR adv Mayorga - opp to motion to strike

Hi Maria,

I am having some trouble locating one of the cases/orders cited in the opposition to our motion to strike privileged documents. At page 20:24, there is a citation to *Teradata v. SAP SE*, 2019 U.S. Dist. LEXIS 100337 (N.D. Cal. Dec. 12, 2018). Would it be possible for you email me a copy of that decision?

Thank you,
Kendelee

 Neutral
As of: December 3, 2019 9:48 PM Z

# Teradata Corp. v. SAP SE

United States District Court for the Northern District of California

June 13, 2019, Decided; June 14, 2019, Filed

Case No. 18-cv-03670-WHO

**Reporter**
2019 U.S. Dist. LEXIS 100337 *

TERADATA CORPORATION, et al., Plaintiffs, v. SAP SE, et al., Defendants.

**Prior History:** Teradata Corp. v. SAP SE, 2018 U.S. Dist. LEXIS 209872 (N.D. Cal., Dec. 12, 2018)

## Core Terms

disclosure, documents, steps, waive, holder, memo, involuntary, privileged, Disputes, privileged information, media outlet, confidentiality, audit-related

**Counsel:** [*1] For Teradata Corporation, Teradata US, Inc., Teradata Operations, Inc., Plaintiffs: Bradley Stuart Lui, Mark L. Whitaker, LEAD ATTORNEYS, Fahd H Patel, Morrison and Foerster, Washington, DC; Corinna Joy Alanis, LEAD ATTORNEY, Morrison Foerster LLP, Washington, DC; Daniel Pierre Muino, LEAD ATTORNEY, Morrison & Foerster LLP, San Francisco, CA; George Brian Busey, LEAD ATTORNEY, Morrison and Foerster LLP, Washington, DC; Mary Prendergast, LEAD ATTORNEY, Morrison and Foerster LLP, San Diego, CA; Brian L. Hazen, Morrison Foerster LLP, San Diego, CA; Wendy Joy Ray, Morrison & Foerster LLP, Los Angeles, CA; Bryan Joseph Wilson, Morrison & Foerster LLP, Palo Alto, CA.

For SAP SE, SAP America, Inc., SAP Labs LLC, Defendants: Tharan Gregory Lanier, LEAD ATTORNEY, Jones Day, Palo Alto, CA; David J. Ball, Jr., Kenneth A. Gallo, PRO HAC VICE, Paul, Weiss, Rifkind, Wharton & Garrison LLP, Washington, DC; Joshua Lee Fuchs, PRO HAC VICE, Jones Day, Houston, TX; Nathaniel Peardon Garrett, Jones Day, San Francisco, CA; William Michael, PRO HAC VICE, Paul, Weiss, Rifkind, Wharton and Garrison LLP, New York, NY.

**Judges:** William H. Orrick, United States District Judge.

**Opinion by:** William H. Orrick

## Opinion

### ORDER GRANTING RELIEF FROM [*2] NON-DISPOSITIVE PRETRIAL ORDER

Re: Dkt. No. 102

SAP seeks relief from the Hon. Elizabeth Laporte's ruling on related discovery disputes. *See* Disputes at Dkt. Nos. 91, 93; Order at Dkt. No. 102. The key undisputed facts underlying that Order (and the Disputes) are that: (1) on September 4, 2015, the German newspaper *Der Spiegel* published an article reporting that one of SAP's internal auditors, later identified as Dr. Thomas Waldbaum, concluded that SAP misappropriated proprietary and confidential information from Teradata that SAP's engineers obtained during a joint venture (Second Amended Complaint ¶ 50); and (2) in early 2019 disclosures made by Teradata confirmed that Teradata had possession of copies of SAP's audit-related documents in its possession and that Teradata received those documents from a source at *Der Spiegel*.

In the Disputes raised before Judge Laporte, SAP claimed that the audit-related documents in Teradata's possession are covered by the attorney-client privilege, and sought an order requiring their return to SAP. Dkt. No. 93. Teradata opposed, arguing that the documents at issue were not privileged (under either German or U.S. law), and even if privileged, the privilege [*3] was either waived or subject to the crime-fraud exception. As such, Teradata also sought an order requiring SAP to produce additional documents related to the audit. Dkt. No. 91.

Judge Laporte resolved the Disputes by finding that SAP had waived any potentially applicable privilege by failing to take reasonable steps to investigate what

documents *Der Spiegel* had and to recover the documents from *Der Spiegel*. Dkt. No. 102. Reaching an issue not briefed by the parties, Judge Laporte also concluded that SAP's waiver effectuated a broad subject-matter waiver so that SAP was required to produce additional audit-related documents in its possession. *Id.*

In finding waiver, the only case Judge Laporte relied on was *United States v. de la Jara*, 973 F.2d 746 (9th Cir. 1992). There, the Ninth Circuit held that a criminal defendant whose attorney-client privileged information was seized by law enforcement executing search warrants failed "to pursue all reasonable means of preserving the confidentiality of the privileged matter," for example by filing a motion to suppress or a motion to return evidence, "during the six month interlude between its seizure and introduction into evidence." *Id.* at 750. In those circumstances, the district court did not abuse its discretion [*4] in concluding that the privilege had been waived by the defendant's inaction.[1]

However, *de la Jara*'s rationale and import has been limited by courts, including at least one district court in the Ninth Circuit, to situations where the involuntary disclosure is made in connection with an investigation or other legal proceeding as in *de la Jara*. *See, e.g., S.E.C. v. Lavin*, 111 F.3d 921, 931, 324 U.S. App. D.C. 162 (D.C. Cir. 1997) (recognizing that "[r]ules of privilege are designed to afford its holder the right to protect himself or herself against the use of privileged materials in legal proceedings"); *see also Fodor v. Blakey*, CV1108496MMMRZX, 2012 U.S. Dist. LEXIS 197165, 2012 WL 12893986, at *8 (C.D. Cal. Dec. 31, 2012) (noting the *de la Jara* "court did not find that failing to object to the disclosure of a marital communication *in a non-courtroom setting* waives the privilege" and refusing to find waiver when nothing in the record suggested that defendant knew "litigation was imminent" from party to whom privileged disclosures had been make "or that he needed to take steps to protect the communications with his ex-wife from further disclosure") (emphasis in

original).

The application of *de la Jara* within the Ninth Circuit has typically been confined to analyses of whether a privilege holder undertook reasonable efforts [*5] to protect the privilege or limit use of privileged information following either the seizure of information by the government or inadvertent disclosure within a legal proceeding. *See, e.g., U.S. v. W. Titanium, Inc.*, 08-CR-4229-JLS, 2010 U.S. Dist. LEXIS 101448, 2010 WL 3789775, at *6 (S.D. Cal. Sept. 27, 2010) (applying *de la Jara's* reasonableness standard to assess whether "[d]efendants have made sufficient efforts reasonably designed to protect and preserve their privilege with respect to" documents seized by the government); *Hynix Semiconductor Inc. v. Rambus Inc.*, CV-00-20905-RMW, 2008 U.S. Dist. LEXIS 11764, 2008 WL 350641, at *2 (N.D. Cal. Feb. 2, 2008) (finding *de la Jara's* "reasonable efforts" standard satisfied where defendant "has strenuously objected every time it has been ordered to produce allegedly privileged documents" in litigation).

I conclude that the portion of the *de la Jara* analysis focusing on what steps the privilege holder takes after an involuntary disclosure does not apply in the context of involuntary disclosure to a media outlet. None of the cases addressing whether involuntary disclosure to a media outlet waives privilege consider whether the privilege holder pursued any action *against* the media outlet to seek the return or further limit the use of the privileged information. *See* 2008 U.S. Dist. LEXIS 11764, [WL] at *4 (citing cases holding that involuntary [*6] disclosure of information subsequently published by newspapers did not waive privilege, as long as reasonable steps were taken to preserve information's confidentiality prior to the disclosure). But in addressing a very similar factual context, the Hon. Jacqueline Corley determined in *Dukes v. Wal—Mart Stores*, 01-cv-252 CRB(JSC), 2013 U.S. Dist. LEXIS 42740, 2013 WL 1282892 (N.D. Cal. March 26, 2013), that the involuntary leak of an attorney-client memo to the *New York Times*, who subsequently published an article discussing the memo at length, did not waive the privilege to allow for use of the memo in litigation. A copy of the leaked memo was later sent by an unknown person to plaintiffs' counsel eight months after the publication of the article in the *New York Times*. Plaintiffs' counsel recognized that the memo was marked as privileged, sequestered it and did not further review it, and promptly sought a ruling on waiver from the District Court. Judge Corley analyzed the evidence defendants submitted establishing the steps they took to

---

[1] The Order at issue also cited to *ADR Tr. Corp. v. Dean*, 813 F. Supp. 1426 (D. Ariz. 1993). There, an unexplained disclosure of a privileged memo to *The Washington Post* did not waive the holder's privilege when the holder demonstrated that it took "precautions to secure" the memo's confidentiality prior to disclosure and that, despite an investigation, the source of the leak was unidentified and, therefore, no "inference" that its disclosure had been made by someone with authority to waive the privilege could be made. *Id.* at 1429-30.

maintain the memo's confidentiality *prior* to its leak, not whether they had done anything to retrieve the document from the *New York Times*. Judge Corley concluded that the memo's disclosure to the *Times* did not waive the privilege. [*7] 2008 U.S. Dist. LEXIS 11764, [WL] at * 5.

I agree with Judge Corley's reasoning and analysis. At least in this context, where the involuntary disclosure occurred to a media outlet, I hold that waiver must be analyzed considering the steps SAP holder took *prior* to the involuntary disclosure, not on the steps SAP took to seek return from, or limit the use of documents by *Der Spiegel* after that disclosure.[2]

Once a law enforcement investigation or civil litigation commences, however, the privilege holder is required to take reasonable steps to protect its privilege. *See de la Jara*, 973 F.2d at 749 n.2 (recognizing the government's argument that de la Jara "could have filed, for example, a motion to suppress the letter under Fed.R.Crim.P. 12(b)(3), or a motion for return of property under Fed.R.Crim.P. 41(e)" to protect his privilege). Any argument that SAP should have known that Teradata had access to unpublished, privileged information given Teradata's allegations in the Complaint and therefore that SAP should have moved with more speed to protect its privilege and prevent use of that information in this case is not foreclosed. That argument, if raised by the parties, should be resolved by Judge LaPorte in the first instance.

SAP's motion for relief from the nondispositive Order is GRANTED. [*8] The Disputes are returned to Judge Laporte for resolution of whether the steps SAP took with respect to the audit-related documents prior to the disclosure to *Der Spiegel* or the steps it took once it was

on sufficient notice of the use of privileged information in this litigation were reasonable to maintain its assertion of privilege.[3]

**IT IS SO ORDERED.**

Dated: June 13, 2019

/s/ William H. Orrick

William H. Orrick

United States District Judge

---

**End of Document**

---

[2] As the experts in German law presented by the parties to me (debating an issue that was not raised before Judge Laporte) demonstrate, whether a German entity had an effective or potentially effective recourse in 2015 to seek return or to limit use of documents involuntarily disclosed to a media outlet is questionable and, even if such recourse existed, depends on whether the documents disclosed matters of "public concern." *See* Dkt. Nos. 102-1, 108-1. This proves the *Levin's* court's concern and recognition of "[t]he inadvisability of adopting an affirmative duty" absent use or disclosure in judicial proceedings, "given the difficulties that arise in determining what would constitute sufficient preemptive measures, as well as the unfairness and wastefulness of requiring the privilege holder to take affirmative action likely to prove unnecessary or ineffective." *S.E.C. v. Lavin*, 111 F.3d at 931.

[3] The parties dispute whether U.S. or German privilege law governs the documents and whether the audit-related documents were, in fact, privileged under the applicable law. This Order does not reach or touch upon the resolution of those questions. Nor does this Order reach or touch upon whether the crime-fraud or the at issue-waiver doctrines vitiate the assertion of privilege. If Judge Laporte determines that waiver does not apply, she may need to address these other issues at the heart of this dispute.

# Exhibit "B"

# Exhibit "B"

**From:** <pete@christiansenlaw.com>
**Date:** September 24, 2019 at 2:51:05 PM PDT
**To:** <les@lesstovall.com>
**Cc:** Kendelee Works <kworks@christiansenlaw.com>, Jonathan Crain
<jcrain@christiansenlaw.com>, Whitney Barrett <wbarrett@christiansenlaw.com>
**Subject: KM v. CR**
Mr. Stovall-

Upon review of your untimely Opposition to the Motion to Compel Arbitration, it appears you
have attached documents you intentionally obtained which purport to invade my client's
attorney client and work product privilege.

We anticipate the Court is going to order you to refile both of your oppositions to comply with
her earlier order on sealing the record.  I strongly urge you to NOT to disclose to the court or
the public this privileged information and to immediately remove all reference to it from the
body of your oppositions.

Requesting an opposing party's privileged information is an ethical violation, a violation of the
FRCP, potentially a crime and entirely inappropriate.  I would appreciate a written response by
close of business today so I may advise my client how to proceed.  A sanctions motion is
presently being drafted while considering all other available remedies.


Peter S. Christiansen, Esq.
Christiansen Law Offices
810 S. Casino Center Boulevard
Las Vegas, NV 89101
Phone (702) 240-7979
Fax (866) 412-6992

This email is intended only for the use of the individual or entity to which it is addressed, and
may contain information that is privileged, confidential and/or exempt from disclosure under
applicable law.  If the reader of this email is not the intended recipient, or the employee or
agent responsible for delivering the email to the intended recipient, you are hereby notified
that any dissemination, distribution or copying of this communication is strictly prohibited.

# Exhibit "C"

# Exhibit "C"

----- Original Message -----
From: Simon Smith
To: 'michaela@tramellaw.com' <michaela@tramellaw.com>
Sent: Fri Jul 17 06:42:36 2009
Subject: Re:

Sure Michaela, but what's it about? I'm in trial this week and some of next so focused on
that, but tell me when's a good time for you (6pm ish or later my time?) and I'll call.
Simon

----- Original Message -----
From: michaela@tramellaw.com <michaela@tramellaw.com>
To: Simon Smith
Sent: Fri Jul 17 03:33:17 2009
Subject: Re:

Hi Simon,

Thanks for getting back to me so quickly.  I'm sure you'd like to talk with Mr. Renaldo
first, but would you be willing to chat with me about this case some time next week?

Sincerely,

Michaela

Simon Smith writes:

> Dear Michaela, yes I am his lawyer. Best, Simon
>
> ----- Original Message -----
> From: michaela@tramellaw.com <michaela@tramellaw.com>
> To: Simon Smith
> Sent: Thu Jul 16 18:14:20 2009
>
> Dear Mr. Smith,
>
> My name is Michaela Tramel and I represent a Plaintiff in Las Vegas,
> Nevada in a case against Christiano Ronaldo.  I was wondering if you
> still represent Mr. Ronaldo?
>
> Thank you very much for your time and attention to this matter.
>
> Most sincerely,
>
> Michaela E. Tramel, Esq.
> TRAMEL LAW GROUP LLC
> 1489 W. Warm Springs Road Suite 110
> Henderson, Nevada 89014
> Phone: 702.233.2244
> Fax: 702.617.2244
> www.tramellaw.com
>
>
> Simon Smith
> Partner

1

> Simon.Smith@schillings.cc   :
>
>> Corporate reputation protection
>> Commercial dispute resolution
>> Personal reputation & privacy protection Family & matrimonial Legal
>> tools News & updates
>
>
>
>
>
> The leading law firm protecting the reputations of high-profile
> individuals, corporates and brands Schillings
> 41 Bedford Square
> London
> WC1B 3HX
> Direct Line: +44 (0)20 7034 9114
> Main Switch Board: +44(0)20 7034 9000
> Fax: +44(0)20 7034 9200
> DX Number: 89265 (Soho Square 1)
> Online: http://www.schillings.co.uk
> Regulated by the Solicitors Regulation Authority
>
>
>
>
>
>
>
>
> _____
> _____ The Information in this Internet email is confidential
> and may be legally privileged. It is intended solely for the addressee. Access to this
Internet email by anyone else is unauthorised. If you are not the intended recipient, any
disclosure, copying, distribution or any action taken or omitted to be taken in reliance
on it, is prohibited and may be unlawful.
>
> This email has been scanned by the MessageLabs Email Security System.
> For more information please visit http://www.messagelabs.com/email
>
>
>
> This email has been scanned by the MessageLabs Email Security System.
> For more information please visit http://www.messagelabs.com/email
>

Michaela E. Tramel, Esq
TRAMEL LAW GROUP LLC
1489 W. Warm Springs Road Suite 110
Henderson, Nevada 89014
Phone: 702.233.2244
Fax: 702.617.2244
www.tramellaw.com

This email has been scanned by the MessageLabs Email Security System.
For more information please visit http://www.messagelabs.com/email

This email has been scanned by the MessageLabs Email Security System.
For more information please visit http://www.messagelabs.com/email

# Exhibit "D"

# Exhibit "D"



**CLARK COUNTY**
# OFFICE OF THE DISTRICT ATTORNEY
## STEVEN B. WOLFSON
District Attorney

200 Lewis Avenue • Las Vegas, NV 89101 • 702-671-2500 • Fax: 702-455-2294 • TTY and other relay services: 711

| MARY-ANNE MILLER | CHRISTOPHER LALLI | ROBERT DASKAS | JEFFREY J. WITTHUN | BRIGID J. DUFFY |
|---|---|---|---|---|
| *County Counsel* | *Assistant District Attorney* | *Assistant District Attorney* | *Director D.A. Family Support* | *Director D.A. Juvenile* |

# NEWS RELEASE

Contact:   Audrie Locke
           Clark County District Attorney's Office

Phone:          (702) 671-2500
Fax:            (702) 868-2415
E-mail:         Media@ClarkCountyDA.com

**For Immediate Release**                                                      **July 22, 2019**

## Clark County District Attorney Declines to Prosecute 10-Year-Old Sexual Assault Allegation Against Cristiano Ronaldo

The Clark County District Attorney's Office announced today that it will decline to prosecute a 10-year-old sexual assault allegation against Cristiano Ronaldo.

On June 13, 2009, a female victim ("V") placed a call to the Las Vegas Metropolitan Police Department and reported that she had been the victim of sexual assault. Members of law enforcement responded to her location to take a crime report. Police transported V to the hospital so that a sexual assault examination could be conducted.

A short time later, sexual assault detectives arrived at the hospital and made contact with V. Although she knew who the person was who assaulted her, V refused to identify him or disclose where the crime occurred. As a result, the police were unable to follow investigative protocols for sexual assault cases or to conduct any meaningful investigation. Without knowing the identity of the perpetrator or the location of the crime, detectives were unable to search for and impound vital forensic evidence. In addition, video evidence, showing interactions between the victim and perpetrator before and after the alleged crime, was lost. The criminal investigation was closed.

V and Cristiano Ronaldo, through their respective attorneys, eventually reached a civil settlement related to this matter in 2010. For the next eight years, law enforcement heard nothing more from V regarding the crime or the perpetrator.

On August 28, 2018, V contacted the Las Vegas Metropolitan Police Department, asking that her sexual assault investigation be reopened, naming Cristiano Ronaldo as the offender. In spite of the passage of over nine years, Metro investigated her allegations.

A Request for Prosecution was submitted to the District Attorney's Office on July 8, 2019. Based upon a review of the information presented at this time, the allegations of sexual assault against Cristiano Ronaldo cannot be proven beyond a reasonable doubt. Therefore, no charges will be forthcoming.