# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| KATHRYN MAYORGA,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>CRISTIANO RONALDO,<br><br>　　　　　Defendant. | Case No. 2:19-cv-00168-JAD-DJA<br><br>**REPORT AND RECOMMENDATION** |

Presently before the Court are the following motions and associated briefing:

- Defendant's Motion to Compel Arbitration and Stay Proceedings (ECF No. 26), sealed version (ECF No. 27), filed on August 8, 2019.  Plaintiff filed a Response (ECF No. 43) and Errata (ECF No. 44) on September 23-24, 2019.  Defendant filed a Reply (ECF No. 50), sealed version (ECF No. 51), on October 14, 2019.

- Defendant's Motion to Dismiss (ECF No. 29) and Sealed Notice (ECF No. 30), filed on August 16, 2019.  Plaintiff filed a Response (ECF No. 41) on September 20, 2019.  Defendant filed a Reply (ECF No. 52) on October 14, 2019.

- Defendant's Motion to Strike (ECF No 55), filed on November 6, 2019.  Plaintiff filed a Response (ECF No. 61) on November 27, 2019 and Motion for Leave to File Excess Pages (ECF No. 66) on December 13, 2019.  Defendant filed a Reply (ECF No. 64) on December 11, 2019.

- Plaintiff's Motion to Appoint Guardian Ad Litem (ECF No. 58), filed on November 20, 2019.  No response was filed by Defendant.

The Court finds this matter properly resolved without a hearing.  *See* Local Rule 78-1.

/ / /

/ / /

## I. BACKGROUND

This case arises from Plaintiff's allegations that Defendant sexually assaulted Plaintiff. (Compl. ECF No. 1). Plaintiff alleges that following the assault, the parties agreed to participate in mediation. (*Id.*) The mediation resulted in a Settlement and Confidentiality Agreement ("SCA"). (*Id.*) Plaintiff further alleges that because of the trauma resulting from the assault, Plaintiff lacked the capacity to enter into such an agreement. (*Id.*) As a result, Plaintiff's complaint includes causes of action for battery, intentional infliction of emotional distress, coercion and fraud, abuse of a vulnerable person, racketeering and civil conspiracy, defamation, abuse of process, negligence, and breach of contract. (*Id.*) Plaintiff also requests declaratory relief that the SCA be declared void and that she be excused from performance. (*Id.*) Further, Plaintiff requests that she be appointed a guardian ad litem (ECF No. 58).

Defendant seeks to move this matter to arbitration pursuant to the SCA, stay these proceedings pending the outcome of arbitration, and dismiss the complaint. (ECF Nos. 26 and 29). Plaintiff opposes moving her claims to arbitration on the grounds that she lacked capacity to contract, was fraudulently induced to sign the SCA, the SCA is void in contravention of public policy as it was made in consideration of concealing a crime or tortious conduct, and against Nevada's public policy prohibiting the use of non-disclosure and arbitration agreements for sexual assault claims. (ECF No. 43). Defendant replies that Plaintiff's challenges to the SCA as a whole must be determined by an arbitrator, not the Court. (ECF No. 51).

## II. DISCUSSION

### A. Choice of Law

The parties dispute what the applicable law is for determining Defendant's request to compel arbitration. Defendant maintains it is Nevada law while Plaintiff contends it is the Federal Arbitration Act ("FAA"). The Court notes that the parties' arguments in the briefing on this choice of law issue underscored their lack of understanding of substantive arbitration law. For example, Defendant conclusorily states that "[b]ecause the SCA does not involve commerce, the FAA does not apply" and cites *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 38 U.S. 395 (1967), in support of his proposition that the FAA does not apply here. (ECF No. 51, 7:25-26).

It is unclear how Defendant could be correctly interpreting *Prima Paint* to support that conclusion. Here, the SCA involves an exchange of money for a release of rights by one out-of-state resident and one Nevada resident, which would fall within the FAA's coverage. *See, e.g., Citizens Bank v. Alafabco, Inc. et al.*, 539 U.S. 52 (2003) (finding debt-restructuring agreements that were executed in Alabama by Alabama residents were contracts evidencing transactions involving commerce that were enforceable under the FAA).

Similarly, Plaintiff just as conclusorily states that the mere fact that Plaintiff has raised a challenge to her capacity to contract automatically places this dispute within the FAA's purview. (ECF No. 43, 1: 23-25). She cites to *Spahr v. Secco*, 330 F.3d 1266 (10th Cir. 2003) and *Buckeye Check Cashing, Inc. v. Cardegna et al.*, 546 U.S. 440 (2006) in support of her proposition. Although she incorrectly labels *Spahr* as a Ninth Circuit case, it was actually issued by the Tenth Circuit, and found that a mental capacity challenge fell to the court to resolve as it goes to the making of the agreement to arbitrate under FAA § 4. 330 F.3d at 1273.

Careful review of *Spahr* reveals that the Tenth Circuit did not hold – nor is there binding Ninth Circuit authority holding – that any mental capacity challenge made by a plaintiff automatically triggers the FAA <u>over a choice of law provision selecting state law</u>. Indeed, there is no doubt that parties can include a delegation clause that submits issues of arbitrability or enforceability to an arbitrator rather than the court. *See, e.g., Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 73 (2010). In addition, *Buckeye* reiterated the holdings of *Prima Paint* and *Southland Corp. v. Keating*, 465 U.S. 1 (1984) that a challenge to the contract as a whole, rather than the arbitration provision specifically, is reserved for an arbitrator and not the Court. Therefore, Plaintiff cited no case that lends support to her claim that any mental capacity challenge automatically triggers the application of the FAA.

Significantly, the true test of the applicable law here is the actual SCA language because arbitration is a matter of contract. Parties have wide latitude to choose the law that will determine the validity and effects of their contract. *Ferdie Sievers & Lake Tahoe Land Co., Inc. v. Diversified Mtg. Investors*, 95 Nev. 811, 603 P.2d 270, 273 (Nev. 1979). "It is well settled that the expressed intention of the parties as to the applicable law in the construction of a contract is

controlling if the parties acted in good faith and not to evade the law of the real situs of the contract." *Id*. The situs set by the agreement must have a substantial relation with the transaction and the agreement must not contravene public policy. *Id*. Here, the SCA contains a choice of law provision that states:

> The terms of this Agreement shall be governed by, interpreted and enforced in accordance with the laws of the State of Nevada as applied to contracts made, executed and fully performed within the State of Nevada. The Parties hereby submit to personal jurisdiction in the State of Nevada, Clark County for conducting the arbitrations of all disputes arising out of or related to this Agreement and regarding the limited use of the courts for possible Injunctive Relief, and for the Parties hereto to confirm, modify or vacate any award of the arbitrator.

(SCA Paragraph 13.9).[1]

The law of the State of Nevada is designated as the choice of law in the SCA and this provision is valid under Nevada law. *See, e.g., Pentax Corp. v. Boyd*, 111 Nev. 1296, 904 P.2d 1024, 1026 (Nev. 1995). Nowhere in the SCA's choice of law provision is the FAA stated or referenced. Likewise, the FAA does not appear in the dispute resolution and enforcement procedures section 11. In fact, the dispute resolution section expressly references Nevada law as the law under which the parties are to conduct discovery in connection with arbitration, not the FAA. (SCA Paragraph 11.2). That same section also references Rule 3 of the Nevada Supreme Court Rules as the governing rule for maintain confidentiality. (SCA Paragraph 11.3). As a result, the Court finds that the validity of the parties' agreement to arbitrate should be analyzed under Nevada law.

Like federal law, Nevada law recognizes that a "strong public policy favors arbitration because arbitration generally avoids the higher costs and longer time periods associated with traditional litigation." *D.R. Horton v. Green*, 96 P.3d 1159, 1162 (Nev. 2002); *see also Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984) ("In enacting § 2 of the [FAA], Congress declared a

---

[1] The Court previously sealed the SCA. It declines to seal this Report and Recommendation notwithstanding the fact that portions of the SCA are quoted herein. The portions quoted are general provisions of the SCA that do not contain sensitive information necessitating sealing this Report and Recommendation in accordance with Local Rule IA 10-5 or the standard set forth in *Center for Auto Safety v. Chrysler Group, LLC*, 809 F.3d 1092, 1097 (9th Cir. 2016).

national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration."). Nevada has adopted the Uniform Arbitration Act (the "UAA"). *See generally* NRS § 38.206–248. Under the UAA, "the court shall proceed summarily to decide the issue and order the parties to arbitrate unless it finds there is no enforceable agreement to arbitrate." NRS § 38.221(1)(b). Arbitration agreements are "valid, enforceable and irrevocable except as otherwise provided in NRS 597.995 or upon a ground that exists at law or in equity for the revocation of a contract." NRS § 38.219. Accordingly, like under the FAA, the Court's role under the UAA is limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. See NRS § 38.221(1)(b) ("[T]he court shall proceed summarily to decide the issue and order the parties to arbitrate unless it finds there is no enforceable agreement to arbitrate.").

### B. Validity of the Agreement to Arbitrate and Covers Claims At Issue

The Court must next determine the threshold issue of whether a valid arbitration agreement exists between Plaintiff and Defendant and if it encompasses this dispute. *See* Nev. Rev. Stat. 38.219(2) ("The court shall decide whether an agreement to arbitrate exists."). Because an agreement to arbitrate is a matter of contract, courts "generally . . . apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

Nevada courts have explained that the UAA, adopted in Nevada as Nevada Revised Statute 38.206–248, does not require any particular formality to create an enforceable arbitration agreement." *Tallman v. Eighth Jud. Dist. Ct.*, 359 P.3d 113, 119 (Nev. 2015) ("While NRS 38.219(1) requires that the arbitration agreement be 'contained in a record,' it does not require that the written record of the agreement to arbitrate be signed."); *see also U.S. Home Corp. v. Michael Ballesteros Tr.*, 134 Nev. 180, 182 (2018). Therefore, for a contract to be valid under Nevada law there must be mutual assent and consideration. *Bergman v. Electrolux Corp.*, 558 F.Supp. 1351, 1353 (D. Nev. 1983). Also, Defendant bears the burden of proving that a valid agreement exists between it and Plaintiff. *See, e.g., Wilson v. Huuuge, Inc.*, 2019 WL 6974430,

at *3 (9th Cir. Dec. 20, 2019); *Obstetrics & Gynecologists William G. Wixted, M.D., et al. v. Pepper*, 693 P.2d 1259, 1260 (Nev. 1985). Moreover, "when considering a motion to compel arbitration which is opposed on the ground that no agreement to arbitrate had been made between the parties, [the Court] should give to the opposing party the benefit of all reasonable doubts and inferences that may arise." *Mwithiga v. Uber Techs., Inc.*, 376 F. Supp. 3d 1052, 1059 (D. Nev. 2019) (internal quotation omitted).

Here, Defendant moves to compel arbitration of this dispute on the basis that Plaintiff signed and executed an arbitration agreement contained within the SCA as a condition of the settlement, which encompasses the claims at issue. (ECF No. 26). Plaintiff responds that the SCA as a whole is void under public policy as it involves a confidential settlement of a sexual assault claim, she lacked capacity to contract, and the agreement is unenforceable as it was made for an illegal purpose. (ECF No. 43). She also requests discovery and a trial on contract formation before the Court.

After careful consideration of the submitted evidence, the Court finds that Defendant has adequately established that there is a valid arbitration agreement encompassing the claims at issue.

The SCA's arbitration provision reads:

> The Parties agree that the exclusive manner of resolution of any and all future disputes or controversies of any kind or nature between them, however characterized, including without limitation any claim for breach, non-performance, rescission, reformation, termination, declaratory relief, injunctive relief, or specific performance of this Agreement (the "Claims"), shall be through binding, confidential mandatory arbitration.

(SCA Paragraph 11.1). The Court's review of the arbitration provision reveals that it meets the requirements of Nevada substantive contract law and is a valid and enforceable agreement by Plaintiff to arbitrate her claims. Not only did both parties initial their consent on each page of the SCA, but also, they initialed their consent after the bolded provision in the dispute resolution section acknowledging that they were forgoing their right to a jury trial in favor of mandatory arbitration. (SCA Paragraph 11); *see Bergman*, 558 F.Supp. at 1353 (under Nevada law mutual assent was manifested by the signatures on the written agreement.). Further, Plaintiff

acknowledged she consulted with counsel and "understands, acknowledges, accepts and agrees to all of the terms, conditions, covenants, restrictions, and obligations of" the SCA." (SCA Paragraph 9.1.6). Therefore, mutual assent is present. Also, the parties exchanged consideration, a monetary amount for a general release of all claims.

As for the scope of the claims to be arbitrated, the arbitration provision's plain language clearly encompasses the claims set forth in Plaintiff's Complaint. "[W]hen a contract is clear, unambiguous, and complete, its terms must be given their plain meaning and the contract must be enforced as written." *Ringle v. Bruton*, 120 Nev. 82, 93, 86 P.3d 1032 (2004); *see also State, University and Community College System v. Sutton*, 120 Nev. 972, 980, 103 P.3d 8 (2004) (where contractual language is unambiguous, it must be interpreted according to its plain meaning). The Court finds that Plaintiff's claims are covered under the express terms of the arbitration agreement signed by Plaintiff.

The Court thoroughly considered all of Plaintiff's articulated reasons for why a valid arbitration agreement should not be found. As for Plaintiff's mental capacity defense and fraudulent inducement argument, Plaintiff provides the Court with opinions from treating and consulting mental health professionals to establish her incapacity to contract. However, Plaintiff's claim that she lacked capacity to contract goes to the SCA as a whole, not just to the arbitration provision contained in the SCA. While Plaintiff may be entitled to a trial on the issue of her mental capacity under FAA § 4, no such provision exists under Nevada law. The Court notes that the parties disagree as to whether the Court or an arbitrator should decide the issue of mental incapacity. As Plaintiff's alleged mental incapacity is clearly a challenge to the SCA as a whole and not just the arbitration clause, it is properly reserved for the arbitrator. *See, e.g., Buckeye*, 546 U.S. at 445–46, ("unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance").

Similarly, Plaintiff's claim that the arbitration agreement is void under public policy as it involves a confidential settlement of a sexual assault claim is not persuasive to invalidate the arbitration agreement. The SCA containing the arbitration provision was signed in August 2010. Nevada did not have any law evincing a public policy prohibiting non-disclosure or arbitration

agreements of sexual assault claims at that time. In fact, Assembly Bill No. 248 was made effective July 1, 2019 preventing Nevada employers from requiring non-disclosure provisions in settlement agreements of sex discrimination or sexual offenses. Moreover, Defendant is not and was not Plaintiff's employer. As a result, the Court does not find the arbitration agreement is void under Nevada's public policy.

Finally, Plaintiff's argument that the arbitration agreement is unenforceable as it was made to conceal Defendant's alleged crime or tortious conduct in the alleged sexual assault is unavailing. Like her capacity to contract challenge, this argument is properly reserved for the arbitrator to decide as it is a challenge to the SCA as a whole and not just the arbitration clause specifically. Despite Plaintiff's attempt to characterize her challenge as an issue that goes to the making of the arbitration agreement, she consistently references the SCA as a whole in her claim that Defendant attempted to conceal, obstruct, and prevent the prosecution of him for sexual assault. (ECF No. 43, 16:16-17). Moreover, the Court cannot logically find that her argument only applies to the arbitration provision as opposed to the SCA generally. Therefore, the Court finds that none of Plaintiff's arguments to invalidate the arbitration agreement have merit and it will compel all of her claims to arbitration.

**C. Stay of this Litigation**

Because all of Plaintiff's claims are subject to arbitration, NRS § 38.221(7) applies to mandate that the Court "on just terms shall stay" the matter. Given that the Court is recommending all of Plaintiff's claims be compelled to arbitration, it will also recommend that this matter be stayed pursuant to Nevada law pending the outcome of arbitration. The parties should be ordered to file status reports on the arbitration proceeding every six months.

**D. Other Requests for Relief**

Defendant moves to strike Exhibits 4-5 to Plaintiff's Response (ECF No. 44), Bates Nos. 3-257, as containing attorney-client privileged and attorney-work product documents that were obtained as part of the cyber-hack that targeted Defendant. (ECF No. 55). The Court will grant Defendant's request and not consider those exhibits with respect to the motion to compel. Under these circumstances, the Court does not find that Defendant waived the attorney-client privilege

by either not protecting the documents from a hack or by putting them at issue in this litigation. Additionally, the Court will grant Plaintiff's request to exceed the page limitations in her opposition to Defendant's motion to strike (ECF No. 66).

Finally, in light of the Court's decision to compel arbitration, it finds that the remaining motions – Defendant's Motion to Dismiss (ECF No. 29) and Plaintiff's Motion to Appoint Guardian Ad Litem (ECF No. 58) – to be moot. They are appropriately decided by the arbitrator.

### III. CONCLUSION

**IT IS THEREFORE RECOMMENDED** that Defendant's Motion to Compel Arbitration and Stay Proceedings (ECF No. 26) be **granted**.

**IT IS FURTHER RECOMMENDED** that Defendant's Motion to Strike (ECF No. 55) be **granted**.

**IT IS FURTHER RECOMMENDED** that Plaintiff's Motion for Leave to File Excess Pages (ECF No. 66) be **granted**.

**IT IS FURTHER RECOMMENDED** that Defendant's Motion to Dismiss (ECF No. 29) be **denied as moot**.

**IT IS FURTHER RECOMMENDED** that Plaintiff's Motion to Appoint Guardian Ad Litem (ECF No. 58) be **denied as moot**.

### IV. NOTICE

This report and recommendation is submitted to the United States district judge assigned to this case under 28 U.S.C. § 636(b)(1). A party who objects to this report and recommendation may file a written objection supported by points and authorities within fourteen days of being served with this report and recommendation. Local Rule IB 3-2(a). Failure to file a timely objection may waive the right to appeal the district court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

DATED: February 4, 2020

DANIEL J. ALBREGTS
UNITED STATES MAGISTRATE JUDGE