**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Kathryn Mayorga, | Case No.: 2:19-cv-00168-JAD-DJA |
| Plaintiff | |
| | **Order Sustaining in Part Objection and Adopting and Modifying in Part Report & Recommendation** |
| v. | |
| Cristiano Ronaldo, | [ECF Nos. 26, 29, 55, 58, 66, 67, 70] |
| Defendant | |

More than a decade ago, Kathryn Mayorga and Cristiano Ronaldo executed a "Settlement & Confidentiality Agreement" to resolve Mayorga's allegations that Ronaldo assaulted her in a Las Vegas hotel room. In it, they agreed to resolve by arbitration "any and all future disputes or controversies" arising between them. Despite that agreement, Mayorga pleads 11 claims against Ronaldo that arise out of the alleged assault, subsequent settlement negotiations, and public release of the settlement agreement's contents by a hacker. Ronaldo moves under Nevada law for an order compelling Mayorga to arbitrate all of her claims and to stay this case.[1] He separately moves to dismiss Mayorga's claims.[2] Ronaldo also moves to strike two documents that Mayorga attached to her response to his motion to compel arbitration.[3] Mayorga opposes all of Ronaldo's motions and moves for leave to file a response brief that exceeds the 24-page limit.[4] Finally, Mayorga's brother Jason seeks to be appointed her guardian for this case.[5]

---

[1] ECF No. 26.

[2] ECF No. 29.

[3] ECF No. 55.

[4] ECF No. 66.

[5] ECF No. 58.

I referred all of these motions to Magistrate Judge Albregts, who entered a report recommending that I grant Ronaldo's motion to compel arbitration and stay this case, deny as moot Ronaldo's motion to dismiss and Jason's guardianship motion, grant Ronaldo's motion to strike two of Mayorga's exhibits, and grant Mayorga's motion for leave to file a response brief that exceeds the page limits (the R&R).[6]  Mayorga objects to all of these recommendations except as to granting her excess pages.[7]  Ronaldo responds that I should overrule Mayorga's objections and adopt the R&R in full.[8]

Having thoughtfully considered the magistrate judge's findings and recommendations and the parties' briefing, I adopt and modify the R&R in part and sustain some objections while overruling others.  With the benefit of the parties' more robustly developed points and authorities at this objection stage, which the magistrate judge did not have, I find that federal arbitrability law governs the parties' arbitration agreement.  Applying that law, I find that Mayorga's challenge that she lacked the mental capacity to assent to the settlement agreement is not arbitrable, but her other defenses against arbitration, e.g., the settlement agreement is illegal and violates public policy, are arbitrable.  Mayorga did not comply with the correct procedure to request a jury trial of the mental-capacity issue, so I direct the parties to prepare to adjudicate it in a bench trial.  Because the proper venue for resolving Mayorga's claims on their merits hinges on the mental-capacity issue, I deny without prejudice Ronaldo's motion to dismiss them.  I also deny without prejudice Jason's guardianship motion because it does not have a full complement of evidentiary support.  Finally, I overrule Mayorga's objection to the recommendation to strike

---

[6] ECF No. 67.

[7] ECF No. 70.

[8] ECF No. 71.

two of her exhibits because she has not shown that the magistrate judge's determination that those documents are privileged is contrary to law.

## I.    Legal Standards for Reviewing a Magistrate Judge's Determinations

When a party objects to a magistrate judge's report and recommendation on a dispositive issue, the district court must conduct a de novo review of the challenged findings and recommendations.[9]  This standard is without deference to the magistrate judge's determination. Under this standard, the district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge," "receive further evidence," or "recommit the matter to the magistrate judge with instructions."[10]

A district judge may also reconsider any non-dispositive matter that has been finally determined by a magistrate judge "when it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."[11]  This standard of review "is significantly deferential" to a magistrate judge's determination.[12]  A district court overturns a magistrate judge's determination under this standard only if it has "a definite and firm conviction that a mistake [of fact] has been committed"[13] or a relevant statute, law, or rule has been omitted or misapplied.[14]

---

[9] Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1)(B); L.R. IB 3-2(b) (requiring a district judge to review de novo only the portions of a report and recommendation addressing a case-dispositive issue that a party objects to).

[10] 28 U.S.C. § 636(b)(1).

[11] L.R. IB 3-1(a).

[12] *Concrete Pipe and Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for So. Cal.*, 508 U.S. 602, 623 (1993).

[13] *Id.* (internal quotation marks omitted).

[14] *See Grimes v. City and County. of S.F.*, 951 F.2d 236, 240–41 (9th Cir. 1991).

Because the motions to strike documents and appoint a guardian are not dispositive, they are subject to the deferential standard of review.[15]  Ronaldo's Federal Civil Procedure Rule 12(b)(6) dismissal motion raises issues that are dispositive of many of Mayorga's claims,[16] so I review the magistrate judge's resolution of that motion de novo.[17]  What remains is Ronaldo's motion to compel arbitration.  The Ninth Circuit has not decided whether such a motion is dispositive, and reasonable district courts are split on this issue.[18]  Out of an abundance of caution and because Judge Albregts phrased his resolution of the motion to compel as a recommendation, not an order, I also review the magistrate judge's resolution of that motion under the de novo standard.

## II.  Ronaldo's motion to compel arbitration and stay this case [ECF No. 26]

As it relates to the magistrate judge's recommendation that I grant Ronaldo's motion to compel arbitration and stay this case, Mayorga objects that (1) the parties' arbitration agreement is governed by federal law, not Nevada law; (2) the parties did not agree to arbitrate questions of arbitrability; and (3) a judge and a jury, not an arbitrator, must determine all three of her challenges against arbitration.[19]  Ronaldo argues in response that Nevada's arbitrability law governs the arbitration agreement and Mayorga's challenges must be decided by an arbitrator

---

[15] *Compare* L.R. IB 3-1(a) (providing that "[a] district judge may reconsider any pretrial matter referred to a magistrate judge . . . when it has been shown . . . [to be] clearly erroneous or contrary to law"), *with* 28 U.S.C. § 636(b)(1)(B) (listing matters that cannot be finally resolved by a magistrate judge).

[16] *See generally* ECF No. 29.

[17] 28 U.S.C. § 636(b)(1)(A) (stating that a magistrate judge cannot finally determine a motion "to dismiss for failure to state a claim upon which relief can be granted").

[18] *See e.g.*, *Amisil Holdings Ltd. v. Clarium Cap. Mgmt.*, 622 F. Supp. 2d 825, 827 n.1 (N.D. Cal. 2007) (collecting cases).

[19] ECF No. 70 at 1–9.

because they go to the entire agreement, not just the arbitration clause.[20]  I begin my analysis by

resolving the parties' dispute about which law governs their arbitration agreement.

### A.    Choice of arbitrability law

The Federal Arbitration Act (FAA) states that "[a] written provision in any . . . contract

evidencing a transaction involving commerce to settle by arbitration a controversy" arising out of

the contract or transaction "shall be valid, irrevocable, and enforceable save upon such grounds

as exist at law or in equity for the revocation of any contract."[21]  The magistrate judge ultimately

recommends finding that Nevada's arbitrability law governs the parties' arbitration agreement

because the settlement agreement contains a general provision choosing Nevada law for its

governance, interpretation, and enforcement.[22]  Before reaching that conclusion, however, the

magistrate judge determined that the settlement agreement "fall[s] within the FAA's coverage"

because it "involves an exchange of money for a release of rights by one out-of-state resident

[Ronaldo] and one Nevada resident [Mayorga]."[23]  Mayorga does not challenge this

determination but Ronaldo does, arguing in his response brief that the settlement agreement falls

outside the FAA's scope because it merely "resolves a personal injury claim based upon alleged

events that transpired only in Nevada" and has "nothing to do with the exchange of goods or

services."[24]

---

[20] ECF No. 71 at 3–9.

[21] 9 U.S.C. § 2.

[22] ECF No. 67 at 3–4.

[23] *Id.* at 3.

[24] ECF No. 71 at 7.

Although Ronaldo's points are both valid, they are distinctions without a difference.  The FAA defines "commerce" to mean "among the several States or with foreign nations . . . ."[25] The Supreme Court has "interpreted the term 'involving commerce' in the FAA as the functional equivalent of the more familiar term 'affecting commerce'—words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power."[26]  This means "that the FAA encompasses a wider range of transactions than those actually 'in commerce'—that is, 'within the flow of interstate commerce.'"[27]

The Ninth Circuit explained in *U.S. v. Cummings* that "Congress's Commerce Clause authority is broad enough to stretch beyond the simple regulation of commercial goods traveling in interstate and foreign commerce to include regulation of non-economic activities—such as racial discrimination or growing wheat for personal consumption—that affect, impede, or utilize the channels of commerce."[28]  The Supreme Court has identified three categories of activity that Congress may regulate and protect under its commerce power: (1) "the use of the channels of commerce"; (2) "the instrumentalities of commerce or persons in interstate commerce, even though the threat may come only from intrastate activities"; and (3) "activities that have a substantial effect on commerce."[29]  "Congress has broader power" "in the context of foreign commerce . . . ."[30]

---

[25] 9 U.S.C. § 1.

[26] *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (quoting *Allied-Bruce Terminix Cos. Inc.*, 513 U.S. 265, 273–74 (1995)).

[27] *Id.* (quoting *Allied-Bruce*, 513 U.S. at 273).

[28] *U.S. v. Cummings*, 281 F.3d 1046, 1048 (9th Cir. 2002) (collecting cases).

[29] *Id.* at 1049 (citing *U.S. v. Lopez*, 514 U.S. 549, 558–59 (1995)).

[30] *Id.* at 1049 n.1.

The facts in this case implicate commerce.  Ronaldo and Mayorga are citizens of different countries—Portugal and the United States.[31]  The settlement agreement required Ronaldo to pay Mayorga $375,000 in exchange for a release of her claims against him, payable via check or wire transfer to the client trust account of Mayorga's Nevada attorney.[32]  Although not a party to this case, an image-management company that Ronaldo retained is also a party to the settlement agreement and co-obligated to pay Mayorga the settlement amount.[33]  There is no allegation or evidence that the company is a Nevada entity or even a domestic one.  The settlement agreement states that payment is to be made upon Mayorga's attorney's delivery of payment instructions and a W-9 tax form.[34]  There is no allegation or evidence that payment deviated from the contractual obligations.  Nor is there allegation or evidence that the settlement funds originated in Nevada.  Ronaldo's American attorney was in California, so even a transfer of funds that involved only the parties' law firms crossed state lines.[35]  Thus, the settlement agreement evidences that the settlement funds flowed through the channels and instrumentalities of foreign and interstate commerce to reach Mayorga's attorney's trust account in Nevada from Ronaldo's account outside of the United States.[36]

---

[31] *See* ECF No. 1 at 1.

[32] ECF No. 30-1 at 3, ¶ 2.1.1 (sealed).  In this order, I quote from and paraphrase the contents of judicial records that the court has ordered to be sealed in this case.  I do not seal or redact any part of this order because I do not find that there is good cause or that there are compelling reasons to do so.

[33] ECF No. 30-2 at 2 (side agreement) (sealed).

[34] ECF No. 30-1 at 3, ¶ 2.1 (sealed).

[35] *Id.* at 14, ¶ 12.1.1.

[36] When the settlement agreement was executed in August 2010, Nevada Supreme Court Rule 217 required (as it does now) attorneys to "create or maintain an interest-bearing trust account for clients' funds that are . . . to be held for a short period of time in any banking, credit union[,] or savings and loan association" that is "insured by the Federal Deposit Insurance Corporation or the Federal Savings and Loan Insurance Corporation" or is another financial institution that is

Another material term of the settlement agreement is that Ronaldo's Portuguese attorney had to read out loud to Ronaldo a letter that Mayorga wrote to Ronaldo.[37]  That letter necessarily traveled through the channels and instrumentalities of foreign and interstate commerce to reach Ronaldo's attorney in Portugal from Mayorga in Nevada, e.g., by fax, email, U.S. mail system, or private courier service.  Because the settlement agreement evidences a transaction that affects interstate commerce,[38] the arbitration agreement within it falls within the FAA's scope.[39]  So barring any agreement of the parties to the contrary, federal arbitrability law governs their arbitration agreement.

The Ninth Circuit instructed in *Cape Flattery Ltd. v. Titan Maritime, LLC* that "courts should apply federal arbitrability law absent 'clear and unmistakable evidence' that the parties agreed to apply non-federal arbitrability law."[40]  Ronaldo identifies two paragraphs in the

---

approved by the state bar under Rule 78.5.  Nev. St. S. Ct. R. Ann. 217 (West 2010).  Financial institutions that are insured by these federal corporations are "instrumentalities and channels of interstate commerce and their regulation is well within Congress's Commerce Clause power."  *U.S. v. Harris*, 108 F.3d 1107, 1109 (9th Cir. 1997).

[37] ECF No. 30-1 at 7, ¶¶ 5.0–5.2 (sealed).

[38] *C.f. U.S. v. Mussari*, 95 F.3d 787, 790 (9th Cir. 1996) ("The obligation of a parent in one state to provide support for a child in a different state is an obligation to be met by a payment that will normally move in interstate commerce—by mail, wire, or by the electronic transfer of funds.  That obligation is, therefore, a thing in interstate commerce and falls within the power of Congress to regulate.").

[39] *See e.g.*, *Harris v. Equifax Info. Servs.*, No. 18cv558, 2019 WL 1714218, at *3, n.4 (S.D. W. Va. Apr. 17, 2019) (finding that a settlement agreement between mortgagees and their servicer, who are citizens of different states, "was related to interstate commerce"); *McDonald v. Rodriguez*, 184 B.R. 514, 516 (S.D. Tex. 1995) (finding that a settlement agreement concerning rights of citizens of different states and the Republic of Mexico was in commerce and therefore governed by the FAA); *New Castle County v. U.S. Fire Ins. Co.*, 728 F. Supp. 318, 320 (D. Del. 1989) (finding that a settlement agreement between entities that are citizens of different states involves commerce and is therefore governed by the FAA).

[40] *Cape Flattery Ltd. v. Titan Maritime, LLC*, 647 F.3d 914, 921 (9th Cir. 2011) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

settlement agreement that he contends constitute an agreement that Nevada's arbitrability law applies.[41]  The first is paragraph 11.2, which provides that "[t]he Parties shall have the right to conduct discovery pursuant to applicable Nevada law in connection with the arbitration, and the discovery requests and discovery results shall be deemed Confidential Information to which the terms of this Agreement apply."[42]  The second is paragraph 13.9, which states that "[t]he terms of this Agreement shall be governed by, interpreted and enforced in accordance with the laws of the State of Nevada as applied to contracts made, executed and fully performed within the State of Nevada."[43]

These paragraphs are not "clear and unmistakable evidence" that the parties agreed to apply Nevada's arbitrability law.  Paragraph 11.2 provides only that Nevada's discovery rules apply to any arbitration proceeding, and paragraph 13.9 merely states that Nevada's substantive law applies to resolve any merits disputes.  This settlement agreement, like the contract at issue in *Cape Flattery*, is "ambiguous concerning whether [Nevada] law also applies to determine [if] a given dispute is arbitrable in the first place."[44]  Thus, I respectfully reject the magistrate judge's recommendation to apply Nevada's arbitrability law and will instead apply federal law in resolving the parties' disputes about arbitration.

### B.    Applying federal arbitrability law

Congress enacted the FAA nearly 100 years ago "to 'reverse centuries of judicial hostility to arbitration agreements' . . . by 'placing arbitration agreements upon the same footing as other

---

[41] ECF No. 71 at 3–5.

[42] ECF No. 30-1 at 12, ¶ 11.2 (sealed).

[43] *Id.* at 15, ¶ 13.9 (sealed).

[44] *Id.*

contracts.'"[45]   The FAA "establishes a federal policy favoring arbitration, requiring that [courts] rigorously enforce agreements to arbitrate,"[46] and it provides "'that where [a] contract contains an arbitration clause, there is a presumption of arbitrability.'"[47]   "By its terms, the Act 'leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'"[48]

The district court's role under the FAA is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue."[49]   In answering these questions, the court must "interpret the contract by applying general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration."[50]   The party seeking to compel arbitration has the burden to show that both of these questions must be answered in the affirmative.[51]   "If the response is affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms."[52]

---

[45] *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 225–26 (1987) (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 510 (1974)) (internal citation and brackets omitted).

[46] *Id.* at 226 (quotation omitted).

[47] *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1284 (9th Cir. 2009) (quoting *AT & T Tech., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)).

[48] *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)).

[49] *Id.*

[50] *Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1049 (9th Cir. 1996).

[51] *Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014); *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015).

[52] *Chiron Corp.*, 207 F.3d at 1130.

Mayorga argues that she cannot be compelled to arbitrate her merits claims because she lacked mental capacity to assent to the settlement agreement and that agreement is illegal and violates public policy.[53]  She also argues that she is entitled to a jury trial on these issues.[54]  Ronaldo responds that all of Mayorga's challenges must be decided by an arbitrator because they concern the validity of the settlement agreement as a whole.[55]  He also disputes that Mayorga is entitled to a jury trial to resolve any of her challenges.[56]  Both sides also dispute whether they agreed to arbitrate questions of arbitrability, which is where I begin.

### 1.   The parties did not delegate questions of arbitrability to an arbitrator.

"The question of whether the parties have submitted a particular dispute to arbitration, *i.e.*, the '*question of arbitrability*,' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'"[57]  "[T]he phrase 'question of arbitrability' has a . . . limited scope."[58]  It applies "in the kind of narrow circumstance where contracting parties would likely have expected a court to have decided the gateway matter . . . ."[59]  As the Supreme Court has repeatedly explained,

---

[53] ECF No. 70 at 5–9.  The magistrate judge recommends that I conclude that Mayorga's merits claims fall within the scope of the arbitration agreement's plain language.  ECF No. 67 at 7.  No party objects to this finding and recommendation, *see generally* ECF Nos. 70, 71.  Thus, I adopt Judge Albregts's findings and recommendations on the issue of scope without further discussion except as to the part of Mayorga's eighth claim for relief that seeks a declaration that she lacked the mental capacity to contract.  ECF No. 1 at 27.

[54] ECF No. 70 at 12.

[55] ECF No. 71 at 8–9.

[56] *Id.* at 6–7.

[57] *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (quoting *AT & T Tech.*, 475 U.S. at 649).

[58] *Id.*

[59] *Id.* at 83–84.

> [t]here are two types of validity challenges under [9 U.S.C.] § 2: "[o]ne type challenges specifically the validity of the agreement to arbitrate," and "[t]he other challenges the contract as a whole, either on a ground that directly affects the entire agreement (*e.g.*, the agreement was fraudulently induced) or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid."[60]

Generally a court must resolve the first type of challenge in determining "whether the arbitration agreement at issue is enforceable."[61]  But "a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate."[62]  That is because, "[a]s a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract."[63]

Although both parties make separate arguments about "arbitrability," neither contends that the settlement agreement delegates questions of arbitrability to an arbitrator.  Mayorga argues that the magistrate judge erroneously found that the settlement agreement delegated the threshold question of the arbitration agreement's validity to an arbitrator.[64]  But that isn't what the magistrate judge found.  Rather, he determined that Mayorga's mental-capacity and illegality challenges must be decided by an arbitrator because she directs them to the settlement agreement as a whole, not the arbitration agreement itself.[65]  Thus, the magistrate judge did not address whether the settlement agreement delegates any gateway question to an arbitrator.

---

[60] *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006)).

[61] *Id.* (collecting cases).

[62] *Rent-A-Center*, 561 U.S. at 70.

[63] *Id.* (quoting *Buckeye*, 546 U.S. at 445) (internal quotation marks omitted).

[64] ECF No. 70 at 3–4.

[65] ECF No. 67 at 5–8.

Ronaldo raises a myriad of confusing points in the two short paragraphs that he devotes to the sub-heading titled "[e]nforceability of the [settlement agreement] should be determined by an arbitrator."[66]  He contends that, under *Rent-A-Center, West, Inc. v. Jackson*, "arbitrability is a question of enforceability and the [p]arties expressly delegated that determination to the arbitrator."[67]  He then concludes that, regardless of what law applies, "this [c]ourt should proceed to summarily decide the issue" because Mayorga "is not entitled to a jury trial on these issues."[68]

Ronaldo appears to contend that, like the stand-alone arbitration agreement at issue in *Rent-A-Center*, the settlement agreement here contains a separate agreement that an arbitrator will decide challenges to the arbitration agreement's enforceability.  But Ronaldo does not identify—and I have not found—any provision in the settlement agreement that constitutes an "additional, antecedent agreement" "to arbitrate threshold issues concerning the arbitration agreement" itself, including its enforceability.[69]  The settlement agreement merely provides that "any and all future disputes or controversies of any kind or nature between [the parties], however characterized, including without limitation any claim for breach, non-performance, rescission, reformation, termination, declaratory relief, injunctive relief, or specific performance of this Agreement . . . shall be [resolved] through binding, confidential mandatory arbitration . . . ."[70]

---

[66] ECF No. 71 at 8.

[67] *Id.* (citing *Rent-A-Center*, 561 U.S. at 68–69).

[68] *Id.*

[69] *Rent-A-Center*, 561 U.S. at 65, 70.

[70] ECF No. 30-1 at 12, ¶ 11.1 (sealed).

13

1  The settlement agreement defines "Agreement" to mean the entire settlement agreement, its

2  exhibits, and the side letter; that term is not defined to mean the specific agreement to arbitrate.[71]

3        The settlement agreement contains only a generic agreement to arbitrate future disputes

4  between the parties.  There is no "additional, antecedent agreement" about arbitration or mention

5  of any gateway issues of arbitrability.  Satisfied that the parties did not delegate any gateway

6  question of arbitrability to an arbitrator, I next determine if any of Mayora's challenges to

7  arbitration must be resolved by the court.

8
          **2.      *Mayorga's mental-capacity challenge goes to contract formation and is
9                     for the court to decide.***

10        Mayorga argues that (1) whether she lacked the mental capacity to assent to the

11  settlement agreement raises the issue of whether any agreement to arbitrate was ever formed

12  between the parties; and (2) that issue must be resolved by a court and a jury, not an arbitrator.[72]

13  Ronaldo briefly argues, relying on *Prima Paint Corp. v. Flood & Conklin Mfg., Co.*[73] and its

14  progeny like *Buckeye Check Cashing, Inc. v. Cardegna*, that an arbitrator must decide this issue

15  because Mayorga addresses it to the settlement agreement as a whole, not the specific agreement

16  to arbitrate.[74]  He supplements this by arguing that this challenge raises a question of contract

17  validity, not contract formation.[75]

18        Mayorga points out that the Supreme Court has repeatedly stated that "[t]he issue of the

19  contract's validity is different from the issue whether any agreement [to arbitrate] between the

20

---

21  [71] *Id.* at 2 (sealed).

    [72] *Id.* at 6–7 (sealed).

22  [73] *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967).

23  [74] ECF No. 71 at 8–9.

    [75] *See id.* at 5, 8.

14

1  alleged obligor and obligee was ever concluded."[76]  The Court has also repeatedly explained that

2  its holding in *Prima Paint* is limited to issues that concern a contract's validity.[77]  The Court later

3  signaled in a footnote in *Buckeye* that issues that had been decided by other courts—like

4  "whether the alleged obligor ever signed the contract" or "lacked authority to commit the alleged

5  principal" and if "the signor lacked the mental capacity to assent"—concern whether an

6  agreement to arbitrate was ever formed between the parties, not the contract's validity.[78]  But this

7  statement is dicta, so it does not resolve the question of whether a mental-capacity challenge

8  raises the issue of a contract's formation.  I thus must look beyond *Prima Paint* and *Buckeye* to

9  answer it.

10      Summarizing its prior precedents, the Supreme Court explained in *Granite Rock Co. v.*

11  *International Brotherhood of Teamsters* that it is "well settled that where the dispute at issue

12  concerns contract formation, the dispute is generally for courts to decide."[79]  The Court held in

13  *Granite Rock* that a court "should order arbitration of a dispute only where [it] is satisfied that

14  neither the formation of the parties' arbitration agreement *nor* (absent a valid provision

15  specifically committing such disputes to an arbitrator) its enforceability or applicability to the

16  dispute is in issue."[80]  "Where a party contests either or both matters, 'the court' must resolve the

17  disagreement."[81]

18

---

19  [76] ECF No. 70 at 6 (quoting *Buckeye*, 546 U.S. at 444 n.1).

[77] *Buckeye*, 546 U.S. at 444 n.1; *accord Rent-A-Center*, 561 U.S. at 70 n.2.

20  [78] *Buckeye*, 546 U.S. at 444 n.1 (citing *Chastain v. Robinson-Humphrey Co.*, 957 F.2d 851 (11th Cir. 1992); *Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99 (3d Cir. 2000); *Sphere Drake Ins. Ltd.*
21  *v. All Am. Ins. Co.*, 256 F.3d 587 (7th Cir. 2001); and *Spahr v. Secco*, 330 F.3d 1266 (10th Cir. 2003)); *accord Rent-A-Center*, 561 U.S. at 70 n.2.

22  [79] *See Granite Rock Co. v. Int'l Broth. of Teamsters*, 561 U.S. 287, 296 (2010).

23  [80] *Id.* at 299.

[81] *Id.* at 299–300.

15

The Supreme Court's precedent, of course, is in line with the FAA's instruction that when a party disputes "the making of the arbitration agreement," the court must "proceed summarily to the trial thereof" before compelling arbitration under the agreement.[82]  The Ninth Circuit has "interpreted this language to encompass not only challenges to the arbitration clause itself, but also challenges to the making of the contract containing the arbitration clause."[83]  So in the Ninth Circuit, "[i]ssues regarding the *validity* or *enforcement* of a putative contract mandating arbitration should be referred to an arbitrator, but challenges to the *existence* of a contract as a whole must be determined by the court prior to ordering arbitration."[84]

In light of these authorities, I am persuaded that Mayorga's challenge that she lacked the mental capacity to assent to the settlement agreement goes to whether any agreement (settlement and arbitration) was ever formed between the parties and is therefore a question for the court to resolve.  I note that other courts have concluded that a mental-capacity challenge raises the issue of a contract's formation and is a matter for the court to decide.[85]  An exception is the Fifth Circuit's decision in *Primerica Life Insurance Company v. Brown*, in which the court relied on *Prima Paint* to conclude that the plaintiff's mental-capacity defense must be resolved by an arbitrator because it was directed to the contract as a whole and not the specific arbitration

---

[82] 9 U.S.C. § 4.

[83] *Sanford v. MemberWorks, Inc.*, 483 F.3d 956, 962 (9th Cir. 2007) (citing *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co. Inc.*, 925 F.2d 1136, 1140–41 (9th Cir. 1991)).

[84] *Id.*

[85] *See, e.g.*, *Spahr*, 330 F.3d at 1272–73, n.7 (holding that the void-versus-voidable "distinction is not dispositive" in this context because the "mental[-]incapacity defense naturally goes to *both* the entire contract and the specific agreement to arbitrate in the contract," and affirming the district court's determination that the contract was unenforceable based on that defense); *Burgoon v. Narconon of N. Cal.*, 125 F. Supp. 3d 974, 983 (N.D. Cal. 2015) (recognizing that *Buckeye* put challenges based on mental capacity to contract into the contract-formation bucket); *Rowan v. Brookdale Senior Living Communities, Inc.*, No. 13cv1261, 2015 WL 9906264, at *2–4 (W.D. Mich. June 1, 2015) (adopting Tenth Circuit's rationale in *Spahr*).

agreement at issue.[86]  But other courts have since explained that "*Primerica* is an aberration: multiple other courts have reached the opposite conclusion, no other court has adopted its reasoning, the opinion has been 'roundly criticized,' and the Fifth Circuit even reached a different result several months later, albeit in a different context."[87]

Among the courts that have reached the opposite conclusion is the Tenth Circuit in *Spahr v. Secco*.  Registering its disagreement with *Primerica*, the Tenth Circuit "held that the rule announced in *Prima Paint* does not extend to a case where a party challenges a contract on the basis that the party lacked the mental capacity to enter into a contract."[88]  The court concluded that the "analytical formula developed in *Prima Paint* cannot be applied with precision when a party contends that an entire contract containing an arbitration provision is unenforceable because he or she lacked the mental capacity to enter into the contract."[89]  This is so, the Tenth Circuit explained, because "[u]nlike a claim of fraud in the inducement, which can be directed at individual provisions in a contract, a mental capacity challenge can logically be directed only at the entire contract."[90]  The "distinction" being that the former "challeng[es] a contract on the basis of the conduct of the bargaining parties" and the latter "on the basis of [a bargaining party's] status . . . ."[91]  The Tenth Circuit also concluded that the void-versus-voidable

---

[86] *Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 471–72 (5th Cir. 2002).

[87] *Rowan*, 2015 WL 9906264 at *4 (W.D. Mich. June 1, 2015) (quoting *In re Morgan Stanley & Co. Inc.*, 293 S.W. 3d 182, 183–87 (Tex. 2009)).

[88] *Spahr*, 330 F.3d at 1272.

[89] *Id.* at 1273.

[90] *Id.*

[91] *Id.* at 1273 n.8.

1   "distinction is not dispositive where, as here, a party challenges a contract containing an
2   arbitration clause on the basis of mental incapacity."[92]

3        I find that the Tenth Circuit's rationale in *Spahr* is well reasoned and persuasive.  And in
4   light of the Supreme Court's signal in its *Buckeye* dicta that a signor's mental capacity to assent
5   raises a question of contract formation and its *Granite Rock* holding that such matters are
6   generally for the court to decide, I adopt the *Spahr* court's rationale and likewise conclude that
7   Mayorga's mental-incapacity challenge must be determined by the court because it "naturally
8   goes to *both* the entire [settlement agreement] and the specific agreement to arbitrate" within it.[93]
9   Thus, I respectfully reject the magistrate judge's recommendation that Mayorga's mental-
10  capacity challenge must be decided by an arbitrator.

11              ***3.        Mayorga has raised a genuine dispute about her mental capacity.***

12        Ronaldo argues that the foregoing analysis does not matter because Mayorga cannot
13  show that she lacked the mental capacity to assent to the settlement agreement.[94]  The question
14  of whether the parties entered a contract containing an arbitration agreement is ordinarily
15  decided under state law.[95]  In Nevada, the contract defense of incompetency "involves a person's
16  *inability* to understand the terms of an agreement, not [her] actual understanding."[96]  Mental
17  "[c]apacity relates to the status of the person rather than to the circumstances surrounding the
18  transaction."[97]  Whether a signor lacked "[c]ontractual capacity is a question of fact to be

19  ───────────────────

20  [92] *Id.* at 1272 n.7.

    [93] *Id.* at 1273.

21  [94] ECF No. 71 at 9–10.

22  [95] *Kaplan*, 514 U.S. at 944.

23  [96] *Gen. Motors v. Jackson*, 900 P.2d 345, 349 (Nev. 1995) (citing *Restatement (Second) of Contracts* § 12 (1981); 17 C.J.S. *Contracts* § 133(1)(a) (1963)).

    [97] *Id.*

18

resolved in light of the surrounding circumstances."[98]  Nevada's civil jury instruction on this issue provides that "mental incapacity that affects the validity of a contract must be determined from the testimony and other evidence relevant to the surrounding circumstances when the transaction occurred, without regard to any previous or subsequent incompetency of the party."[99]

Ronaldo argues that Mayorga cannot show that she lacked the mental capacity to contract because she "brought the instant lawsuit in her individual capacity[,]" sought to have a guardian appointed only after Ronaldo repeatedly pointed that fact out, and "need[s] to show [that] she was incapacitated for more than a decade" to avoid the statutes of limitation that apply to her merits claims.[100]  Ronaldo's first two points are not relevant to whether Mayorga lacked the capacity to assent at the time that the settlement agreement was executed, which is what she must demonstrate to prevail on this defense.  Ronaldo's third point is premature on its face.

In conjunction with her response to Ronaldo's motion to compel arbitration, Mayorga provides written statements from both a psychiatrist and a therapist who treated her within the past five years about the alleged sexual assault and opine that she lacked capacity to contract at the time she signed the settlement agreement.[101]  She also offers a written statement from a therapist who treated her shortly after the alleged assault and thereafter for many years.[102]  Although that therapist states that she is not an expert in determining legal capacity to contract, her written statement demonstrates that she can provide "evidence relevant to the circumstances"

---

[98] *Heward v. Sutton*, 345 P.2d 772, 774 (Nev. 1959).

[99] Nev. Jury Instructions—Civil, 2011 Ed. Instr. 13CN.21 (citing *Roberts v. Gattshall*, 540 P.2d 1067, 1069 (Nev. 1975); *Heward*, 345 P.2d at 774; *Seeley v. Goodwin*, 156 P. 934, 937 (Nev. 1916)).

[100] ECF No. 71 at 9.

[101] ECF No. 43 at 24–34 (sealed).

[102] *Id.*

1   surrounding the signing of the settlement agreement.[103]  Finally, the petition to appoint a

2   guardian ad litem includes detailed declarations from Mayorga and her mother and brother who

3   all testify about Mayorga's mental capacity then and now.[104]  With these declarations and

4   statements, Mayorga has shown that she can present evidence from which a reasonable trier of

5   fact could conclude that she lacked the mental capacity to contract.

6          ### 4.       *Mayorga's illegality and public-policy challenges are for an arbitrator.*

7          Mayorga argues that the court must also decide whether the settlement agreement is

8   illegal and violates Nevada's public policy.[105]  Unlike mental capacity to contract, which raises

9   the question of whether any agreement between the parties was ever formed, issues like illegality

10  and violating public policy[106] concern a contract's validity, so they are for an arbitrator to resolve

11  unless they are directed at the specific arbitration agreement at issue.[107]  Mayorga directs these

12  challenges at the settlement agreement generally, not the specific arbitration agreement.[108]  These

13  challenges must therefore be decided by an arbitrator if Mayorga does not prevail on her mental-

14  capacity challenge.[109]  Thus, I adopt the magistrate judge's recommendation on these points.

15

---

16  [103] *See* Nev. Jury Instructions—Civil, 2011 Ed. Instr. 13CN.21 (citing *Roberts*, 540 P.2d at 1069; *Heward*, 345 P.2d at 774; *Seeley*, 156 P. at 937).

17  [104] ECF No. 58 at 6–25.

    [105] ECF No. 70 at 8–9.

18
19  [106] The magistrate judge determined this challenge in the first instance, concluding that it was not a meritorious defense to arbitration because "Nevada did not have any law evincing a public policy prohibiting non-disclosure or arbitration agreements of sexual assault claims" when the
20  settlement agreement was executed.  ECF No. 67 at 7–8.  Mayorga does not address this hurdle in her objection.  ECF No. 70 at 9.

21  [107] *See Buckeye*, 546 U.S. at 442, 449 (holding that an arbitrator must decide "claim that a contract containing an arbitration provision is void for illegality").

22  [108] ECF No. 70 at 8–9.

23  [109] Although she does not raise it in the context of her objection to the R&R, Mayorga argued in response to Ronaldo's motion to compel arbitration that her complaint includes a claim that the arbitration agreement is unenforceable because it is the product of fraudulent inducement.  ECF

5.     *Mayorga's general demand for a jury trial does not satisfy the FAA.*

The final issue that I must resolve regarding Ronaldo's motion to compel arbitration is whether Mayorga is entitled to a jury trial on her mental-capacity challenge.  Mayorga argues that she is, concluding that she "has made a timely request for" one.[110]  Mayorga did file a general demand for obtaining a jury trial "of all issues in the above-entitled matter."[111]  But she doesn't provide any reasoned argument or authority to show that her general demand satisfies the FAA's procedures for a jury trial.[112]  Ronaldo opposes Mayorga's request but, seemingly convinced that Nevada's arbitrability law governs this arbitration agreement, he does not address whether her demand satisfies the FAA.[113]  I consider this question sua sponte and conclude that Mayorga's demand does not satisfy the FAA, so her mental-capacity challenge will be resolved by a bench trial.

The FAA states that "[i]f the making of the arbitration agreement . . . be in issue" and "the party alleged to be in default" has "on or before the return day of the notice of application[,] . . . demanded a jury trial of such issue," then "the court shall make an order referring the issue or issues to a jury trial in the manner provided by the Federal Rules of Civil Procedure, or may specifically call a jury for that purpose."[114]  The Ninth Circuit has not yet determined whether a general demand for a jury trial satisfies the FAA's procedure, but the Eleventh Circuit reached

---

No. 42 at 9–10 (sealed).  But Mayorga provides no citation to support her contention, and a review of her complaint reveals that she directs her fraud allegations only to the settlement agreement as a whole.  So, like her illegality and public-policy challenges, Mayorga's fraud-in-the-inducement challenge must be decided by an arbitrator.  *See Prima Paint*, 388 U.S. at 406.

[110] ECF No. 70 at 12.

[111] ECF No. 46.

[112] ECF No. 70 at 12.

[113] *See* ECF No. 71 at 6–7.

[114] 9 U.S.C. § 4.

1   this issue in *Burch v. P.J. Cheese, Inc.*[115]  After an in-depth analysis, the Eleventh Circuit

2   concluded that, "as a constitutional matter, a party resisting a motion to compel arbitration . . .

3   has no right to a jury trial on questions of fact related to the making of an agreement."[116]  The

4   court recognized that "[i]n certain circumstances[ ] the party does . . . have a statutory right to a

5   jury trial on the issue" as supplied by 9 U.S.C. § 4.[117]  But the court found that because Section 4

6   "is far from 'silent' on the mechanisms required to invoke the statutory right to a jury trial that it

7   provides, its procedures displace the general jury demand procedures provided in Federal Rule of

8   Civil Procedure 38."[118]  It then "evaluat[ed] whether the general jury demand in Burch's

9   complaint complied with Section 4's procedural requirements for demanding a jury trial on an

10  issue related to the making of an arbitration agreement."[119]  The court concluded that it did not

11  because Burch was obligated to—but did not—"make a *specific* demand for a jury trial on a

12  *specific* issue related to the 'making of the arbitration agreement' . . . to preserve [his] right to a

13  jury trial on the issue."[120]

14        Like Burch's jury demand, Mayorga's is not specific to the motion to compel arbitration

15  and does not identify any issue going to the making of an agreement on which she seeks to

16  preserve her statutory right to a jury trial.  Mayorga's general jury demand was also filed nine

17  days after her deadline to respond to the motion to compel arbitration expired.[121]  Because

18

---

19  [115] *Burch v. P.J. Cheese, Inc.*, 861 F.3d 1338, 1346–50 (11th Cir. 2017).

    [116] *Id.* at 1347.

20  [117] *Id.*

    [118] *Id.* at 1349.

21  [119] *Id.*

22  [120] *Id.* at 1349–50.

23  [121] *Compare* ECF No. 39 (order granting nunc pro tunc stipulation at ECF No. 42 to extend
    Mayorga's deadline to file her response brief to 09/23/2019), *with* ECF No. 46 (jury demand
    filed on 10/02/2019); *see Burch*, 861 F.3d at 1349 n.19 (concluding that the deadline imposed by

Mayorga's jury demand is twice procedurally defective, I find that she has failed to invoke her statutory right to a jury trial on her mental-capacity challenge. The parties are therefore directed to meet and confer, consult with my Courtroom Deputy, and file a proposed joint pretrial order with a plan to adjudicate the mental-capacity issue through a bench trial.

The upshot of my decisions resolving Mayorga's objections regarding Ronaldo's motion to compel arbitration is that federal arbitrability law governs the parties' arbitration agreement and, under that law, the court must decide whether Mayorga lacked the mental capacity to assent to the settlement agreement. But an arbitrator must decide Mayorga's other challenges against arbitration. Because Mayorga failed to comply with the FAA's procedures to request a jury trial on the mental-capacity issue, the court will proceed to a bench trial on that issue.

## II.   Ronaldo's motion to dismiss Mayorga's merits claims [ECF No. 29]

The magistrate judge recommends that if I adopt his recommendation to grant Ronaldo's motion to compel arbitration and stay this case, I should deny as moot Ronaldo's motion to dismiss Mayorga's claims.[122] No party objects to this recommendation. But because I have determined that Mayorga's mental-capacity challenge must be determined by the court, and the proper venue for resolving Mayorga's merits claims and other challenges to arbitration hinges on that determination, I modify this recommendation. Ronaldo's motion to dismiss Mayorga's claims is denied without prejudice to his ability to refile that motion if Mayorga prevails on her mental-capacity challenge.

---

court order for Burch to response to the motion to compel "established that date as the dispositive 'return day of the notice of application'" discussed in 9 U.S.C. § 4).

[122] ECF No. 67 at 9.

## III.    Ronaldo's motion to strike documents [ECF No. 55]

The magistrate judge recommends that I grant Ronaldo's motion to strike two documents that Mayorga provides with her response to Ronaldo's motion to compel arbitration on the ground that they are covered by the attorney-client privilege.[123]  Mayorga objects, arguing that Ronaldo waived that privilege because, as the documents were obtained by a hacker, Ronaldo's attorney neither adequately safeguarded them nor took "any reasonable step to investigate and recover the documents from any source."[124]  Mayorga provides only conjecture—not reasoned argument or evidence—to support her position.  And her bald citation to *Teradata Corporation v. SAP SE* is unpersuasive, especially considering Ronaldo's arguments distinguishing that case from the facts here.[125]  Thus, I overrule Mayorga's objection on this motion and adopt the magistrate judge's recommendation to grant Ronaldo's motion and strike Exhibits 4 and 5 from Mayorga's response brief.

## IV.    Jason's motion to appoint guardian ad litem [ECF No. 58]

Finally, Mayorga's brother Jason moves under Nevada's guardianship statutes to be appointed as Mayorga's guardian for purposes of this case.[126]  The magistrate judge recommends that if I adopt his recommendation to grant Ronaldo's motion to compel arbitration and stay this case, I should deny as moot Jason's motion to be appointed her guardian for this case.[127]  Mayorga objects, uncertain why compelling arbitration would moot Jason's motion.[128]

---

[123] *Id.* at 8–9.

[124] ECF No. 70 at 12–13.

[125] *Compare id.* at 13 (citing *Teradata Corporation v. SAP SE*, No. 18cv3670, 2018 WL 6528009 (N.D. Cal. Dec. 12, 2018)), *with* ECF No. 71 at 11–13.

[126] ECF No. 58 (sealed).

[127] ECF No. 67 at 9.

[128] ECF No. 70 at 19.

Rule 17(c)(2) requires the court to "appoint a guardian ad litem—or issue another appropriate order—to protect a minor or incompetent person who is unrepresented in an action."[129]  "Although the court has broad discretion and need not appoint a guardian ad litem if it determines [that] the person is or can be otherwise adequately protected, it is under a legal obligation to consider whether the person is adequately protected."[130]  The Ninth Circuit instructed in *Allen v. Calderon* that "when a substantial question exists regarding the mental competency of a party proceeding pro se, the proper procedure is for the district court to conduct a hearing to determine competence, so a guardian ad litem can be appointed, if necessary."[131]  The representation of an incompetent person by an attorney is not adequate for Rule 17(c)'s purposes.[132]

The standard for determining competency—capacity to sue or be sued—is determined by the law of the person's domicile.[133]  Mayorga is domiciled in Nevada.  Under Nevada law, a person is incompetent if she "does not have the present ability" to "[u]nderstand the nature and purpose of the court proceedings" or "[a]id and assist [her] counsel . . . at any time during the proceedings with a reasonable degree of rationale understanding."[134]

---

[129] Fed. R. Civ. P. 17(c)(2).

[130] *U.S. v. 30.64 Acres of Land, More or Less, Situated in Klickitat County, St. of Wash.*, 795 F.2d 796, 805 (9th Cir. 1986).

[131] *Allen v. Calderon*, 408 F.3d 1150, 1153 (9th Cir. 2005).  Mayorga is represented by counsel in this case, but I see no reason to depart from this procedure.

[132] *30.64 Acres of Land*, 795 F.2d at 806.

[133] Fed. R. Civ. P. 17(b)(1).

[134] *C.f.* Nev. Rev. Stat. § 178.400 (defining incompetency for the purposes of a person's ability to be tried or adjudged to punishment for public offense).  The court could not find a Nevada statute or case defining incompetency for the purposes of capacity to sue or be sued in a civil case.  Nevada's statutory scheme for guardianship of adults (NRS Chapter 159), which Jason cites, defines and uses the terms "incapacitated" and "limited capacity."  *Id.* at §§ 159.019, 159.022.  But that chapter says that its "provisions do not apply to guardians ad litem" unless otherwise

25

The Ninth Circuit has not defined the contours of what constitutes the presentation of "substantial evidence of incompetence . . . ."[135]  In *Allen*, the court found that a sworn declaration from the proposed incompetent person (Allen) and that of another inmate explaining "that Allen is mentally ill and does not understand the court's instructions[,]" coupled with a letter from the prison psychiatrist stating that Allen was under his care and listing Allen's diagnosis and medications, was substantial evidence of Allen's incompetence.[136]  I use the evidence provided in *Allen* as a guidepost here.

As evidence of Mayorga's incompetence, Jason provides his own declaration and declarations from Mayorga and her mother who all attest that Mayorga (1) has difficulty understanding and making decisions about things due to certain disabilities and (2) is unable to assist her counsel in this matter due to the severity of emotions that it causes her to feel.[137]  Jason also provides a written statement from a therapist who has seen Mayorga and who states that she believes that appointing a guardian for Mayorga in this case is a good idea.[138]  Although significant, I find that this is not substantial evidence that Mayorga is incompetent under Nevada law.

---

stated.  *Id.* at § 159.033.  And the provisions concerning the appointment of a guardian ad litem do not use the terms incapacitated or limited capacity.  *Id.* at §§ 159.0455, 159.0487, 159.0806, 159.095.  Rather, they use the term "protected person," which simply means "any person, other than a minor, for whom a guardian has been appointed."  *Id.* at § 159.0253.  Jason does not identify what standard he believes the court should apply in determining whether Mayorga is competent.

[135] *See Allen*, 408 F.3d at 1153.

[136] *Id.* at 1152.

[137] ECF Nos. 58 at 6–12 (Mayorga's declaration), 14–18 (Jason's declaration), 20–25 (Mayorga's mother's declaration) (all sealed).

[138] *See id.* at 30.

1    The family declarations that Jason provides contain information that is relevant and

2  helpful to answer the question before me, but the fact that Jason has not provided a letter or other

3  written statement from a doctor or other licensed professional who has seen and treated Mayorga

4  and who opines about Mayorga's diagnosis, care, and ability to understand the nature and

5  purpose of this proceeding or assist her counsel is disconcerting.  The therapist's letter that Jason

6  provides does not meaningfully speak to any of those matters.  Thus, I sustain Mayorga's

7  objection in part and modify the magistrate judge's recommendation: Jason's motion to appoint a

8  guardian ad litem is denied without prejudice to his ability to reurge that motion with a more

9  fulsome complement of evidence.

10                                              **Conclusion**

11    IT IS THEREFORE ORDERED that Mayorga's Objection **[ECF No. 70] is**

12  **SUSTAINED in part** and the Report and Recommendation **[ECF No. 67] is ADOPTED and**

13  **MODIFED in part**: the Court declines to adopt the magistrate judge's recommendations that

14  (1) Nevada's arbitrability law governs the parties' agreement to arbitrate; (2) Mayorga's mental-

15  capacity challenge against arbitration must be determined by an arbitrator; and (3) Ronaldo's

16  motion to dismiss and Jason's motion to appoint a guardian ad litem are moot.  Mayorga's

17  Objection is **OVERRULED** in all other respects.

18    Accordingly, IT IS FURTHER ORDERED that:

19  •  Ronaldo's Motion to Compel Arbitration and Stay this Case **[ECF No. 26] is**

20      **GRANTED in part** as stated in this order **and DENIED without prejudice** in all other

21      respects.  Ronaldo may reurge his request for that relief, if necessary, after the court

22      resolves Mayorga's mental-capacity challenge against arbitration.  The parties have **until**

23      **November 30, 2020**, to meet and confer, consult with my Courtroom Deputy, and file a

proposed joint pretrial order with a plan to adjudicate the mental-capacity issue through a bench trial.

- Ronaldo's Motion to Dismiss **[ECF No. 29] is DENIED without prejudice** to his ability to refile that motion, if necessary, after the court resolves Mayorga's mental-capacity challenge against arbitration;

- Ronaldo's Motion to Strike **[ECF No. 55] is GRANTED**.  The Clerk of Court is directed to **STRIKE ECF Nos. 44-1 and 44-2**, which are Exhibits 4 and 5 to Mayorga's response to Ronaldo's motion to compel arbitration and stay this case;

- Jason Mayorga's Motion to Appoint a Guardian Ad Litem **[ECF No. 58] is DENIED without prejudice** to his ability to refile that motion with a full complement of the necessary evidence; and

- Mayorga's Motion for Leave to File Excess Pages **[ECF No. 66] is GRANTED**.

_____
U.S. District Judge Jennifer A. Dorsey
September 30, 2020