PETER S. CHRISTIANSEN, ESQ.
Nevada Bar No. 5254
pete@christiansenlaw.com
KENDELEE L. WORKS, ESQ.
Nevada Bar No. 9611
kworks@christiansenlaw.com
KEELY A. PERDUE, ESQ.
Nevada Bar No. 13931
keely@christiansenlaw.com
CHRISTIANSEN TRIAL LAWYERS
710 S. 7th Street
Las Vegas, Nevada 89101
Telephone:    (702) 240-7979
Facsimile:     (866) 412-6992
*Attorneys for Defendant Cristiano Ronaldo*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| KATHRYN MAYORGA, | CASE NO.:    2:19-cv-00168-JAD-DJA |
| Plaintiff, | |
| v. | **DEFENDANT'S EMERGENCY MOTION FOR CASE TERMINATING SANCTIONS AND TO DISQUALIFY STOVALL & ASSOCIATES** |
| CRISTIANO RONALDO, | |
| Defendant. | |

Defendant Cristiano Ronaldo, through his attorneys, Christiansen Trial Lawyers, hereby moves for case terminating sanctions and to disqualify Plaintiff's Counsel, Stovall & Associates ("Stovall"). As counsel for Plaintiff, Stovall intentionally sought stolen documents from an alleged cyber hacker and not only used those documents as exhibits to public filings in this case, but also as support for his request that the Las Vegas Metropolitan Police Department reopen a decade old investigation to prosecute the Defendant. A substantial number of these ill-gotten documents are labeled privileged attorney-client communications and work product. Now, in defiance of this Court's prior order striking certain of those documents from the record in this case, Stovall continues to assert he intends to use information contained in the wrongfully obtained communications in order to prosecute Plaintiff's claims. Defendant also recently learned Plaintiff obtained hundreds of additional confidential and privileged documents from Football Leaks, which she submitted to LVMPD but has never disclosed in this litigation. Because of such egregious misconduct, no sanction less than dismissal will suffice.

Defendant respectfully requests this Motion be heard on an emergency basis because additional depositions in this matter are scheduled to begin on June 23, 2021.[1] Based on communications between counsel, Defendant reasonably anticipates Plaintiff will attempt to question witnesses regarding information learned during the review of privileged communications as well as regarding stolen documents Plaintiff obtained pre-litigation from third party sources but never disclosed to Defendant in this case. If these depositions are to proceed absent a ruling on the instant motion, Defendant will suffer further undue prejudice. Because the initial expert disclosure is set for July 2, 2021, the depositions scheduled for June 23, 24, 25 and 28 cannot reasonably be continued in order to allow this Court to rule in the ordinary course. *Id.* Accordingly, good cause exists to resolve these issues on an emergency, expedited basis. *Id.*

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   RELEVANT FACTS AND PROCEDURAL HISTORY**

This case arises from an encounter alleged to have occurred in 2009. Plaintiff Kathryn Mayorga ("Plaintiff") alleges Defendant Cristiano Ronaldo ("Defendant") sexually assaulted her at the Palms Casino on June 13, 2009. Compl., ECF No. 1 at pp. 2-3. Within months of the alleged assault, Plaintiff retained counsel and sought civil redress for her claims. *See* Decl. of Kendelee L. Works, Esq., ECF No. 12. Defendant, through counsel, vehemently denied Plaintiff's version of events but agreed to privately mediate the dispute pre-litigation. *Id.* The mediation took place in Las Vegas in January 2010, and the parties reached an agreement as to confidentiality and a monetary settlement amount. *Id.* Over the course of the following eight months, the parties further negotiated the final terms of the written agreement, and ultimately memorialized the resolution in that certain Settlement & Confidentiality Agreement ("SCA"). *Id.* The SCA was fully executed by both parties and their Counsel in August 2010.[2] ECF 30, Exhibit A at p. 16. Defendant paid

---

[1] *See* Decl. of Kendelee L. Works, Esq. in Support of Defendant's Emergency Motion for Case Terminating Sanctions and to Disqualify Stovall & Associates, attached hereto as Exhibit C.

[2] A copy of the SCA was previously filed under seal as Exhibit A to Defendant's Motion to Dismiss (ECF No. 30).

the negotiated settlement amount and the matter resolved. Nearly a decade later, Plaintiff retained Stovall and initiated the instant lawsuit.

**A. STOVALL UNLAWFULLY OBTAINED STOLEN, PRIVILEGED AND INADMISSIBLE DOCUMENTS.**

Stovall brazenly admits he requested and obtained documents from an accused cyber hacker, which he has repeatedly attempted to use to support Plaintiff's allegations in this case.[3] Stovall, acting on behalf of Plaintiff, obtained the stolen documents in July 2018, and apparently used them to craft a verified complaint against Defendant, which he first filed in state court on September 27, 2018. *See* Verified State Court Complaint, attached hereto as Exhibit A. Plaintiff's verification affirms under oath she has the read the contents of the State Court Complaint, knows the contents thereof, and the allegations therein are true of her own knowledge or to the best of her information and belief. *Id.* Plaintiff subsequently dismissed that action and filed a new Complaint in this action on January 28, 2019.

While both complaints reference that, "plaintiff obtained from Football Leaks copies of documents and communications between defendant Cristiano Ronaldo and his 'team,'" Plaintiff did not disclose that her lawyer had specifically requested and received documents labeled privileged attorney client communications and work product. Exhibit A at p. 14; ECF No. 1 at pp. 13-14. To the contrary, on October 23, 2018, Stovall sent correspondence to Defendant's counsel requesting that Defendant "identify and provide copies of the specific 'Football Leaks,' documents that you, your client or anyone acting on his behalf have identified as having been altered, modified or fabricated…". *See* Oct. 23, 2013 [sic] correspondence attached hereto as Exhibit B; *see also* Decl. of Kendelee L. Works, Esq., attached hereto as Exhibit C (affirming Exhibit B was received in October 2018, not 2013).

Tellingly, both complaints consistently refer to communications between Defendant and his "team of 'fixers,' known as 'personal reputation protection specialists,'" – careful to never

---

[3] Plaintiff has represented, through counsel, that "Documents 0003-0121 and 0121 and 0175-0275 [sic] are documents that Plaintiff's Counsel received from "Football Leaks" pertaining to Defendant [Mr. Ronaldo]." ECF 45.

1  reveal what Plaintiff had really obtained readily appear to be communications between a "team"

2  of "lawyers" and their client. *Id.* at Exhibit A at 5; ECF No. 1 at 5. Indeed, Plaintiff's verified

3  State Court Complaint named "DOE" and "ROE" defendants, again choosing to not identify any

4  of Defendant's "lawyers" as part of the "team," instead specifying the DOE and ROE defendants

5  "were agents, servants, employees, partners or joint ventures of every other defendant named

6  herein." Exhibit A at pp. 1-2. Defendant Ronaldo was the only other named Defendant.

7  Consistent with federal practice, there are no DOE and ROE defendants named in the instant

8  action. ECF No. 1.

9      It was not until nearly a year later, on September 23, 2019, that Plaintiff finally disclosed

10  to Defendant, the hundreds of documents0 Stovall obtained—documents that had been cyber

11  hacked from Defendant's prior lawyers, and the majority of which are labeled privileged attorney-

12  client communications and work product.[4] ECF No. 44 (Plaintiff's Opposition to Defendant's

13  Motion to Compel Arbitration at Exhibits 4 and 5 (Documents identified as Bates Nos. 003-257);

14  *see also* Plaintiff's Initial Disclosures at Exhibits 8 and 9, relevant portions attached hereto under

15  seal as Exhibit D and which are the subject of a contemporaneous motion for leave to file under

16  seal.  The first page of Plaintiff's Exhibit 4 to the Opposition to Defendant's Motion to Compel

17  is an email from Plaintiff's Counsel to "Football Leaks," which is dated July 25, 2018.  ECF No.

18  44 at Exhibit 4, Bates 0001-2; *see also* Exhibit D at KM00129-130.  Within the email, Plaintiff's

19  Counsel informs the recipient he represents "Katie Mayorga" and has been retained to file a

20  lawsuit against Defendant Cristiano Ronaldo for injuries suffered as a result of an alleged sexual

21  assault.  *Id.*  Stovall, as counsel for Plaintiff, specifically requested, in relevant part, that "Football

22  Leaks" provide him with:

23      any communications, emails, text messages, social media postings, documents or
        other information… including but not limited to:
24      1.  the sexual assault.
25      2.  the **employment of attorneys and investigators** by Ronaldo to investigate
            my client, her family, witnesses and friends after the sexual assault

26

27  _____

28  [4] Defendant continues to object to the authenticity of the Football Leaks documents at issue here
    and further, does not concede that such hacked materials have not been altered or modified.

3. the **employment of attorneys and investigators to represent and defend** Ronaldo after the sexual assault of my client

4. the **reporting and communications of the attorneys and investigators** that investigated Katie Mayorga, her family, witnesses, friends and the attorney Katie hired to represent her.

5. the **reporting and communications of the attorneys and investigators representing and defending** Ronaldo following the sexual assault **thru the negotiations and conclusion of the settlement** and non disclosure agreement.

3. [sic] the **negotiations leading up to the agreement to mediate**

4. [sic] the **mediation itself**

….

6. The **evaluation or assessment of the attorney** representing Katie Mayorga, before, during and after the mediation.

7. the terms of the settlement and non-disclosure agreement

…

*Id.* (emphases added). In response to Stovall's email request for attorney-client communications and attorney work product, the individual identified as "Football Leaks" sent an attachment of documents, stating, "[i]n the Attachment you can find all relevant information in my possession. I hope that helps."  ECF No. 44 at Exhibit 4, Bates 0001; and Exhibit D at KM00129.

Upon receipt of Plaintiff's Opposition to Defendant's Motion to Compel Arbitration, which for the first time revealed Stovall had intentionally sought and obtained privileged attorney-client communications and work product, Defense counsel promptly alerted Stovall to the issue. *See* September 24, 2019, email from Peter S. Christiansen, Esq., to Stovall, attached hereto as Exhibit E. The parties then stipulated to have the court seal Exhibits 4 and 5 pending motion practice and a ruling from the Court as to whether the documents should be both sealed and stricken from the record. ECF No. 45. On February 4, 2020, the Magistrate issued his Report and Recommendation, in relevant part finding Defendant had not waived the attorney-client or work product privileges, nor put the documents at issue in this litigation.  On September 30, 2020, over Plaintiff's Objection, this Court affirmed the Magistrate's recommendation on the issue and ordered the Football Leaks documents be stricken from record and sealed.  ECF No. 72 at 24; ECF No. 67 at 8-9.

**B.   PLAINTIFF FILED A NOTICE OF APPEAL FROM THE COURT'S ORDER STRIKING THE PRIVILEGED AND STOLEN DOCUMENTS.**

On October 29, 2020, Plaintiff a filed a Notice of Appeal from this Court's Order Sustaining in Part Objection and Adopting and Modifying in Part Report & Recommendation, which sought to challenge the court's ruling as to "Ronaldo's motion to strike documents."  ECF No. 73. On November 23, 2020, Defendant's counsel informed Stovall that Defendant intended to move to dismiss the appeal for a lack of jurisdiction because pursuant to 9 U.S.C. § 16, the subject order was neither final nor appealable. *See* Nov. 23, 2020 email correspondence and response attached hereto as Exhibit F. Stovall confirmed by email that Plaintiff disagreed and would oppose the motion to dismiss. *Id.*

On November 28, 2020, Defendant timely moved to dismiss the appeal. On December 30, 2020, after obtaining two extensions of the deadline to oppose dismissal, Plaintiff opted to voluntarily dismiss the appeal without ever filing an opposition. *See* Dec. 30, 2020, Stipulation and Order to Dismiss Appeal Without Prejudice, attached hereto as Exhibit G; *see also* Jan. 13, 2021 Amended Stipulation and Order to Dismiss Appeal with Prejudice, attached hereto as Exhibit H. On January 15, 2021, the Court of Appeals for the Ninth Circuit granted Plaintiff's request to dismiss.

On November 24, 2020, the parties filed their Proposed Discovery Plan and Scheduling Order, with special scheduling review requested. ECF No. 79. On December 2, 2020, this Court entered its order granting in part and denying in part the parties' Proposed Discovery Plan and Scheduling Order.  ECF No. 80. On December 22, 2020, the Court granted the first stipulation to extend the time for Plaintiff to object to the discovery order.  ECF No. 83. On January 5, 2021, the Court granted Plaintiff another extension of time to object to the discovery order, making such objection due on or before January 8, 2021.  ECF NO. 86. Plaintiff never filed any objection. Thereafter, on February 2, 2021, Plaintiff first sent Defense counsel authorizations to obtain medical, employment and educational records. *See* Feb. 2, 2021 letter from Moynihan to Works, attached hereto as Exhibit I.

**C. STOVALL CONTINUES TO BELIEVE HE IS ENTITLED TO USE PRIVILEGED ATTORNEY-CLIENT COMMUNICATIONS AND WORK PRODUCT TO PROSECUTE PLAINTIFF'S CLAIMS.**

On February 9 and 12, 2021, Plaintiff's counsel emailed Defense counsel requesting deposition availability for Defendant, his prior lawyers and/or agents and counsel's availability for the deposition of mediator Joseph Bongiovi. *See* Emails, attached collectively hereto as Exhibit J. On February 18, 2021, Defense counsel sent a letter to Plaintiff's counsel confirming Defendant would object to the taking of his deposition or any of his lawyers or agents at this stage in the proceedings as both irrelevant, pursuant to ECF No. 80, and an improper invasion of the attorney-client privilege. *See* February 18, 2021 letter, attached hereto as Exhibit K. Defendant also enclosed an authorization for Plaintiff's signature to allow release of her prior attorney's full file. *Id.*

Having received no response, on March 19, 2021, Defense counsel sent two emails to Plaintiff's attorneys – one seeking a status on the authorization for release of the prior attorney's file and a meet and confer if such authorization was not forthcoming; and a second email attaching a draft confidentiality and protective order and also requesting the parties agree to extend all upcoming discovery deadlines for 90 days. *See* Emails, attached hereto collectively as Exhibit L. Again having received no response, Defense counsel reached out via email on March 29, 2021 asking for a status on the authorization for Plaintiff's prior lawyer's file, the draft confidentiality order, and whether Plaintiff would agree to extend discovery. *See* Email, attached hereto as Exhibit M.

Plaintiff's counsel and Defense counsel spoke briefly on March 29, 2021, at which time Plaintiff's lawyer declined to confirm whether he would agree to extend discovery or to enter into the confidentiality order, instead insisting that the parties formally meet and confer on March 30, 2021. *See* March 29, 2021 confirming email from Stovall to Works and Works' responsive email, attached collectively hereto as Exhibit N. The parties conferred on March 30, 2021 and despite having no articulable basis for refusing to extend the upcoming discovery deadlines or to agree to the confidentiality and protective order, Plaintiff's counsel declined to do so. Stovall likewise continued to insist the depositions of Defendant and his prior lawyers and agent(s) are somehow relevant to Plaintiff's mental capacity at the time of the mediation and signing of the SCA, so the parties remained at odds regarding the appropriate scope of discovery. *See* Exhibit N (Stovall's

7

1    March 29, 2021 email correspondence stating, "…the plaintiff has consistently taken the position

2    that facts and specifically, the conduct of the plaintiff, observed by the attorneys, investigator and

3    mediator (and his staff) ***are not privileged***, are discoverable and relevant to the issue of capacity

4    and the defendant's knowledge thereof.") (emphasis added); *see also* Decl. of Kendelee L. Works,

5    Esq. at ECF No. 90 at 2-3.

6         During the meet and confer on March 30, 2021, Stovall further reiterated his insistence

7    that the stolen Football Leaks documents remained relevant to Plaintiff's capacity to contract and

8    he believed he would be entitled to question witnesses regarding such communications. *Id.* In

9    particular, Stovall maintained that he should be permitted to question Defendant's lawyers and/or

10   agents regarding their knowledge of Plaintiff's mental state at or around the time of the January

11   12, 2010 mediation, which he asserted was substantiated by the documents labeled attorney-client

12   communications and work product contained within the stolen Football Leaks documents. *Id.* On

13   April 28, 2021, Magistrate Judge Albregts entered an order granting Defendant's Motion to

14   Extend Time for discovery. ECF No. 99. Particularly relevant here, the court again reiterated

15   concern that Plaintiff is "laser focused on expanding the scope of this case." *Id.* at 2:26-27.

16        With discovery having been extended, both parties stipulated along with Joseph Bongiovi

17   (the mediator at the time of the subject mediation) and Kathy Bongiovi (Mr. Bongiovi's office

18   manager and wife), to have their depositions take place on May 11 and 12, 2021.  ECF No. 102.

19   All parties also agreed to waive the mediator's statutory confidentiality privilege but that the

20   Bongiovi's and their counsel would agree to be bound by any protective or confidentiality order

21   in place in this case. *Id.* Additionally, the Bongiovi's and counsel for both parties agreed to

22   provide any documents to be used at the time of the depositions at least one week in advance. *Id.*

23   On May 3, 2021, the day before the parties were scheduled to exchange documents for the

24   depositions, Stovall emailed all parties indicating he needed additional time to prepare and would

25   like to move them out about a month. *See* May 3, 2021 email, attached hereto as Exhibit O.

26   Stovall noted he was still reviewing additional documents he "just received" from the Defense.

27   Notably, Plaintiff had "just received" additional documents due to his own intransigence in

28   refusing to sign a stipulated protective order and forcing Defendant to seek such relief from the

8

Court. Once the Court granted Defendant's motion and entered the Protective Order on April 29, 2021, Defendant promptly produced documents that had been withheld on confidentiality grounds. ECF No. 101.

Specifically, Defendant hand delivered his Second Supplemental Disclosure of Documents to Stovall's office on April 30, 2021. Within those confidential disclosures was the investigative file produced by the Las Vegas Metropolitan Police Department ("LVMPD") on April 22, 2021. *See* Exhibit C. Although Plaintiff previously disclosed to Defendant the stricken Football Leaks documents, also included within the LVMPD investigative file are approximately 400 additional documents, which Plaintiff has never disclosed in this litigation. *See* Exhibit D at KM00126-387; *see also* Documents identified as Bates Nos. CR-001188–1510, which are attached hereto under seal as Exhibit P and the subject of a contemporaneous motion for leave to file under seal. Of the approximately 400 additional documents, about half appear to be duplicates of attorney-client communications and work product that Plaintiff has disclosed but which appear in a different format. *Id.* Nevertheless, more than 200 documents appear to be stolen attorney-client communications and work product that Stovall obtained from Football Leaks and provided to LVMPD, but has never disclosed to Defendant in this litigation.

Of particular note within LVMPD's file is an Officer Declaration referencing ███████████████████████████████████████████████████ *See* Officer Declaration at CR-000691, included within Exhibit P and filed under seal as designated "Confidential." While the Officer's Declaration does not specify ███████████████████████████████████████████████████ *See generally Id.* at CR-000689-706.

In September 2018, Plaintiff gave an interview to a German publication called "Der Spiegel," which was highlighted in a lengthy article published on September 29, 2018. *See* Der Spiegel Article attached hereto as Exhibit Q at p. 1 of 23. Der Spiegel reported Plaintiff "possesses a document that could be extremely dangerous for [Defendant]. *Id.* Der Spiegel further noted Plaintiff's [then state court] Complaint was "supported by a 27 page document that "contains a

1  version of how [Defendant] experienced that night…" *Id.* at p. 3 of 23.  Not surprisingly, the

2  Football Leaks documents ████████████████████████████████████████████████████████

3  ████████████████████████████████████████████████████████████████████████████████████

4  ███████████████████ *See* Exhibit P at CR-000926 through CR-001004.  In fact, it appears Plaintiff

5  herself relied on this Football Leaks question and answer document when attempting to fill in her

6  own memory blanks ███████████████████████████████████████████████████████████████████

7  ████████████████████████████████████████████████████████████████████████████████████

8  ████████████████████████████████████████████████████████████████████████████████████

9          During the course of communications regarding the rescheduling of the Bongiovi

10  depositions, counsel for Defendant learned Stovall still intends to use at least portions of the

11  Football Leaks documents during such depositions. *See* Exhibit C. Because Stovall has

12  continually insisted that Defendant's knowledge of the Plaintiff's mental state, if any, and that of

13  his lawyers and agents, is relevant to the issue of capacity, Defendant requested a meet and confer

14  on the issue to ascertain the manner in which Plaintiff intended to utilize such documents. *See*

15  Email communications attached hereto as Exhibit R; *see also* Exhibit C. Defense counsel

16  specifically requested the meet and confer be held before a court reporter so the parties would

17  have a recorded transcript of counsels' respective positions and representations. *See* Transcript

18  of Non-Appearance Deposition of Michaela Wood fka Michaela Tramel, a true and accurate copy

19  of which is attached hereto as Exhibit S; s*ee also* Exhibit C.  Stovall, on behalf of Plaintiff, refused

20  to meet and confer on the record, insisting that recording such meetings violates the spirit of the

21  local rule and accusing Defense Counsel of trying to obtain "admissions" for motion practice. *Id.*

22          Counsel subsequently met and conferred without the presence of a court reporter, at which

23  time Stovall agreed the Football Leaks documents contain communications between Defendant

24  and/or Defendant's lawyers, which "arguably" fall within the attorney-client privilege. *See*

25  Exhibit C. Stovall indicated he did not intend to use as deposition exhibits, the attorney-client

26  communications that have been stricken. *Id.* However, Stovall believes the other Football Leaks

27  documents are fair game despite Defense Counsel noting the Football Leaks documents were

28  stolen and obtained from a cyber hacker, could never be authenticated and have been stricken

from the record and sealed by this Court. *Id.* Stovall asserted that despite the Court's order granting the entirety of Defendant's Motion to Strike, Plaintiff did not view the Court's order as having stricken all of the Football Leaks documents. *Id.* At no time during the meet and confer did Stovall disclose that he had obtained additional documents from Football Leaks, which Plaintiff apparently provided to LVMPD, but which Stovall has never provided to Defendant. *Id.*

On May 23, 2021, Defense counsel emailed Stovall and requested confirmation that the entirety of the Football Leaks documents contained within LVMPD's file, bates numbered by Defendant as CR000926 through CR001510, were submitted by Stovall and/or Plaintiff or someone acting on her behalf as opposed to another source. *See* May 23, 2021 email attached hereto as Exhibit T.  Stovall did not directly respond to that email or particular question but did send a letter on May 25, 2021 regarding, "several issues discussed during the May 17, 2021 'meet and confer.'" *See* Correspondence from Stovall to Works, attached hereto as Exhibit U. Within that letter, Stovall addressed in relevant part, the "Use of Privileged Documents During Discovery," and the "Use of Stolen Football Leaks Documents During Discovery." *Id.* Although Stovall stated he agrees the "attorney client privilege applies to the communications between the defendant and his attorneys and communications between the defendant's attorneys, he reiterated his belief the "attorney-client privilege does not extend to communications or documents exchanged between the defendant or defendant's attorneys and the mediator, the defendant or defendant's attorney and the plaintiff's attorney, or the plaintiff's attorney and the mediator."

Curiously, ***none*** of the Football Leaks documents that Plaintiff actually disclosed to Defendant in this litigation, contain non-privileged communications between Plaintiff's prior lawyer and Defendant's prior lawyers, or any of the lawyers and the mediator. *See* Exhibit D. Tellingly, those communications are however, contained within the Football Leaks documents contained in LVMPD's file but never disclosed by Plaintiff in this case.  *See id.*; *see also* Exhibit P.  Stovall went on to dispute whether the Football Leaks documents were "stolen," indicating in pertinent part, "It is not known how or when the documents identified in this case as 'Football Leak' [sic] documents were originally obtained… What is known about these documents…is that they were obtained by an internet query by plaintiff's counsel." *Id.* Stovall concluded by asserting,

1   "…whether the documents identified in this were stolen or not, ignores the issues material to this

2   case." *Id.*

3         In short, Stovall has agreed to not use as exhibits, certain attorney-client privileged

4   communications he specifically sought from a third party identified as "Football Leaks" prior to

5   this litigation, but he has not indicated he will forego using any knowledge gained from his

6   extensive review of those documents. To the contrary, Stovall reiterates his opinion that the

7   [SCA] was illegally obtained, which is "merely a restatement of the allegations in the complaint,"

8   – allegations Stovall ignores are derived from Plaintiff's review of the stolen, protected and

9   privileged Football Leaks documents. Moreover, Plaintiff affirmatively intends to conduct

10   discovery regarding what Stovall refers to as the "non-privileged communications" contained

11   within the Football Leaks documents – documents he intentionally sought from an outside third

12   party with zero regard for when and how the accused cyber hacker obtained protected and

13   confidential materials; and which Plaintiff has ***never*** disclosed in this case.

14   **II.**   **<u>LEGAL ARGUMENT</u>**

15         Stovall, on behalf of Plaintiff, has acted intentionally and with a complete disregard for

16   the integrity of the judicial process and the sanctity of the attorney-client privilege and work

17   product doctrine. Not only did Stovall seek out privileged documents, he has failed to disclose to

18   Defendant or this Court that Plaintiff possesses hundreds of additional pages of hacked and

19   privileged documents. Plaintiff and Stovall's knowledge of the ill-gotten Football Leaks

20   documents has permeated this litigation, tainted the truth finding process and resulted in prejudice

21   to Defendant that cannot be remedied by any sanction less than dismissal. In short, Stovall's

22   knowledge of the content of the privileged and protected documents cannot be undone and, even

23   more troubling, he will not abandon his quest to utilize the information gleaned from the purloined

24   material to prosecute Plaintiff's claims in this litigation. Because the resulting prejudice is

25   incurable, Plaintiff's Complaint should be dismissed in its entirety. At a minimum, Stovall must

26   be disqualified.

27

28

## A. UPHOLDING THE INTEGRITY OF THE JUDICIAL PROCESS REQUIRES DISMISSAL.

"It is well settled that dismissal is warranted where…a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings…" *Jackson v. Microsoft Corp.*, 211 F.R.D. 423, 433 (W.D. Wash. 2002) (*aff'd* by *Jackson v. Microsoft Corp.*, 78 Fed.Appx. 588 (9th Cir. 2003) (unpublished)).  Federal district courts have the inherent power to dismiss an action as a sanction for bad faith conduct.  *U.S. ex rel. Lujan v. Hughes Aircraft Co.*, 67 F.3d 242, 247 (9th Cir.1995) (citing *Halaco Engineering Co. v. Castle*, 843 F.2d 376, 380 (9th. Cir. 1988)).  Although our system of jurisprudence strongly favors determination of cases on the merits, "federal courts may dismiss a party's case for misconduct that abuses the judicial process."  *Xyngular Corp. v. Schenkel*, 200 F.Supp.3d 1273, 1300-01 (D. Utah 2016)(citing *Lee v. Max Int'l. LLC,* 638 F.3d 1318, 1320 (10th Cir. 2011)(internal citations omitted)).

In assessing whether dismissal is an appropriate remedy, this Court must consider: 1) the existence of extraordinary circumstances; 2) the presence of willfulness, bad faith or fault by the offending party; 3) the efficacy of lesser sanctions; 4) the relationship or nexus between the misconduct drawing the dismissal sanction and the matters in controversy in the case; and as optional considerations, where appropriate, 5) the prejudice to the party victim; and 6) the government interest at stake.  *Id.*  In order for dismissal to be a proper exercise of inherent power, a court must explicitly consider less drastic sanctions and provide a reasonable explanation of possible and meaningful alternatives.  *Id.* at 247-48.

In *Jackson*, which the Ninth Circuit upheld on appeal in an unpublished opinion, the district court used its inherent power of dismissal where the plaintiff, a former Microsoft employee, had obtained CD's containing thousands of emails from an unknown source. 211 F.R.D. at 431. Within the emails were proprietary secrets, confidential attorney work-product and confidential information regarding the evaluation and compensation of other Microsoft employees. *Id.* Plaintiff retained one of the CD's for ten months before finally turning it over to the defendant and failed to turn over a second CD until the second day of his deposition, after having already transferred the information to his computer hard drive and accessed substantial

13

amounts of the stolen data. *Id.* The plaintiff employee also obtained hard copies of certain personnel data, but he claimed to not recall how he came into possession of such information. *Id.*

In dismissing the plaintiff's claims, the court noted that a theft on this scale would alone be sufficient to warrant dismissal. *Id.* However, the plaintiff's secretive behavior and "clear reliance on the stolen documents in the preparation of his case only makes dismissal more appropriate." *Id.* In assessing the prejudice to defendant, the court reasoned that even if all "purloined" documents had been returned, the damage to defendant had already been done. *Id.* at 432. The plaintiff had spent considerable time and attention reading and referring to the items at issue. Particularly pertinent here, plaintiff possessed for ten months internal company communications regarding the manner in which Microsoft would respond to the plaintiff's allegations of mistreatment. *Id.* Ultimately, the court, could "conceive of no sanctions which would cure plaintiff's extensive access to defendant's privileged and confidential materials and would assure plaintiff's honesty in the proceedings to come." *Id.*

Courts in other districts have likewise imposed the sanction of dismissal where one party has obtained stolen documents from another source and used confidential or privileged communications to further its own case. *See Schenkel*, 200 F.Supp.3d at 1311-12. In *Schenkel*, a shareholder obtained documents from an IT director who had access to corporate documents in his company as well as other companies for which the IT director performed work. *Id.* The shareholder improperly obtained, reviewed and relied upon documents that belonged to other companies, which he was not involved with and had no right to access. *Id.* at 1312. Although the IT director had the necessary password and authorizations to access the various servers, there was no evidence he had authority to remove the documents, possess them or give them to third parties. *Id.* Nonetheless, the IT director did just that and provided them to the shareholder at his request. *Id.* at 1312-13. The shareholder collected documents from the IT director for over a year before filing a derivative suit against the company's directors. *Id.*

In finding dismissal to be the appropriate sanction, the court relied on the shareholder's, "prelitigation request, review, and collection of documents in anticipation of litigation, and his later introduction of those materials in [the] litigation to support his claims." *Id.* at 1313. Directly

on point here, the court concluded that it, "may use its inherent powers to sanction a party who circumvents the discovery process and the rules of engagement employed by the federal courts by improperly obtaining evidence before litigation and then attempting to use that evidence in litigation." *Id.* at 1315 (citing *In re Shell Oil Refinery*, 143 F.R.D. 105, 108 (E.D. La. 1992)("...courts may sanction parties who obtain documents outside the discovery process pursuant to their 'authority to remedy litigation practices that threaten judicial integrity and threaten the adversarial processes.'")).

1. **It is highly extraordinary for a licensed lawyer to knowingly and intentionally seek out an opponent's protected and confidential communications.**

It is undoubtedly extraordinary for a licensed lawyer like Stovall to intentionally solicit, on his client's behalf, stolen and privileged attorney-client communications and work product from an accused cyber hacker. The extent of Stovall's willfulness simply cannot be overstated. There can be no doubt that his conduct was intentional and in complete disregard for the integrity of the judicial process and the rules of engagement applicable in federal court. Even more egregious than the plaintiffs in *Jackson* and *Schenkel*, Stovall is a lawyer who must be held to a higher standard. That he would purposefully seek stolen documents that include confidential and protected materials is bad enough. That he would continue his efforts to use materials similar to those the Court has already stricken from the record is unconscionable.

2. **Because no lesser sanction can undo the prejudice to Defendant, dismissal is the only appropriate remedy.**

Stovall's conduct is all the more concerning because just as in *Jackson* and *Schenkel*, he and Plaintiff spent months reviewing and digesting the confidential and privileged documents before using them to craft and then prosecute Plaintiff's claims in this case.  Plaintiff went as far as to use the stolen Football Leaks documents to fill in the blanks ██████████████ ██████ If such misconduct in *Jackson* and *Schenkel* resulted in incurable prejudice, the combined misdeeds of both Plaintiff and Stovall certainly cannot be undone. No remedy but dismissal could cure Plaintiff's extensive access to Defendant's privileged and confidential materials.

No lesser sanction would assure Plaintiff's honesty in the proceedings to come, which is again underscored by Stovall's continued insistence he should be permitted to utilize the Football

15

1   Leaks documents to prove Plaintiff's claims. More problematic is that Plaintiff still has not

2   disclosed to Defendant approximately four hundred pages of stolen documents that Stovall

3   obtained from Football Leaks and submitted to LVMPD.

4        Finally, Stovall and Plaintiff have both had extensive access to stolen, confidential

5   material labeled privileged attorney-client communications and work-product. The information

6   contained in such purloined documents forms the gravamen of Plaintiff's complaints (one of

7   which Plaintiff herself signed and verified), various briefs before this Court, and, even now, the

8   continued mission to question witnesses regarding such confidential materials. *See* Decl. of

9   Janeen Issacson, Esq., attached hereto as Exhibit V. Merely foreclosing the use of the Football

10  Leaks documents themselves would likewise be insufficient to ensure honesty and secure the

11  integrity of these proceedings because the protected and confidential information cannot now

12  somehow be unlearned.  Given that both Plaintiff and Stovall have had access to such documents,

13  disqualification alone is an insufficient remedy. Just as in *Jackson* and *Schenkel*, only dismissal

14  can remedy the harm done by Stovall's intentional conduct.

15  **B. AT A MINIMUM, STOVALL MUST BE DISQUALIFIED.**

16       Federal courts are vested with inherent authority to discipline attorneys before them for

17  conduct deemed inconsistent with applicable ethical standards.  *Maldonado v. New Jersey ex rel.*

18  *Admin. Office of Courts – Probate Div.*, 225 F.R.D. 120, 137 (D. N.J. 2004) (citing *In Re Snyder*,

19  472 U.S. 634, 645 n. 6 (1985)). Generally, state law governs a district court's analysis of attorney

20  misconduct.  *Id.*; *see* LR IA 11-7.[5] Pursuant to Local Rule IA 11-7, an attorney practicing in this

21  district is governed by the Model Rules of Professional Conduct as adopted and amended by the

22  Supreme Court of Nevada.  In *Maldonado*, the court applied a six-part balancing test to determine

23  disqualification of counsel was warranted where the client had inadvertently received a privileged

24

---

25  [5] Much like its federal counterpart, under Nevada law, **"**district courts are responsible for

26  controlling the conduct of attorneys practicing before them, and they have broad discretion in
    determining whether disqualification is required in a particular case. *Brown v. Eighth Judicial*

27  *Dist. Ct.*, 14 P.3d 1266, 1269 (Nev. 2000) (citing *Robbins v. Gillock*, 862 P.2d 1195, 1197 (Nev.

28  1993)).

16

letter and provided it to his lawyers, who then reviewed the protected material and failed to disclose its receipt to opposing counsel. 225 F.R.D. at 138 (citing *Richards v. Jain*, 168 F.Supp.2d 1195 (W.D. Wash. 2001)).[6]  The court noted that numerous other jurisdictions have likewise held that disqualification is warranted where an attorney receives privileged information, reviews the materials and fails to notify and/or return them to opposing counsel. *Id.* (citing *Optyl Eyewear Fashion Int'l Corp. v. Style Companies, Ltd.*, 760 F.2d 1045, 1049 (9th Cir. 1995)(holding the appearance of impropriety can be a sufficient ground for disqualification."); *Milford Power Ltd., P'ship v. New England Power Co.*, 896 F.Supp. 53, 58 (D. Mass. 1995); *Williams v. Transworld Airlines, Inc.*, 588 F.Supp. 1037, 1045 (W.D. Mo. 1984)(stating "the potential for unfair discovery of information through private consultation rather than through normal discovery procedures threatens the integrity of the trial process.")).[7]

Generally, a district court should consider: 1) whether the attorney knew or should have known the material was privileged; 2) the promptness with which the attorney notifies the opposing side that he or she has privileged information; 3) the extent to which the attorney reviews and digests the privileged information; 4) the significance of the privileged information; i.e., the extent to which its disclosure may prejudice movant's claim or defense, and the extent to

---

[6] Nevada law also requires courts to apply a balancing test in deciding whether disqualification is appropriate.  To that end, a court should consider: "the individual right to be represented by counsel of one's choice, each party's right to be free from the risk of even inadvertent disclosure of confidential information, and the public's interest in scrupulous administration of justice." *Brown*, 14 P.3d at 1269-70.  To prevail on a motion to disqualify, the movant must show (1) at least a reasonable possibility that some specifically identifiable impropriety occurred[6] and (2) that the likelihood of public suspicion or obloquy outweighs the social interests that would be served by the challenged lawyer's continued participation in the particular case.  *See id*.  The second element is met where there is a "reasonable probability[] that the challenged attorney actually received privileged or confidential information." *Id.* at 1270.  Any doubts are generally resolved "in favor of disqualification." *Id*.

[7] The Nevada Supreme Court has similarly held that disqualification may be necessary "to prevent disclosure of confidential information" that could be used to an adverse party's disadvantage.  *Nevada Yellow Cab Corp. v. Eighth Judicial Dist. Ct.*, 152 P.3d 737, 743 (Nev. 2007) (applying principle in context of former clients).

which return of the documents will mitigate that prejudice; 5) the extent to which movant may be at fault for the unauthorized disclosure; and 6) the extent to which the nonmovant will suffer prejudice from the disqualification of his or her attorney. *Richards*, 168 F. Supp.2d at 1205.[8]

> **1. Stovall intentionally requested attorney-client privileged communications and cannot genuinely deny he knew or should have known the material was privileged.**

Nevada Rule of Professional Conduct 4.4(a) provides that a lawyer shall not use methods of obtaining evidence that violate the legal rights of a third person. Here, Stovall intentionally sought out a known accused cyber hacker and requested stolen and protected attorney-client communications and attorney work product. *See* Exhibit V. His intentional invasions of these privileges undoubtedly violate Defendant's legal rights to confidential and privileged attorney representation.

Stovall has been practicing law for decades. A majority of the documents at issue here were explicitly marked as being privileged attorney client communications and/or work product in bolded and capital letters. A cursory review of these documents readily reveals the mental impressions of Defendant's lawyers, case strategy and advice on how to proceed. In short, there can be little doubt that any law school graduate would immediately understand the Football Leaks documents contained protected material. Indeed, Mr. Stovall, despite his decades of experience, intentionally requested copies of stolen documents from a cyber hacker outside the normal discovery process. Given such unorthodox methods of evidence-gathering, Stovall can hardly disclaim knowledge the documents he sought were, at a minimum, intended to be confidential and, in all likelihood, privileged or otherwise protected.

---

[8] The Nevada Supreme articulated these same six non-exclusive factors to be assessed in determining whether to disqualify an attorney who has received an opponent's privileged materials. *Merits Incentives*, 262 P.3d, 720, 726-27 (Nev. 2011). Unlike this case where Stovall intentionally sought out attorney client communications and work product, *Merits Incentives* involved the receipt of materials that were unsolicited. Nevertheless, *Merits Incentives* still provides guidance here because it involved documents provided to an attorney by anonymous third parties. *See id.* at 724 ("RPC 4.4(b) is not applicable, as written, because the disc was not inadvertently sent[.]").

If nothing else, even if Stovall genuinely believed the protected nature of the documents was debatable, prudence and the canons of ethical conduct dictate Stovall was first required to notify the Defendant's counsel before using the notes to prosecute Plaintiff's claims in this action. *Compare Merits Incentives*, 262 P.3d at 727 (finding disqualification was not warranted where "instead of lying in wait with the documents, [Mowbray] went out of [his] way to point out that [he] had received them and to let Defendants ascertain their provenance, giving every opportunity for Defendants to register an objection and demand return and non-use.")(alterations in original) *with Rico v. Mitsubishi Motors Corp.*, 171 P.3d 1092, 1100-01 (Cal. 2007) (affirming disqualification of plaintiffs' counsel where he inadvertently received defense counsel's notes, failed to notify defense counsel, made a copy of the notes, scrutinized them, provided copies to his co-counsel, and discussed the notes with his experts); *see also Raymond v. Spirit Aerosystems Holdings, Inc.*, 2017 WL 3895012 (D. Kan. June, 30, 2017)(*obj. overruled by* 2017 WL 3895012 (D. Kan. Sept. 6, 2017); *Gotham City Online, LLC, v. Art.com*, 2014 WL 1025120, at *4 (N.D. Cal. Mar. 13, 2014)

> **2. The promptness with which the attorney notifies the opposing side that he or she has received its privileged information.**

Stovall likewise failed to comply with the notification and disclosures requirements of Nevada Rule of Professional Conduct 4.4(b). Exhibit V. While not directly applicable in this case because subsection (b) of the rule governs a lawyer's obligations when information is received that was inadvertently sent, it nevertheless illustrates the gravity of Stovall's missteps. Even if he had received unsolicited confidential materials that were inadvertently disclosed, Stovall would have been obligated to promptly notify opposing counsel. *See* RPC 4.4(b) (stating in part, that "[a] lawyer who receives a document or electronically stored information relating to the representation of the lawyer's client and knows or reasonably should know that the document or electronically stored information was inadvertently sent shall promptly notify the sender."); *see also* Exhibit V; *Merits Incentives,* 127 Nev. at 697, 262 P.3d at 725 (extending prompt notification requirement where attorney receives potentially privileged or protected documents from an anonymous source or a third party unrelated to the litigation: "an attorney who receives

documents regarding a case from an anonymous source must promptly notify opposing counsel, ***or risk being in violation of his or her ethical duties and/or being disqualified as counsel***.") (emphasis added).

All the more troubling here, Stovall did not merely receive unsolicited privileged documents from an anonymous source, but rather specifically sought out attorney client communications and work product. A far cry from promptly notifying Defendant or his lawyers that he was in receipt of the privileged documents, Stovall reviewed and digested such documents, which he then incorporated directly into both complaints in this case.[9] Plaintiff did not disclose any of the Football Leaks documents until nearly a year after filing the instant lawsuit. Stovall, moreover, provided hundreds of pages of ***additional*** Football Leaks documents to LVMPD, which are comprised almost entirely of privileged attorney client communications and work product and have never been disclosed by Plaintiff. Defendant only discovered the hundreds of additional pages of stolen and protected documents after serving a subpoena for LVMPD's complete file. In the meantime, Plaintiff and Stovall have had extensive access to protected and confidential materials and continue to demonstrate their intent to utilize the information within those documents in order to litigate Plaintiff's claims. Such conduct is undoubtedly improper and cannot be tolerated.[10]

**3. The extent to which the attorney reviews and digests the privileged information.**

[9] Such conduct is clearly improper. Exhibit V; *See, e.g., Hartpence v. Kinetic Concepts, Inc.*, 2013 WL 2278122, at *3 (C.D. Cal. May 20, 2013) (disqualifying counsel where they "not only used privileged materials to craft their claims, but incorporated verbatim content from those materials in the pleadings."); *Maldonado v. New Jersey*, 225 F.R.D. 120, 140-41 (D. N.J. 2004) (disqualifying plaintiff's counsel who retained and used defendants' privileged letter in his initial and amended complaint: "The appropriate conclusion is that counsel fully digested the contents of the letter to Maldonado's advantage."); *Clark v. Superior Court*, 125 Cal.Rptr.3d 361 (Ct. App. 2011) (affirming disqualification where counsel used privileged documents to craft claims).

[10] *See also In re Marketing Investors Corp.*, 80 S.W.3d 44, 51-52 (Tex. App. 1998) (applying *Meador* factors adopted in *Merits Incentives, supra*, and ordering disqualification where attorney extensively reviewed privileged documents, referenced them in new pleadings, and demonstrated an intent to use them in the future).

Stovall obtained the Football Leaks documents in July 2018 and then disclosed two different rounds of the ill-gotten communications to LVMPD in August and September 2018, respectively. The cover letters to LVMPD accompanying such disclosures make clear that Stovall and Plaintiff spent considerable time reviewing and analyzing their contents. On September 27, 2018, Stovall filed the state court complaint, which Plaintiff verified in writing. Stovall cannot genuinely assert that he did not digest or use the protected and stolen information to draft both complaints and other briefs. Stovall did not disclose to Defendant any of the hacked Football Leaks documents until September 23, 2019 – after possessing such protected communications for more than fourteen months.

Defendant only recently discovered the existence of approximately four hundred additional Football Leaks documents that Plaintiff gave to LVMPD but never disclosed to Defendant. Having had the ability to review the actual Football Leaks documents, it is clear both complaints and subsequent briefs filed in this case all quote extensive portions of the hacked communications. There is simply no way to unring the bell. Indeed, Stovall continues to insist he is entitled to utilize such information to litigate Plaintiff's claims despite that this Court has already stricken and sealed the Football Leaks documents that were disclosed in September 2019.

**4. The significance of the privileged information (*i.e.*, the extent to which its disclosure may prejudice the movant's claim or defense, and the extent to which return of the documents will mitigate that prejudice).**

The emails and other memoranda contain quintessential attorney-client privileged communications regarding the manner in which both the courts and law enforcement would potentially view Plaintiff's claims, potential strengths and weaknesses of the defense, potential strategies to employ, and where there may be risk. The significance of such information "cannot be overstated." *See Maldonado*, 225 F.R.D. at 140 ("[e]ssentially, the letter was a blue print to [the] merits of Plaintiff's case, as well as Defendants' defenses; therefore, its significance cannot be overstated. It is concluded that the letter's disclosure resulted in substantial prejudice to Defendants. The bell cannot be unrung here; hence, return of the documents will not mitigate the prejudice. This factor strongly favors disqualification.").

21

The prejudice to Defendant in allowing Plaintiff and Stovall to use Defendant's prior lawyer's privileged attorney client communications and work product to prosecute Plaintiff's claims goes to the heart of the adversary system. As one court has explained in the context of information shared as part of even merely a prospective attorney-client relationship:

> [t]he Court must maintain the integrity of the adversary process.  It would be an unfair disadvantage for Defendants to be confronted by an attorney whom they believe possesses intimate knowledge of their views and impressions of this litigation, even though that attorney professes that he has no knowledge nor recalls any, and, if he did, he would not need it or use it in a way to either alarm or harm Defendants. . . . ***Receiving Defendants' thoughts on the differences between the designs and the strengths and weaknesses of the parties' respective positions would generate an unfair opportunity to rebut Defendants during the course of this litigation.  Just having Defendants' opinions and impression of even public documents and facts would establish privileged communication and if revealed, in any form or fashion, would constitute significant harm***. . . . Notwithstanding [the attorney's] unwillingness to acknowledge it, he is potentially in a position to use privileged communication, and it would be arduous to extract from one's mind.

*Zalewski v. Sherlroc Homes, LLC*, 856 F. Supp. 2d 426, 436 (N.D.N.Y. 2012) (emphasis added) (citations and quotations omitted). The same concerns apply when an attorney receives, digests, and uses its adversary's privileged documents.  *See, e.g., McDermott Will & Emery LLP v. Superior Court*, 217 Cal. Rptr. 3d 47, 83–84 (Ct. App. 2017);  *Matter of Beiny*, 129 A.D.2d 126, 141-44 (N.Y. App. 1987) ("While documents may be effectively suppressed, the information gathered from them cannot be so easily contained…[T]here is no way of assuring that the tainted knowledge will not subtly influence its future conduct of the litigation."); *accord Brown*, 14 P.3d at 1270 (public suspicion outweighs societal interest in challenged attorney's continued participation in the case where that attorney has received adversary's protected information).

**5.  The extent to which movant may be at fault for the unauthorized disclosure.**

This Court has already determined that Defendant has not waived the protections of the attorney-client privilege or work product doctrines. ECF Nos. 67 and 72. Defendant's counsel here had numerous protections in place to secure client data and confidential communications. Defendant's lawyers maintained extensive, state-of-the-art safeguards and security measures to protect and secure client data and confidential communications, including the confidential data at

22

issue in the instant matter. *See* Decl. of Carlos Osorio De Castro, which is attached hereto under seal as Exhibit W and the subject of a contemporaneous motion for leave to file under seal. Moreover, all documents were marked "confidential" and/or "attorney-client privilege" or "attorney work product." *See generally* Documents 0003-257, included within Exhibits 4-5 to Plaintiff's Opposition to Defendant's Motion to Compel Arbitration; *see also* Exhibit D.

In 2018, when Defendant and his counsel learned of the cyber-hacking, they sought a preliminary injunction from courts in both Portugal and Germany where contents of the leaked documents were widely being published. *See* Certified Translations of Foreign Court documents attached collectively hereto as Exhibit X. Defendant also promptly acted to protect the privileged documents from use in this litigation upon receipt of Plaintiff's Opposition to the Motion to Compel Arbitration, which attached the subject documents.

Within twenty-four hours of receipt, Defense Counsel emailed Plaintiff's Counsel to inform him that documents which readily appeared to invade the attorney-client and work product privileges had been attached to the opposition and should not be disclosed to either the public or this Court. *See* Exhibit E. The Parties thereafter met and conferred, and Plaintiff's counsel agreed to stipulate that the subject documents remain sealed until this Court could decide the instant motion to strike and seal.

Prior to Plaintiff's counsel filing the subject documents with the Court, there was no reason to anticipate Plaintiff would attach privileged documents to a court filing. At the time of the Football Leaks, there was no way to know this litigation would ensue, much less that Plaintiff's counsel would take affirmative steps to obtain stolen and privileged communications. Defendant sought an injunction precluding further dissemination of the subject documents, the hacker alleged to be responsible for Football Leaks remains the subject of a criminal prosecution abroad, and the instant matter had long ago been resolved by way of the SCA.

### 6. The extent to which the nonmovant will suffer prejudice from the disqualification of his or her attorney.

Defendant acknowledges that in the event this Court does not impose case terminating sanctions, Stovall's disqualification will deprive Plaintiff of her chosen counsel. This is always

23

one of the factors that must be balanced in an attorney disqualification matter. *See Brown*, 116 Nev. at 1205, 14 P.3d at 1269-70. That said, a law firm, which obtains its adversary's privileged information and then uses that information to obtain an advantage in the litigation, should not be permitted to avoid disqualification simply to preserve the client's right to their chosen lawyer. As the Nevada Supreme Court has made clear, where there is a "reasonable probability that the challenged attorney actually received privileged or confidential information," (*see Id.* at 1270), the likelihood of public suspicion or obloquy outweighs the social interests that would be served by the challenged lawyer's continued participation in the particular case. *See Id.* That is exactly the case here.

On balance, the analysis inexorably leads to one result: Stovall must be disqualified because he obtained privileged and protected information from Football Leaks, failed to promptly notify Defendant's counsel that Plaintiff possessed of such information, and then made the unilateral decision to use that protected information to file the operative complaint in this case. "[T]he public interest in the scrupulous administration of justice" requires nothing less than disqualification. *Nevada Yellow Cab*, 152 P.3d at 743 (affirming order granting disqualification) (quoting *Brown*, *supra*).

### III. CONCLUSION

In light of the foregoing, Defendant respectfully requests that this Court enter an order dismissing Plaintiff's Complaint because no lesser sanction can remedy the prejudice caused by Plaintiff's use of privileged communications and work product that her counsel, Leslie Stovall, intentionally sought out, reviewed and has utilized in this case. At a minimum, Stovall must be disqualified from acting as counsel in this matter.

Dated this 27th day of May, 2021.

CHRISTIANSEN TRIAL LAWYERS

By _____
PETER S. CHRISTIANSEN, ESQ.
KENDELEE L. WORKS, ESQ.
KEELY A. PERDUE, ESQ.
*Attorneys for Defendant Cristiano Ronaldo*

24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**CERTIFICATE OF SERVICE**

Pursuant to FRCP 5 and LR-5.1, I certify that I am an employee of CHRISTIANSEN TRIAL LAWYERS, and that on this 27th day of May, 2021, I caused the foregoing document entitled **DEFENDANT'S EMERGENCY MOTION FOR CASE TERMINATING SANCTIONS AND TO DISQUALIFY STOVALL & ASSOCIATES** to be filed and served via the Court's CM/ECF electronic filing system upon all registered parties and their counsel.

_____
An employee of Christiansen Trial Lawyers

INDEX OF EXHIBITS

| | |
|---|---|
| Exhibit A | Verified State Court Complaint |
| Exhibit B | Correspondence from Leslie Stovall to Peter Christiansen dated October 23, 2013 [sic.] |
| Exhibit C | Declaration of Kendelee L. Works, Esq. in Support of Defendant's Emergency Motion for Case Terminating Sanctions and to Disqualify Stovall & Associates |
| Exhibit D | Plaintiff's Initial Disclosures (filed under seal) |
| Exhibit E | Email from Peter S. Christiansen to Leslie Stovall dated September 24, 2019 |
| Exhibit F | Emails between Kendelee Works and Leslie Stovall dated November 23, 2020 |
| Exhibit G | Stipulation and Order to Dismiss Appeal Without Prejudice dated December 30, 2020 |
| Exhibit H | Amended Stipulation and Order to Dismiss Appeal with Prejudice dated January 13, 2021 |
| Exhibit I | Correspondence from Ross Moynihan to Kendelee Works dated February 2, 2021 |
| Exhibit J | Emails between Ross Moynihan and Kendelee Works dated February 9 and 12, 2021 |
| Exhibit K | Correspondence from Kendelee Works to Ross Moynihan dated February 18, 2021 |
| Exhibit L | Emails between Kendelee Works and Ross Moynihan dated March 18 and 19, 2021 |
| Exhibit M | Email from Kendelee Works to Ross Moynihan dated March 29, 2021 |
| Exhibit N | Email from Les Stovall to Kendelee Works dated March 29, 2021 |
| Exhibit O | Email from Les Stovall to Peter Christiansen, Kendelee Works and James Silvestri dated May 3, 2021 |
| Exhibit P | Relevant portions of the Las Vegas Metropolitan Police Department investigative file (filed under seal) |
| Exhibit Q | Der Spiegel Article dated September 29, 2018 |
| Exhibit R | Emails between Defendant's counsel and Plaintiff's counsel dated May 12 and 14, 2021 |
| Exhibit S | Transcript of Non-Appearance Deposition of Michaela Wood fka Michaela Tramel |
| Exhibit T | Email from Kendelee Works to Les Stovall and Ross Moynihan dated May 23, 2021 |
| Exhibit U | Correspondence from Les Stovall to Kendelee Works dated May 25, 2021 |
| Exhibit V | Declaration of Janeen Issacson, Esq. |
| Exhibit W | Declaration of Carlos Osorio De Castro (filed under Seal) |
| Exhibit X | Certified translations of motions and orders issued in courts in Germany and Portugal |