# Exhibit "X"

# Exhibit "X"

**Nanette Gobel, M.A.**
***ATA Certified Translator & Court Registered Interpreter***
**Santa Monica, CA**
**Email: eandn@verizon.net**

## CERTIFICATION

I, the undersigned Nanette Gobel, hereby certify to have translated enclosed documents to my best knowledge and belief from German into English. I am a court registered interpreter and ATA certified translator, fluent in both the English and German languages.

Date:  May 18, 2021          Signature:



**Via email: michael.wulzinger@spiegel.de**

Noerr [Logo]

<small>Noerr LLP / Brienner Str.28 / 80333 Munich</small>

**Prof. Dr. Johannes Kreile**
Attorney-at-law
Noerr LLP
Brienner Str. 28
80333 Munich
Germany
www.noerr.com

Mr. Michael Wulzinger
DER SPIEGEL
Investigative Research
Ericusspitze 1
D-20457 Hamburg

Munich, on 4/11/2017

Assistant Cornelia Reisinger
T +49 89 28628380
T +49 89 286280 (front desk)
F +49 89 280110
Johannes.Kreile@noerr.com
Our reference:
JKL/M1J
Alicante Berlin Bratislava Brussels
Budapest Bucharest Dresden Dusseldorf
Frankfurt/M. Hamburg London Moscow
Munich New York Prague Warsaw

**Statement**
**Your Letter dated 4/10/2017**

Dear Mr. Wulzinger,

With regard to your letter dated 4/10/2017, we are notifying you per attached power of attorney that we are representing Mr. Cristiano Ronaldo.

Your questions suggest that DER SPIEGEL intends to publish an article dealing with an alleged rape of a woman in the United States in 2009. The accusations that your questions suggest are to be rejected in the strongest possible terms. At the same time, they constitute a massive infringement of the personality rights of our client. He is not willing to tolerate such a rights violation. We would like to bring to your prompt attention that our client will take legal action against every untrue allegation of facts as well as any violation of his personality rights.

In this context, please note the jurisprudence of the German Supreme Court, according to which, DER SPIEGEL would have to prove the allegation of a supposed rape. This will not be successful. Again, the principles of press coverage based on suspicion do not apply here either. According to the constant jurisprudence of the German Supreme Court and the Federal Constitutional Court, a factual assertion, the truthfulness of which is unclear, may only not be

Noerr LLP is a Limited Liability Partnership with registered offices at Tower 42, 25 Old Broad Street, London EC2N 1HQ, registered in England and Wales under register number 0C349228. The company is listed in the partnership register of the District Court of Munich under number PR945. Further information can be found online at www.noerr.com

prohibited if this is necessary to safeguard legitimate interests and if the information enjoys a current publicity value. This is not the case here. It must be taken into account that the duty to truth should protect the general personality rights of the person concerned. The more severe and lasting a statement affects the personality rights of the person concerned, the higher the requirements for the fulfillment of the duties of care imposed upon the person making such a statement. Your unfounded allegations clearly demonstrate a blatant lack of compliance with the required due diligence. It represents a particularly serious infringement of the personal honor and thus an attack on the core of the personality of the person concerned if a sexually based offense is assumed, especially one that has not been committed (cf. BGH NJW 2014, 2029, marginal note 28).

Before the background of the severe infringement of the personality rights of our client, we are asking you to forego any reporting on the topic that you inquired about.

Best regards,
Noerr LLP

[Signature]

Prof. Dr. Johannes Kreile
Attorney-at-law

POWER OF ATTORNEY

**Noerr [Logo]**

Noerr LLP
Brienner Str. 28
80333 Munich
Germany
www.noerr.com
T +49 89 28628380
T +49 89 286280 (front desk)
www.noerr.com
Alicante Berlin Bratislava Brussels
Budapest Bucharest Dresden Dusseldorf
Frankfurt/M. Hamburg London Moscow
Munich New York Prague Warsaw

In the matter          Mr. Cristiano Ronaldo dos Santos Aveiro

                                                    (Principal)

vs.                    DER SPIEGEL

Due to                 Dispute under press law

Noerr LLP and the attorneys-at-law, tax consultants and auditors (see page 2) acting for Noerr LLP are granted the power of attorney, without limitations, individually or together to represent the principal(s) in and out of court against any person or party, in particular in all courts and before all authorities, as well as on all judicial levels. At the same time, all acts already performed in this matter by the authorized parties are already approved. The power of attorney covers all matters in legal or economic connection with the above designated mandate.

In particular, the power of attorney also covers:
-   Any filing, withdrawal or restriction of legal remedies and reliefs of any kind and any waiver thereof,
-   Proceedings due to arrest, preliminary injunction and provisional order,
-   Enforcement by writ,
-   Conclusion and revocation of settlements, declaration and acceptance of waiver and acknowledgement,
-   Service of process and receipt thereof of any kind,
-   Any filing and withdrawal of demands for prosecution as well as accessory prosecution under criminal law as well as the filing and withdrawal of criminal charges.

The authorized parties have the right to grant sub-power of attorney within the framework of the powers granted herein in full or in part.

4/11/2017                              [Signature]
Place and date                        Signature

Noerr LLP is a Limited Liability Partnership with registered offices at Tower 42, 25 Old Broad Street, London EC2N 1HQ, registered in England and Wales under register number 0C349228. The company is listed in the partnership register of the District Court of Munich under number PR945. Further information can be found online at www.noerr.com

A list of members of the LLP may be reviewed at the registered offices of the company or at the partnership register of the District Court of Munich. The designation partner refers to a member of Noerr LLP and to persons with comparable position and qualification that are not members of Noerr LLP.

Version 01/2017

Noerr LLP is a Limited Liability Partnership with registered offices at Tower 42, 25 Old Broad Street, London EC2N 1HQ, registered in England and Wales under register number 0C349228. The company is listed in the partnership register of the District Court of Munich under number PR945. Further information can be found online at www.noerr.com

## SCHERTZ BERGMANN
### RECHTSANWÄLTE PartG mbB

SCHERTZ BERGMANN KURFÜRSTENDAMM 53 10707 BERLIN

ATTORNEYS-AT-LAW
PROF. DR. CHRISTIAN SCHERTZ
SIMON BERGMANN
HELGE REICH, LL.M.
SEBASTIAN GRAALFS
KERSTIN SCHMITT
DR. SEBASTIAN GORSKI, LL.M.
BERLIN
PROF. DR. BERNHARD VON BECKER
MUNICH

**In advance via fax: 040 42843-4318**
**Original via messenger**

Regional Court of Hamburg
Press division
Sievekingplatz 1
20355 Hamburg

| YOUR REFERENCE | OUR REFERENCE | BERLIN, ON |
|---|---|---|
| | 01454-18/CS/AW/MO | October 10, 2018 |

## Motion for Preliminary Injunction

of Mr. Cristiano Ronaldo,
Av. da Boavista, 4365—5.2,
Edificio Occeanvs—5100-137 Porto—Portugal,

**Movant,**

**Legal representatives:**

Schertz Bergmann Rechtsanwälte PartG mbB,
Kurfürstendamm 53, 10707 Berlin,

**Versus**

Spiegel-Verlag Rudolf Augstein GmbH & Co. KG,
represented by the general partner,
which is represented by the management,
Ericusspitze 1, 20457 Hamburg,

**Respondent,**

Concerning: Injunctive relief.
Value in dispute: € 100,000.00

KURFÜRSTENDAMM 53  10707 BERLIN  ·  FON (030) 88 00 15-0  FAX (030) 88 00 15-55
ZUCCALISTRASSE 19A  80639 MÜNCHEN  ·  FON (089) 12 02 09 60  FAX (089) 17 11 70 15
MAIL@SCHERTZ-BERGMANN.DE  ·  WWW.SCHERTZ-BERGMANN.DE
SITZ BERLIN  ·  AMTSGERICHT CHARLOTTENBURG  ·  PR 887 B
DEUTSCHE KREDITBANK AG  BLZ 120 300 00  KONTO 48 58 88  ·  SWIFT-CODE BYLADEM 1001  ·  IBAN DE 821 203 000 000 004 858 88

SCHERTZ BERGMANN

On behalf of and authorized by the Movant, we hereby file for a preliminary injunction, due to the particular urgency per ruling without hearing, for which we propose the following:

**1.**

The Respondent shall be prohibited from reporting on an intended civil suit with regard to the Movant due to alleged rape, as occurred in DER SPIEGEL no. 40 from 9/29/2018 on the cover as well as in the article on pages 94 to 103, otherwise a fine to be determined by the court will be levied for each case of infringement of up to € 250,000.00, alternatively regular detention or regular detention for up to six months, the latter to be applied to one of the managing directors,

**2.**

The costs of the proceedings are to be borne by the Respondent.

After the preliminary injunction is issued, we ask to be informed by phone to immediately prompt service to the Respondent (attorney-at-law Prof. Dr. Christian Schertz, phone: 0 30/88 00 15-0).

If the Court considers a hearing, sending the motion to the opponent for comment or rejection of the motion, we ask to first contact the undersigned via phone.

**Grounds:**

**I.**

The Movant is a globally known soccer player.

2

S C H E R T Z   B E R G M A N N

The Respondent published in DER SPIEGEL No. 40 from 9/29/2018 on the cover,

**Exhibit AST 1,**

the article announced thereupon on pages 94-103,

**Exhibit AST 2.**

With regard to the article, DER SPIEGEL had first contacted the authorized law firm Prinz with the questionnaire attached as

**Exhibit AST 3.**

The undersigned acted as authorized and declared vis-à-vis DER SPIEGEL in his response letter dated 9/17/2018,  to which a power of attorney was attached,

**Exhibit AST 4,**

referring to publications already issued from the year 2017, that he had recommended to his client not to provide any explanations for the questions submitted. We thus refer to page 3 of the letter dated 9/17/2018. It states:

"Our client will of course not answer the questions raised by you. Basically, it is out of the question. The allegations contained in your questions are one-sided allegations pertaining to the sphere of privacy. You describe the alleged course of an intimate meeting between our client and a third person. You know the legal situation in Germany. If our client were to comment on this, he would implicitly consent to a report."

Due to the press coverage already published in 2017, the letter also announced legal measures.

SCHERTZ BERGMANN

With another email dated 9/25/2018 DER SPIEGEL sent another questionnaire to the undersigned to forward to the Movant,

**Exhibit AST 5.**

Said questionnaire cites a document in which the Movant allegedly answered questions of his attorneys with regard to the matter. It must be established that the Movant never provided such a statement as quoted in the document. His attorneys also declared that such a document is not in their files or has ever existed.

With another letter dated 9/27/2018, the undersigned referenced in view of the new questionnaire to the response letter already sent on 9/17/2018,

**Exhibit AST 6.**

Nonetheless, the disputed article has now been published.

We are further submitting the articles published in 2017 which were merely dealing with the concrete accusation and quote the then authorized colleague Kreile,

**Set of exhibits AST 7.**

We are also submitting the corresponding letter of my colleague Kreile dated 4/11/2017 as

**Exhibit AST 8.**

SCHERTZ BERGMANN

Since the articles from 2017 did not have any further repercussions and no larger follow-up coverage ensued, no legal measures were taken. In the present case, however, legal measures are in order.

**II.**

The Movant is entitled to injunctive relief. Without prejudice:

The present case deals with an article about an alleged soon to occur mere civil suit indicating that the woman one-sidedly alleges to have been raped by the Movant. As a matter of fact, the Movant did not speak with DER SPIEGEL about the matter, which alone is relevant.

According to the principles of exceptionally admissible press coverage based on suspicion as applicable in Germany, the prerequisites are not met in the present case:

In this context, we are referring to the principles of the ruling of the German Supreme Court  VI ZR 367/15, which we attach as *causa colorandi* as

**Exhibit AST 9.**

The latter case also pertains to a soccer player who was cleared of allegations of sexual assault, even though he was subject to investigative proceedings. The ruling states:

"The court of appeals rightly assumed that the making available of the contested comments for retrieval online constitute an infringement upon the scope of protection of the general personality rights of the plaintiff. The reporting on investigative proceedings citing the accused by name inevitably affects his claim to protection of his personality and his good reputation, because

SCHERTZ BERGMANN

it makes his possible misconduct publicly known and negatively qualifies his person in the eyes of the recipients.

…

Since the subject matter of the press coverage is not only the investigative proceedings but the suspicion designated as 'initial suspicion' by the defendant that the plaintiff known by name supposedly sedated and raped a 21-year old woman at a party at his house or had been an accessory to this alleged offense, the prerequisites for admissible press coverage based on suspicion must be met… The appeal rightly complains that the appellate court has accepted this."

The Supreme Court further states:

"In this phase of the proceedings, it has merely been established that investigative proceedings have been initiated, but it has generally not been resolved whether the accused has committed the alleged offense."

We can already establish in this context that investigative proceedings had not even been initiated in the present case at the time of the press coverage. The matter just pertains to the announcement of a mere civil suit.

Furthermore, as the Supreme Court continues, a minimum amount of evidence is required. In the present case there is only the announcement of a civil suit based on a description of an alleged victim. The Movant did not speak to DER SPIEGEL about the matter. There is thus no statement that could be quoted. If quoting from alleged statements of the Movant toward his lawyers, we already noted earlier that the quotes therein are not from the Movant and that such a statement cannot be found in the materials of the attorneys. To be clear: The movant did not provide such a statement as DER SPIEGEL quotes.

Furthermore, the matter must be a substantial matter that affects the public.  The intention of a party to initiate civil proceedings in connection with a rape allegation can in no way constitute a matter that substantially affects the public, at least not in this phase of the proceedings.

SCHERTZ BERGMANN

Otherwise, it would always be admissible to report on intended civil suits associated with any kind of accusations without any investigative proceedings even having been initiated at that point.

Before this background, the press coverage is blatantly unlawful. It concerns the privacy of the Movant. An accusation suitable to stigmatize him publicly on the basis of a one-sided representation of an alleged victim.

We thus ask for a ruling pursuant to the Movant. Certified and simple copy enclosed.

Prof. Dr. Christian Schertz

Attorney-at-law

**Certified Copy**

**Regional Court [Landgericht] of Hamburg**          Hamburg, 10/18/2018

324 O 471/18

# Injunction

In the matter
Ronaldo, C. vs. SPIEGEL-Verlag Rudolf Augstein GmbH & Co. KG

The pleadings submitted by the representative of the movant including exhibits will be sent to the representative of the respondent as requested. The representative of the movant will receive the pleading of the opponent on 10/5/2018.

Furthermore, the representative of the respondent will receive the note in the files dated 10/15/2018 regarding the phone call with the representative of the movant. The note will also be sent, as requested via phone on 10/17/2018, to the representative of the movant.

The note states:

„N.
1) Note: Concern discussed
- no protection of anonymity, as lawyers commented afterwards, may be claimed here, since already made public + extremely well known in 2017
- no retroactive reporting on suspicion: sufficient minimum at least at the time of publication, given the opportunity to comment; not communicated that document was forged
- informed that representative of respondent legitimized himself

2) Proceedings to be continued in two weeks"

Käfer
Presiding Judge at the Regional Court

[Seal] Certifying the accuracy of the copy, Hamburg, 10/19/2018

Meyer-Dühring, Judicial Secretary, Clerk of the Court

Electronically generated and valid without signature

## TRANSLATION CERTIFICATION

I, Carolyn D. Quintella, certified ATA Portuguese to English translator, certification no. 457306, hereby attest that I have faithfully and accurately translated the following document from Portuguese to English to the best of my ability from the copy that was presented to me:

Legal Decision in the case of Cristiano Ronaldo vs. Spiegel

Raleigh, North Carolina

May 18, 2021

Carolyn D. Quintella

Carolyn D. Quintella
Portuguese into English
Certification #457306

Certified Translator

Signed electronically.  This signature takes
the place of a written signature.
Dr. Joana Mourinho Salvador

[Seal of Portugal]
Local Civil Court of Lisbon – Judge 15
Palace of Justice [at] Rua Marques de Fronteira
1098-001 Lisbon
Tel. 213846400   Fax 213812871   Email: lisboa.localcivel.@tribunais.org.pt

Case no. 21065/18.3T8LSB
Protective Order (CPC2103)
379818003

**CONCLUSION** – 9-25-2018
(Electronic document elaborated by the Alternate Clerk Dina Silva)
CLS

Regarding the preliminary hearing of Respondents:

Plaintiff is requesting the decree of a preliminary injunction with no prior hearing for Respondents, invoking what is set forth in Article 366, no. 1 of the Code of Civil Procedure, alleging that within the framework of preliminary injunctions, the Court will hear Plaintiff except when the hearing would put at risk the purpose or efficacy of the provision, which is the situation in this case.

Plaintiff sustains that, considering the purpose and urgency of the motion now presented, it is obvious that the prior summons of Respondents, because of the [amount of] time that this implies, would always compromise the practice of law which is to be protected here in the first place: the prohibition of the dissemination or publication of news about himself.

That is, according to Plaintiff, if Respondents were immediately subpoenaed to present an opposition, the amount of time for a reply and also for a decision to be made by this Court would make this current motion useless.

This must be considered and decided.

In accordance with what is set forth in Article 366, no. 1 of the Code of Civil Procedure, "*The Court will hear Respondents except when the hearing puts at serious risk the purpose or efficacy of the provision.*"

This above-mentioned precept arises out of the principle of adversarial procedure, according to which the prior hearing of the parties should be the rule.  This principle should be sacrificed as rarely as possible and only in cases that are specifically contemplated in law.

[Seal of Portugal]
Local Civil Court of Lisbon – Judge 15
Palace of Justice [at] Rua Marques de Fronteira
1098-001 Lisbon
Tel. 213846400   Fax 213812871   Email: lisboa.localcivel.@tribunais.org.pt

Case no. 21065/18.3T8LSB

In fact, the rule in preliminary injunctions is the adversarial procedure, specifically withheld only by law or when there are foundations that lead to the conclusion that respecting this principle would jeopardize the purpose or efficacy that is intended with the decree of the provision.

In the actual case on record, Plaintiff asks for Respondents *to refrain, in social media that they have or in entities held by them, in printed or electronic material (internet websites designated www.spiegel.de among others) from publishing, copying or quoting  the "news" mentioned in Articles 12 to 15 of what was articulated initially or others of identical content and furthermore from publishing any declarations, photographs or documentation that allegedly would be connected; that they refrain from transmitting indirectly the supposed "news" here in this case, [and refrain from] divulging this supposed "news" or any declarations, photographs or documentation related to it to any third parties, specifically to other owners of social communication organizations or people or entities that plan to disseminate it publicly."*

In assessing the motions and the case for requesting this preliminary injunction, it seems evident that the prior summons of Respondents, because of the delay arising out of the time period to present an opposition, can compromise the practice of the law that is sought to be protected here.

In fact, what can be inferred from the allegation in what was initially articulated is that there is a serious probability of new publications coming out about some past news that has to do with Plaintiff, which makes it urgent for a decision to be made in order not to thwart the objective of the provision, it being sure that First Respondent is responsible for the publication of the magazine Der Spiegel, a weekly publication, and that Second Respondent is in charge of the online version of that magazine.

On the other hand, considering the dates on which Plaintiff was contacted by Respondents making known the imminent publication of some news about him, the last one of which being dated September 17, no delay is to be expected in the establishment of this protective order imputed to Plaintiff.

[Seal of Portugal]
Local Civil Court of Lisbon – Judge 15
Palace of Justice [at] Rua Marques de Fronteira
1098-001 Lisbon
Tel. 213846400  Fax 213812871  Email: lisboa.localcivel.@tribunais.org.pt

Case no. 21065/18.3T8LSB

As LEBRE DE FREITAS and ISABEL ALEXANDRE (Annotated Code of Civil Procedure), Volume II, 3rd Edition, 2017, Coimbra Editora, p. 29) in notes about no. 1 of Article 366 of the Code of Civil Procedure, *" usefulness, purpose or efficacy point in the same direction: a hearing with Respondent should not take place when with it there is a risk of thwarting the practical effect that is planned, that is, when knowledge of the precautionary measure by Respondent or a delay in the acceptance of the provision resulting from the observance of adversarial procedure Increases the danger of serious harm that would be difficult to repair [and which] the provision is trying to avoid."*

In the concrete case in the records, in view of what is requested and alleged, the hearing with Repondents entails the risk of thwarting the practical effect that is hoped will be attained because the delay in accepting the provision resulting from the observance of adversarial procedure increases the risk of the alleged serious harm that would be difficult to repair [and which] the provision is trying to avoid.

In this way, being mindful of the motions and the case to be pled invoked by Plaintiff in his initial articulation and the serious probability if new publications come out about the news that is the subject of this case, a preliminary hearing with Respondents can render totally useless the purpose and efficacy of the requested provision.

Thus, in accordance with what is set forth in Article 366, no. 1 of the Code of Civil Procedure, in the terms set forth above, **the processing of this preliminary injunction is determined for now without the hearing with Respondents.**

May notice be given.

Taking into consideration the documentary proof in the records and the facts of common knowledge, we consider the production of evidence with witnesses not to be necessary, since an appreciation of the merits of this provision are not dependent on that evidence.

In this way the record will continue with the rendering of the ruling forthwith.

[Seal of Portugal]
Local Civil Court of Lisbon – Judge 15
Palace of Justice [at] Rua Marques de Fronteira
1098-001 Lisbon
Tel. 213846400   Fax 213812871  Email: lisboa.localcivel.@tribunais.org.pt

Case no. 21065/18.3T8LSB

**<u>RULING</u>**

**I. REPORT**
**CRISTIANO RONALDO DOS SANTOS AVEIRO,** professional soccer player, requested this common preliminary injunction against:
1. **SPIEGEL – VERLAG RUDOLF AUGSTEIN GMBH & CO. KG,** with headquarters at Ericusspitze 1, 20457 Humburg, Germany (fax contact: 0049 040 3007-2246; e-mail address: Spiegel@spiegel.de);
**2. SPIEGEL ONLINE GMBH & CO. KG,** with headquarters at Ericusspitze 1, 20457 Haumburg, Germany (fax contact: 0049 040 3007-2246; e-mail address: spiegel_online@spiegel.de).

He is making a motion for Respondents to be ordered:
a) to refrain, in social media that they have or in entities held by them, in printed or electronic material (internet websites designated www.spiegel.de among others) from publishing, copying or quoting the "news" mentioned in Articles 12 to 15 of what was articulated initially or others of identical content and furthermore from publishing any declarations, photographs or documentation that allegedly would be connected [to it].

b) to refrain from transmitting indirectly the supposed "news" here in this case, [and refrain from] divulging this supposed "news" or any declarations, photographs or documentation related to it to any third parties, specifically to other owners of social communication organizations or people or entities that plan to disseminate it publicly.

c) to refrain from disseminating or publishing any reference to the existence and contents of this motion for a protective order, [and] respective judicial decision and later acts.

d) that in the event however that there is dissemination of the supposed "news" in this case, by any means, that they take the necessary and adequate steps to remove that news from circulation,

[Seal of Portugal]
Local Civil Court of Lisbon – Judge 15
Palace of Justice [at] Rua Marques de Fronteira
1098-001 Lisbon
Tel. 213846400  Fax 213812871  Email: lisboa.localcivel.@tribunais.org.pt

Case no. 21065/18.3T8LSB

specifically withdrawing any reference to it from online publications or proceeding to recall any publications if they are already printed or if they have begun to be distributed or if they are on sale, with that sale being prohibited.

Furthermore, he is petitioning to assure that the measures decreed by the Court be respected, that is, that each Respondent be ordered, under the terms of Article 829-A of the Civil Code to pay a compulsory monetary sanction in the amount of 250,000 Euros (two hundred fifty thousand Euros) for each act of violation.

In this regard, he is alleging in summary that he is a professional soccer player, being widely considered one of the greatest soccer players of all times, having received throughout his career many dozens of individual and team awards, and furthermore his image has a relevant commercial value that allows him to earn dozens of millions of Euros annually because of contracts with several companies that endorse him at a global level.

Furthermore, he alleges that it is public knowledge that he is a dedicated, present family man with a very close relationship with his mother and siblings as well as more recently with his children and girlfriend, always having tried throughout his career to preserve and to relentlessly defend the closeness of his private and family life, which has been essential for the stability of his family, for the well-being of his relatives, especially his children, and for his professional success.

Plaintiff adds that on 9/3/2018, representatives of Respondents sent an e-mail to Plaintiff's representatives containing in an attachment a text from a letter sent to Plaintiff himself, to whom they asked that communication to be sent, in which they mentioned that they were investigating an alleged accusation of rape brought against Plaintiff by an American citizen [fem.], which supposedly took place in 2009, maintaining that allegedly new developments and information had arisen that they urgently wanted to discuss with Plaintiff.

[Seal of Portugal]
Local Civil Court of Lisbon – Judge 15
Palace of Justice [at] Rua Marques de Fronteira
1098-001 Lisbon
Tel. 213846400  Fax 213812871  Email: lisboa.localcivel.@tribunais.org.pt

Case no. 21065/18.3T8LSB

Likewise on 9/17/2018, representatives of Respondents sent a new e-mail to Plaintiff's representatives containing in an attachment a new communication address to Plaintiff in which they mention their having spoken with the supposed victim of rape, and they asked for Plaintiff's comments by 9/19/2018 in regard to a series of allegations supposedly by the same person in regard to the circumstances in which this alleged rape would have taken place.

These contacts took place after the publication of Spiegel Online, in the editions of 4/14/2017 and 4/21/2017, of two "news" articles about the supposed accusation of rape against Plaintiff in the summer of 2009.

Plaintiff maintains that Respondents' social media dissemination of the "news" in question as well as the publication of declarations, photographs or documentation that was supposedly connected to this, violates in a serious and irreparable way the right to a private life, good name, and reputation and also to Plaintiff's image and cause further damage to Plaintiff and his family which is very difficult to repair.

He further states that future increased profits for Respondents arising out of the public's greater interest in the contents because of the publication of this "news" would always be less than the damages, especially, non-property ones, that the "news" would inflict on Plaintiff.

In view of the preceding ruling, it was decided to go forward on the record without a preliminary hearing with Respondents.

The Court is competent in terms of nationality (in light of what is set forth in Article 7, no. 2 of the (EU) Regulation of the European Parliament and Council of December 12, 2012, and the predominant understanding in jurisprudence in regard to the interpretation of the expression *'place in which the wrongful fact occurred or may have occurred,"* in the sense that it includes the place where the harm is verified), matters and hierarchy.

[Seal of Portugal]
Local Civil Court of Lisbon – Judge 15
Palace of Justice [at] Rua Marques de Fronteira
1098-001 Lisbon
Tel. 213846400  Fax 213812871  Email: lisboa.localcivel.@tribunais.org.pt

Case no. 21065/18.3T8LSB

The case is appropriate and it does not suffer from total lack of validity.

The parties have legal personhood and legal competency and, given their interest in the case, they are legitimate, with Plaintiff having regular sponsorship.

There are no other invalidities, exceptions or prior matters that preclude knowledge of the merits of this proceeding or that need to be known.

## II. FOUNDATION BASED ON THE FACTS

The following are proven evidentiary facts relevant to the [final] decision in this case:

1. Plaintiff is a professional soccer player, being captain of the national all-star soccer team which became the European champion in 2016, and at present he is playing for Juventus Football Club, after having played for Real Madrid FC, Manchester United FC, and Sporting Club of Portugal.

2. Plaintiff is considered one of the greatest soccer players of all times, having won individual and team awards throughout his career.  It can be pointed out that he won a record number of five *Ballon d'Or* [gold cup] trophies for the best soccer player in the world, and League of Champions when he was with Manchester United FC and Real Madrid FC, the title of European champion with the national all-star soccer team in 2016, as well as several national champion soccer trophies from the well-known English and Spanish leagues.

3. Plaintiff is a national symbol and in 2017 the International Airport of Madeira, the autonomous region he is from, was named after him.

4. Plaintiff is also a worldwide brand, having 140 million followers on Instagram at present, which gives him the second highest ranking in the world in terms of number of followers on that platform.

5. Plaintiff signed publicity agreements with several brands which endorse him throughout the world.

[Seal of Portugal]
Local Civil Court of Lisbon – Judge 15
Palace of Justice [at] Rua Marques de Fronteira
1098-001 Lisbon
Tel. 213846400  Fax 213812871  Email: lisboa.localcivel.@tribunais.org.pt

Case no. 21065/18.3T8LSB

6. On November 8, 2016, the "Jornal de Negócios" [Commercial Newspaper] had an article that said *"On Monday the Portuguese soccer player Cristiano Ronaldo who, renewed with Real Madrid until 2021*, extended his contract with Nike. (…) According to the websites of Marca and AS, Spanish sports newspapers, Ronaldo has a lifetime contract.  The two newspapers from Madrid indicate an annual amount of about 20 million Euros, which is equivalent to CR7's salary at Real Madrid.  According to Marca, Ronald's present earnings with Nike, currently around seven million Euros, can go up to 40 million annually if some conditions are met (…).

7. Plaintiff is currently living in Turin with his girlfriend and the four minor children.

8. First Respondent is a German business enterprise responsible for the publication of the magazine Der Spiegel, which puts out 840,000 copies a week, and Second Respondent is a subsidiary of First Respondent [and] is responsible for the online version of that magazine.

9. On 9/3/2018, representatives of Respondents sent an e-mail to Plaintiff's representatives containing in an attachment a text from a letter sent to Plaintiff himself, to whom they asked that communication to be sent, in which they mentioned that they were investigating an alleged accusation of rape brought against Plaintiff by an American citizen [fem.], which supposedly took place in 2009, maintaining that allegedly new developments and information had arisen that they urgently wanted to discuss with Plaintiff.

10. On 9/17/2018, representatives of Respondents sent a new e-mail to Plaintiff's representatives in which they say that for a year and a half they have been investigating the accusation of rape brought against him and that they spoke with the supposed victim of rape.

11. In that e-mail, Respondents' representatives ask for comments from Plaintiff by 9/19/2018 in regard to a series of allegations supposedly by an alleged victim in regard to the circumstances in which the attributed rape would have taken place.

[Seal of Portugal]
Local Civil Court of Lisbon – Judge 15
Palace of Justice [at] Rua Marques de Fronteira
1098-001 Lisbon
Tel. 213846400  Fax 213812871  Email: lisboa.localcivel.@tribunais.org.pt

Case no. 21065/18.3T8LSB

12. These contacts took place after the publication of Spiegel Online, in the editions of 4/14/2017 and 4/21/2017, of two "news" articles about the supposed accusation of rape against Plaintiff in the summer of 2009, by an American citizen [fem.], and of the alleged terms of an agreement that was supposedly carried out in order to keep this accusation confidential.

13.  In this news alleged personal communications which would have taken place between Plaintiff and his attorney are described.

14. Plaintiff, although he habitually lives abroad because of his profession, comes to Portugal several times a year.  He has family and friends here and he is expanding several businesses, especially in the hospitality sector, in partnership with Pestana Group.

The facts in numbers 1 to 3, 5, 7 and 14 are well-known because they have been amply mentioned in Portuguese social media, including in the press and online and on television and radio, being in the awareness of everyday citizens with access to information that most people have access to.

The fact described in point 4 is proven by the contents of the document going from the back of page 17 to page 19.

The fact in point 6 comes from the contents of the press news from the back of page 19 to 20, with it being proven by evidence that this news was disseminated, [but] not producing any proof indicating that there was in fact any reality to the facts described therein.

Regarding the evidentiary proof of the fact described in 8, the Court allowed that not only was the circumstance one of public knowledge or notorious but that also it is documented on pages 23 and 24, which reinforces that notoriety.

In regard to the communications exchanged between Plaintiff and Respondents and provided as proof in 9, 10, and 11, the Court allowed the documents together with pages 25 to 32 and their respective translation.

Finally, the facts of point 12 and 13 arise from the contents of press news from pages 33 to 53 and the respective translation.

[Seal of Portugal]
Local Civil Court of Lisbon – Judge 15
Palace of Justice [at] Rua Marques de Fronteira
1098-001 Lisbon
Tel. 213846400  Fax 213812871  Email: lisboa.localcivel.@tribunais.org.pt

Case no. 21065/18.3T8LSB

**III. LEGAL FOUNDATION**

**A. Prerequisites for a common preliminary injunction:**

Article 362 no. 1 of the Code of Civil Procedure sets forth the following: *"Whenever someone shows a fear based on fact that someone else could cause serious damage to his rights that would be difficult to repair, he can request a protective or anticipatory provision adjusted to his case to assure effectiveness regarding the rights that were threatened."* So the protective orders are petitioned for and decreed for protecting the usefulness of the action, [and] they are always dependent on a main action that has already been proposed or that will be proposed, unless the reversal of the litigation is decreed.

In reality preliminary injunctions have the purpose of reacting against the slow and delayed formation of a definitive decision, which would expose the presumed party to serious risks of legal harm. To avert such risks, that is, to avoid the harm that could be produced, a temporary provision may be brought to produce results until the final decision is declared.

So the function of protective orders is to eliminate the so-called *periculum in mora*, that is, to defend the party who is presumed to have that right against damages or losses that a long delay until the final decision could cause him.

In accordance with what is set forth in Article 362, no. 1 of the Code of Civil Procedure, *"Whenever someone shows a fear based on fact that someone else could cause serious damage to his rights that would be difficult to repair, he can request a protective or anticipatory provision adjusted to his case to assure effectiveness regarding the rights that were threatened."*

This is an action that is to protect any situation that is not specifically typified in law for the purpose of adopting measures that would remove the *periculum in mora* that was actually verified and assure the effectiveness of the rights that were threatened.

According to the legal provision mentioned above, the following are the prerequisites for a non-specified protective order:

[Seal of Portugal]
Local Civil Court of Lisbon – Judge 15
Palace of Justice [at] Rua Marques de Fronteira
1098-001 Lisbon
Tel. 213846400  Fax 213812871  Email: lisboa.localcivel.@tribunais.org.pt

Case no. 21065/18.3T8LSB

a) The serious probability of the existence of rights for which the protection is sought (*fumus boni juris*).

b)  A well-founded fear that someone else might cause serious harm in regard to these rights that would be difficult to repair, before the final decision in the case in which this measure is provided (*periculum in mora*).

d) That the harm resulting from the provision not be greater than that which it seeks to prevent.

e) The non-existence of a specific provision that would safeguard this right.

On the other hand, it must be taken into consideration that these precautionary measures, whether they be anticipatory or not, are to assure the usefulness of the main action.  With a precautionary measure, the efficacy of the result of the main case is to be anticipated or guaranteed through a summary analysis (*summaria cognitio)* which would allow for the conclusion of the probably existence of the right and the fear that it would be seriously affected or rendered useless if the precautionary measure were not decreed.  (Along these lines, see ABRANTES GERALDES, *Reform Themes in Civil Procedure,* VOL. III, ALMEDINA, 3RD EDITION, p. 35).
So let us consider the case *sub judice.*

**Petitioning that**
In the realm of common protective proceedings, as we saw above, the plaintiff should allege and prove that he has a right or interest that is legally relevant in regard to the respondents, although a judgment of certainty is not required but rather one of likelihood or the appearance of the right sought (*fumus boni juris*).

According to LEBRE DE FREITAS and ISABEL ALEXANDRE (Annotated Code of Civil Procedure, Volume II, 3rd Edition, 2017), Coimbra Editora, p. 40), in order to verify this requirement, just the "*summaria cognitio of ancient law is needed (…) inculcating the idea that the protective order, because it is urgent and leads to a temporary provision,*

[Seal of Portugal]
Local Civil Court of Lisbon – Judge 15
Palace of Justice [at] Rua Marques de Fronteira
1098-001 Lisbon
Tel. 213846400   Fax 213812871   Email: lisboa.localcivel.@tribunais.org.pt

*does not enter into the evidentiary investigations of the main case, being satisfied with the plaintiff's rights or interests, with the objective observation that they do exist."*

In the concrete case on record, Plaintiff is petitioning that **the Respondents' dissemination of certain news by means of social communication,** in regard to a crime of rape that was allegedly carried out by Plaintiff in 2009, with the victim being a North American citizen [fem.], as well as the publication of declarations, photographs or documentation that is allegedly connected to it, **violates in serious and irreparable ways his right to privacy in his private life, his good name and reputation and also his image,** protected by the Constitution of the Portuguese Republic.

So we are facing an actual situation to be considered within the scope of civil extra-contractual responsibility, that is, the responsibility for illicit facts (*prima facie* defamatory attributions), with **the crucial question that is important to consider in this protective order being how to resolve the conflict that is verified between the right of Respondent to his good name and reputation and the rights of Respondents to freedom of expression and information and freedom of press**.

This question implies the formulation of the following question: Should the conduct of Respondents in disseminating and publishing the news mentioned on the record be predictably considered illicit because it attacks the good name and reputation of Plaintiff?

In light of the principle contained in Article 26 of the Constitution of the Portuguese Republic it is undeniable that the right to privacy in one's personal life, to one's good name and reputation are the cornerstone in setting the limits for other basic rights. (See JORGE MIRANDA and RUI MEDEIROS – *Annotated Portuguese Constitution,* VOL I, P. 283).  This is especially true in regard to freedom of expression and information with freedom of the press and social media (but also with freedom in literary and artistic creation).

However, the Constitution of the Portuguese Republic does not establish any hierarchy between the right to a good name and reputation and the right to freedom of expression and information, especially in the press.  GOMES CANOTILHO and VITAL MOREIRA affirm (Annotated Constitution of the Portuguese Republic, I, 4th edition p. 466) that when these

[Seal of Portugal]
Local Civil Court of Lisbon – Judge 15
Palace of Justice [at] Rua Marques de Fronteira
1098-001 Lisbon
Tel. 213846400  Fax 213812871  Email: lisboa.localcivel.@tribunais.org.pt

Case no. 21065/18.3T8LSB

rights collide, *one must consider principles that can be pondered or weighed in concrete cases, eliminating any idea of abstract valuation above or below.*

Likewise, he foundational law of the German Federal Republic (private law that applies to Respondents, under the terms of what is obligatorily set forth in Article 33 of the Civil Code), although it also includes the right of personal honor as a limit to the exercise of freedom of the press (See Article 5), does not establish any airtight hierarchy between the rights.

In fact, according to Article 8 of the German Press Code, available at http://www.presserat.de) although respect for people's private lives is a basic principle in journalistic activity, if the behavior of a certain person is undoubtedly of public interest, it can be dealt with by the press.

In this realm of confrontation between the right to a good name and reputation and the right to freedom of expression and information, one also has to invoke the guidance adopted at the European Court of the Rights of Man (TEDH), whose criteria must be followed here.  Along these lines, HENRIQUES GASPAR observes the following: "[Regarding] the influence of the ECHR [CEDH in Portuguese] in interjurisdictional dialog (See "Julgar" no. 7, 2009, pp 39 and 40), national judges are connected to ECHR and in terms of dialog and cooperation they are linked to TEDH.  This is because, especially in a one-tier system, such as the Portuguese one (Article 8 of the Constitution), the ECHR, ratified and published, is the domestic law that should be interpreted and applied, taking precedence in constitutional terms, over domestic law [sic].  Furthermore, they are connected because upon interpreting and applying the ECHR as first conventional judges, they should consider the methodological and interpretive references and the jurisprudence of TEDH as an institution of conventional regulation.  (…) National courts and among these, the last in terms of intervention but the first in terms of responsibility, the Supreme Courts, are the entities that adjust national law to ECHR, as interpreted by TEDH, so TEDH decisions have an interpretive authority and this should be recognized.

Now in compiling the TEDH agreements in this matter, it can be concluded that freedom of expression and freedom of press are considered elements of a democratic society, which perforce means that any and all restrictions to them must be the object of

[Seal of Portugal]
Local Civil Court of Lisbon – Judge 15
Palace of Justice [at] Rua Marques de Fronteira
1098-001 Lisbon
Tel. 213846400  Fax 213812871  Email: lisboa.localcivel.@tribunais.org.pt

Case no. 21065/18.3T8LSB

a restrictive interpretation and the need for them must be established in a convincing way.  And for TEDH, it may happen that noticeable behavior may be offensive or disturbing, especially in terms of what is considered news of public interest or a discussion of topics that are very relevant to the public, including not just people holding high political office but other figures that are of economic, social, cultural, religious, etc. significance [and] that are very capable of influencing the public.

FRANCISCO PEREIRA COUTINHO (The Court of Law of Man and Freedom of the Press: Portuguese Cases in the Media, Law and Democracy, pp. 319 and subsequent ones, Almedina, 2014) mentions that *"in the understanding of TEDH, the exceptions to freedom of expression that are based on the protection of a good name and reputation should be the object of restrictive interpretation if the person mentioned in a critical article that is supposedly defamatory "has entered into the arena of public debate." In these cases, the Court gives preferential treatment to the right of freedom of expression in relation to the right to a good name and reputation, refusing to adopt the legal technique of "practical concordance," which would require a compromising application of basic rights that are equivalent in values, according to the principle of proportionality.  (…) the limits of journalistic practice have been elaborated quite generously by TEDH. As long as the piece is not a gratuitous personal attack, the court maximizes the journalists' freedom of expression.  The right to inform [in] matters of general interest seems to be conditioned only by the journalists' obligations to act in good faith, based on exact facts, so as to provide trustworthy and precise information according to journalistic ethics."*

In short, in the wake of what has been understood by TEDH, it can be said that the supremacy of the right to honor and a good name in confrontation with the right to freedom of expression and information does not prevail in situations in which certain affirmations, although potentially offensive, have the legitimate purpose of the right to information and do not go beyond what is necessary for the public function of the press to be carried out.

Such jurisprudence in regard to freedom of expression, built on the interpretation and application of Article 10 of the ECHR, offers therefore a basis for criteria that are extremely useful for our case in question.

[Seal of Portugal]
Local Civil Court of Lisbon – Judge 15
Palace of Justice [at] Rua Marques de Fronteira
1098-001 Lisbon
Tel. 213846400  Fax 213812871  Email: lisboa.localcivel.@tribunais.org.pt

It is further verified that national jurisprudence has been at a turning point in regard to this question, based on the relevance, dignity and dimension of freedom of expression, as can be noted in the Ruling of the Supreme Court of Justice on 6/30/2011, 6/28/2012, 5/8/2013, 20/21/2014, 4/19/2016 and 1/31/2017 (available at www.dgsi.pt), in which the influence of TEDH's paradigm of jurisprudence is already noticed.

In dealing with the considerations which have just been brought up, it is important to go back to the actual case, and once we are faced with a collision of basic rights, to proceed with evidence in an evaluation of the interests in the case in order to determine if the right invoked by Plaintiff is the one that is lacking greater protection in this particular case.

In fact, the resolution of the conflict must take on a material nature because settling the conflict in the abstract would imply a constitutionally inadmissible a priori hierarchy of the rights.

Well, in this particular case it is undeniable that Plaintiff is a public figure. The facts that Respondents planned to present as news, based on the alleged discovery of new elements of proof, were already mentioned in previous publications.  (See points 12 and 13.)

Those facts indicate that Plaintiff supposedly committed a crime of rape on an American citizen [fem.] in 2009, which has been the object of journalistic investigation for over a year.  Therefore it is not the supposed dissemination of facts that were strictly located within the essential core of the right to a private life (as would be, for example, the case of dissemination of an alleged extramarital relationship), but rather acts, that if they were in fact committed, can be considered of a criminal nature.  It is vital to let citizens know of matters that have to do with the commitment of acts that could be considered criminal by a significant public figure, as is the case of this Plaintiff.

Furthermore there is evidence that the journalists in question, although not obligated to do so indicated to Plaintiff the specific source from which "new discoveries and information" came from about the case (the alleged victim), trying to get his contradictory [opinion].

[Seal of Portugal]
Local Civil Court of Lisbon – Judge 15
Palace of Justice [at] Rua Marques de Fronteira
1098-001 Lisbon
Tel. 213846400   Fax 213812871   Email: lisboa.localcivel.@tribunais.org.pt

As was already mentioned, TEDH has developed a doctrine of protection reinforcing freedom of expression when the one facing allegations of acts and formulations of dishonorable value judgments is a public figure and the matter is one of public interest.

And with Plaintiff being a public figure and not just a simple individual, he is more exposed to close scrutiny of his behavior and opinions, by both journalists and citizens in general, and therefore he must demonstrate much greater tolerance in view of this scrutiny.

Of course a public figure has the right to protection of his reputation, even outside of his private life.

What this means is that the imperatives of this protections should be considered along with the interests of free discussion of matter that are of public interest.  And as was said, the alleged commitment of the crime of rape, whether or not a criminal investigation was carried out by competent authorities and whether or not several years have gone by since it was supposedly verified, it is undeniably relevant to the public because it was supposedly committed by a figure who is known worldwide and who is capable great influence in the public square.

On the other hand, the behavior of Respondents as demonstrated by the evidence, in the sense that they informed Plaintiff of the existence of a new source of information regarding the case and tried to get his own version of it, does not indicate that the publication of that news was just for defamatory purposes in regard to Respondent but rather an intention to inform about the case and discuss it publicly.

Respondents' posture substantiated in the public revelation of a case that is socially relevant and whose journalistic interest is circumscribed by the alleged commitment of the crime of rape – a topic that is now begin permanently discussed in public forums  - falls within the right of freedom of expression and opinion, a right required by present-day States that follow the rule of law.

Therefore everything indicates that within the framework of a consideration of the interests in this case and following a methodology of weighing the [evidence] adapted to the specifcs of this case, in the sense of freedom of expression which, in this particular case does not have greater protection, also taking into consideration

[Seal of Portugal]
Local Civil Court of Lisbon – Judge 15
Palace of Justice [at] Rua Marques de Fronteira
1098-001 Lisbon
Tel. 213846400  Fax 213812871  Email: lisboa.localcivel.@tribunais.org.pt

the European legal context that we are in and the paradigm of European jurisprudence of human rights.

This Court understands that Plaintiff has not demonstrated the first assumption for decreeing this preliminary injunction because in view of the elements in the records and the facts in evidence, the serious probability of the existence of the right petitioned for was not demonstrated, with the illegality of the behavior of Respondents in publishing the mentioned news being excluded.

**IV. DECISION**

In view of the above, and under the terms of law invoked, the Court **dismisses because of a lack of evidence this preliminary injunction petitioned for by Plaintiff CRISTIANO RONALDO DOS SANTOS AVEIRO against SPIEGEL – VERLAG RUDOLF AUGSTEIN GMBH & CO. KG and APIEGEL ONLINE GMBH & CO. KG.**

Costs by Plaintiff – See Article 539, no. 1 of the Code of Civil Procedure.
Amount of the proceedings: 30,000.01 Euros (Articles 303, no. 1 and 304, no. 3, both in the CPC)

Register and notify.

Lisbon, September 25, 2018 (d.s.)

(Elaborated and processed on a computer and totally reviewed by the signer, with an electronic signature, under the terms of Articles 131, no. 5 of the CPF and 19 of Guidelines no. 280/2013 of 8/26, altered by Guideline no. 170/2017 of 5/25.