PETER S. CHRISTIANSEN, ESQ.
Nevada Bar No. 5254
pete@christiansenlaw.com
KENDELEE L. WORKS, ESQ.
Nevada Bar No. 9611
kworks@christiansenlaw.com
KEELY A. PERDUE, ESQ.
Nevada Bar No. 13931
keely@christiansenlaw.com
CHRISTIANSEN TRIAL LAWYERS
710 S. 7th Street, Suite B
Las Vegas, Nevada 89101
Telephone:     (702) 240-7979
Facsimile:     (866) 412-6992

*Attorneys for Defendant Cristiano Ronaldo*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| KATHRYN MAYORGA,<br><br>                     Plaintiff,<br><br>v.<br><br>CRISTIANO RONALDO,<br><br>                     Defendant. | CASE NO.:   2:19-cv-00168-JAD-DJA<br><br>**DEFENDANT'S REPLY IN SUPPORT OF EMERGENCY MOTION FOR CASE TERMINATING SANCTIONS AND TO DISQUALIFY STOVALL & ASSOCIATES [ECF No. 111]** |

Defendant Cristiano Ronaldo, through his attorneys, Christiansen Trial Lawyers, hereby files his Reply in Support of Defendant's Emergency Motion for Case Terminating Sanctions and to Disqualify Stovall & Associates ("Stovall"). In opposition, Plaintiff relies on just two arguments: 1) The crime/fraud exception should apply to permit the use of privileged attorney-client communications and work product despite that this Court has already found Defendant never waived any such privileges; and 2) Defendant has somehow now waived the privilege by placing the subject documents at issue by moving for case terminating sanctions. Plaintiff's opposition wholly fails to address that Stovall, on her behalf, admittedly and intentionally sought out and obtained stolen and privileged documents in order to pursue the instant case and that such conduct runs far afield of fundamental ethical tenets of the practice of law. Moreover, seeking to

remedy that unethical conduct puts only the manner in which the documents were obtained and used at issue, certainly not their substance.

Notwithstanding that Plaintiff and Stovall admit they intentionally sought out privileged documents, which they have used to prosecute this case, Plaintiff does not address why dismissal and/or disqualification would not be the appropriate remedies in the face of such misconduct. Rather, Plaintiff would simply have this Court condone Stovall's decision to flagrantly ignore the Federal Rules of Civil Procedure and counsel's ethical obligations and find the invasion of Defendant's attorney-client and work product privileges to be justified.[1]  To avoid inviting further misconduct, this Court should squarely reject that invitation and grant Defendant's Motion for Case Terminating Sanctions, and at a minimum, disqualify Stovall from continuing to act as counsel.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  RELEVANT FACTS AND PROCEDURAL HISTORY

As the court is aware, this case arises from an encounter alleged to have occurred in 2009. Plaintiff Kathryn Mayorga ("Plaintiff") contends Defendant Cristiano Ronaldo ("Defendant") sexually assaulted her at the Palms Casino on June 13, 2009. Compl., ECF No. 1 at pp. 2-3. Nearly a decade after opting to decline to cooperate with any criminal investigation and instead reaching a civil settlement,[2] Plaintiff retained Stovall and initiated the instant lawsuit seeking additional money.

/ / /

/ / /

/ / /

/ / /

---

[1] ECF 123 at 12:3-7 (stating, "Under the circumstances of this case, plaintiff counsel's acquisition of documents and communications presumptively within the attorney client privilege in order to investigate what appeared "in good faith" to be an illegal scheme to obstruct and prevent the criminal prosecution of Cristiano Ronaldo was justified.").

[2] As this Court is undoubtedly aware at this point in the proceedings, the resolution reached at mediation was ultimately memorialized in a signed written agreement titled, "Settlement and Confidentiality Agreement," ("SCA"), which the was fully executed in August and/or September 2010, approximately eight to nine months after the mediation.  Pursuant to court order, the SCA has been filed under seal as Exhibit A to ECF No. 57.

2

### a. Plaintiff has repeatedly argued, to no avail, that the crime fraud exception should be applied to allow her to use stolen and privileged documents her counsel should never have obtained in the first place.

Defendant first learned Plaintiff intentionally obtained stolen and privileged attorney client communications and work product on September 23, 2019, when she filed her Opposition to Defendant's Motion to Compel Arbitration. The very next day, Defense Counsel notified Stovall via email that Plaintiff had attached documents which invade Defendant's attorney client and work product privileges, and further that, "[r]equesting an opposing party's privileged information is an ethical violation, a violation of the FRCP, potentially a crime and totally inappropriate." *See* Exhibit E to ECF No. 111 (filed under seal). The parties then agreed Exhibits 4 and 5 to Plaintiff's Opposition would be maintained under seal and would not become public record pending this Court's ruling on whether such documents should be considered by the court and/or stricken from the record.

Plaintiff has consistently admitted her counsel intentionally sought out and obtained documents protected by the attorney-client communication and work product privileges. ECF 123 at 12:3-7.[3] Ignoring that Stovall should never have obtained or reviewed such documents in the first instance, Plaintiff argues the contents of the privileged documents somehow reveal a fraudulent scheme, which justifies invasion of the privilege. *Id.* In opposition to Defendant's Motion to Strike, Plaintiff argued the crime/fraud exception should be applied to allow this Court to consider the privileged documents in ruling on Defendant's Motion to Compel Arbitration. When objecting to the Magistrate's Report and Recommendation finding there had been no

---

[3] The first page of Plaintiff's Exhibit 4 to the Opposition to Defendant's Motion to Compel is an email from Plaintiff's Counsel to "Football Leaks," which is dated July 25, 2018. ECF No. 44 at Exhibit 4, Bates 0001-2; *see also* Exhibit D at KM00129-130. Stovall, as counsel for Plaintiff, specifically requested several categories of documents, a number of which explicitly called for disclosure of privileged attorney-client communications and work product related to: the **employment of attorneys and investigators** by Ronaldo to investigate my client, her family, witnesses and friends after the sexual assault; the **employment of attorneys and investigators to represent and defend** Ronaldo after the sexual assault of my client, the **reporting and communications of the attorneys and investigators** that investigated Katie Mayorga, her family, witnesses, friends and the attorney Katie hired to represent her; the **reporting and communications of the attorneys and investigators representing and defending** Ronaldo following the sexual assault **thru the negotiations and conclusion of the settlement** and non disclosure agreement; and the **evaluation or assessment of the attorney** representing Katie Mayorga, before, during and after the mediation.

3

waiver of the attorney client privilege and the subject Football Leaks documents should be stricken,[4] Plaintiff again relied upon the crime fraud exception in an unsuccessful bid to persuade the court to consider the privileged documents. ECF 70 at pp. 17-19 (arguing in part, "The documents which are the subject of the defendant's motion to strike establish a reasonable cause to believe that the attorney services provided to the defendant were utilized in furtherance of an ongoing unlawful scheme involving the crimes of compounding, misprison of a felony and obstruction of justice.").

Although the court did not make a finding specific to the crime/fraud exception, it expressly overruled Plaintiff's objection to the Magistrate's Recommendation that Defendant's Motion to Strike the subject Football Leaks documents be granted. ECF No. 72 at 24:2-12. Plaintiff offers no explanation as to how or why this Court would have stricken the documents had it found the crime fraud exception applied, which forecloses the protections of the privilege.

### b. Defendant's attorneys took swift action to quell distribution and/or use of the stolen, privileged documents.

Plaintiff similarly continues to rehash the failed argument that Defendant somehow waived the attorney-client and work product privileges by failing to adequately safeguard the subject Football Leaks documents. In affirming the Magistrate's Recommendation that the Football Leaks documents be stricken, this Court expressly acknowledged Plaintiff's contention that Defendant's attorney "neither adequately safeguarded them nor took 'any reasonable step to investigate and recover the documents from any source.'" *Id.* at 24:4-6. Finding this argument untenable, the Court stated, "[Plaintiff] provides only conjecture – not reasoned argument or evidence – to support her position." *Id.* at 24:7-8.

Undeterred and otherwise defenseless, Plaintiff continues to insist Defendant somehow waived the attorney-client and work product privileges by disclosure of the subject documents, whether "stolen, inadvertently released," or otherwise. ECF No. 123 at 5:21-6:2. To that end, Plaintiff falsely asserts, "Defendant has not offered any evidence the Football Leak [sic] documents were stolen, inadvertently released, or that their release was otherwise unauthorized."

---

[4] ECF No. 67 at 8:24-9:1.

*Id.* at 5:26-6:2. To the contrary, Defendant has provided the Declaration of Carlos Osorio De Castro, who has acted as counsel for Defendant since 2004.  Mr. De Castro's Declaration specifically outlines the protections his law firm had in place at or around the time of the "cyber theft" of the "confidential data at issue in the instant matter." *See* Exhibit W to ECF No. 111 at paragraph 2.  Also attached to Defendant's Motion for Case Terminating Sanctions are certified translations of court filings from both Portugal and Germany pursuant to which Defendant sought preliminary injunctions to enjoin further publication or dissemination of the hacked Football Leaks documents. *See* Exhibit X to ECF No. 111.  Finally, to lay to rest any notion Defendant or his counsel authorized disclosure of privileged documents, attached hereto is an additional Declaration from Mr. De Castro and one from attorney Richard Wright, affirming both represented Defendant in 2009 and 2010 in relation to Plaintiff's allegations.  *See* Declaration of Carlos Osorio De Castro (Second), attached hereto as **Exhibit A.**  *See* Declaration of Richard Wright, Esq., attached hereto as **Exhibit B.**  Not surprisingly, both affirm neither they, nor their client, ever authorized the disclosure of attorney-client communications or work product, nor would they. *Id.*

      **c. Plaintiff's request for *in camera* review of the stolen documents more than two and a half years into this litigation is too little, too late.**

Plaintiff asserts Defendant should have known based on the Complaint that Plaintiff's allegations were premised upon attorney-client communications and work product.  Despite admitting Plaintiff's entire case is based upon protected and privileged documents, Plaintiff for the first time has now filed a Motion for *In Camera* review of the subject Football Leaks documents so this Court may determine whether to allow Plaintiff to utilize the documents based upon the crime fraud exception.  Ignoring for a moment that Plaintiff should have sought a court order in order to obtain the documents for *in camera* review to determine discoverability in the first place, Plaintiff did not disclose she possessed any privileged communications, much less produce those documents, for more than fourteen months.

Indeed, Plaintiff to date, still has not disclosed approximately 400 additional pages of documents provided to LVMPD but never produced to Defendant in this litigation.  Plaintiff's

1  broad assertion the additional documents contained within LVMPD's file but not disclosed in this
2  case are merely duplicate documents appearing in a different format, is patently false. While a
3  portion of the never disclosed documents do appear to contain duplicative content in different
4  formats, there are a significant number of privileged documents that were provided to LVMPD
5  but never produced by Plaintiff in this case.  By way of example, contained within Sealed Exhibit
6  P (the LVMPD file), are documents identified for this litigation as CR-001222-1226, which
7  consist of email correspondence between Defendant's attorneys, Richard Wright, Esq., and
8  Carlos Osorio De Castro, attaching a memorandum from Mr. Wright summarizing certain aspects
9  of Nevada criminal law – clearly privileged attorney-client communications and work product.
10 These documents are not contained anywhere within the Football Leaks documents Plaintiff has
11 produced to Defendant in this case.  *See* ECF No. 111, Exhibits D and P attached thereto.  Neither
12 Mr. Wright, nor Mr. De Castro ever authorized or caused to be released these privileged
13 documents. *See* **Exhibit B** (Wright Decl.) and **Exhibit A** (De Castro Decl.) attached hereto.  Just
14 a sampling of the balance of never disclosed documents in LVMPD's file reveals a significant
15 number of Football Leaks documents that are readily apparent as attorney-client communications
16 or work product.[5]

17     While both the earlier state court filing and the operative federal court complaint reference
18 that, "plaintiff obtained from Football Leaks copies of documents and communications between
19 defendant Cristiano Ronaldo and his 'team,'" Plaintiff did not disclose Stovall had specifically
20 requested and received documents labeled privileged attorney client communications and work
21 product. Exhibit A to ECF No. 111 at p. 14; ECF No. 1 at pp. 13-14.  Both complaints refer only
22 to communications between Defendant and his "team of 'fixers,' known as 'personal reputation
23 protection specialists,'" – careful to never reveal what Plaintiff had really obtained readily appear

---

[5] More than sixty additional examples of Football Leaks documents within Exhibit P (LVMPD's file submitted under seal) but never disclosed by Plaintiff are documents identified for this litigation as: CR-001095; CR-001102-03; CR-001105; CR-001107; CR-001205; CR-001224; CR-0012227; CR-001233; CR-001261-73; CR-001275-79; CR-001281-1301; CR-001312; CR-001316-1318; CR-001320; CR-001322; CR-001326; CR-1340; CR-001366; CR-001445; CR-001508.

to be communications between a "team" of "lawyers" and their client. *Id.* at Exhibit A at 5; ECF No. 1 at 5.

## II. LEGAL ARGUMENT

### a. There is no evidence to support application of the crime fraud exception.

More than two and a half years into this litigation, Plaintiff relies solely on the contents of the privileged documents in order to ask this Court for the first time,[6] to conduct an *in-camera* review to assess whether the crime fraud exception applies in this case. Plaintiff apparently overlooks that a preliminary *in-camera* review by the court inherently means the opposing party has not yet read, digested and utilized the privileged documents to prosecute their case. Moreover, even if Plaintiff had appropriately and timely sought *in camera* review, she would have had to offer evidence of some criminal or fraudulent act independent from the privileged material. Plaintiff has not a scintilla of such evidence.

A party asserting the crime fraud exception must show: 1) the client was engaged in or planning a criminal or fraudulent scheme when it sought the advice of counsel in order to further that scheme; and 2) the attorney-client communications at issue are sufficiently related to and were made in furtherance of the intended or present continuing illegality. *In re Napster, Inc., v. Copyright Litig.*, 479 F.3d 1078, 1090 (9th Cir. 2007), *abrogated on other grounds by Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100 (2009)). Particularly relevant here, the Ninth Circuit has consistently recognized that "[t]he fact that a party has taken steps to structure a business transaction to limit its liability does not suffice, without more, to establish that the crime fraud exception applies. *In re Napster*, 479 F.3d at 1098 (citing *In re BankAmerica Corp. Sec. Litig.*, 270 F.3d 639, 643-44 (8th Cir. 2001)).

---

[6] To be clear, Plaintiff has never before requested that this Court conduct an *in camera* review of the subject Football Leaks documents to determine whether the crime/fraud exception applies. Plaintiff has done so for the first time in opposition to the instant motion for case terminating sanctions and/or to disqualify – more than two and a half years after Plaintiff originally obtained the documents; nearly twenty four months after attaching the ill-gotten and privileged documents to a court filing in this case; and nearly a year after this Court struck the documents from the record, save and except for the additional stolen documents never previously disclosed by Plaintiff.

Before a court engages in an *in camera review* of privileged documents to assess whether the crime-fraud exception applies, there must first be a factual basis adequate to support a reasonable person's good faith belief that such inspection will reveal evidence to establish the exception should be applied. *U.S. v. Zolin*, 491 U.S. 554, 572 (1989)(citing *Caldwell v. Dist. Court*, 644 P.2d 26, 33 (Colo. 1982)). When determining whether to conduct an *in camera* review, the court is not to consider materials that have been determined to be privileged. *Id.* at 573.

Ignoring the Ninth Circuit's *In Re Napster* holding, Plaintiff asserts the crime fraud exception to the attorney-client privilege applies here because Defendant's prior attorneys represented him in procuring the SCA, which memorialized the civil settlement between Plaintiff and Defendant. Despite that Plaintiff obtained counsel to bring a civil claim and it was her counsel that initially reached out to Defendant's lawyers,[7] Plaintiff asserts that mediation and settlement of her claim somehow amounts to evidence of a scheme by Defendant to defraud Plaintiff and conceal the alleged commission of an assault.

Contrary to Plaintiff's unfounded assertions, the subject Football Leaks documents do not contain evidence of any past or ongoing criminal conduct. Tellingly, Plaintiff turned the ill-gotten and privileged documents over to LVMPD in 2018 and the Clark County District Attorney's Office has since expressly declined to prosecute. *See* Press Release, attached to ECF No. 64 as Exhibit "D. Nevertheless, Plaintiff relies solely on the stolen and privileged documents, stating, "The acquired Football Leaks documents prove the existence of the unlawful scheme to compound a felony." ECF No. 123 at 12:7-9. Plaintiff either ignores or misunderstands that this Court is not permitted to consider documents that have been deemed privileged in order to assess whether to conduct an *in camera* review. What this Court would be left with then, is the express language of the SCA, which cannot constitute the basis for fraud because it is nothing more than evidence the parties mutually agreed to resolve their dispute, which inherently serves to limit a defendant's liability.

---

[7] *See* email correspondence from Michaela Tramel to Simon Smith, a copy of which is attached as Exhibit "C" to ECF No. 64.

8

By Plaintiff's logic, no defendant facing a civil lawsuit for allegations of assault would ever be able to retain counsel to defend himself – rather the mere act of retaining counsel to defend and resolve the plaintiff's claim would constitute a conspiracy to conceal the alleged wrongdoing. In 2009, Defendant was never contacted by law enforcement regarding Plaintiff's allegations – presumably because she never gave his name to the detectives assigned to her case. *See* Press Release, attached to ECF No. 64 as Exhibit "D." Instead, just one month and three days after the alleged assault, Plaintiff's former lawyer reached out not to law enforcement, but to an individual she believed to be Defendant's lawyer and informed him she represented a plaintiff in Las Vegas "in a case against Christiano [sic] Ronaldo." *See* Correspondence attached to ECF No. 64 as Exhibit "C." There is zero indicia Defendant retained counsel in order to further a criminal or fraudulent scheme. By contrast, it was Plaintiff who initiated a civil claim, which caused Defendant to have to retain counsel to defend himself, ultimately resulting in the parties agreeing to mediate and enter into a civil settlement.

In short, Plaintiff has not offered *any* evidence of a fraudulent scheme among Defendant and his attorneys, much less made a showing independent of the stolen and privileged communications. Thus, there is no basis for *in-camera review*. Plaintiff's decision to ask this Court for forgiveness, not permission, is an impermissible attempt to circumvent the integrity of the judicial process and should not be tolerated.

    **b. Because Stovall and Plaintiff intentionally sought privileged communications and have continued to use such documents to prosecute her claims, dismissal is the only remedy sufficient to cure the prejudice to Defendant.**

The Ninth Circuit has recognized dismissal is the appropriate remedy where a party deliberately engages in deceptive practices that undermine the integrity of judicial proceedings. *Jackson v. Microsoft Corp.*, 211 F.R.D. 423, 433 (W.D. Wash. 2002)(*aff'd* by *Jackson v. Microsoft Corp.*, 78 Fed.Appx. 588 (9th Cir. 2003)(unpublished)). Plaintiff's attempts to distinguish Stovall's misconduct from *Jackson* are unavailing. Plaintiff incorrectly asserts that in *Jackson*, the party subject to dismissal participated directly in the acquisition of confidential materials. To the contrary, the plaintiff in *Jackson*, just like Plaintiff here, obtained confidential documents from an unknown third-party source and then retained and reviewed the documents

1 for ten months before turning them over in the litigation. 211 F.R.D. at 431. Likewise, the *Jackson* plaintiff clearly relied on the stolen documents in preparation of his case, which the court reasoned made dismissal all the more appropriate. *Id.*

There was no evidence the plaintiff there directly participated in the theft of the documents, nor specifically retained the unknown source for that purpose. Simply obtaining, retaining for months without disclosure and relying upon the stolen confidential documents was egregious enough to warrant dismissal. *Id.* Although there is no evidence Plaintiff here directed the hacking of the Football Leaks documents, Stovall admittedly, intentionally and specifically sought out documents subject to the protections of the attorney-client and work product privileges. Plaintiff then relied upon those documents in preparing her case and failed to turn such documents over to Defendant for more than fourteen months. The misconduct in this case is even more deliberate and egregious than in *Jackson*, because Stovall, a licensed attorney, undoubtedly knew he was basing Plaintiff's case on documents he had no right to obtain in the first place. Just as in *Jackson*, there are, "no sanctions which would cure [Plaintiff's] extensive access to [Defendant's] privileged and confidential materials and would assure [Plaintiff and Stovall's] honesty in the proceedings to come." *Id.* at 432.

In a bizarre twist of logic, Plaintiff asserts the decision to seek privileged documents from a third-party hacker was somehow justified because "the entities and individuals believed to have possession of information and documents pertaining to this matter refused to assist Plaintiff and her counsel." Presumably, no one cooperated because the documents of which Plaintiff speaks are privileged attorney client communications and work product to which she is not entitled. Where a plaintiff requests documents pre-litigation from an improper source, reviews and collects such data in anticipation of litigation and later introduces those materials in support of her claims, dismissal is the appropriate remedy. *Xyngular Corp. v Schenkel*, 200 F. Supp.3d 1273, 1313 (D. Utah 2016).

/ / /

/ / /

/ / /

### III. **CONCLUSION**

In light of the foregoing, Defendant respectfully requests that this Court enter an order dismissing Plaintiff's Complaint because no lesser sanction can remedy the prejudice caused by Plaintiff's use of privileged communications and work product that her counsel, Leslie Stovall, intentionally sought out, reviewed and has utilized in this case. At a minimum, Stovall must be disqualified from acting as counsel in this matter.

Dated this 13th day of August, 2021.

CHRISTIANSEN TRIAL LAWYERS

By_____
PETER S. CHRISTIANSEN, ESQ.
KENDELEE L. WORKS, ESQ.
KEELY A. PERDUE, ESQ.
*Attorneys for Defendant Cristiano Ronaldo*



**CERTIFICATE OF SERVICE**

Pursuant to FRCP 5 and LR-5.1, I certify that I am an employee of CHRISTIANSEN TRIAL LAWYERS, and that on this 13th day of August, 2021, I caused the foregoing document entitled **DEFENDANT'S REPLY IN SUPPORT OF DEFENDANT'S EMERGENCY MOTION FOR CASE TERMINATING SANCTIONS AND TO DISQUALIFY STOVALL & ASSOCIATES [ECF No. 111]** to be filed and served via the Court's CM/ECF electronic filing system upon all registered parties and their counsel.

_____
An employee of Christiansen Trial Lawyers

# Exhibit "A"

# Exhibit "A"

## **DECLARATION OF CARLOS OSÓRIO DE CASTRO**

I, Carlos Osório de Castro, make this declaration under penalty of perjury of the laws of the State of Nevada and states that the following assertions are true and correct based upon my personal knowledge of the facts stated:

1. That I am an attorney licensed to practice law in Portugal since 1984. That I have been one of Cristiano Ronaldo's attorneys since 2004.  This Declaration is submitted in support of Defendant Cristiano Ronaldo's Reply in Support of Emergency Motion for Case Terminating Sanctions and to Disqualify Stovall & Associates.

2. Notwithstanding security measures taken to protect confidential data, in or around 2015 or 2016, outside third party cyber hackers stole confidential client data and information, including documents and information related to Kathryn Mayorga's allegation that Mr. Ronaldo sexually assaulted her in June 2009 in Las Vegas, Nevada.

3. I have reviewed Exhibit X to Defendant Cristiano Ronaldo's Emergency Motion for Case Terminating Sanctions and to Disqualify Stovall & Associates, which consists of translations of court filings made in Portugal and Germany, respectively, seeking to enjoin further publication or dissemination of the hacked and/or stolen Football Leaks documents pertaining to Ms. Mayorga's allegations against Mr. Ronaldo.  These translations accurately reflect the court filings and the efforts undertaken on behalf of Mr. Ronaldo to cease publication of the confidential and privileged data.

4. Having reviewed the pleadings and papers on file in the instant litigation, I am aware that Mr. Stovall obtained from a source known as Football Leaks, confidential attorney client communications and work product related to the matter arising from Ms. Mayorga's allegations against Mr. Ronaldo.

5. Neither I, nor my client, ever authorized or caused to be released any of the aforementioned data or information, including but not limited to attorney-client communications and work product.

6.	Absent a binding court order or express waiver from Mr. Ronaldo, I would never authorize or cause to be released the confidential and privileged attorney-client communications and work product related to Ms. Mayorga's allegations against Mr. Ronaldo because to do so would be a violation of my legal and ethical duties as a lawyer for Mr. Ronaldo.

Dated this 13th day of August 2021.

_____
CARLOS OSÓRIO DE CASTRO

# Exhibit "B"

# Exhibit "B"

## DECLARATION OF RICHARD A. WRIGHT, ESQ.

I, Richard A. Wright, Esq., make this declaration under penalty of perjury of the laws of the State of Nevada and states that the following assertions are true and correct based upon my personal knowledge of the facts stated:

1. That I have been an attorney licensed to practice law in the State of Nevada since 1972. In the year 2009, I was retained to represent Cristiano Ronaldo with respect to Kathyrn Mayorga's allegation that Mr. Ronaldo sexually assaulted her in Las Vegas, Nevada in June 2009.

2. This Declaration is submitted in support of Defendant Cristiano Ronaldo's Reply in Support of Emergency Motion for Case Terminating Sanctions and to Disqualify Stovall & Associates.

3. During 2009 and 2010, and the years since, my firm has maintained safeguards and security measures to protect confidential client files and communications, including the confidential files related to Ms. Mayorga's allegations against Mr. Ronaldo, which I understand to be at issue in the instant matter.

4. Based on information and belief, I am aware that in or about 2015 and/or 2016, certain confidential data was obtained by cyber hackers in Europe, which included confidential and privileged attorney-client communications and work product maintained by lawyers working on behalf of Mr. Ronaldo with respect to Ms. Mayorga's allegations. It is my understanding that the stolen materials included some of my firm's work product and correspondence between my law firm and other law firms and/or investigators retained to act on behalf of Mr. Ronaldo with respect to the Mayorga accusations.

5. Having reviewed certain of the pleadings and papers on file in the instant litigation, I am aware that Mr. Stovall obtained from a source known as Football Leaks, confidential attorney client communications and work product related to the matter arising from Ms. Mayorga's allegations against Mr. Ronaldo.

6. In particular, I am aware Mr. Stovall represents that he produced to the Las Vegas Metropolitan Police Department documents he obtained from Football Leaks, portions of which I

have reviewed and attest are privileged attorney-client communications between myself and my law firm and other lawyers jointly representing Mr. Ronaldo as well as privileged attorney work product. By way of example, documents identified in this litigation as CR-001222-1226, which I am informed are included in Sealed Exhibit P to the instant motion, are privileged attorney-client communications, attaching my privileged work product.

7. Neither I, nor Mr. Ronaldo, ever authorized or caused to be released any of the aforementioned confidential and privileged attorney-client communications and/or work product.

8. Absent a binding court order or express waiver from Mr. Ronaldo, I would never authorize or cause to be released the confidential and privileged attorney-client communications and work product related to Ms. Mayorga's allegations against Mr. Ronaldo because to do so would be a violation of my ethical duties as a lawyer for Mr. Ronaldo.

Dated this 13th day of August 2021.

_____
Richard A. Wright, Esq.,