**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

Kathryn Mayorga,

               Plaintiff,

    v.

Cristiano Ronaldo,

               Defendant.

Case No. 2:19-cv-00168-JAD-DJA

**Order
and
Report and Recommendation**

More than a decade ago, Kathryn Mayorga and Cristiano Ronaldo executed a "Settlement and Confidentiality Agreement" to resolve Mayorga's allegations that Ronaldo assaulted her in a Las Vegas hotel room. Despite that agreement, Mayorga sued Ronaldo over eight years later, alleging eleven causes of action arising out of, in part, the public release of documents obtained in a cyber hack from Ronaldo's former attorneys and circulated by the whistleblower outlet "Football Leaks." Ronaldo moves for case dispositive sanctions or to disqualify Mayorga's attorneys—Stovall and Associates—for attorney Leslie Stovall's role in obtaining and using these hacked Football Leaks documents, which Ronaldo claims contain attorney-client and work product privileged material. Mayorga moves for the Court to review the Football Leaks documents *in-camera* to decide whether the crime-fraud exception to the privilege applies. Because the Court finds that Mayorga's evidence does not establish the crime-fraud exception's applicability, it denies the motion for *in-camera* review. Because the Court finds that dismissal is the only appropriate sanction under the Ninth Circuit's five factor test, it recommends granting Ronaldo's motion for case terminating sanctions.

## I.    Background.

In 2017, German news outlet Der Spiegel published an article titled "Cristiano Ronaldo's Secret." *See Cristiano Ronaldo's Secret*, DER SPIEGEL (Apr. 19, 2017), https://www.spiegel.de/international/zeitgeist/der-spiegel-football-leaks-exclusive-cristiano-

ronaldo-rape-allegation-a-1143910.html.  The article discussed allegations that Ronaldo had sexually assaulted a woman in a Las Vegas hotel room and detailed the settlement agreement which Ronaldo and the woman executed.  *See id.*  The outlet explained that it received this information from a "trove of documents" provided by "whistleblower portal Football Leaks."  *See id.*  The article made it clear that these documents included privileged communications, quoting and referencing communications between Ronaldo's European and U.S. attorneys about the settlement.  *See id.*

About a year after Der Spiegel published the article, Stovall—retained by Mayorga—emailed "Football Leaks."  (ECF No. 44-1 at 5-6).  Stovall asked Football Leaks for privileged documents showing "the employment of attorneys and investigators by Ronaldo," "the reporting and communications of the attorneys," and the "negotiations leading up to the agreement to mediate."  *Id*.  Stovall did not ask where or how Football Leaks obtained these documents.  *See id.*  Stovall later explained to the Court that he went directly to Football Leaks because he could not otherwise find the documents online and because Der Spiegel and Mayorga's former counsel for the settlement negotiations refused to give them to him.  (ECF No. 140 at 52:37-53:14).[1]

Someone identifying themselves as "John" responded to Stovall's email a few months later, sending him "all relevant information."  (ECF No. 44-1 at 5-6).  Stovall sent these documents to the Las Vegas Metropolitan Police Department under his letterhead on August 21, 2018.  (ECF No. 44-1 at 2-4).  "John" responded with more documents on August 25, 2018.  (ECF No. 124 at 7).  On August 28, 2018, Mayorga met with LVMPD detectives, bringing a "packet of supporting documentation."  (ECF No. 125-7 at 5).  On September 24, 2018, Stovall sent LVMPD additional documents "obtained from Football Leaks" under his letterhead.  (ECF No. 125-6 at 2).

Mayorga then filed a verified state court complaint on September 27, 2018 citing and quoting the Football Leaks documents, but never using the word "attorney" or "lawyer," when

---

[1] Because a transcript has not yet been completed, the Court refers to time stamps from its September 17, 2021 hearing.

describing their contents.  (ECF No. 111-1).  Instead, the complaint referred to Ronaldo's "team" and names "Doe" and "Roe" defendants.  *See id.*  A few weeks later, Ronaldo and his Nevada-based attorney—Peter Christiansen—publicly declared that Der Spiegel based its reports on "stolen and easily manipulated digital documents" of which "significant parts were altered and/or completely fabricated."  (ECF No. 125-9).

Mayorga ultimately terminated her state court action and, in January of 2019, initiated the instant action in federal court.  (ECF No. 1).  The complaint still only referred to Ronaldo's "team," rather than attorneys.  *See id.*  But after Ronaldo moved to enforce the settlement agreement's arbitration clause, Mayorga filed an opposition that attached documents Stovall had received from "John" at Football Leaks.  (ECF Nos. 44-1 and 44-2).  Christiansen immediately emailed Stovall, informing him that the Football Leaks documents were privileged and asking him to remove them from the opposition.  (ECF No. 111-7).

Ronaldo then filed a motion to strike the exhibits asserting that Stovall had obtained the documents from a cyber hacker, that the documents contain privileged material, and that the documents could not be authenticated.  (ECF No. 55).  Mayorga responded with a litany of online articles she asserted established the Football Leaks documents' legitimacy.  (ECF No. 61).  Mayorga argued that "John" was really a man named Rui Pinto, who publicly disclaimed being a hacker and who allowed journalists to vigorously check his work.  *See id.* at 15-16.

The articles Mayorga cites in her response, however, raise suspicion.  *See id.*  In a February 1, 2019 article, when asked whether he was a hacker, Pinto responded, "I don't consider myself as a hacker, but as a citizen acted [sic] in the public interest."  *Id.* at 16.  She also cites a May 27, 2019 article, which explains that while "documents were pouring into Football Leaks from *law firms*, clubs and agents…thousands of PDFs and *emails*," Pinto "came across" the Football Leaks documents about Ronaldo in "a file that was labeled: 'Las Vegas'" *Id.* at 5 (emphasis added).  The articles do not explain how Pinto received the documents about Ronaldo.  *See id.*  The May 27, 2019 article, one from January 25, 2019, and one from September 16, 2019 allude that Pinto had been arrested, is in custody, and is accused of cyber hacking.  *See id.* at 7, 15, 17.  Mayorga explains, "Rui Pinto remains in custody in Portugal."  *Id.* at 17.

1        The Court ultimately agreed with Ronaldo, recommending that the Football Leaks

2    documents Mayorga attached to her opposition be stricken.  (ECF No. 67).  The Court explained,

3    "[u]nder these circumstances, the Court does not find that Defendant waived the attorney-client

4    privilege by either not protecting the documents from a hack or by putting them at issue in this

5    litigation." *Id.* at 8-9.  The Honorable District Judge Jennifer A. Dorsey also agreed, adopting the

6    recommendation in part, and limiting the remaining litigation to Mayorga's mental capacity only.

7    (ECF No. 72).  The remaining items—whether the settlement agreement was illegal or violated

8    public policy—were left to be decided by the arbitrator "if Mayorga does not prevail on her

9    mental-capacity challenge." *Id.* at 20.

10        On October 7, 2019, Mayorga disclosed the Football Leaks documents in her initial

11    disclosures.  (ECF No. 111-4 at 2-25).  Ronaldo also obtained LVMPD's file containing about

12    200 documents from Football Leaks that Stovall had provided.  (ECF No. 111-18).  But the file

13    contained about 200 additional privileged documents that did not otherwise appear in Mayorga's

14    initial disclosures.  (ECF No. 111 at 9).  Kendelee Works—Ronaldo's Nevada-based counsel

15    working with Christiansen—questioned Stovall about the additional 200 documents, but Stovall

16    did not answer.  (ECF No. 111-22, ECF No. 111 at 11).  After an unsuccessful meet and confer in

17    which Stovall asserted that the Football Leaks documents which the Court had not stricken were

18    "fair game" to use in depositions, Ronaldo filed his motion for sanctions.  (ECF No. 111 at 10).

19        ***A.***    ***Ronaldo's motion for sanctions.***

20        Ronaldo moves for case terminating sanctions, arguing that dismissal—or at the very

21    least, disqualifying Stovall and his law firm—is necessary.  (EFC No. 111).  Ronaldo makes two

22    arguments.  *See id.*  First, that Stovall acted unethically and improperly by intentionally seeking

23    out documents he knew were privileged and using them to prosecute his client's claims.  *See id.* at

24    3-11.  Second, Ronaldo argues that Stovall provided LVMPD with about 200 documents

25    containing attorney-client and work product privileged information that were never produced in

26    the litigation.  *See id.*  He argues that the detective working on the LVMPD file does not

27    "reference having independently requested information from anyone identified as 'Football

28    Leaks.'" *Id.* at 9.  He concludes that the documents must have come from Stovall.  *Id.*

1    Mayorga responds with a few alternative arguments. (ECF No. 123). She argues that

2    Ronaldo failed to assert any privilege because he did not identify which documents he believes

3    are privileged, file a privilege log, request *in-camera* review, or prove that the documents were

4    "stolen, inadvertently released, or that their release was otherwise unauthorized." *Id.* at 2, 5-6.

5    She argues, alternatively, that Ronaldo waived the privilege because he did not act quick enough

6    in stopping the documents from being leaked and that Ronaldo was the one to put the documents

7    "at issue" by bringing the sanctions motion. *See id.* at 3-4, 11. She then argues that even if the

8    documents were privileged, Stovall's actions were justified because he had a "good faith belief"

9    that the settlement agreement was illegal. *See id.* at 9. She concludes by arguing that she did not

10   provide the additional 200 documents to the LVMPD and that Stovall "does not recognize these

11   documents." *Id.* at 7. She claims, "[t]hese documents do not appear to contain any additional

12   information than disclosed [to Ronaldo]." *Id.*

13   In reply, Ronaldo attaches declarations from his attorneys whose communications and

14   work product are featured in the Football Leaks documents. (ECF No. 133). Ronaldo's

15   European attorney—Carlos Osório de Castro—explains that his law firm was hacked and

16   information about the settlement agreement was stolen, but that neither him nor Ronaldo ever

17   authorized the information to be released. *See id.* at 14-15. Ronaldo's U.S. attorney—Richard

18   Wright—explains that his communications and work product were stolen in the hack, but that

19   neither he nor Ronaldo authorized the information's release. *See id.* at 17-18. Ronaldo points to

20   two translations of court documents from Portugal and Germany in which Ronaldo sought

21   preliminary injunctions to enjoin further publication or dissemination of the Football Leaks

22   documents. (ECF No 111-26). Ronaldo also points out that specific pages in the LVMPD file

23   contain completely different information than that in Mayorga's disclosure. (ECF No. 133 at 6).

24   The Court held a hearing on these issues on September 17, 2021. (ECF No. 140). There,

25   Stovall repeated that everything disclosed to LVMPD was also disclosed to Ronaldo and that he

26   did not know where any additional documents came from. *See id.* at 55:28-56:34. Stovall also

27   re-asserted that it was not improper for him to ask Football Leaks for the documents. *See id.* at

28

59:55-1:00:53.  Unlike cases in which the court imposed terminal sanctions because a party was involved in stealing documents, Stovall asserted,

> I have no idea where these [Football Leaks] documents came from…I didn't participate in obtaining those documents, those documents were acquired two, three years before my request went to John and there is no evidence in this case and I don't think there is anywhere else, unless you accept the newspaper reporting that John is the hacker.  He denies it, in all the reports.

*Id.* at 1:00:53-1:02:03.  Stovall then placed the onus on the Court, stating,

> So, the questions that haven't been answered that I think are absolutely essential for the Court to make the decision in this case on terminal sanctions or in the request for disqualification is: "How did these documents get into the public?"; "Were they really hacked?"; "When did that occur?"; "How—to what extent—does anyone know how it occurred?";  and "Where did they go?"

*Id.* at 1:02:37-1:03:08.

### B.    *Plaintiff's motion for* in-camera *review.*

Mayorga then moved for *in-camera* review of the Football Leaks documents, asking the Court to decide that the documents fell within the crime-fraud exception to the privilege.  (ECF No. 124).  She argues that the Football Leaks documents are "presumptively privileged," and that "[t]he 'Football Leaks' documents are evidence that the defendant and his attorneys engaged in the felonious act of compounding a felony, and the negotiations, settlement, and nondisclosure agreements were the product of this illegal activity."  *Id.* at 3, 10.  Mayorga attaches eight pieces of evidence that she claims satisfies the Supreme Court's threshold analysis by "showing a factual basis adequate to support a good faith belief by a reasonable person…that in camera review of materials may reveal evidence to establish the claim that the crime fraud exception applies."  *Id.* at 5-6.  This evidence includes: (1) Stovall's declaration; (2) Mayorga's verified state court complaint; (3) the January 12, 2010 settlement memorialization; (4) the August 10, 2010 settlement and confidentiality agreement; (5) Stovall's first letter to LVMPD attaching the Football Leaks documents; (6) Stovall's second letter to LVMPD; (7) LVMPD's declaration of

warrant/summons for Ronaldo; and (8) the District Attorney's press release that he would not prosecute Ronaldo.  *See id.*

Ronaldo responds that Mayorga has already argued, unsuccessfully, that the Football Leaks documents were subject to the crime-fraud exception when opposing Ronaldo's motion to compel arbitration.  (ECF No. 134 at 4-5).  He also argues that *in-camera* review is unnecessary where all parties already have access to and have reviewed the privileged information.  *See id.* at 7.  Ronaldo adds that, even if the Court were to conduct the *in-camera* review analysis, Mayorga's evidence is insufficient under the threshold analysis because it improperly relies on and includes cites from the Football Leaks documents themselves.  *See id.* at 7-12.

Mayorga replies that the Court can use the Football Leaks documents themselves to satisfy the threshold inquiry.  (ECF No. 138 at 4).  She responds to Ronaldo's argument that her eight pieces of evidence are insufficient by claiming that the threshold step is not stringent, and her documents satisfy it.  *See id.* at 4-5.  Although recognizing that all parties and the Court already have the Football Leaks documents, at the Court's September 17, 2021 hearing, Stovall asked the Court to apply the threshold analysis retroactively.  (ECF No. 104 at 21:50-23:22).

## II.    Discussion.

The authority of magistrate judges is derived from 28 U.S.C. § 636, which generally provides magistrate judges with the authority to "hear and determine" non-dispositive matters. *See* 28 U.S.C. § 636(b)(1)(A); *see also S.E.C. v. CMKM Diamonds, Inc.*, 729 F.3d 1248, 1259 (9th Cir. 2013).  By contrast, dispositive matters are sometimes referred to magistrate judges, but in those circumstances a magistrate judge submits a recommendation to the assigned district judge that is subject to the district judge's *de novo* review.  *See* 28 U.S.C. § 636(b)(1)(B); *see also CMKM Diamonds*, 729 F.3d at 1259-60.  Section 636 enumerates eight different types of matters to be treated as "dispositive."  *See* 28 U.S.C. § 636(b)(1)(A)-(B).  This includes motions "to involuntarily dismiss an action."  *Id.*

Here, Mayorga's motion for *in-camera* review is a non-dispositive matter: the resolution will not result in the disposition of the case.  The Court addresses this motion first and denies it.

1  Ronaldo's motion for case terminating sanctions, however, is dispositive.  The Court addresses

2  this motion second and recommends granting it and dismissing the action.

3         ***A. The Court denies Mayorga's motion for* in-camera *review.***

4         A party seeking to invade another party's privilege under the crime-fraud exception must

5  first provide evidence "sufficient to support a reasonable belief that *in-camera* review may yield

6  evidence that establishes the exception's applicability."  *See United States v. Zolin*, 491 U.S. 554,

7  574-75 (1989).  The crime-fraud analysis thus typically proceeds in two steps.  *See id.*  First, the

8  party looking to invade the privilege provides threshold evidence.  *See id.*  Then, if the evidence

9  is sufficient, the court will review the privileged documents *in-camera*.  *See id.*

10         Mayorga's request for an *in-camera* review fails at the first step.  The Court may still

11  conduct the *Zolin* analysis even though it has already seen the Football Leaks documents.  But the

12  crimes which Mayorga asserts that Ronaldo and his attorneys committed are inapplicable.  Even

13  if Mayorga asserted applicable crimes, however, Mayorga's evidence—excluding the privileged

14  information—does not provide evidence to support a reasonable belief that *in-camera* review of

15  the Football Leaks documents may yield evidence that establishes the crime-fraud exception.

16            1.   The Court may apply the *Zolin* test even though it has already seen  the
17                  Football Leaks documents.

18         A court may disregard attorney client privileged information a party has improperly

19  submitted as evidence when deciding the first step of the *Zolin* analysis.  *See United States v.*

20  *Chen*, 99 F.3d 1495, 1502-1504 (9th Cir. 1996).  In *Chen* the Ninth Circuit considered whether

21  the district court appropriately applied *Zolin* when the government had attached attorney-client

22  privileged documents to its motion for *in-camera* review.  *See id.* at 1502-1504.  The government

23  received the documents from the former comptroller of the company the government was

24  investigating for tax fraud.  *See id* at 1497-98.  The comptroller had stolen the documents when

25  she left the company.  *See id.*  Even though the government erroneously attached and referenced

26  privileged communications in their motion, the district judge applied the threshold *Zolin* analysis,

27  expressly disclaiming any reliance on the privileged information.  *See id.*  On appeal, the Ninth

28

1  Circuit affirmed, finding that because the district judge ignored the privileged evidence, the

2  government's "[v]iolation of the *Zolin* two-step procedure was therefore harmless." *Id.*

3      Here, the Court may disregard the Football Leaks documents in deciding the first step of

4  the *Zolin* test. Like the company's comptroller who stole documents and provided them to the

5  government in *Chen*, here a third party has obtained the Football Leaks documents and provided

6  them to Stovall. The Court has also—like the court in *Chen*—received the documents attached to

7  a filing. Although the Court has received and reviewed the Football Leaks documents, it may still

8  apply the first step of the *Zolin* analysis if it expressly disregards the Football Leaks documents

9  and anything disclosing their contents. Before considering the non-privileged evidence, however,

10  the Court addresses the crimes Mayorga asserts that her non-privileged evidence will show.

11
        2.    <u>The crimes Mayorga asserts that her evidence reveals are inapplicable to</u>
12
             <u>Ronaldo and his attorneys' actions.</u>

13      Mayorga asserts that, by negotiating and executing the settlement agreement, Ronaldo and

14  his attorneys violated NRS § 199.290 and 18 U.S.C. § 4. NRS § 199.290 makes it a crime to

15  receive compensation under an agreement to compound or conceal a crime, abstain from

16  testifying about a crime, or withhold evidence of a crime. *See* NRS § 199.290. 18 U.S.C. § 4

17  makes it a crime to conceal a crime. *See* 18 U.S.C. § 4.

18      The Court cannot apply either of these statutes to Ronaldo or his attorneys for two

19  reasons. First, to decide that Ronaldo and his attorneys violated these statutes by using the

20  settlement agreement to conceal a crime would require the Court to first decide that Ronaldo

21  committed a crime that night in 2009. But the events of that night are not in front of this Court,

22  and the Court will not decide them.

23      Second, even if the Court did conclude that Ronaldo committed a crime that night in 2009,

24  the Court could not find that Ronaldo employed his attorneys to violate these statutes by

25  negotiating the settlement agreement. As discussed more fully below, Mayorga had already

26  decided to drop charges before she decided to pursue civil action. The settlement agreement was

27  drafted so that, should the LVMPD nonetheless prosecute, Mayorga would not violate the

28  agreement by participating. And while the settlement agreement did prevent Mayorga from

voluntarily reopening her criminal charges, the nature of the alleged crime means that Ronaldo's attorneys did not violate NRS § 199.290 or 18 U.S.C. § 4 by drafting it. Whether Ronaldo committed a crime that night in 2009 depends entirely on Mayorga's word versus Ronaldo's. The settlement agreement thus explains that Mayorga and Ronaldo's version of events differed. (ECF No. 125-4 at 2, ¶¶ 1.1-1.2). Absent concrete evidence to the contrary, Ronaldo's attorneys were entitled to advocate his version of events—that the encounter was consensual—by drafting the settlement agreement to prevent Mayorga from re-asserting criminal charges for a crime that, according to Ronaldo, is fictional. Even if the Court could now determine that Ronaldo had in fact committed a crime, when his attorneys drafted the settlement agreement, they did not violate NRS § 199.290 or 18 U.S.C. § 4 by advocating their client's position. The crime-fraud exception does not apply and Mayorga's request for an *in-camera* review is unsupported.

>    3.    <u>Even if Mayorga had asserted a crime applicable to Ronaldo and his attorneys, her evidence—excluding privileged information—is insufficient to meet the threshold *Zolin* analysis.</u>

Although the first step of *Zolin* is not stringent, a party must at least make a minimal showing that the crime-fraud exception could apply. *See U.S. v. Christensen*, 801 F.3d 970, 1005 (9th Cir. 2015) *superseded on other grounds*, 828 F.3d 763 (9th Cir. 2015). In *Christensen*, the government investigated Anthony Pellicano, a private investigator who used illegal methods to obtain information. *See id.* at 981. Attorney Terry Christensen had hired Pellicano to assist in litigation in which his client, Kirk Kerkorian, sought to stop paying child support to Lisa Bonder. *See id.* Pellicano wiretapped Bonder's phone and discussed with Christensen what he had heard. *See id.* The district court applied *Zolin* retroactively to determine whether recordings of calls between Christensen and Pellicano were subject to the crime-fraud exception. *See id.* at 1003-1006.

The district court considered: (1) evidence that Christensen had represented Kerkorian in a child support dispute with Bonder; (2) evidence that Christensen's law firm had paid Pellicano $186,000 near the time of the recorded conversations at issue; and (3) an FBI record reflecting Pellicano's former girlfriend's statements that Pellicano told her he was listening to Bonder's

conversations.  *See id.*  Based on that evidence, the district court found that the recordings fell under the crime fraud exception.  *See id.*  The court explained that the evidence "raised the inference that the $186,000 was, at least in part, in exchange for illegal wiretapping services."  *Id.*

Here, even if the Court were to find that Mayorga had asserted a crime applicable to Ronaldo (she argues that Ronaldo and his attorneys intimidated her and impeded law enforcement) her evidence does not meet the *Zolin* minimal showing threshold.  Most of Mayorga's eight pieces of evidence rely on the contents of the Football Leaks documents.  Taking out the items that rely on or quote those documents, the Court is left with: (1) portions of Mayorga's verified complaint; (2) portions of Stovall's declaration; (3) the January 12, 2010 settlement memorialization; (4) the August 10, 2010 settlement and confidentiality agreement; (5) the July 8, 2019 declaration of Warrant/Summons by LVMPD; and (6) the District Attorney's press release of non-prosecution.  None of these items constitute a factual basis adequate to support a good faith belief by a reasonable person that Ronaldo and his attorneys committed a crime by negotiating and executing the settlement agreement.

The evidence Mayorga has provided is distinguishable from the evidence in *Christensen.* The *Christensen* evidence—on its own—established that Christensen represented Kerkorian in a child support dispute with Bonder, that Christensen had paid Pellicano a significant amount of money around that time, and that Pellicano's former girlfriend had told the FBI that Pellicano had told her he was listening to Bonder's statements.  This raised the inference that the money Christensen paid Pellicano was for Pellicano to engage in the crime of wiretapping, and thus, that Christensen and Pellicano's communications were in furtherance of that crime.  Unlike the evidence in *Christensen*, Mayorga's evidence does not raise the inference that Ronaldo hired his attorneys to intimidate Mayorga or impede law enforcement such that the privileged communications or work product contained in the Football Leaks documents were in furtherance of that crime.

First, neither Mayorga's verified complaint nor Stovall's declaration constitute a factual basis to support a good faith belief that the Football Leaks documents fall under the crime-fraud exception.  (ECF Nos. 125-1 and 125-2).  While Mayorga signed her complaint under oath and

1    Stovall is bound by Rule 11, it is impossible for the Court to determine which statements and

2    allegations are based on Mayorga's independent recollection of the settlement negotiations and

3    which are based on the Football Leaks documents.  It is especially hard for the Court to attribute

4    any statements to Mayorga's independent recollection because Mayorga claims to have been

5    incompetent during the negotiations.  The Court cannot disclaim reliance on privileged

6    information if it cannot tell which parts of the complaint or declaration are based on that

7    privileged information.

8         Next, the Court finds no evidence that Ronaldo and his attorneys intimidated Mayorga or

9    impeded law enforcement in the January 12, 2010 settlement memorialization.  (ECF No. 125-3).

10   While the memorialization requires Mayorga to drop her criminal charges, it expressly recognizes

11   that she "does not have any control over the police's actions."  *Id.* at 2, ¶ 6.  None of the terms

12   prevent the police from continuing their investigation or threaten Mayorga should she cooperate

13   with that investigation.  *See id.*

14        The August 10, 2010 settlement agreement also does not show that Ronaldo and his

15   attorneys intimidated Mayorga or sought to impede law enforcement.  (ECF No. 125-4).  To the

16   contrary, Mayorga agreed to maintain confidentiality, "except as required by law" in Section 3.1.

17   *Id.* at 4.  Section 3.2, which lists the persons and entities to whom Mayorga may not disclose

18   confidential information, does not list law enforcement.  *See id.* at 5.  Section 3.5.1 allows

19   Mayorga to comply with a subpoena if required by law and if Mayorga gives Ronaldo written

20   notice of the subpoena.  *See id.* at 6.  In Section 9.1.1.3, Mayorga represents that she already

21   reported the events to law enforcement.  *See id.* at 10.  Section 10.2 provides that Ronaldo can

22   "respond publicly to any such media reports [that discuss the sexual assault] *in a manner*

23   *reasonably proportionate* to the nature, substance and geographic scope of the previous media

24   reports containing any Confidential Information."  *See id.* at 11 (emphasis added).  While that

25   language is broad, it does not raise the inference that the agreement was intended to threaten or

26   intimidate Mayorga.  Finally, section 10.4 prohibits *both* parties from "participat[ing] in…any

27   other public judicial proceeding…*except as required by law.*"  *See id.* at 12 (emphasis added).

28

1   The agreement is not evidence that Ronaldo or his attorneys threatened Mayorga or impeded law

2   enforcement.

3        The July 8, 2019 declaration of Warrant/Summons by LVMPD does not even mention the

4   nature of the negotiations leading up to the settlement agreement.  (ECF No. 125-7).  Instead, it

5   depicts Mayorga's decision to end the investigation and pursue the case civilly as voluntary.  *See*

6   *id.* at 4.  In it, the detective reported that Mayorga "did not want to pursue criminal charges." *Id.*

7   Thus, the detective closed the criminal investigation and "indicated the case would be reopened,

8   if the victim changed her mind." *Id.*  The declaration shows that two weeks later—before

9   Mayorga's former counsel contacted Ronaldo's counsel to discuss the civil claims—the detective

10   met once again with Mayorga.  *See id.*  But Mayorga told the detective that she "elected to pursue

11   the case civilly and the criminal investigation remained closed." *Id.*  Nothing in the declaration

12   indicates that Ronaldo and his attorneys had any contact with Mayorga before this interview, let

13   alone that they intimidated her or otherwise impeded the LVMPD investigation.  Rather, the

14   declaration shows that Mayorga, on her own, decided to not pursue criminal charges.

15        Finally, the District Attorney's press release of non-prosecution does nothing to suggest

16   that Ronaldo and his attorneys bullied or intimidated Mayorga or impeded the criminal

17   investigation.  (ECF No. 125-8).  To the contrary it explains,

18   
19   
20   
21   
22   
23   
24   
25   
26   

> [Mayorga] refused to identify [Ronaldo] or disclose where the crime occurred.  As a result, the police were unable to follow investigative protocols for sexual assault cases or to conduct any meaningful investigation.  Without knowing the identity of the perpetrator or the location of the crime, detectives were unable to search for and impound vital forensic evidence.  In addition, video evidence, showing interactions between the victim and perpetrator before and after the alleged crime, was lost.  The criminal investigation was closed…On August 28, 2018, [Mayorga] contacted the Las Vegas Metropolitan Police Department, asking that her sexual assault investigation be reopened, naming Cristiano Ronaldo as the offender.  In spite the passage of over nine years, Metro investigated her allegations…Based upon a review of the information presented at this time, the allegations of sexual assault against Cristiano Ronaldo cannot be proven beyond a reasonable doubt.

27        *Id.*

28

1    Mayorga's evidence does not raise an inference that Ronaldo used his attorneys to

2    intimidate Mayorga or impede law enforcement.  Because Mayorga's evidence is not "sufficient

3    to support a reasonable belief that *in-camera* review may yield evidence that establishes the

4    exception's applicability" it does not meet the first step of the *Zolin* test.  The Court denies

5    Mayorga's motion for an *in-camera* review of the Football Leaks documents.

6        **B.    *The Court recommends granting Ronaldo's motion for case dispositive***

7               ***sanctions.***

8    When considering case-dispositive sanctions, "[a] court must consider the following five

9    factors before striking a pleading or declaring default: '(1) the public's interest in expeditious

10   resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the

11   other party; (4) the public policy favoring the disposition of cases on their merits; and (5) the

12   availability of less drastic sanctions.'"  *Hester v. Vision Airlines*, 687 F.3d 1162, 1169 (9th Cir.

13   2012) (quotation omitted).  "[T]he key factors are prejudice and availability of lesser sanctions."

14   *Wanderer v. Johnston*, 910 F.2d 652, 656 (9th Cir. 1990).  The Ninth Circuit has found that the

15   element of prejudice is essential, and "sanctions [that] threaten or interfere with the litigants'

16   claim or defenses violate due process when they are imposed 'merely for punishment of an

17   infraction that does not threaten to interfere with the rightful decision of the case.'"  *Id.*

18           1.    The public's interest and the Court's need to manage its docket weigh in
19                 favor of case terminating sanctions.

20   The first and second factor in the Ninth Circuit's test weigh in favor of case terminating

21   sanctions.  The public—more so in this case than others—is interested in an expeditious outcome

22   of this litigation.  Following the public's awareness of sexual assault brought on by the #MeToo

23   movement and concerning a public figure, the public has an interest in this case not languishing.

24   This case has also been one of the more contentious in front of the Court.  The Court's interest in

25   managing its docket is particularly keen here, where motion practice is frequent and heated.

26   These two factors weigh in favor of dismissal.

27

28

1

2            2.     <u>The public policy favoring the disposition of cases on their merits weighs against case terminating sanctions.</u>

3   The fourth factor in the Ninth Circuit's test weighs against case terminating sanctions.

4   Stovall, not Mayorga, is responsible for obtaining and using the ill-gotten Football Leaks

5   documents.  Dismissing Mayorga's case for the inappropriate conduct of her attorney is a harsh

6   result.  But it is, unfortunately, the only appropriate sanction to ensure  the integrity of the judicial

7   process.  As discussed more fully below, Mayorga has undoubtedly reviewed the Football Leaks

8   documents or at the very least, the filings Stovall based on those documents.  If this case

9   progresses, even if Mayorga has different counsel, the Court will be unable to determine how

10  much of her case is based on her independent recollection of events, or her recollection as

11  influenced by the Football Leaks documents.  Thus, while this factor weighs against case

12  terminating sanctions, it is outweighed by the other factors.

13           3.     <u>Stovall acted in bad faith.</u>

14  The Ninth Circuit's decision in *Gomez v. Vernon* stands for the proposition that, even if an

15  attorney believes privilege was waived or that the crime-fraud exception applies, the attorney acts

16  in bad faith when he asks for, receives, and uses privileged information to prosecute a case.  *See*

17  *Gomez v. Veron*, 255 F.3d 1118 (9th Cir. 2001).  In *Gomez*, inmates who were suing prison

18  officials communicated with their attorneys via letters.  *See id.* at 1123-24.  After a prison

19  employee secretly sent one of these letters to the attorneys representing the prison officials, the

20  attorneys asked prison employees to copy and send more documents from the inmates' file,

21  believing that the documents showed that the inmates' attorneys were committing a fraud on the

22  court.  *See id.* at 1124-25.

23  Eight months after first receiving the stolen documents, the attorneys sought advice from

24  an Idaho State Bar official who told them to not read any more documents and to turn them over

25  to the court.  *See id*.  Despite this advice, the attorneys continued to ask for and receive

26  documents for another month and then used the documents in a motion requesting the inmates'

27  attorneys be held in contempt.  *See id.*  The district court denied the motion and found that the

28

attorneys' actions "constituted bad faith conduct and warrant[ed] the imposition of sanctions." *See id.* at 1125.

The Ninth Circuit affirmed the district court's monetary sanctions[2] on appeal. *See id.* at 1131-34.  First, it concluded that the letters were privileged.  *See id.*  It explained that the "confidential status of the letters was facially evident…[b]ut if that was not enough, the contents of the letters remove[d] all doubt." *Id.*  "In short, these documents were of the most sensitive kind—the kind that any trial lawyer would recognize as privileged, highly valuable, very confidential, and potentially devastating in the wrong hands." *Id.*

The attorneys argued that their actions were justified because the inmates had waived their privilege and the documents fell under the crime-fraud exception.  *See id.*  The Ninth Circuit disagreed.  *See id.*  The inmates did not waive their privilege by placing their file in the restricted section of the prison library.  *See id.*  While employees could access that section, the prison "had in place reasonable policies providing precautions that were intended to protect and preserve the confidential nature of attorney-client correspondence…the inmates did all they could to secure the documents' confidentiality and [] they did not waive the privilege."  *Id.*  And the attorneys had no right to disregard the *Zolin* process even though they believed the crime-fraud exception

---

[2] In making this decision, the Ninth Circuit cited American Bar Association Formal Opinion 94-382.  While the ABA has withdrawn Formal Opinion 94-382, it has acknowledged the sanctions available to parties who use ill-gotten information.  *See* ABA Comm'n on Ethics & Prof'l Responsibility, Formal Op. 440 (2006).  It explained that,

> If the sender of privileged or confidential material has engaged in tortious or criminal conduct, a lawyer who receives and uses the materials may be subject to sanction by a court….These issues are matters of substantive law, at least in the first instance.  To the extent the lawyer would be engaged in criminal conduct, Rule 8.4(b) may be implicated.  Other factual circumstances present may implicate Rule 8.4(c) (conduct involving dishonesty), but those circumstances are not the subject of either Formal Opinion 94.382 or this opinion.

*Id.*  To the extent Stovall argues that *Gomez* is inapplicable by virtue of this withdrawal, his argument would fail because the new Formal Opinion expressly recognizes the use of tortiously or criminally obtained materials and dishonest conduct as sanctionable.

applied.  *See id.*   The Ninth Circuit explained that the *Zolin* court "underscored the importance of the privilege, even where an attorney seeks to invoke the crime-fraud exception."  *Id.*

Having disregarded the attorneys' justifications, the Ninth Circuit found their actions "tantamount to bad faith."  *Id.*  It emphasized that the "notion that receipt of privileged communications imposes a duty on counsel to take some reasonable remedial action is hardly a novel concept."  *Id.*  It found the attorneys' flippancy after receiving guidance from the state bar untenable and chastised the attorneys' audacity in presenting the documents to the court in a contempt motion.  *Id.*  The Ninth Circuit summarized that while "all may be fair in war, such is not the case in the judicial arena—the courtroom is not a battlefield."  *Id.* at 1122.

Here, even if Stovall truly believed that Ronaldo waived the privilege and that the crime-fraud exception applies, he acted in bad faith by asking for, receiving, and using the Football Leaks documents to prosecute Mayorga's case.[3]  Stovall asked for privileged information after learning from the 2017 Der Spiegel article that Football Leaks had access to the documents just as the attorneys in *Gomez* asked for privileged information after learning that prison employees had access to the inmates' file.  But Stovall held on to these documents for fourteen months, much longer than the nine months in *Gomez*, and his argument that he disclosed the documents in the state and federal court complaints is belied by his omission of the word "attorney" and use of Doe and Roe pseudonyms.  Rather, much like the attorneys in *Gomez*, Stovall first revealed his possession of these documents by attaching them to a filing.

The confidential status of the Football Leaks documents is facially evident, but if that were not enough, the contents should have removed all doubt.  Although Stovall never received— or even sought—an ethics opinion like the attorneys in *Gomez*, he had multiple opportunities to recognize the privileged nature of the documents, starting with the 2017 Der Spiegel article, which quotes privileged communications.  He certainly should have recognized the privilege

---

[3] Stovall has denied providing LVMPD with additional documents that he did not produce to Ronaldo.  Ronaldo has also not provided evidence that the documents in the LVMPD file came from Stovall or Mayorga.  The Court thus does not base its recommendation for terminating sanctions on the allegation that Stovall provided LVMPD with documents he did not produce to Ronaldo in this litigation.

when he read the Football Leaks documents, riddled as they are with the words "attorney client privileged," and "work product."  If that were not enough, Stovall should have recognized their content as "of the most sensitive kind—the kind that any trial lawyer would recognize as privileged, highly valuable, very confidential, and potentially devastating in the wrong hands."

But Stovall argues that his actions were justified because Ronaldo waived his privilege, and the Football Leaks documents fall under the crime fraud exception.  These arguments fail for the same reasons they did in *Gomez*.  Ronaldo did not waive his privilege by having his documents stored in a protected attorney database.  While hackers gained access to the database, Ronaldo's attorneys had reasonable policies providing precautions intended to protect confidential attorney-client correspondence and privileged documents.  Ronaldo's attorneys submitted a declaration that they did all they could to secure the documents.  Even though the documents were published, Ronaldo took reasonable steps to secure their confidentiality by filing for injunctive relief in Portugal and Germany.  Ronaldo did not waive the privilege.  And Stovall had no right to disregard the *Zolin* process even though he believed the crime-fraud exception applied.  But Stovall ignored *Zolin's* purpose: to protect privileged information, even where an attorney seeks to invoke the crime-fraud exception.

Stovall adds an additional justification that warrants debunking in no uncertain terms: that he is excused because he was not the one to steal the Football Leaks documents and because he cannot prove that the documents were stolen.  Stovall relies heavily on this argument, even asserting to the Court at its most recent hearing that the Court cannot decide the sanctions motion until it knows how Football Leaks obtained the documents.  But this information is unverifiall.  More importantly, the origins of the Football Leaks documents are too suspicious for Stovall to have ignored in good faith.  Stovall was rebuffed in his initial attempts to get the documents from Der Spiegel and Mayorga's former counsel.  Ignoring this red flag, Stovall then emailed Football Leaks, asking specifically for privileged material while making no attempt to verify the source.  Stovall's after-the-fact attempt to legitimize his request to the unknown Football Leaks source only raises more questions.  Stovall cites to articles in which "John" is identified as a person arrested for hacking, who "came across" the Football Leaks documents in "thousands of PDFs

and emails" that were "pouring in" from "law firms."  These articles again raised massive red flags, which Stovall ignored when he then attached the documents in his later filing.  That Stovall did not directly obtain the Football Leaks documents is not a justification for using them.

Stovall's justifications now soundly aside, his actions are tantamount to bad faith.  Stovall refused to take any reasonable remedial action after receiving privileged documents.  He has behaved flippantly, ignoring every single red flag.  His decision to include the documents in complaints while masking their privileged status was alone audacious.  His decision to first reveal them attached to a filing was impertinent.  And now, his claim that the Football Leaks documents are "fair game" even after the Court struck certain of them is downright abusive.  Stovall has acted in bad faith to his client's—and the profession's—detriment.

### 4.    The prejudice to Ronaldo weighs in favor of dismissal.

The Football Leaks documents that Stovall wrongfully obtained are inherently prejudicial to Ronaldo fairly presenting his defense.  Stovall's behavior in using the documents has increased this prejudice astronomically.  Mayorga's case against Ronaldo would probably not exist had Stovall not asked for the Football Leaks documents.  The content of Ronaldo's and his attorneys' privileged communications and work product is woven into Mayorga's state court and federal court complaints, creating the basis for her causes of action.

If that were not enough, Stovall has wielded the documents in a prejudicial way.  Unable and unwilling to authenticate the Football Leaks documents himself, Stovall demanded that Ronaldo point out which portions were altered or original.  When Ronaldo refused to respond, Stovall included that fact in his motion practice, suggesting that the refusal was unreasonable. Stovall also has a propensity to use the documents whenever possible, treating them as if they were authenticated evidence.  Even after the Court struck the Football Leaks documents from the record, Stovall has continued to use their contents to paper the docket with expensive and frivolous motions.  For example, Stovall quotes the Football Leaks documents to argue that the settlement agreement was illegal, an issue not in front of this Court.  Stovall also uses the Football Leaks documents—in direct violation of *Zolin* and Ninth Circuit precedent—to support his

unfounded demand for an *in-camera* review.  The existing and ongoing prejudice these documents create to Ronaldo's ability to defend this action weigh heavily in favor of dismissal.

### 5.      Lesser sanctions than dismissal will not suffice.

For the drastic sanction of dismissal to be proper, the malfeasance must be due to "willfulness, fault or bad faith." *Anheuser–Busch, Inc. v. Natural Beverage Distributors*, 69 F.3d 337, 348 (9th Cir. 1995) (internal quotations and citations omitted); *Jorgensen v. Cassiday*, 320 F.3d 906, 912 (9th Cir. 2003).  [D]isobedient conduct [within] the control of the litigant is all that is required to demonstrate willfulness, bad faith or fault." *Henry v. Gill Inds*., 983 F.2d 943, 948 (9th Cir. 1993) (internal quotations omitted).  The court has the inherent power to dismiss actions in extreme circumstances, for abusive litigation practices, and to ensure the orderly administration of justice and integrity of the court's orders.  *See Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 589 (9th Cir. 1983); *see Fjelstad v. American Honda Motor Co.*, 762 F.2d 1334, 1338 (9th Cir. 1985); *see United States v. National Medical Centers, Inc.*, 792 F.2d 906, 912 (9th Cir. 1986).

It is not always necessary for the Court to impose less serious sanctions first or to give any explicit warnings. *Valley Eng'rs Inc. v. Electric Engineering Co*., 158 F.3d 1051, 1057 (9th Cir. 1998).  It is appropriate to reject lesser sanctions where the court anticipates continued deceptive misconduct. *Anheuser-Busch*, 69 F.3d at 352.  "It is well settled that dismissal is warranted where…a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings." *Id.* at 348.

Here, Stovall has acted in bad faith in requesting and using the Football Leaks documents.  As a preliminary matter, while the court in *Gomez* only awarded monetary sanctions, the impact that the Football Leaks documents have had on this case is distinguishable.  Unlike in *Gomez*, where the attorneys had only used the material to support their contempt motion, here, Stovall has used the documents to support the entire case.  Additionally, in *Gomez*, the plaintiffs were the prejudiced party, for whom dismissal would be an inappropriate sanction.   Here, however, Ronaldo—the defendant—is the prejudiced party, for whom dismissal is an available sanction.

Case terminating sanctions are also necessary.  Stovall's conduct was well within his control.  Had Stovall come forward early and cured his own misconduct perhaps alternate

sanctions—or no sanctions at all—would suffice.  For example, Stovall could have based the complaint on Mayorga's recollection and Der Spiegel's publicly available reporting.  Stovall could have then obtained the opinion of State Bar counsel before asking for the Football Leaks documents.  Upon receiving the Football Leaks documents and noticing they in fact contained privileged communications, Stovall could have stopped reviewing the documents and moved for *in-camera* review.  Instead, he has used abusive litigation tactics like deliberately hiding the nature of the documents from the Court by using deceptive language and naming Doe and Roe defendants.  He has also undermined the integrity of any future orders this Court may issue.  The Court cannot parse out which facts in the complaint come from Mayorga's own independent recollection and those which come from the Football Leaks documents, especially because Mayorga claims incompetence.  Lesser sanctions could not ensure that the Court's decision on these issues is not based on privileged information.

The Court has also already imposed lesser sanctions and given warnings, albeit indirectly.  It already struck the Football Leaks documents from one of Mayorga's filings and found that the privilege had not been waived.  (ECF Nos. 67 & 72).  But Stovall was not deterred and continued to consider the Football Leaks documents "fair game."  Stovall's continued extensive reliance on the contents of the Football Leaks documents in his opposition to the motion for sanctions and in moving for *in-camera* review demonstrates that Stovall will only continue to try and use these documents.

Moreover, no lesser sanctions would suffice for two reasons.  First, because Stovall and Mayorga have read, reviewed, and thoroughly analyzed the Football Leaks documents, their knowledge of the documents' contents cannot be undone.  There is no possible way for this case to proceed where the Court cannot tell what arguments and testimony are based on these privileged documents.  Case terminating sanctions must also extend to the arbitrable claims for the same reasons.  Mayorga's claims that the settlement agreement is illegal and violates public policy must "be decided by an arbitrator if Mayorga does not prevail on her mental-capacity challenge."  (ECF No. 72 at 20).  But these claims are also premised on the Football Leaks documents.  Just like the Court, the arbitrator will be unable to proceed without being able to tell

which arguments and testimony are based on privileged documents.  Even if the Court were to disqualify Stovall and his office, the Football Leaks documents would still form the basis of Mayorga's complaint, many of the documents in her case, and, likely, her memory of the settlement negotiations as presented in front of the Court and the arbitrator.

Second, if the Court does not grant case-terminating sanctions, Stovall's actions could have far-reaching, dangerous consequences on the legitimacy of the judicial process.  Hackers have increased in sophistication and stealth and attacks on law firms are increasingly prevalent. Using Stovall's logic, if hacked privileged documents—the origin of which cannot be determined—are circulated online, these documents are "fair game" for an attorney to use to create and prosecute a case.  Anything less than case terminating sanctions would create the dangerous precedent that, so long as a party is willing to risk changing attorneys or paying a fine, they can use privileged information to prosecute, and maybe even win, their case.  But again, "[w]hile all may be fair in war, such is not the case in the judicial arena—the courtroom is not a battlefield."  *Gomez*, 255 F.3d at 1112.  The Court recommends that Ronaldo's motion for sanctions be granted, and the case dismissed.

## ORDER

**IT IS ORDERED** that Mayorga's motion for *in-camera* review (ECF No. 124) is **denied.**


## REPORT AND RECOMMENDATION

**IT IS RECOMMENDED** that Ronaldo's motion for case terminating sanctions (ECF No. 111) be **granted.**

**IT IS FURTHER RECOMMENDED** that Mayorga's action be dismissed with prejudice.

DATED: October 6, 2021

_____
DANIEL J. ALBREGTS
UNITED STATES MAGISTRATE JUDGE

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### <u>NOTICE</u>

This report and recommendation is submitted to the United States District Judge assigned to this case under 28 U.S.C. § 636(b)(1).  A party who objects to this report and recommendation may file a written objection supported by points and authorities within fourteen days of being served with this report and recommendation.  Local Rule IB 3-2(a).  Failure to file a timely objection may waive the right to appeal the district court's order.  *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).