MARGARET A. MCLETCHIE, Nevada Bar No. 10931
LEO S. WOLPERT, Nevada Bar No. 12658
**MCLETCHIE LAW**
602 South Tenth Street
Las Vegas, NV 89101
Telephone: (702) 728-5300
Fax: (702) 425-8220
Email: maggie@nvlitigation.com
*Counsel for Proposed Intervenor The New York Times Company*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| KATHRYN MAYORGA, an individual, | **Case. No.:** 2:19-cv-00168-JAD-DJA |
|---|---|
| Plaintiff, | |
| vs. | **THE NEW YORK TIMES COMPANY'S MOTION TO INTERVENE** |
| CRISTINANO RONALDO, | |
| Defendant. | |

  Pursuant to Fed. R. Civ. P. 24 and the other authority detailed herein, The New York Times Company ("The Times") hereby moves to intervene in this case for the limited purpose of opposing Defendant's Motion for Protective Order and Plaintiff's Motion for a Preliminary Injunction and protecting its rights to access public records. This Motion is supported by the attached memorandum of points and authorities and declaration of counsel, together with any oral argument the Court may require in this matter.

  DATED this the 29th day of December, 2021.

    */s/ Margaret A. McLetchie*
    Margaret A. McLetchie, Nevada Bar No. 10931
    Leo S. Wolpert, Nevada Bar No. 12658
    **MCLETCHIE LAW**
    602 South Tenth Street
    Las Vegas, NV 89101
    Telephone: (702) 728-5300; Fax: (702) 425-8220
    Email: maggie@nvlitigation.com
    *Counsel for Proposed Intervenor, The New York Times Company*

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Defendant's Motion for a Protective Order (the "Protective Order Motion") (ECF No. 161) and Plaintiff's Motion for a Preliminary Injunction (the "Injunction Motion") (ECF No. 168) both ask this Court to stop the Las Vegas Metropolitan Police Department ("Metro") from providing public records to The New York Times Company ("The Times") pursuant to a request made under the Nevada Public Records Act (the "NPRA," Nev. Rev. Stat. § 239.001 *et seq.*). As noted by Metro's counsel, however, the NPRA ***obligates*** Metro "to provide the New York Times with responsive public records of the investigation concerning Ms. Mayorga and Mr. Ronaldo." (Ex. A to ECF No. 161, p. 1.) As more fully detailed in the oppositions, while some of the records The Times seeks from Metro under the NPRA may relate to this matter and while Defendant has apparently been able to obtain Metro's investigative file and produce it in this litigation, this litigation is not the source of the records—and this litigation is not the proper forum for any NPRA disputes. Instead, the parties are endeavoring to misuse this litigation to restrict The Times's rights to gather and report on the news.

The parties have thus made The Times's intervention necessary so it can protect its rights. As more fully detailed in The Times's proposed Oppositions to the Protective Order Motion and the Preliminary Injunction Motion (attached hereto as Exhibits A and B), there are ample reasons for this Court to reject the parties' attempts to misuse this lawsuit to restrict The Times's rights under the NPRA. Thus, this Court should grant the instant motion and allow limited intervention by The Times. As detailed below, the public media has a great interest in obtaining public records, and courts have routinely allowed the press to intervene in similar cases, even when it is not expressly provided for by procedural rules. Further, here, The Times is entitled to intervention as a matter of right under Fed. R. Civ. P. 24(a) or, alternatively, permissive intervention under Fed. R. Civ. P. 24(b).

## II.   STATEMENT OF FACTS AND PROCEDURAL HISTORY

Over three months ago, on or about September 28, 2021, The Times sent Metro a public records request pursuant to the NPRA requesting all records relating to "the LVMPD's two investigations into an alleged victim's claim that she was raped by Cristiano Ronaldo dos Santos Aveiro (commonly goes by Cristiano Ronaldo, DOB 2/5/1985) on or around 6/13/2009." (Ex. 1 to Proposed Response in Opposition to Motion for Protective Order.) On or about November 18, 2021, counsel for Metro informed both The Times and counsel for the parties in this matter that Metro was "required to provide the New York Times with responsive public records of the investigation concerning Ms. Mayorga and Mr. Ronaldo" and that Metro would "be providing the New York Times with various reports, including the crime report and property reports; voluntary statements, Declaration of Warrant/Summons, and communications to and from [Metro] regarding the investigation." (Ex. A to ECF No. 161, p. 1; *see also* Ex. 5 to Proposed Response in Opposition to Motion for Protective Order.) Metro agreed to produce these documents to The Times on or about December 1, 2021. (*Id.*)

Upon receiving this two-week heads-up as a courtesy, both parties voiced their objections to Metro's release of these documents. (*See* Exs. B, C to ECF No. 161.) Both parties then sought relief from this Court to prevent Metro from producing the public records at issue: Defendant Ronaldo moved for a protective order to forbid disclosure of any portions of Metro's investigative file regarding this matter (ECF No. 161), while Plaintiff Mayorga moved for a preliminary injunction to forbid disclosure of certain records until this Court determines whether they are subject to the attorney-client privilege (ECF No. 168). The Times now moves to intervene in this matter to oppose both motions and to take other action necessary that may be necessary to protect its rights under the NPRA that the parties are endeavoring to use this litigation to limit.

## III.   INTERESTS OF PROPOSED INTERVENOR

The Times is the publisher of *The New York Times* and the news website www.nytimes.com. It is based at 620 Eighth Avenue, New York, NY 10018. The Times is a news organization with a long history of providing in-depth coverage of issues involving

1  sexual assault allegations. The Times also has a strong interest in ensuring broad access to

2  nonconfidential court proceedings and frequently litigates access matters under both state

3  public records acts and the federal Freedom of Information Act.

4          Here, The Times has consistently covered Ms. Mayorga's allegations against Mr.

5  Ronaldo.[1] As noted in the Protective Order Motion, The Times requested public records from

6  Metro regarding its investigations "of Plaintiff's sexual assault allegations at issue in this

7  case." (ECF No. 161, p. 3:12-16.) The Motion seeks an order "barring LVMPD from

8  producing its investigative file concerning LVMPD Event No. 090613-1815 to The New

9  York Times or any third parties and/or compelling return or destruction of all privileged and

10  confidential documents." (ECF No. 161, p. 11:3-5.)

11  **IV.    ARGUMENT**

12          The Protective Order Motion's express purpose is to thwart The Times's efforts to

13  access records under the NPRA. (*See, e.g.*, ECF No. 161, p. 8:6-8 (seeking "a protective

14  order prohibiting the disclosure of LVMPD's investigative file because it contains hundreds

15  of pages labeled as privileged attorney-client communications and/or work product").)

16  Likewise, while more circumspect in its requested relief, the Preliminary Injunction Motion

17  seeks to enjoin Metro from producing some of the public records—the so-called "Football

18  Leaks" documents—to The Times. (*See, e.g.*, ECF No. 168, pp. 4:27-5:3.) The Court should

19  thus grant this Motion to Intervene so that The Times can be heard on these improper efforts

20  to deny The Times access to public records.

21

22

23

24  ────────────────

[1] *See, e.g.*, Kevin Draper, *Las Vegas Police Reopen Investigation into Sexual Assault Claim*

25  *Said      to      Involve      Ronaldo*,      N.Y.      Times      (Oct.      1,      2018),

26  https://www.nytimes.com/2018/10/01/sports/cristiano-ronaldo-rape-case.html; Tariq Panja

    & Kevin Draper, *Cristiano Ronaldo's DNA Sought by Las Vegas Police in Rape*

27  *Investigation*,      N.Y.      Times      (Jan.      10,      2019),

    https://www.nytimes.com/2019/01/10/sports/cristiano-ronaldo-lawsuit.html; Tariq Panja,

28  *Ronaldo and Juventus Will Avoid U.S. Amid Rape Investigation*, N.Y. Times (Mar. 20, 2019),

    https://www.nytimes.com/2019/03/20/sports/cristiano-ronaldo-rape-allegations.html.

**A.**      **Intervention Is Necessary to Protect The Times's Rights Under the Nevada Public Records Act.**

As Defendant Ronaldo recognized when he sent The Times a copy of his motion, The Times has standing to contest the Protective Order Motion. Defendant Ronaldo's effort to misuse this proceeding to limit The Times's access to public records impinges on The Times's rights to access public records—and its First Amendment rights to report on them. *See United States v. James*, 663 F. Supp. 2d 1018, 1020 (W.D. Wash. 2009) ("Domestic press outlets unquestionably have standing to challenge access to court documents.") (citation omitted). Likewise, Plaintiff Mayorga's attempt to stymie The Times's rights under the NPRA via the Preliminary Injunction Motion—while more limited in scope than Defendant's attempt—seeks to limit the records Metro can produce to The Times and thus, requires The Times's opposition and intervention.

As noted in the Protective Order Motion, Metro has acknowledged that the records The Times is asking for are public records. Indeed, Metro has informed counsel for The Times and counsel for Defendant Ronaldo:

> LVMPD has determined it will be providing the New York Times with "various reports, including the crime report and property reports; voluntary statements, Declaration of Warrant/Summons, and communications to and from LVMPD regarding the investigation" with "all personal identifying information of any victims" redacted on or about December 1, 2021.

(ECF No. 161, p. 3:12-16.) The NPRA not only provides The Times and other members of the public with the right to access such public records, but also specifically provides the right to "prompt access" to public records. Nev. Rev. Stat. § 239.001(1). The Motion for a Protective Order interferes with The Times's ability to promptly access records from Metro.

Further, courts have recognized that a delay in access to records is a violation of a First Amendment right and constitutes irreparable harm. *See, e.g.*, *Globe Newspaper Co. v. Pokaski*, 868 F.2d 497, 507 (1st Cir. 1989) ("[E]ven a one- to two-day delay impermissibly burdens the First Amendment."). Thus, the importance of *immediate* public access to documents has also been recognized in cases providing the press with access to public records in court files. *See, e.g.*, *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 126-27

1    (2d Cir. 2006) ("Our public access cases and those in other circuits emphasize the importance

2    of immediate access where a right of access is found.") (emphasis added) (citations omitted);

3    *Grove Fresh Distribs., Inc. v. Everfresh Juice Co.*, 24 F.3d 893, 897 (7th Cir. 1994)

4    (explaining that public access to documents in court files "should be immediate and

5    contemporaneous").[2]

6          Here, as detailed below, Fed. R. Civ. P. 24 expressly allows for intervention.

7    However, even in criminal cases where there is no express rule providing for intervention as

8    a procedural matter, this district has repeatedly allowed intervention by the press. *See, e.g.*,

9    *United States v. Bundy*, No. 16-cr-046, 2017 U.S. Dist. LEXIS 205642, at *4 (D. Nev. Dec.

10   14, 2017) (allowing intervention by the Las Vegas Review-Journal, Inc. and Battle Born

11   Media in criminal case to unseal court records and noting that the Court had previously

12   allowed the same media parties to intervene to challenge the terms of a protective order

13   entered into between the parties to that case). Thus, as a threshold matter, permitting media

14   outlets to intervene in cases that threaten their access to public records upholds the First

15   Amendment's promise of a free press.

16         **B.      The Court Should Allow The Times to Intervene Under Fed. R. Civ. P**

17   **24.**

18         Rule 24 of the Federal Rules of Civil Procedure allows for intervention as a matter

19   of right under Fed. R. Civ. P. 24(a) or with this Court's permission under Fed. R. Civ. P.

20   24(b). The Times meets the requirements of both.

21

22

23

24

---

25   [2] Plaintiff does not contest The Times's proposed intervention. (*See* ECF No. 170.) However,

26   despite the nature of the Motion—and despite having served a representative from The Times
     with a copy of the Motion via email—counsel for Defendant Ronaldo has indicated he would

27   oppose "anything and everything" from The Times because those were his marching orders
     from Ronaldo's counsel in Europe. (McLetchie Decl., ¶ 7.) This position is not tenable in

28   light of the facts set forth herein.

MCLETCHIE LAW
ATTORNEYS AT LAW
(702)728-5300 (T) / (702)425-8220 (F)
WWW.NVLITIGATION.COM

1.   **The Times Is Entitled to Intervene as a Matter of Right Under Fed. R. Civ. P. 24(a)(2).**

Intervention as of right under Fed. R. Civ. P. 24(a)(2) requires an applicant to meet four requirements: the applicant must (1) "timely move to intervene"; and (2) have a "significant protectable interest" relating to the action that (3) "disposition of the action may impair or impede" and (4) is not "adequately represented by existing parties." *W. Watersheds Project v. BLM*, No. 21-cv-00103, 2021 U.S. Dist. LEXIS 140664, at *3 (D. Nev. July 28, 2021). When evaluating motions to intervene as a matter of right, this Court must construe Rule 24 liberally in favor of potential intervenors, focusing on practical considerations rather than technical distinctions. *Id.* (citing *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 817 (9th Cir. 2001)).

a.   **The Times's Motion Is Timely.**

Here, the Parties have stipulated to waive any arguments that a motion to intervene and accompanying responses to Defendant's Motion for Protective Order and Plaintiff's Motion for Injunction are untimely if they are submitted to the Court by December 29, 2021. (ECF No. 170, p. 2:9-12.) Thus, the instant Motion is timely.

b.   **The Times Has a Significant Protectable Interest.**

"An applicant has a 'significant protectable interest' in an action if (1) it asserts an interest that is protected under some law, and (2) there is a 'relationship' between its legally protected interest and the [parties'] claims." *W. Watersheds Project*, 2021 U.S. Dist. LEXIS 140664, at *9 (quoting *Cal. ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006)).

Here, the NPRA plainly reflects that, unless otherwise explicitly made confidential, "all public books and public records of a governmental entity must be open at all times during office hours to inspection by any person, and may be fully copied or an abstract or memorandum may be prepared from those public books and public records." Nev. Rev. Stat. § 239.010(1). Indeed, the "purpose of this chapter is to foster democratic principles by providing members of the public with prompt access to inspect, copy or receive a copy of

1    public books and records to the extent permitted by law." *Id.* § 239.001(1). Both parties ask

2    this Court to ignore The Times's clear rights under the statute.

3                    **c.   Disposition of the Action Will Impair The Times's**

4                         **Interest.**

5            Unless The Times has the opportunity to oppose both parties' motions seeking to

6    forbid release of the public records at issue, a ruling from this Court could deny The Times

7    its rights to obtain public records. That would frustrate the purpose of the NPRA by providing

8    The Times with either no access or delayed (rather than prompt) access to Metro's public

9    records.

10                   **d.   The Times's Interest Is Not Adequately Represented by**

11                        **Existing Parties.**

12           The Court must consider "three factors when assessing whether a present party will

13   adequately represent the interests of an applicant for intervention: (1) whether the interest of

14   a present party is such that it will undoubtedly make all of a proposed intervenor's arguments;

15   (2) whether the present party is capable and willing to make such arguments; and (3) whether

16   a proposed intervenor would offer any necessary elements to the proceeding that other parties

17   would neglect." *W. Watersheds Project*, 2021 U.S. Dist. LEXIS 140664, at *13 (citing

18   *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003)). Moreover, "the requirement of

19   inadequacy of representation is satisfied if the applicant shows that representation of its

20   interests 'may be' inadequate and that the burden of making this showing is minimal." *Id.*

21   (quoting *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983)).

22           Here, The Times easily makes this minimal showing, as ***both*** present parties to this

23   matter have attempted to interfere with Metro's mandate to promptly respond to The Times's

24   NPRA request. The interests of the present parties are adverse to The Times's; thus it is

25   practically a guarantee that neither party is capable or willing to make The Times's

26   arguments, let alone "undoubtedly" so.

27

28

MCLETCHIE LAW
ATTORNEYS AT LAW
(702)728-5300 (T) ( (702)425-8220 (F)
WWW.NVLITIGATION.COM

8

1

2

### 2. This Court Should Permit The Times to Intervene Under Fed. R. Civ. P. 24(b)(2).

Permissive intervention under Fed. R. Civ. P. 24(b)(2) normally requires "(1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action." *Tonkawa Tribe of Indians of Okla. v. Sci. Games Corp.*, No. 20-cv-01637, 2021 U.S. Dist. LEXIS 162479, at *8 (D. Nev. Aug. 27, 2021) (quoting *Beckman Indus. Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992)). However, as described below, the first and third elements are not required elements in interventions involving access to documents.

Because permissive intervention is discretionary, courts should also consider whether "intervention will unduly delay the main action or will unfairly prejudice the parties." *Tonkawa Tribe*, 2021 U.S. Dist. LEXIS 162479, at *8 (quoting *Venegas v. Skaggs*, 867 F.2d 527, 530 (9th Cir. 1989)). The Ninth Circuit has long recognized that "Rule 24(b) permits limited intervention for the purpose of challenging a protective order." *Beckman*, 966 F.2d at 473; *see also San Jose Mercury News v. U.S. Dist. Ct.—N. Dist. (San Jose)*, 187 F.3d 1096, 1100 (9th Cir. 1999) ("Nonparties seeking access to a judicial record in a civil case may do so by seeking permissive intervention under Rule 24(b)(2).").

### a. No Independent Ground for Jurisdiction Is Needed.

Permissive intervention ordinarily requires independent jurisdictional grounds. *Beckman*, 966 F.2d at 473. However, an independent jurisdictional basis is not required when the intervenor does not seek to litigate a claim on the merits. *Id.* A "third party seeking permissive intervention purely to unseal a court record does not need to demonstrate independent jurisdiction or a common question of law or fact." *Cosgrove v. Nat'l Fire & Marine Ins. Co.*, 770 F. App'x 793, 795 (9th Cir. 2019).

Here, The Times does not seek to litigate any of the parties' claims on their merits. Rather, The Times is asking the Court "only to exercise that power which it already has, *i.e.*, the power to modify the protective order." *Beckman*, 966 F.2d at 473. Indeed, here, The Times does not even seek to unseal a court document, but rather to prevent the instant

proceeding from abrogating The Times's rights under the NPRA and the First Amendment to obtain and report on public records in Metro's possession. Thus, this factor weighs in favor of permissive intervention.

### b. The Times's Motion to Intervene Is Timely.

Here, the Parties have stipulated to waive any arguments that a motion to intervene and accompanying responses to Defendant's Motion for Protective Order and Plaintiff's Motion for Injunction are untimely if they are submitted to Court by December 29, 2021. (ECF No. 170, p. 2:9-12.) Thus, by the unambiguous agreement of the parties, the instant Motion is timely. Moreover, The Times moved quickly after being "served" with the Protective Order Motion and the Injunction Motion to obtain counsel in Nevada and acting to protect its rights, as within a week of contacting Defendant's counsel, the parties entered into a stipulation to permit the instant motion to intervene. (*See* McLetchie Decl., ¶ 6 (noting call to Defendant's counsel on December 15, 2021); ECF No. 170 (stipulation entered December 21, 2021).)

### c. No Common Question of Law and Fact Between The Times's Claim and the Main Action Is Necessary; and Even If It Were, There Is a Common Question of Law.

A "third party seeking permissive intervention purely to unseal a court record does not need to demonstrate . . . a common question of law or fact." *Cosgrove*, 770 F. App'x at 795. As this case raises a similar issue of access to documents, no common question of law must be demonstrated. To the extent that such a requirement would be imposed, there is a common question of law—the extent to which the attorney-client privilege protects some of the documents now in Metro's possession and subject to release to The Times.

### d. Intervention Will Not Unduly Delay or Prejudice the Adjudication of the Original Parties' Rights.

This matter appears to be nearing its conclusion, as the parties are currently litigating objections to the Report and Recommendation issued by Magistrate Judge Daniel J. Albregts on October 6, 2021. (*See generally* ECF Nos. 143-51, 157, 159-60, 162-66.)

1  Whether The Times may obtain public records from Metro regarding this matter is wholly

2  collateral to the issues awaiting adjudication in this matter, and, as noted above, it is the

3  parties who have made The Times's access to records under the NPRA an issue in this

4  proceeding. Thus, there will be no prejudice from permitting The Times to intervene to

5  protect its rights under the NPRA.

6      Furthermore, courts have recognized that there is a "strong presumption" in favor

7  of the public's right of access to judicial records. *Cosgrove*, 770 F. App'x at 795 (citing *San*

8  *Jose Mercury News*, 187 F.3d at 1102). Here, The Times is seeking to vindicate the public's

9  right of access to public records in Metro's possession, and there should likewise a

10  presumption that it has the right to intervene in matters, such as this one, in which the parties

11  are seeking relief that would interfere with its rights under the NPRA and the First

12  Amendment. Indeed, The Times has already suffered harm due to the parties' meddling:

13  Metro was poised to produce at least the documents it created to The Times by December 1,

14  2021, but have agreed to delay access for Defendant.[3]

15      Any delay of resolution of this matter would be caused not by The Times's

16  intervention, but by the parties' attempts to use this matter as a trojan horse to keep public

17  records private. Nothing in the NPRA obligated (or permitted) Metro to give litigants a

18  "heads up" that records pertinent to their lawsuit were public records subject to disclosure

19  under the NPRA. Likewise, nothing in the NPRA permits Metro to give those litigants veto

20  power over a public agency's statutory duty to produce public records—or for litigants to act

21  to delay a requester's access. It is especially inappropriate that the parties are endeavoring to

22  use this action to delay access because the records at issue are not even the product of this

23  litigation, as detailed in the oppositions. Thus, even if the Times's intervention delayed

24  resolution of this matter, it would not prejudice the parties.

25

26  [3] As noted above and as further detailed in the oppositions, among other reasons, all the relief
the parties seek as to the NPRA must be denied because this litigation does not appear to be
27  the source of any of the records in Metro's possession. However, the parties' arguments
against access at are their nadir with regard to documents created by Metro, such as the
28  officer's reports it intended to produce on December 1, 2021.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## V.   **CONCLUSION**

For the foregoing reasons, The Times respectfully moves to intervene in this matter and seeks leave to file the attached Proposed Opposition to Defendant's Motion for a Protective Order (ECF No. 161) and the attached Proposed Opposition to Plaintiff's Motion for a Preliminary Injunction (ECF No. 167).

DATED this the 29th day of December, 2021.

*/s/ Margaret A. McLetchie*
MARGARET A MCLETCHIE, Nevada Bar No. 10931
**MCLETCHIE LAW**
602 South Tenth Street
Las Vegas, NV 89101
Telephone: (702) 728-5300;
Fax: (702) 425-8220
Email: maggie@nvlitigation.com
*Counsel for Proposed Intervenor The New York Times Company*

| INDEX OF EXHIBITS | |
|---|---|
| **Ex.** | **Description** |
| n/a | Declaration of Margaret A. McLetchie |
| A | Proposed Response in Opposition to Defendant's Motion for Protective Order |
| B | Proposed Response in Opposition to Plaintiff's Motion for Preliminary Injunction |

1

## <u>CERTIFICATE OF SERVICE</u>

2

Pursuant to FRCP 5 and LR-5.1, I certify that I am an employee of MCLETCHIE

3 LAW, and that on this 29th day of December, 2021, I caused the foregoing document entitled

4 THE NEW YORK TIMES COMPANY'S MOTION TO INTERVENE to be filed and served

5 via the Court's CM/ECF electronic filing system upon all registered parties and their counsel.

6 I further certify that I served the following parties and/or their counsel by email as follows:

7

8
Jacqueline V. Nichols, Esq.
jnichols@maclaw.com

9
Counsel for Las Vegas Metropolitan Police Department

10

11

12
/s/ Leo S. Wolpert

13
An employee of MCLETCHIE LAW

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28