# EXHIBIT A

## (Proposed Response in Opposition to Defendant's Motion for Protective Order)

# EXHIBIT A

1  MARGARET A. MCLETCHIE, Nevada Bar No. 10931
   LEO S. WOLPERT, Nevada Bar No. 12658
2  **MCLETCHIE LAW**
3  602 South Tenth St.
   Las Vegas, NV 89101
4  Telephone: (702) 728-5300
   Fax: (702) 425-8220
5  Email: maggie@nvlitigation.com
6  *Counsel for Proposed Intervenor, The New York Times Company*

7              **UNITED STATES DISTRICT COURT**

8                 **DISTRICT OF NEVADA**

9
   KATHRYN MAYORGA, an individual,          **Case. No.: 2:19-cv-00168-JAD-DJA**
10
11              Plaintiff,                   **RESPONSE IN OPPOSITION TO**
                                             **MOTION FOR A PROTECTIVE**
                                             **ORDER (ECF NO. 161)**
12         vs.

13  CRISTIANO RONALDO,

14              Defendant.

15

16         The New York Times Company ("The Times") hereby submits this Response in
17
   Opposition to Defendant's Motion for Protective Order (ECF No. 161). This Response is
18
   supported by the attached memorandum of points and authorities, together with any oral
19
   argument the Court may require in this matter.
20
           DATED this the 29th day of December, 2021.
21

22                         */s/ Margaret A. McLetchie*
23                         Margaret A. McLetchie, Nevada Bar No. 10931
                           Leo S. Wolpert, Nevada Bar No. 12658
24                         **MCLETCHIE LAW**
                           602 South Tenth St.
25                         Las Vegas, NV 89101
                           Telephone: (702) 728-5300; Fax: (702) 425-8220
26                         Email: maggie@nvlitigation.com
27                         *Counsel for Proposed Intervenor, The New York Times Company*

28

                                    1

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Defendant Ronaldo's Motion for a Protective Order (the "Protective Order Motion," ECF No. 161) does not ask this Court to protect records exchanged between the parties within the ambit of this litigation. Instead, Defendant asks this Court to take the unprecedented step of stopping the Las Vegas Metropolitan Police Department ("Metro") from providing public records to The New York Times Company ("The Times") pursuant to Nevada's Public Records Act (the "NPRA," Nev. Rev. Stat. § 239.001 *et seq.*).

Metro, which is not a party to this action, is statutorily obligated to provide The Times with the records it seeks, and this Court should decline Defendant Ronaldo's invitation to make determinations regarding access under the NPRA. The Times and Metro are not parties to this action,[1] and this Court is not the appropriate forum for NPRA disputes. Indeed, this Court does not have jurisdiction to resolve issues under the NPRA and cannot resolve the issues at hand where the governmental entity, Metro, is not even a party to this action. Further, as detailed below, the NPRA is an important state law that reflects vital public policy goals—promoting transparency and democracy. *See* Nev. Rev. Stat. § 239.001(1). If federal courts were to allow private litigants to use litigation or threat of litigation to control when and how state agencies maintain and produce public records, they would undermine the ability of state agencies to comply with their obligations under state public records laws. Worse yet, they would endanger the important rights of requesters to promptly access public records as the NPRA provides. Indeed, here, The Times's right to access to records, such as the records Metro created in the process of its investigations, has already been hindered and delayed. Under the NPRA, this is tantamount to denial.

---

[1] While The Times has sought permission to intervene to oppose the Protective Order Motion and Plaintiff's related Motion for a Preliminary Injunction (ECF No. 168), it disputes that this forum is the appropriate forum to address matters pertaining to a public governmental entity's release of documents under the NPRA and does not consent to this Court exercising jurisdiction over the NPRA issues.

Even if this Court could interfere with the government's obligations and a requester's rights under the NPRA, the specific relief Defendant Ronaldo seeks—a protective order—is inappropriate. Protective orders restrict dissemination of material exchanged between the parties in litigation, not material that may be related to (or produced in) this litigation but that was obtained outside the litigation process and held by a non-party governmental entity.

In any case, Defendant Ronaldo in no way meets the NPRA's stringent test for thwarting access to public records. Far more than "good cause" needs to be established to overcome the presumption in favor of access enshrined in the NPRA. Thus, even if this Court were inclined to exercise jurisdiction over The Times's public records request, it would have to order access to the records. Even if some of the records in Metro's investigative file were once protected, any records provided to or obtained by Metro have long lost any privilege or protected status.

In short, Defendant Ronaldo asked the Court to misuse a procedural mechanism designed to govern discovery materials exchanged in litigation to restrain a non-party governmental entity from providing public records that did not originate in the litigation to a non-party requester simply because the documents may relate to the litigation. Defendant Ronaldo does not, and cannot, cite any authority authorizing the relief he seeks. Indeed, in his Limited Reply to Plaintiff's Response to Defendant's Motion for a Protective Order (the "Reply," ECF No. 169), he concedes that his Motion lacks merit. Nonetheless, he asks the Court, at the eleventh hour, to accept a different set of facts about Metro's position. Metro has not appeared or filed materials in this case. In fact, it told The Times that it had no intention to.

Defendant's new factual representations illustrate exactly what is wrong with his conduct. In response to Defendant Ronaldo's Protective Order Motion—a motion that he now concedes never had merit because he admits this Court does not have jurisdiction to grant him relief and now tries to argue is also moot (*see* ECF No. 169, p. 1:24, 2:12-14)—Metro has "shifted positions" (*id.*, p. 1:21-22), likely in response to the pressure of one

influential person, and refuses to produce public records that it has conceded The Times is entitled to. (*See* Ex. 5.) In doing so, Defendant Ronaldo, who has no standing to challenge any NPRA issues between The Times and Metro, has inverted the burden that the NPRA squarely places on Metro to overcome the presumption in favor of access to and justify nondisclosure of public records. According to Defendant Ronaldo, his conduct has led to a reality where The Times is being asked to justify disclosure of documents that Metro has *already concluded* that The Times is entitled to under the NPRA. Defendant should not be rewarded for such conduct.

This Court should reject Defendant's recount of Metro's change in position and his effort to have the Protective Order denied as moot. It should instead deny the Protective Order Motion in its entirety.

## II. STATEMENT OF FACTS

Over three months ago, on or about September 28, 2021, The Times sent Metro a public records request pursuant to the NPRA requesting all records relating to "the LVMPD's two investigations into an alleged victim's claim that she was raped by Cristiano Ronaldo dos Santos Aveiro (commonly goes by Cristiano Ronaldo, DOB 2/5/1985) on or around 6/13/2009." (Ex. 1.)

On or about November 18, 2021, counsel for Metro informed The Times and counsel for the parties in this matter that "in accordance with the Nevada's Public Records Act [Metro] is required to provide the New York Times with responsive public records of the investigation concerning Ms. Mayorga and Mr. Ronaldo" and that Metro would "be providing the New York Times with various reports, including the crime report and property reports; voluntary statements, Declaration of Warrant/Summons, and communications to and from [Metro] regarding the investigation." (Ex. A to ECF No. 161, p. 1; Ex. 5.) Metro agreed to produce these documents to The Times on or about December 1, 2021. (*Id.*)

In light of Defendant Ronaldo's Protective Order Motion, counsel for Metro informed The Times on December 2, 2021, that it would neither oppose nor join the Protective Order Motion. Instead, it would await the Court's ruling on the Motion before

1  producing documents to The Times "**to ensure LVMPD does not violate any Court**
2  **orders**." (Ex. 6.) (emphasis added).

3        Defendant Ronaldo reports he obtained a copy of Metro's investigative file on April
4  22, 2021. (ECF No. 161, p. 5:27-28.) Purportedly "[i]n accordance with the SCA and the
5  Magistrate's Order for Confidentiality and Protective Order [ECF 101], Defendant
6  designated LVMPD's investigative file as confidential and produced the entirety of the file
7  in his Second Supplemental Disclosure of Documents to Plaintiff on April 30, 2021." (ECF
8  No. 161, p. 6:15-18.)

9        Thus, while the parties have a copy of the investigative file, The Times does not.
10  Further, no log or index of the records contained in the file has been provided to The Times.
11  However, according to Defendant Ronaldo, the allegedly "stolen privileged and confidential"
12  records he seeks to keep from The Times were: (1) stolen by "cyber hack from Defendant's
13  former attorney" (ECF No. 161, p. 5:22), then (2) obtained by Plaintiff (*id.*, p. 5:24-25), and
14  then (3) provided to Metro (*id.*, p. 5:25-27). Plaintiff Mayorga contends that she is not the
15  source for all the records and points out that the investigative file also contains items such as
16  her counsel's correspondence with Metro. (*See* ECF No. 167, pp. 1:25-2:7; *see also id.*, pp.
17  18:27-19:19.)

18    **III.**    <u>**ARGUMENT**</u>

19      **A.**    <u>**This Court Lacks Jurisdiction to Interfere with The Times's NPRA**</u>
20         <u>**Requests, and a Protective Order Cannot Issue.**</u>

21        The Court lacks the jurisdiction to decide whether state law requires that records be
22  made public by Metro, which is not a party to this proceeding. Protective orders manage the
23  exchange of discovery between the parties and cannot issue to stop a non-party agency from
24  producing public documents that it is required to produce under state law. Instead, as
25  Defendant Ronaldo himself suggests, the proper remedy available to him is enforcement of
26  the settlement agreement between the parties. (ECF No. 161, p. 4:10-25; *see also id.*, p. 9:17-
27  18 (explaining that the parties "further agreed that should a dispute arise regarding the SCA
28  that it would be subject to binding confidential arbitration").)

### 1.  This Court Cannot Resolve the NPRA Issues.

#### a.  Neither The Times Nor Metro Are Parties to This Proceeding.

Adjudication of matters regarding access to public records are litigated between two parties—a requester and the governmental entity.[2] Here, while Defendant Ronaldo sent a courtesy copy of the Protective Order Motion to The Times's Legal Department and an outside attorney for Metro (*see* ECF No. 161, p. 12), he has not formally served either The Times or Metro with the Motion or endeavored to formally bring either Metro or The Times into this case. Indeed, counsel for Ronaldo indicated he would oppose any effort by The Times to participate in this action. (*See* Declaration of Margaret McLetchie in Support of The Times's Motion to Intervene, ¶ 7.)

The Times has sought limited intervention to oppose the Preliminary Injunction Motion and Protective Order Motion but does not consent to this Court adjudicating the NPRA issues at hand. While Metro's counsel (improperly) notified counsel for Defendant Ronaldo that it was intending to release the records—which are again, records that Metro has recognized are subject to disclosure under the NPRA—and while Metro appears to have (improperly) agreed with counsel for Defendant Ronaldo "not to disclose LVMPD's investigative file pending the Court's Determination" of the Protective Order Motion (ECF No. 161, p. 2:22-23), Metro has not appeared in this action.

This NPRA issue thus cannot be resolved because necessary and indispensable parties have not been joined to this action. *See* Fed. R. Civ. P. 19(a); *Am. Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015, 1022 (9th Cir. 2002).

#### b.  This Court Is Not the Appropriate Forum.

Even if Metro and The Times were properly brought into this case, it would still not be the appropriate forum for any NPRA disputes. *See, e.g.*, Nev. Rev. Stat. § 239.011(1)

---

[2] *See* Nev. Rev. Stat. § 239.011(1) ("If a request for inspection, copying or copies of a public book or record open to inspection and copying is denied or unreasonably delayed or if a person who requests a copy of a public book or record believes that the fee charged by the governmental entity for providing the copy of the public book or record is excessive or improper, the requester may apply to the district court in the county in which the book or record is located for an order . . . .").

McLETCHIE LAW
ATTORNEYS AT LAW
(702) 728-5300 (T)  (702) 425-8220 (F)
WWW.NVLITIGATION.COM

(mandating that access issues under the NPRA be litigated in the state district courts in "the county in which the book or record is located"). Consistent with this reality, federal courts have consistently recognized that they do not have jurisdiction over independent disputes under state public records acts. *See, e.g.*, *Berna v. DOJ Bureau of Firearms*, No. 14-cv-01972, 2015 U.S. Dist. LEXIS 63680, at *6 (E.D. Cal. May 14, 2015) ("[A]ssuming Plaintiff brought this action under the California Public Records Act against the California Department of Justice and its employees, Plaintiff has failed to establish this Court's jurisdiction of this action."). *Compare Hanson v. City of Spokane*, No. 19-cv-31, 2019 U.S. Dist. LEXIS 68792, at *2, *6  (E.D. Wash. Apr. 23, 2019) (denying a motion to reconsider dismissal of "Washington Public Records Act claims for lack of jurisdiction because a federal court does not have jurisdiction to consider only state law claims), *with Powell v. Koenig*, No. 18-cv-04443, 2018 U.S. Dist. LEXIS 181087, at *5 (N.D. Cal. Oct. 22, 2018) (finding that, where federal and state claims "derive from a common nucleus of operative facts," the court could "exercise supplemental jurisdiction over the accompanying state law claims").[3]

### c.  Defendant Ronaldo Has No Standing to Contest Access Under the NPRA.

Even more fundamentally, the only parties that have rights and standing to pursue actions under the NPRA are requesters like The Times, which is not a party to this action. Nev. Rev. Stat. § 239.011(1) provides that "[i]f a request for inspection, copying or copies of a public book or record open to inspection and copying is denied or unreasonably delayed . . . , the requester may apply to the district court in the county in which the book or record is located for an order." While Nev. Rev. Stat. § 239.011(4) provides that "[t]he rights and remedies recognized by this section are in addition to any other rights or remedies that

---

[3] As Defendant Ronaldo recognizes, private "binding confidential mandatory arbitration"—not this Court—is the appropriate forum for any disputes between the parties under the confidentiality agreement Defendant Ronaldo claims imbues the records Plaintiff allegedly provided to Metro—presumably including a breach of the confidentiality and nondisclosure provisions. (ECF No. 161, p. 4:10-25.)

MCLETCHIE LAW

ATTORNEYS AT LAW
(702)728-5300 (T)  (702)425-8220 (F)
WWW.NVLITIGATION.COM

1  may exist in law or in equity," the only rights recognized anywhere in the NPRA are the

2  rights of requesters under the NPRA.

3      While, as Defendant notes (ECF No. 161, p. 9:7-15), there is case law that addresses

4  privacy interests associated with public records, that case law does not stand for the

5  proposition that third parties can assert privacy interests in NPRA disputes. Instead, at most

6  the NPRA vests the government with the ability to assert privacy interests on behalf of third

7  parties.[4]

8      **2.**  **A Protective Order Cannot Restrict a Non-Party Governmental Entity's**

9            **Obligations Under the NPRA.**

10      This Court cannot issue a Fed. R. Civ. P. 26(c) protective order to restrict The

11  Times's access to public records held by Metro. Even if it could, good cause would not be

12  the appropriate standard. Instead, as set forth below, because Defendant seeks to limit access

13  to public records, the opponent of disclosure would need to establish that the records are

14  confidential by a preponderance of the evidence—and overcome the presumption in favor of

15  access.

16      *a.*  *Legal Standard.*

17      Even if this Court had jurisdiction and were the appropriate forum—and even if

18  The Times and Metro were parties to this action—secrecy is not warranted. Under the NPRA,

19  the standard for overcoming The Times's right to access public records would be far higher

20  than the "good cause" standard Defendant Ronaldo invokes. Instead, Metro (or Defendant

21  Ronaldo, even if he could stand in the place of Metro, which he cannot) would have to

22  establish that each and every record The Times seeks—in their entirety—are confidential by

23

MCLETCHIE LAW
ATTORNEYS AT LAW
(702) 728-5300 (T) / (702) 425-8220 (F)
WWW.NVLITIGATION.COM

---

24  [4] *See Clark Cty. Sch. Dist. v. Las Vegas Rev.-J.* ("*CCSD*"), 134 Nev. 700, 708-09 (2018)

25  (explaining that "[t]he *Cameranesi* test is a two-part balancing test. It first requires ***the
    government*** to establish a 'personal privacy interest stake to ensure that disclosure implicates
    a personal privacy interest that is nontrivial or . . . more than [] de minimis'") (emphasis

26  added). Moreover, even if the government meets this threshold burden, which must be

27  established by a preponderance of the evidence, *id.* at 709-10, the requester still has the
    opportunity to establish that "that the public interest sought to be advanced is a significant

28  one and that the information [sought] is likely to advance that interest," *id.* at 708 (citation
    and internal quotation marks omitted).

law by a preponderance of the evidence under the confidentiality standards set out by the NPRA. Nev. Rev. Stat. § 239.0113.

To make this showing, the proponent of secrecy has a heavy burden in overcoming the presumption in favor of access. A court considering access issues under the NPRA must keep in mind the NPRA's expressly stated "Legislative findings and declaration," which reflect that the NPRA's purpose is "to foster democratic principles by providing members of the public with prompt access to inspect, copy or receive a copy of public books and records to the extent permitted by law."[5] This Court would need to construe the NPRA's provisions "liberally to carry out this important purpose." [6] Conversely, the Court would need to apply any claims of privilege, work product, or privacy—which would again need to be established by a preponderance of the evidence—narrowly.[7] This burden and framework applies even when privacy interests are invoked.[8]

Consistent with the above, the Nevada Supreme Court has summarized the framework as follows:

> A framework has been established for testing claims of confidentiality under the backdrop of the Nevada Public Records Act's (NPRA's) declaration that its provisions must be construed liberally to facilitate access to public records, Nev. Rev. Stat. § 239.001(2), and that any restrictions on access must be construed narrowly. Nev. Rev. Stat. § 239.001(3). First, a court begins with the presumption that all government-generated records are open to disclosure. A state entity therefore bears the burden of overcoming this presumption by proving, by a preponderance of the evidence, that the requested records are confidential. Nev. Rev. Stat. § 239.0113. Next, in the absence of a statutory provision that explicitly declares a record to be confidential, any limitations on disclosure must be based upon a broad balancing of the interests involved, and the state entity bears the burden to prove that its interest in nondisclosure clearly outweighs the public's interest in access. Finally, caselaw stresses that the state entity cannot meet this burden with a non-particularized showing or by expressing hypothetical concerns.

---

[5] Nev. Rev. Stat. § 239.0001(1).

[6] *Id.* § 239.0001(2).

[7] *Id.* § 239.0001(3).

[8] *See CCSD*, 134 Nev. at 708-09 (noting that "[t]his test coheres with both NRS 239.0113" and *Gibbons*).

1    *Reno Newspapers, Inc. v. Gibbons*, 127 Nev. 873, 875 (2011). It is important to note that,

2    while Defendant Ronaldo has made only generalized arguments as to the investigative file,

3    this burden must be established with regard to each and every record that the governmental

4    entity seeks to protect. Moreover, the NPRA specifically provides that, where a record

5    contains some confidential information, the document must be produced in redacted form.

6    Nev. Rev. Stat. § 239.010(3).[9] Thus, to overcome access, Defendant would need to establish

7    not only that each and every record merits protection, but also that each and every record

8    merits protection in its entirety.

9            Here, despite the fact that Defendant Ronaldo mistakenly endeavors to invoke the

10   protection of the NPRA, his Motion falls far short of making the evidentiary showing

11   necessary to meet the burden the NPRA requires to overcome the presumption in favor of

12   broad public access to public documents. As detailed below, Defendant fails to support the

13   claims that all the records sought by The Times are protected—or that Metro's investigative

14   file (or any other responsive public record) contains the "stolen privileged and confidential"

15   materials. Indeed, Metro's investigative file does not appear to merit any protection—and

16   the records that Metro indicated it would produce certainly do not.[10] Defendant Ronaldo fails

17   to explain how each of the records merit nondisclosure, let alone the extreme remedy of

18   wholesale withholding rather than redaction.[11] Indeed, Defendant Ronaldo fails to make any

19   specific, record-by-record analysis at all.

---

20
21   [9] This section provides that "[a] governmental entity that has legal custody or control of a
     public book or record shall not deny a request made pursuant to subsection 1 to inspect or
22   copy or receive a copy of a public book or record on the basis that the requested public book
     or record contains information that is confidential if the governmental entity can redact,
23   delete, conceal or separate, including, without limitation, electronically, the confidential
     information from the information included in the public book or record that is not otherwise
24   confidential."
25   [10] As further discussed below, The Times does not have access to the investigative file or a
     privilege log and thus is having to address its rights to access in the dark.
26   [11] As discussed below, in the context of the NPRA, governmental entities are obligated to
27   produce public records containing confidential information "if the governmental entity can
     redact, delete, conceal or separate . . . the confidential information from the information
28   included in the public book or record that is not otherwise confidential." Nev. Rev. Stat.
     § 239.010(3).

### b. *Protective Orders Cannot Issue to Control Access to Records Held and Obtained Separately from the Court's Discovery Process.*

While protective orders can be issued to restrict access to records obtained in discovery, a party cannot use the process to control non-parties who obtained the records through other means. *Cf. Seattle Times Co.* v. *Rhinehart,* 467 U.S. 20, 34 (1984) (upholding a protective order governing information acquired during discovery in part because "the party may disseminate the identical information . . . as long as the information is gained through means independent of the court's processes"). Here, Metro is not a party, and it obtained the information "through means independent of the court's processes." A protective order (or other relief) cannot issue.

In *Seattle Times*, the Supreme Court upheld a state court decision that a protective order that prevented a newspaper **party** from disseminating any information obtained in discovery **in the case**, finding that the protective order did not violate the newspaper's First Amendment rights. 467 U.S. at 34. There, the Court specifically found that "where, as in this case, a protective order is entered on a showing of good cause as required by Rule 26(c), is limited to the context of pretrial civil discovery, and does not restrict the dissemination of the information if gained from other sources, it does not offend the First Amendment," *id*. at 37. As described by the Court:

> The critical question that this case presents is whether a litigant's freedom comprehends the right to disseminate information that he has obtained pursuant to a court order that both granted him access to that information and placed restraints on the way in which the information might be used. In addressing that question it is necessary to consider whether the "practice in question [furthers] an important or substantial governmental interest unrelated to the suppression of expression" and whether "the limitation of First Amendment freedoms [is] no greater than is necessary or essential to the protection of the particular governmental interest involved." *Procunier* v. *Martinez*, 416 U.S. 396, 413 (1974); see *Brown* v. *Glines*, 444 U.S. 348, 354-355 (1980); *Buckley* v. *Valeo*, 424 U.S. 1, 25 (1976).

*Id.* at 32. Here, Defendant Ronaldo is not endeavoring to stop a litigant from disseminating records or information the litigant "gained in discovery;" he is endeavoring to stop a news

organization from using information obtained independent of discovery, an improper effort that *Seattle Times* expressly rejects under the First Amendment.

### c. *The Protective Order Cannot Overcome Intermediate Scrutiny.*

Defendant Ronaldo's aim is clear: he wishes to stop The Times from publishing information based on public records. His Motion thus necessarily fails for the additional reason that he fails to establish that the records at issue can be protected—let alone that the protective order he seeks passes heightened scrutiny. As noted by Justice Brennan, the Court "recognize[d] that pretrial protective orders, designed to limit the dissemination of information gained through the civil discovery process, are subject to scrutiny under the First Amendment." *Id.* at 37.[12] Thus, even if a protective order could issue, far more than the "good cause" standard cited by Defendant would need to be met. Instead, "it is necessary to consider whether the 'practice in question [furthers] an important or substantial governmental interest unrelated to the suppression of expression' and whether 'the limitation of First Amendment freedoms [is] no greater than is necessary or essential to the protection of the particular governmental interest involved.'" *Id.* (citations omitted). Here, the Court does not have a direct interest in controlling dissemination of public records that are not discovery material governed by the Court's orders.[13] While the governmental interest is minimal, the First Amendment harms faced by The Times by the interference with its ability to access public records—including public records created by Metro—and report on those records are significant. Moreover, the relief requested would not even be viewpoint neutral, as Metro has already released the agency-created (and taxpayer-funded) records to one member of the public: Defendant Ronaldo.

Further, in addition to the First Amendment issues, there are other countervailing interests here: namely, the important rights of members of the public, including media such as The Times, to access public records.

---

[12] While *Seattle Times* concerned itself with the right to publish discovery, the protective order sought by Defendant Ronaldo would have the same effect: blocking The Times from obtaining and publishing information.

[13] This is especially true with regard to the records created by Metro.

MCLETCHIE LAW
ATTORNEYS AT LAW
(702) 728-5300 (T) / (702) 425-8220 (F)
WWW.NVLITIGATION.COM

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MCLETCHIE LAW

ATTORNEYS AT LAW
(702)728-5300 (T) / (702)425-8220 (F)
WWW.NVLITIGATION.COM

### 3. Defendant's Remedy Is Enforcement of the SCA.

Defendant asserts that the records in Metro's investigative file are subject to confidentiality provisions in a private settlement agreement (the "SCA") (*Id*., p. 2:3-5).[14]

Thus, as he recognizes, Defendant Ronaldo's remedy is to pursue the motion he has in this matter with regard to case-terminating sanctions (ECF No. 161, p. 6:8-10) and to pursue a breach of contract claim under the SCA, which appears to be subject to private resolution rather than litigation in this case. (*Id.*, p. 4:10-12.)  Ronaldo's contractual rights do not give him any right to bar a public agency from meeting its obligations under a state statute.

### B.  Even If This Court Had Jurisdiction, Metro's Investigative File Does Not Merit Protection.

Even if the Court had jurisdiction to decide what is public under the NPRA, Defendant Ronaldo has failed to show that any of the documents can lawfully be withheld.

### 1. The Records at Issue.

The Times does not have access to the public records at issue, or even a privilege log explaining any detailed bases for nondisclosure or redaction. Notably, if Metro had challenged disclosure under the NPRA, The Times would be entitled to "basic information about the withheld records information about the withheld records" to avoid "relegating it to advocating from a nebulous position where it is powerless to contest a claim of confidentiality." *Gibbons*, 127 Nev. at 882 (citing *Vaughn v. Rosen*, 484 F.2d 820, 823 (D.C. Cir. 1973)). Had The Times been forced to commence an NPRA lawsuit against Metro, The Times would generally be "entitled to a log unless, for example, the state entity withholding the records demonstrates that the requesting party has sufficient information meaningfully contest the claim of confidentiality without a log." *Id.* at 882-83. Here, by contrast, The Times is forced to defend its statutory right of access with no more information than the parties are willing to divulge in their briefings.

---

[14] The SCA has been sealed. According to footnote 1 of ECF 161, "[a] copy of the SCA was previously filed under seal as Exhibit A to Defendant's Motion to Dismiss (ECF No. 30)."

Based on what The Times has been able to glean, Metro's investigative file appears to include: (a) records Ronaldo claims were stolen by a hacker and provided to plaintiff, who then allegedly submitted them to Metro (the "Submitted Documents");[15] (b) those that were created by Metro itself as part of its investigation (the "Police Documents"); and (c) miscellaneous records such as correspondence from Plaintiff's counsel to Metro.

**2. The Dissemination of the Records Undermines Any Confidentiality Claim.**

As noted by Plaintiff (ECF No. 167, pp. 6:14 - 7:2), this Court, in largely rejecting Defendant's efforts to seal these proceedings, already concluded that broad secrecy is not warranted with regard to the public records Defendant now seeks to limit access to:

> Due to the disclosure of documents obtained in the Football Leaks hack, the cat is already out of the bag about Mayorga's allegations, the fact that the parties mediated and reached a settlement agreement and the broad terms of that agreement. What's more, that cat has been out of the bag for years and it appears that a motion to seal the record in this case is Ronaldo's first true effort to stem the flow of information. So, I am not satisfied Ronaldo's interest in holding Mayorga to her agreement is enough to justify sealing the entire record in this case.

(ECF No. 23, p. 6:12-19).[16] Indeed, even with regard to records such as the SCA and Defendant Ronaldo's allegedly privileged materials, any interest in protection has long since diminished. First, as the Court has recognized, many of the records appear to have been published. Second, the attenuated chain of custody Defendant Ronaldo alleges—that hackers stole his records, then Plaintiff obtained the records and provided them to Metro—reveals broad dissemination: not only have some of the records themselves been published, but they also have already been received by multiple parties and reviewed by Metro. Further, Defendant has since produced the records to Plaintiff in this case, [17]

---

[15] Plaintiff contends that only these documents are confidential and seeks injunctive relief to prevent their disclosure. (*See generally* ECF No. 168.)

[16] While the Court found that "there are enough facts to justify sealing the agreement itself, its exhibits, an associated side agreement and direct quotes from any of those documents" (ECF No. 23, p. 7:1-2), it appears to have done so because they were directly covered by the Settlement and Confidentiality Agreement (*id.*, p. 7:2-12).

[17] Notably, while Metro appears to have relied on this designation as part of the reason to delay production of the records (*see* Ex C to ECF No. 161), the records that Defendant

MCLETCHIE LAW
ATTORNEYS AT LAW
(702) 728-5300 (T) / (702) 425-8220 (F)
WWW.NVLITIGATION.COM

As this Court did when it rejected Defendant's efforts to seal the filings in this matter *en masse*, courts have routinely recognized that publication and dissemination of even private or privileged records and information diminishes any claim that the records merit protection. This is so because "the interests in privacy fade [] when the information involved already appears on the public record." *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 494-95 (1975); *see also Las Vegas Rev.-J. v. Eighth Jud. Dist. Ct. of Nev.*, 134 Nev. 40, 45 (2018) ("The prior publication of the redacted autopsy reports diminished the [parties'] privacy interests beyond the point of after-the-fact injunctive repair.") (citations omitted).

Thus, just as this Court recognized in the context of court filings and proceedings, there is a presumption in favor of a requester's access to public records. Just as Defendant failed to justify sealing the court records in their entirety, Defendant also fails to establish that the broad relief he now seeks is warranted as to the public records in Metro's possession.

### 3. Defendant Ronaldo Has Not Established Attorney-Client or Work Product Protection.

Defendant Ronaldo depends primarily on claims of privilege and work product. He argues that "good cause exists to prohibit the disclosure of LVMPD's investigative file because it contains stolen documents and communications labeled attorney client privilege and work product, which Plaintiff improperly obtained from an alleged cyber hacker from whom her counsel specifically sought privileged attorney-client communications and work product" and that Plaintiff then provided those records to Metro. (ECF No. 161, p. 1:21-26.) Again, such conclusory arguments fail to satisfy the opponent of disclosure's evidentiary burden. Further—notwithstanding the Magistrate Judge's decision to impose case terminating sanctions on Plaintiff, which is currently pending review—Defendant's privilege claims fail both because it is impossible for the *entirety* of Metro's file to be privileged and because, to the extent that it once contained privileged materials, these records are no longer privileged. Instead, they have been widely disseminated, and Defendant Ronaldo has plainly

Ronaldo designated originated with Metro; public records cannot become confidential when a governmental entity produces them to a party who then self-designates them as such.

15

waived attorney-client and work product privileges by, *inter alia*, producing them to Plaintiff Mayorga in this matter.

### a.   The Entirety of the File Cannot Be Privileged.

It is apparent from the briefing that not all the records are Defendant's attorney-client communications or his attorneys' work product. For example, according to Plaintiff (who has access to the file because Defendant voluntarily produced it to her), the investigative file includes items such as Plaintiff's counsel's letter to Metro and recordings of Plaintiff. (ECF No. 167, pp. 1:25-2:7.) According to Defendant, the investigative file includes "approximately 400 additional documents, which Plaintiff has never disclosed in this litigation," not including the Football Leaks documents. (ECF No. 161, p. 6:1-3.) While Defendant claims that "more than 200 documents appear to be stolen attorney-communications and work product that Plaintiff's counsel obtained from Football Leaks and provided to LVMPD" (*id.*, p. 6:5-7), this, of course, does not account for all the records.

As detailed below, it does not appear that any of the records continue to warrant protection. However, even if *some* of the records Metro obtained still retain protection as attorney-client communications or work product and even if this Court had the ability to grant the relief Defendant Ronaldo seeks, the relief sought is far too broad in light of the fact that the file clearly does not exclusively contain privileged records. Indeed, not only does Defendant Ronaldo seek to protect his allegedly stolen and privileged records (or the parties' allegedly private information, discussed below), but he also seeks to enjoin the production of Metro-created records—records that cannot, by definition, be privileged or private. Defendant Ronaldo has not provided any authority to support the position that the Metro-created records can be protected. Metro has indicated it has "various reports, including the crime report and property reports; voluntary statements, Declaration of Warrant/Summons, and communications to and from LVMPD regarding the investigation."[18] (ECF No. 161, p.

---

[18] Indeed, while Metro improperly invited Defendant Ronaldo to take court action to thwart access—and Defendant Ronaldo has successfully delayed access—Metro was in fact required to produce those records to Times promptly. *See* Nev. Rev. Stat. § 239.001(1) ("The purpose of this chapter is to foster democratic principles by providing members of the public

3:13-15.) While Defendant Ronaldo has failed to establish that any of the records in Metro's investigative file merit protection (let alone can be protected by this Court), the Metro-created records cannot be protected under any analysis because they are not, by definition, attorney client privilege or work product materials belonging to Defendant.

### b. Defendant Has Waived Any Privilege Claims.

Even if Defendant Ronaldo did conclusively establish that some records in Metro's possession were once privileged or work product, they have long lost any confidential nature. This is so because, while this Court appears to have previously found, on February 4, 2020, that some of the documents at issue were privileged (*see* ECF No. 67), the documents no longer merit such protection since Defendant Ronaldo voluntarily produced the records to Plaintiff in this litigation after obtaining a copy from Metro on April 22, 2021.[19] The Ninth Circuit has recognized that the "attorney-client privilege is designed to protect confidentiality, so that any disclosure outside the magic circle is inconsistent with the privilege" and that work-product protection is "provided against 'adversaries,' so only disclosing material in a way inconsistent with keeping it from an adversary waives work product protection." *United States v. Sanmina Corp. & Subsidiaries*, 968 F.3d 1107, 1120 (9th Cir. 2020). Here, Defendant Ronaldo's voluntary disclosure of the documents at issue to Plaintiff Mayorga constitutes waiver of both privileges. *See id*. at 1121 ("Under this

with **prompt access** to inspect, copy or receive a copy of public books and records to the extent permitted by law.") (emphasis added); Nev. Rev. Stat. § 239.0107(1)(a), (c) (requiring governmental entities to produce records within five (5) business days or, if unable to do so, provide notice of a date certain for production, which must be "the earliest date and time after which the governmental entity reasonably believes the public book or record will be available").

[19] Indeed, even though Plaintiff indicated she did not previously have access to all the records and was not the source Metro obtained them from, Defendant chose to subsequently share them with Plaintiff. In addition, *United States v. Comprehensive Drug Testing, Inc*., 621 F.3d 1162, 1172 (9th Cir. 2010), cited by Defendant Ronaldo, does not support his position. There, the United States was a party and the Ninth Circuit held that the district court simply return illegally seized data pursuant to Fed. R. Civ. P. 41(g). The case does not address whether records such as those at issue in this case continue to merit attorney-client privilege or work product protection in any fashion.

MCLETCHIE LAW
ATTORNEYS AT LAW
(702)728-5300 (T) / (702)425-8220 (F)
WWW.NVLITIGATION.COM

standard, the voluntary disclosure of attorney work product to an adversary or a conduit to an adversary waives work-product protection for that material.").

### 4. Defendant Ronaldo Has Not Established that Privacy Interests Merit Protection.

Defendant Ronaldo also claims that his—and Plaintiff's—privacy concerns merit protection.[20] As with his claims of privilege, the wide dissemination of the materials at issue undermines any privacy claim. In any case, his conclusory and generalized arguments do not satisfy the burden imposed by the NPRA. *See* Nev. Rev. Stat. § 239.0113 (requiring that the governmental entity establish confidentiality by a preponderance of the evidence); *Clark Cty. Sch. Dist. v. Las Vegas Rev.-J.* ("*CCSD*"), 134 Nev. 700, 708-09 (2018). He argues only— and without support—that "[p]ublic disclosure of LVMPD's investigative file will certainly result in improper use of the documents in order to promote a public scandal and circulate libelous statements, just as it has thus far." (ECF No. 161, p. 10:21-23.) Such conclusory and bombastic claims are clearly insufficient. To the extent that any information contained in the records is subject to protection, at best, the records would have to be redacted—not withheld in their entirety. Nev. Rev. Stat. § 239.010(3).

Even if Defendant Ronaldo could identify a nontrivial privacy, it would be overcome by the public's significant interest in access. *See CCSD*, 134 Nev. at 708, 429 P.3d at 320. Defendant's effort to diminish the role of the press ignores not only the presumption in favor of access, but also the fact that the public has a strong interest in evaluating the performance of law enforcement and ensuring that sexual assault allegations against high-profile persons, such as Defendant Ronaldo, are handled properly. The Nevada Supreme Court has expressly recognized this interest. In *CCSD*, while it allowed for potential redactions to protect limited privacy interests, the Court generally allowed access to sexual harassment investigation materials, explaining that, in addition to an interest in access to

---

[20] Plaintiff does not join in his arguments and has opposed the Protective Order Motion, instead arguing that a preliminary injunction might be appropriate while the Court resolves claims of privilege. (*See generally* ECF No. 168.) As set forth in The Times's opposition to that motion, a preliminary injunction also cannot issue.

MCLETCHIE LAW
ATTORNEYS AT LAW
(702)728-5300 (T) / (702)425-8220 (F)
WWW.NVLITIGATION.COM

1   records concerning sexual harassment allegations against a school board trustee, there was

2   an interest in access to records concerning "how CCSD handled the discrimination

3   complaints and the investigation." *Id.* at 706. Thus, the Court rejected arguments that would

4   "allow CCSD . . . to prevent disclosure of the investigative materials . . . and would allow

5   CCSD to shield itself from the Review-Journal's inquiry into how CCSD conducted that

6   investigation." *Id.* Likewise here, Metro is subject to public scrutiny concerning how it

7   conducted its investigation.

8       Similarly, while Defendant relies on *Father M. v. Various Tort Claimants (In re*

9   *Roman Catholic Archbishop)*, 661 F.3d 417 (9th Cir. 2011), he ignores that the case

10  addresses Fed. R. Civ. P. 26(c)(1) protective orders and that more than "good cause" is

11  required to keep public records secret. Further, while he relies on the case for the proposition

12  that there can be an interest in confidentiality, Defendant Ronaldo ignores the fact that the

13  case also recognizes the countervailing public interest in disclosure. *Id.* at 428 (noting that

14  "the public does, however, have a weighty interest in public safety and in knowing who

15  might sexually abuse children); *see New York v. Ferber*, 458 U.S. 747, 756-63 (1982)

16  (recognizing the government's compelling interest in "safe-guarding the physical and

17  psychological well-being" of children, such as by preventing sexual abuse).

18      With regard to the parties' SCA, as Defendant Ronaldo concedes, whether the

19  records merit protection remains an open issue in this litigation. (*See* ECF No. 161, p. 6:13-

20  14 (noting that Plaintiff's Objection to Report and Recommendation imposing case

21  terminating sanctions remains pending).) Defendant relies on *Kalinauskas v. Wong*, 151

22  F.R.D. 363, 365-67 (D. Nev. 1993), to argue that the SCA should be protected, but that case

23  addressed only whether a deponent party to a settlement agreement could be asked about the

24  terms of her settlement and has no bearing on whether a settlement agreement that a

25  governmental entity obtains and reviews during an investigation can be obtained pursuant to

26  the NPRA. *Wong* specifically noted that "such contracts, of course, cannot bind parties who

27  do not sign them and may have little effect on the capacities of a non-party to discover or

28

introduce at trial the settlement communications covered by the contract." *Id.* at 367.[21] Thus, if Plaintiff wrongly shared documents subject to the SCA, Defendant's remedies lie in enforcement against her, not interference with an NPRA request. While Defendant represents the secrecy of confidentiality agreements as sacrosanct, he ignores recent concerns raised that "[c]onfidentiality agreements and secret settlements kept hidden information about many repeat sexual harassers and abusers." Seth Katsuya Endo, *Contracting for Confidential Discovery*, 53 U.C. Davis L. Rev. 1249, 1272-73 (2020).

Finally, it is worth noting that Metro has already considered these privacy interests and found that they are largely outweighed by the public's interest in disclosure. Metro has taken care to protect the privacy interests it believes are at stake by redacting "all personally identifying information of any victims" from its planned production.[22] That is consistent with how privacy works under the NPRA: the government agency is empowered to protect privacy; it is not protected by a private litigant in a civil suit in federal court.

### 5. Metro's File Cannot Be Considered Secret Because It Has Been Produced to Defendant Ronaldo.

Further secrecy regarding the investigative file and Metro's ongoing delays in producing public records are not warranted because it appears to have produced the entire investigative file—including the records it created—to Defendant Ronaldo. Metro's self-created public records are not the property of Defendant Ronaldo, and Metro's refusal to provide The Times with records while producing them to Defendant Ronaldo is a violation of the NPRA.

Defendant Ronaldo improperly and problematically contends that he has ownership over public records—a position that Metro appears to be emboldening. In addition to having obtained the file and seeking, in the alternative, return or destruction of the file, Defendant contends that in the event of the publication of what he claims as confidential information,

---

[21] (quoting The Hon. Wayne D. Brazil, *Protecting the Confidentiality of Settlement Negotiations*, 39 Hastings L. Rev. 955, 1026 (1988)).

[22] The Times does not waive any arguments regarding whether these redactions are necessary or appropriate under the NPRA.

McLETCHIE LAW
ATTORNEYS AT LAW
(702) 728-5300 (T) / (702) 425-8220 (F)
WWW.NVLITIGATION.COM

1    he retains the right to respond. In other words, Defendant Ronaldo claims that he alone has

2    the right to access Metro's public records, decide who can obtain them, and decide when and

3    how information is released. The NPRA, which reflects that governmental records belong to

4    and are presumptively available to the public,[23] does not allow for such private control of

5    public records let alone discrimination by a governmental entity as to whom the entity

6    releases public records.

7              For all these reasons, even if Defendant Ronaldo could stand in the shoes of Metro

8    and even if this Court could adjudicate questions entity from of access under the NPRA and

9    control a non-party governmental entity's performance of its obligations under the NPRA,

10   the Court would have to find that the investigative file is subject to disclosure under the

11   NPRA and would have to order Metro to produce the file without further delay.

12             **C.      This Court Must Affirmatively Deny the Motion.**

13             On December 2, 2021, counsel for Metro informed The Times that it would neither

14   oppose nor join the Protective Order Motion but would await the Court's ruling on the

15   Motion "to determine whether it can produce the requested records" (*See* Ex. 6.) At the last

16   minute, Defendant Ronaldo, allegedly speaking on behalf of Metro—who has not appeared

17   or filed materials in this matter and is not (and cannot be) subject to Defendant's requested

18   protective order—claims that Metro changed course and will not produce any records unless

19   a court affirmatively so orders. (*See generally* ECF No. 169.) Setting aside that this is not

20   what Metro represented in writing to The Times and the fact that Metro has not

21   communicated this change in position to The Times (the only other party to the NPRA

22   request besides Metro), Defendant Ronaldo's conduct flies in the face of the NPRA.

23             As Metro has recognized, the records at issue are public records that Metro was

24   required to provide The Times under the NPRA. What Metro was not obligated to do was

25   give third parties a "heads up" so they could delay or prevent access. If Defendant Ronaldo's

26   representations are true, Metro "switched up its plans" in response to private conversations

27
     _____

28   [23] *See* Nev. Rev. Stat. § 239.010(1) ("[U]nless otherwise declared by law to be confidential,
     all public books and public records of a governmental entity must be open at all times during
     office hours to inspection by any person.").

MCLETCHIE LAW

ATTORNEYS AT LAW
(702)728-5300 (T) / (702)425-8220 (F)
WWW.NVLITIGATION.COM

with Defendant and is now requiring that The Times get a court order to compel production of records that Metro has recognized The Times is entitled to.

The NPRA starts from the presumption that all members of the public have the right to prompt access public records. Nev. Rev. Stat. § 239.001(1). According to Defendant Ronaldo, what he has done here is as follows: (1) bring a motion for a protective order that he *knew* was baseless because this Court does not have jurisdiction over the matter; and (2) cause Metro to "switch up its plans" and refuse to produce records that it has conceded that The Times is entitled to unless The Times obtains a court order, a complete inversion of the burdens under the NPRA. Now that a powerful actor believes that he has convinced a government agency to shirk its duties under the NPRA, Defendant Ronaldo attempts to walk back from his baseless motion with no consequences.

Rather than deem Defendant Ronaldo's Motion moot, this Court should affirmatively deny the Motion and make clear that its protective order does not preclude production from Metro to The Times.

## IV.   **CONCLUSION**

Non-party Metro has determined that it was required to produce public records concerning its investigation of Plaintiff's allegations against Defendant. For the foregoing reasons, the Court should decline to interfere with Metro fulfilling its important obligations and duties to the public under the NPRA—and with The Times's ability to access records. Defendant's Motion for a Protective Order and all requested relief must be denied.

DATED this the 29th day of December, 2021.

/s/ Margaret A. McLetchie
MARGARET A. MCLETCHIE, Nevada Bar No. 10931
LEO S. WOLPERT, Nevada Bar No. 12658
**MCLETCHIE LAW**
602 South Tenth St.
Las Vegas, NV 89101
Telephone: (702) 728-5300; Fax: (702) 425-8220
Email: maggie@nvlitigation.com
*Counsel for Proposed Intervenor,*
*The New York Times Company*

22

| INDEX OF EXHIBITS | |
|---|---|
| **Ex.** | **Description** |
| n/a | Declaration of Jessica Hui |
| 1 | September 20, 2021, NPRA Request |
| 2 | September 27, 2021, Email from Jess Hui to Metro PIO |
| 3 | October 19, 2021, NPRA Request |
| 4 | November 8, 2021, Email from Jess Hui to Metro PIO |
| 5 | November 18, 2021, Email from Metro Counsel to New York Times |
| 6 | December 2, 2021, Email from Metro Counsel to New York Times |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MCLETCHIE LAW
ATTORNEYS AT LAW
(702)728-5300 (T) / (702)425-8220 (F)
WWW.NVLITIGATION.COM

## DECLARATION OF JESSICA HUI

I, Jessica Hui, declare, pursuant to Nev. Rev. Stat. § 53.330, as follows:

1.      I have personal knowledge of the facts set forth below, and, if called as a witness, could testify to them. Where I do not have personal knowledge of certain facts, I make them under information and belief.

2.      I am an employee of the legal department of The New York Times Company ("The Times").

3.      The Times is endeavoring to intervene in *Mayorga v. Ronaldo*, Case. No. 19-cv-00168, for the purpose of protecting its right to access records under Nevada's Public Records Act (the "NPRA"), Nev. Rev. Stat. § 239.001 *et seq.*

4.      I am providing this declaration to provide information to authenticate documents attached as exhibits in support of The Times's Response in Opposition to Defendant's Motion for Protective Order.

5.      Pursuant to its rights under the NPRA, The Times has requested public records regarding the Las Vegas Metropolitan Police Department's ("Metro") investigations into Plaintiff Kathryn Mayorga's claims that Defendant Cristiano Ronaldo raped her.

6.      **Exhibit 1** is a true and correct copy of the NPRA request that Kevin Draper, a reporter for The Times, submitted to Metro via its online portal on September 20, 2021.

7.      On September 22, 2021, Metro denied the request reflected in Exhibit 1.

8.      On September 27, 2021, I emailed Metro's public information officer on behalf of The Times to address its denial. Attached as **Exhibit 2** is a true and correct copy of that email.

9.      On September 27, 2021, I spoke with Metro's public records office on behalf of The Times. I explained that The Times believed that the records were public records. The officer indicated she would speak to her supervisor and call me back tomorrow morning.

1

10.     On September 28, 2021, I spoke to the same public records officer, who explained that if The Times resubmitted the same request without the victim's name, Metro could provide The Times with records.

11.     Mr. Draper resubmitted the request without the victim's name on October 19, 2021. **Exhibit 3** is a true and correct copy of that request.

12.     On October 21, 2021, Metro denied the request reflected in Exhibit 3.

13.     On November 8, 2021, I emailed Metro to challenge the basis of its denial. **Exhibit 4** is a true and correct copy of the email.

14.     On November 18, 2021, Metro agreed to release records "on or about December 1, 2021." A true and correct copy of the correspondence reflecting this agreement is attached as **Exhibit 5**.

15.     On December 1, 2021, after Defendant Ronaldo filed his Motion for a Protective Order, I emailed counsel for Metro to ask whether Metro would be opposing Defendant's Motion.

16.     On December 2, 2021, counsel for Metro informed me that "LVMPD will not be opposing or joining the motion. However, due to the protective order currently in place and the pending motion, to ensure LVMPD does not violate any Court orders, LVMPD will waiting [sic] on the ruling from the Court to determine whether it can produce the requested records." A true and correct copy of the correspondence reflecting this communication is attached as **Exhibit 6**.

17.     I certify and declare under the penalty of perjury under the law of the State of Nevada that the foregoing is true and correct, and this declaration was executed in New York, New York, this 29th day of December, 2021.


_/s/ Jessica Hui_
Jessica Hui

2

# EXHIBIT 1
## (September 20, 2021, NPRA Request)

# EXHIBIT 1

# Public Record Request Details

Kevin  Draper

Profile

My Companies

Public Records Request

## Public Record Request - Kevin Draper

Event #

–

### Date Range of Incident

Start Date *
6/13/2009

End Date *
6/15/2009

First Name of Involved Party
Kathryn

Last Name of Involved Party
Mayorga

### Incident Location

Street Address 1
4381 W Flamingo Rd

Street Address 2
–

Street Address 3
–

City
Las Vegas

State
Nevada

ZIP
–

Country
USA

Enter your request for documents *

Hello,

I am writing to request all records of the LVMPD's two investigations into a claim by Kathryn Mayorga that she was raped by Cristiano Ronaldo dos Santos Aveiro (commonly goes by Cristiano Ronaldo, DOB: 2/5/1985) on or around 6/13/2009.

The LVMPD first investigated the claims at the time, and re-opened the investigation in 2018, before publicly announcing that the investigation was closed in 2019. I am requesting all responsive records from both the 2009 and 2018 investigations.

If you have any questions, I can be reached at 510-300-7440 or kevin.draper@nytimes.com.

Thank you
Kevin

Record Creation Date
9/20/2021

Service Request #
NPR2021-0016094

Status
Complete

Purge Date
10/6/2021

Cancellation Date (if applicable)
–

Media Request
○ No  ● Yes

# EXHIBIT 2

## (September 27, 2021, Email from Jess Hui to Metro PIO)

# EXHIBIT 2

**From:** Jess Hui <jess.hui@nytimes.com>
**Sent:** Monday, September 27, 2021 6:14 AM
**To:** PIO <PIO@LVMPD.COM>
**Cc:** Kevin Draper <kevin.draper@nytimes.com>
**Subject:** Public Records Request - Mayorga/Ronaldo Investigation

**CAUTION:** This email originated from an **External Source**. Please **use caution** before opening attachments, clicking links, or responding to this email. **Do not sign-in with your LVMPD account credentials.**

Dear Public Information Officer,

I write on behalf of Mr. Draper and The New York Times Company (collectively, "The Times") regarding your recent response to The Times's request for "all records of the LVMPD's two investigations into a claim by Kathryn Mayorga that she was raped by Cristiano Ronaldo dos Santos Aveiro (commonly goes by Cristiano Ronaldo, DOB: 2/5/1985) on or around 6/13/2009." In your response (attached), you indicated that all responsive documents are entirely exempt from production on the grounds that they constitute an unwarranted invasion of personal privacy.

We were surprised to hear that you considered the documents within the scope of the exception. Miss Mayorga herself has purposefully gone public with her allegations. She publicly announced that she accepted a $375,000 payment in exchange for her silence, held a news conference, explained that she wanted the agreement voided, went to LVMPD to pursue a criminal case against Ronaldo, and even filed a civil lawsuit. Her legal filings include discussions of her interviews with LVMPD and conclusions from the investigation -- information that LVMPD now claims that it can't reveal because it would infringe on Miss Mayorga's privacy. *See* NRS 200.3774 (discussing waiver). Given that LVMPD and the District Attorney's Office have also publicly commented on the investigation, it strikes us as implausible that all the records of the LVMPD's now-closed investigations into Miss Mayorga's claims can be withheld in full.

We look forward to hearing from you. Thank you for your attention to this matter.

Jess

--

Jess Hui

Legal Department

The New York Times Company

620 Eighth Avenue

New York, New York 10018

212-556-4244

# EXHIBIT 3
## (October 19, 2021, NPRA Request)

# EXHIBIT 3

# Public Record Request Details

Kevin  Draper

Profile

My Companies

Public Records Request

## Public Record Request - Kevin Draper

Event #

--

### Date Range of Incident

Start Date *

6/13/2009

End Date *

6/15/2009

First Name of Involved Party

Cristiano

Last Name of Involved Party

Ronaldo

### Incident Location

Street Address 1

--

Street Address 2

--

Street Address 3

--

City

State

Nevada

ZIP

--

Country

USA

Enter your request for documents *

Hello,

I am writing to request all records into the LVMPD's two investigations into an alleged victim's claim that she was raped by Cristiano Ronaldo dos Santos Aveiro (commonly goes by Cristiano Ronaldo, DOB: 2/5/1985) on or around 6/13/2009."

I previously submitted a request (NPR2021-0016094) on 9/20/21 that was denied, but I spoke to a public records officer on the telephone who said that writing the request as I have above should give me responsive documents.

I would also note that, while I am not naming the alleged victim here, I believe that she has a diminished privacy interest. She has publicly announced that she accepted a $375,000 payment in exchange for her silence, held a news conference, explained that she wanted the agreement voided, went to LVMPD to pursue a criminal case against Ronaldo, and even filed a civil lawsuit. Her legal filings include discussions of her interviews with LVMPD and conclusions from the investigation.

I can be reached at kevin.draper@nytimes.com or 510-300-7440 to discuss this request at any time.

Thank you
Kevin Draper

Record Creation Date

10/19/2021

Service Request #

NPR2021-0016432

Status

Complete

Purge Date

11/4/2021

Cancellation Date (if applicable)

--

Media Request

○ No  ● Yes

# EXHIBIT 4

## (November 8, 2021, Email from Jess Hui to Metro PIO)

# EXHIBIT 4

**From:** Jess Hui <jess.hui@nytimes.com>
**Sent:** Monday, November 8, 2021 8:47 AM
**To:** PIO <PIO@LVMPD.COM>
**Cc:** Kevin Draper <kevin.draper@nytimes.com>
**Subject:** Public Records Request No. NPR2021-0016432

**CAUTION:** This email originated from an **External Source**. Please **use caution** before opening attachments, clicking links, or responding to this email. **Do not sign-in with your LVMPD account credentials.**

Dear Public Information Officer,

I write on behalf of Kevin Draper and The New York Times Company (collectively, "The Times") regarding your recent response to The Times's request for "all records into the LVMPD's two investigations into an alleged victim's claim that she was raped by Cristiano Ronaldo dos Santos Aveiro (commonly goes by Cristiano Ronaldo, DOB: 2/5/1985) on or around 6/13/2009." In your response (attached), you indicate that all responsive documents are entirely exempt from production on the grounds that (1) the accused has a privacy right not to be singled out as a criminal suspect, and (2) they reveal the identity of a victim of sexual offense. Neither explanation justifies withholding the requested materials. The Times asks that the requested documents be released.

*First*, release of the requested records would not violate Cristiano Ronaldo's privacy rights by signalling him out as a criminal suspect. The allegations against Ronaldo are public. In fact, the Clark County District Attorney's Office itself *publicly tweeted* about the allegations against Ronaldo. In any case, *Donrey v. Bradshaw* -- the case upon which LVMPD stakes its case -- cuts *in favor* of disclosure. In *Donrey*, the Nevada Supreme Court concluded that the investigative report should be released because there was, among other things, no pending or anticipated proceeding and no possibility of denying anyone a fair trial. 106 Nev. 630, 636 (1990). The same is true here.

*Second*, LVMPD states that "NRS 200.3773 prohibits a public entity from revealing the identity of sexual assault victims." But disclosure of the requested records would not *reveal* the identity of a victim, as the identity of the victim *is already publicly known.* The victim in this case has purposefully gone public with her allegations:
She *publicly announced* that she accepted a $375,000 payment in exchange for her silence, held a news conference, explained that she wanted the agreement voided, went to LVMPD to pursue a criminal case against Ronaldo, and even filed a civil lawsuit. Even if LVMPD holds tight to its formalistic reasoning that it cannot *itself* name the victim, there's a simple solution: redacting the victim's name. NRS 239.010(3) specifically provides that "[a] governmental

entity . . . shall not deny a request . . . on the basis that the requested . . . record contains information that is confidential if the governmental entity can redact, delete, conceal or separate . . . the confidential information from the information included in the public book that is not otherwise confidential."

The "framework for testing claims of confidentiality" must be applied "under the backdrop of the NPRA's declaration that its provisions 'must be construed liberally' to facilitate access to public records, NRS 239.001(2), and that any restrictions on access 'must be construed narrowly.' NRS 239.001(3)." *Reno Newspapers, Inc. v. Gibbons*, 127 Nev. 873, 880 (2011). We respectfully ask that the LVMPD reconsider its denial of our public records request. We look forward to hearing from you. Thank you for your attention to this matter.

Jess

--

Jess Hui

Legal Department

The New York Times Company

620 Eighth Avenue

New York, New York 10018

Phone: 917-868-1978

# EXHIBIT 5

# (November 18, 2021, Email from Metro Counsel to New York Times)

# EXHIBIT 5



## MARQUIS AURBACH COFFING

DIRECT LINE: (702) 207-6091
DIRECT FAX: (702) 382-5816
EMAIL: JNICHOLS@MACLAW.COM

ALBERT G. MARQUIS
PHILLIP S. AURBACH
AVECE M. HIGBEE
TERRY A. COFFING
SCOTT A. MARQUIS
JACK CHEN MIN JUAN
CRAIG R. ANDERSON
TERRY A. MOORE
GERALDINE TOMICH
NICHOLAS D. CROSBY
TYE S. HANSEEN
DAVID G. ALLEMAN
CODY S. MOUNTEER
CHAD F. CLEMENT
CHRISTIAN T. BALDUCCI
BRIAN R. HARDY
JORDAN B. PEEL

JARED M. MOSER
KATHLEEN A. WILDE
JACKIE V. NICHOLS
JAMES A. BECKSTROM
COLLIN M. JAYNE
ALEXANDER K. CALAWAY
SUSAN E. GILLESPIE
TABETHA A. MARTINEZ
ROBERT P. LOFTUS, JR.
HAYDEN R. D. SMITH
DOMINIQUE BOSA-
EDWARDS
NICHOLAS J. KLEIN
HARRY L. ARNOLD

JOHN M. SACCO [RET.]
LANCE C. EARL
WILLIAM P. WRIGHT
JENNIFER L. MICHELI
OF COUNSEL

November 18, 2021

**Via Email: jess_hui@nytimes.com**

Jess Hui
Legal Department
The New York Times Company
620 Eighth Avenue
New York, New York 10018

Re:    Kathryn Mayorga v. Cristiano Ronaldo
       Federal Court Case Number: 2:19-cv-00168-JAD-DJA

       LVMPD Event No.: NPR2021-0016432
       Our File No. 14687-228

Dear Ms. Hui:

This office has been retained to represent the Las Vegas Metropolitan Police Department in relation to the above-referenced matter. In reviewing the entirety of LVMPD's investigative files concerning Event No. 090613-1815, which involves allegations against Cristiano Ronaldo, LVMPD will be providing you with various reports, including the crime report and property reports; voluntary statements, Declaration of Warrant/Summons, and communications to and from LVMPD regarding the investigation. Any attorney-client records subject to privileges or related records will not be provided. Pursuant to Nevada law, however, LVMPD will redact all personal identifying information of any victims. See NRS 200.3771. LVMPD is currently reviewing, redacting, and preparing the records for disclosure. It is anticipated that these records will be provided you on or about December 1, 2021.

Jess Hui
November 18, 2021
Page 2

Please do not hesitate to reach out to my office if you have any questions or concerns.

Sincerely,

MARQUIS AURBACH COFFING

/s/ Jackie V. Nichols

Jackie V. Nichols, Esq.

JVN:kb

MAC:14687-228 4544385_1 11/18/2021 3:59 PM

# EXHIBIT 6

## (December 2, 2021, Email from Metro Counsel to New York Times)

# EXHIBIT 6



---------- Forwarded message ---------
From: **Jackie V. Nichols** <jnichols@maclaw.com>
Date: Thu, Dec 2, 2021 at 12:56 PM
Subject: RE: [External] Ronaldo adv. Mayorga - Motion for Protective Order [IWOV-iManage.FID1089275]
To: Jess Hui <jess.hui@nytimes.com>
Cc: Krista Busch <kbusch@maclaw.com>, 14687_228 _Las Vegas Metropolitan Police Department_Public Records _ General_ 4_ E_Mails _EMAIL_ 14687_228 <{F1089275}.iManage@amun.marquisaurbach.com>


Hi Jess,


LVMPD will not be opposing or joining the motion.  However, due to the protective order currently in place and the pending motion, to ensure LVMPD does not violate any Court orders, LVMPD will waiting on the ruling from the Court to determine whether it can produce the requested records.


Feel free to call me if you have any questions.


Thank you!





**Jacqueline V. Nichols, Esq.**

10001 Park Run Drive

Las Vegas, NV 89145

t | 702.207.6091

f | 702.382.5816

jnichols@maclaw.com

maclaw.com

 Please consider the environment before printing this e-mail!

DO NOT read, copy or disseminate this communication unless you are the intended addressee  This e-mail communication contains confidential and/or privileged information intended only for the addressee  If you have received this communication in error, please call us (collect) immediately at (702) 382-0711 and ask to speak to the sender of the communication  Also please e-mail the sender and notify the sender immediately that you have received the communication in error  Thank you  Marquis Aurbach Coffing - Attorneys at Law

**From:** Jess Hui <jess.hui@nytimes.com>
**Sent:** Wednesday, December 01, 2021 5:50 PM
**To:** Jackie V. Nichols <jnichols@maclaw.com>
**Subject:** Fwd: [External] Ronaldo adv. Mayorga - Motion for Protective Order

Dear Jackie,

I hope that you are having a lovely day. Will LVMPD be opposing this motion for protective order?

Jess





