# EXHIBIT B

## (Proposed Response in Opposition to Plaintiff's Motion for Preliminary Injunction)

EXHIBIT B

MARGARET A. MCLETCHIE, Nevada Bar No. 10931
LEO S. WOLPERT, Nevada Bar No. 12658
**MCLETCHIE LAW**
602 South Tenth St.
Las Vegas, NV 89101
Telephone: (702) 728-5300
Fax: (702) 425-8220
Email: maggie@nvlitigation.com
*Counsel for Proposed Intervenor The New York Times Company*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| KATHRYN MAYORGA, an individual, | **Case. No.:** 2:19-cv-00168-JAD-DJA |
| Plaintiff, | **RESPONSE IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION (ECF NO. 168)** |
| vs. | |
| CRISTIANO RONALDO, | |
| Defendant. | |

  The New York Times Company ("The Times") hereby submits this Response in Opposition to Plaintiff's Motion for a Preliminary Injunction (the "Preliminary Injunction Motion," ECF No. 168). This Response is supported by the attached memorandum of points and authorities, together with any oral argument the Court may require in this matter.

  DATED this the 29th day of December, 2021.

        */s/ Margaret A. McLetchie*
        Margaret A. McLetchie, Nevada Bar No. 10931
        Leo S. Wolpert, Nevada Bar No. 12658
        **MCLETCHIE LAW**
        602 South Tenth St.
        Las Vegas, NV 89101
        Telephone: (702) 728-5300; Fax: (702) 425-8220
        Email: maggie@nvlitigation.com
        *Counsel for Proposed Intervenor, The New York Times Company*

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION[1]

While The Times agrees with Plaintiff that a protective order cannot issue to restrict its rights under the NPRA, Plaintiff's Preliminary Injunction Motion fails just as Defendant's Motion for a Protective Order (the "Protective Order Motion," ECF No. 161) does, and for many of the same reasons. Additionally, Plaintiff completely neglected to perform the requisite analysis to obtain a preliminary injunction under Fed. R. Civ. P. 65 and cannot demonstrate that any of the applicable factors weigh in her favor. The Court must therefore deny Plaintiff's Preliminary Injunction Motion.

## II. STATEMENT OF FACTS AND PROCEDURAL HISTORY

The Times incorporates the Statement of Facts and Procedural History set forth in its Response in Opposition to the Protective Order Motion.

## III. ARGUMENT

### A. This Court Should Not Interfere with The Times's NPRA Requests, and the NPRA Mandates Release.

As more fully set forth in The Times's Opposition to the Protective Order Motion, this proceeding is not the forum for NPRA disputes, and the parties do not have standing to thwart access to public records. Both parties are asking this Court to take the entirely unprecedented steps of: (1) limiting a non-party's access to records under the NPRA in a federal proceeding, (2) determining NPRA access issues without the full participation of the requester and without any participation by the governmental entity responsible for producing the public records at issue; and (3) acting to protect documents that did not originate in and were not obtained through this action. This Court does not have jurisdiction to prohibit a non-party agency from releasing public records to a requester, a matter completely governed by state law. Requesting relief through a preliminary injunction motion rather than a protective order does not change that outcome.

---

[1] The Times incorporates by reference its Opposition to Defendant Ronaldo's Motion for a Protective Order.

2

Notably, Plaintiff relies heavily upon *Zyprexa Litig.*, 474 F. Supp. 2d 385 (E.D.N.Y. 2007), for the notion that "[t]he appropriate procedure to prevent disclosure of privileged or protected documents by non-party or party not subject to discovery appears to be an injunction." (ECF No. 168, pp. 3:27 - 4:1.) However, *Zyprexa* does not support the relief Plaintiff seeks. There, the records at issue were confidential documents produced in litigation pursuant to a protective order, sealed by the court, obtained illegally by certain conspirators, and sent to third parties. *Id.* at 422 (explaining that "[t]hese confidential documents were procured solely by use of the court's discovery process; there has been no suggestion that anyone was able to retrieve them from any other source before revelation by the three conspirators"). In contrast, here, neither the Protective Order Motion nor the Preliminary Injunction Motion satisfies a threshold requirement for any of the relief sought: that this court proceeding was the source of the records sought to be protected. Instead, Defendant argues that, separate and apart from this action, hackers stole privileged records from Defendant and, separate and apart from this Court's discovery or other processes, Plaintiff improperly obtained the documents and provided them to Metro. Neither Plaintiff nor Metro obtained the records "solely by use of the court's discovery process," as was the case in *Zyprexa*. Indeed, Defendant appears to have received the records directly from Metro. (*See* ECF No. 161, p. 5:27-28 ("Defendant obtained a copy of LMVPD's investigative file on April 22, 2021.").)

Thus, unlike the injunction at issue in *Zyprexa*, a preliminary injunction (or other relief) in this matter would not promote significant government interests, *e.g.*, protecting records obtained through discovery. *Zyprexa*, 474 F. Supp. 2d at 424 (noting that "[s]everal important governmental interests are served by [the *Zyprexa*] injunction"). The fact that Defendant subsequently produced the records it got from Metro in this litigation and designated them as confidential does not change the analysis—nor does the fact that Plaintiff's purportedly improper acquisition of privileged material (and forwarding of them to Metro) is an issue in the litigation. Just as a party cannot create privilege by sending non-privileged materials to counsel, a party cannot invoke this Court's jurisdiction over third

3

parties or claim that the Court has a protectible interest in controlling third parties' production or use of records just because they relate to the litigation.

In short, the Court's interest in controlling third parties' use of materials is necessarily limited to materials the third parties obtained solely because of the litigation. None of the public records in this case were obtained because of this litigation.

### B. A Preliminary Injunction Cannot Issue.

For the reasons set forth above, the Court should not entertain Plaintiff's Preliminary Injunction Motion. Under the applicable preliminary injunction analysis, the Motion must also be denied. While Plaintiff notes that equity is "characterized by a practical flexibility in shaping its remedies" (ECF No. 168, p. 2:20 (citing *Lemon v. Kurtzman*, 411 U.S. 192, 200 (1973))), enjoining Metro from producing (and enjoining The Times from obtaining) public records under the NPRA stretches equitable remedies beyond their breaking point. As set forth below, Plaintiff has not demonstrated that the factors this Court must consider in granting an injunctive weigh in her factor. This Court must deny her Motion.

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Nanal, Inc. v. SMK Int'l*, No. 19-cv-02211, 2021 U.S. Dist. LEXIS 245571, at *20 (D. Nev. Dec. 27, 2021) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)). To obtain a preliminary injunction, a plaintiff must establish four elements: "(1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tip in its favor, and (4) that the public interest favors an injunction." *Nanal, Inc.*, 2021 U.S. Dist. LEXIS 245571, at *20-21 (quoting *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, 758 F.3d 1069, 1071 (9th Cir. 2014), *as amended* (Mar. 11, 2014)).

The Court may also issue a preliminary injunction under the "serious questions" test, which requires the plaintiff to demonstrate "that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor, in addition to the other *Winter* elements." *Nanal, Inc.*, 2021 U.S. Dist. LEXIS 245571, at *21 (quoting *All.*

4

*for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011)). Under either standard, the plaintiff "must satisfy all four prongs [of the *Winter* test] in order to justify imposition of injunctive relief." *Dryden v. Nevada*, No. 16-cv-01227, 2020 U.S. Dist. LEXIS 23831, at *18 (D. Nev. Feb. 10, 2020) (finding that plaintiff failed to demonstrate likely irreparable harm and declining to consider other *Winter* factors in denying motion for preliminary injunction).

Plaintiff does not satisfy any of the four *Winter* factors and therefore is not entitled to injunctive relief.

### 1. Plaintiff Has Not Established a Likelihood of Success on the Merits.

Plaintiff does not attempt to address whether there is a likelihood of success on the merits or the narrower question of whether the Court is likely to determine that the public records comprising Metro's statutorily mandated response to The Times's NPRA request are privileged.

The fact that Plaintiff is asking only that a subset of document contained in Metro's investigative file—the "Football Leaks" documents—be protected does not help her case. This Court recognized that fact when it acknowledged that: "Due to the disclosure of documents obtained in the Football Leaks hack, the cat is already out of the bag." "[T]hat cat has been out of the bag for years and it appears that a motion to seal the record in this case [filed in June 2019] is Ronaldo's first true effort to stem the flow of information." (ECF No. 23, p. 6:12-7:2.) Thus, just as Defendant Ronaldo failed to overcome the presumption in favor of access to court filings[2] in his attempt to "justify sealing the entire record in this case" (*id.*), Plaintiff Mayorga cannot overcome the NPRA's similar presumption in favor of access to public records and cannot establish that the "Football Leaks" documents merit protection.

In fact, in her brief in opposition to Defendant's Motion for Protective Order, Plaintiff expressly contends that "the Football Leaks documents are *not privileged* due to the defendant's failure to comply with Rule 26(b)(5)(A), the defendant's voluntary disclosure of

---

[2] *See, e.g.*, Nev. Rev. Stat. § 239.0113 ("[T]he governmental entity has the burden of proving by a preponderance of the evidence that the public book or record, or a part thereof, is confidential.").

5

these documents and crime fraud exception." (ECF No. 168, p. 4:10-13 (citing ECF Nos. 152-55, 167) (emphasis added).) If, as Plaintiff contends, the documents at issue are not privileged, there is no need for injunctive relief.[3] Thus, this factor favors denial of injunctive relief.

### 2. Plaintiff Has Not Demonstrated that She Is Likely to Suffer Irreparable Harm Absent Injunctive Relief.

Plaintiff argues that the "release of the Football Leaks documents prior to the court's decision on privilege has the potential of causing irreparable harm to the **defendant** [because] the premature release of those documents would deny **defendant** the protection/confidentiality provided by the attorney-client and work product privileges." (ECF No. 168, p. 4:19-22 (emphasis added).) Tellingly, Plaintiff does not argue that *she* will face irreparable harm. That is insufficient under *Winter*, which requires movants to demonstrate that they—not a third party and certainly not the adverse party in the matter—will likely suffer irreparable harm in the absence of preliminary relief. Indeed, the Preliminary Injunction Motion is completely silent as to how Metro's disclosure of its investigative file to The Times would cause Plaintiff irreparable harm. This factor weighs against injunctive relief.

### 3. Plaintiff Has Not Demonstrated that the Balance of the Equities Favors Her Over Metro and The Times.

Plaintiff does not argue that the balance of equities favors her over Metro and The Times and thus cannot satisfy the *Winter* test as a matter of law. Regardless, the balance of the equities weighs in favor of The Times. It is disingenuous for Plaintiff, who apparently labored mightily to obtain the "Football Leaks" documents, disseminate the same to Metro, and conceal that they were potentially privileged when using them as the basis for the instant

---

[3] Thus, this matter is distinguishable from *Zyprexa* because all of the materials in that case were established to be the property of a party—trade secret pharmaceutical records. *See Zyprexa*, 474 F. Supp. 2d at 424-25 ("Disclosure of confidential proprietary material and trade secrets poses a significant risk of harm . . . The disclosure of its trade secrets can be considered tantamount to appropriation of the company's property.")

6

lawsuit (*see* ECF No. 143, p. 2:8-4:18) to now act as a "white knight" to protect Defendant's interest in nondisclosure. Because Plaintiff's arguably inequitable conduct caused much of the mess in this litigation, Plaintiff cannot now rely on equitable principles to abrogate the rights of third parties to access public records.

### 4. Plaintiff Has Not Demonstrated that the Public Interest Favors an Injunction.

Because Plaintiff does not argue that the public interest favors injunctive relief, she cannot satisfy the *Winter* test as a matter of law. In any case, the public interest favors The Times. Unlike in *Zyprexa*, where the records were just "documents produced in discovery, to which the right of public access has not attached" (*Zyprexa*, 474 F. Supp. 2d at 424), here, The Times has a presumptive right to the public records at issue under the NPRA.[4] While the *Zyprexa* court contended that the injunction would not trigger constitutional problems in part because the media was not a party,[5] here, the relief sought would violate The Times's First Amendment rights by restricting its right to gather and report on the news and delaying its access to records. This constitutes significant and irreparable harm to The Times. *See, e.g.*, *Globe Newspaper Co. v. Pokaski*, 868 F.2d 497, 507 (1st Cir. 1989) ("[E]ven a one- to two-day delay impermissibly burdens the First Amendment."); *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 126-27 (2d Cir. 2006) ("Our public access cases and those in other circuits emphasize the importance of immediate access where a right of access is found.") (citations omitted); *Grove Fresh Distribs., Inc. v. Everfresh Juice Co.*, 24 F.3d 893, 897 (7th Cir. 1994) (explaining that public access to documents in court's file "should be immediate and contemporaneous").

---

[4] *See* Nev. Rev. Stat. § 239.010(1) ("[U]nless otherwise declared by law to be confidential, all public books and public records of a governmental entity must be open at all times during office hours to inspection by ***any person*** and may be fully copied or an abstract or memorandum may be prepared from those public books and public records.") (emphasis added).

[5] *Zyprexa*, 474 F. Supp. 2d at 424 ("The enjoined persons here are private, non-media-connected individuals.").

Injunctive relief would raise additional First Amendment concerns. The Court would effectively be sanctioning Defendant Ronaldo's possession and use of the documents, which he received from Metro, while preventing The Times from obtaining them because it intends to use the documents for a different purpose. Importantly, Defendant Ronaldo claims he has the right to publish information in response to allegations and disclosures by Plaintiff. (*See* ECF No. 161, p. 5:10-15.) In essence, the Court is being asked to discriminate among speakers by finding that Defendant's use of the materials to attack Plaintiff is protected while The Times's use of the materials to inform the public is barred. That sort of viewpoint discrimination runs afoul of the First Amendment.

Finally, there is a strong public interest in avoiding a federal court from interfering with a local law enforcement agency's obligations under a state public records law.

For all these reasons, the public interest weighs heavily against a preliminary injunction.

### IV. CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's Motion for a Preliminary Injunction and all other requested relief.

DATED this the 29th day of December, 2021.

/s/ Margaret A. McLetchie
MARGARET A MCLETCHIE, Nevada Bar No. 10931
**MCLETCHIE SHELL LLC**
602 South Tenth St.
Las Vegas, NV 89101
Telephone: (702) 728-5300; Fax: (702) 425-8220
Email: maggie@nvlitigation.com
*Counsel for Proposed Intervenor,*
*The New York Times Company*

8