1  MARGARET A. MCLETCHIE, Nevada Bar No. 10931
   LEO S. WOLPERT, Nevada Bar No. 12658
2  **MCLETCHIE LAW**
   602 South Tenth St.
3  Las Vegas, NV 89101
   Telephone: (702) 728-5300
4  Fax: (702) 425-8220
5  Email: maggie@nvlitigation.com
   *Counsel for Proposed Intervenor The New York Times Company*
6

7              **UNITED STATES DISTRICT COURT**

8                   **DISTRICT OF NEVADA**

9
   KATHRYN MAYORGA, an individual,        **Case. No.:** 2:19-cv-00168-JAD-DJA
10
                Plaintiff,                 **RESPONSE TO METRO'S NOTICE**
11                                         **REGARDING CRIMINAL**
                                           **INVESTIGATIVE FILE (ECF NO.**
12         vs.                             **172)**

13 CRISTIANO RONALDO,

14             Defendant.

15

16
         The New York Times Company ("The Times") previously filed a motion to
17
   intervene (ECF No. 176), seeking leave to intervene in this matter to protect its rights to
18
   access public records. Consistent with that motion, The Times now hereby submits this
19
   proposed Response to Real Party in Interest Las Vegas Metropolitan Police Department's
20
   Notice Regarding Its Criminal Investigative File (ECF No. 172, the "Notice"). This Response
21
   is supported by the attached memorandum of points and authorities, together with any oral
22
   argument the Court may require in this matter.
23
         DATED this the 11th day of January, 2022.
24

25
         */s/ Margaret A. McLetchie*
26       Margaret A. McLetchie, Nevada Bar No. 10931
         Leo S. Wolpert, Nevada Bar No. 12658
27       **MCLETCHIE LAW**
         *Counsel for Proposed Intervenor, The New York Times Company*
28

                                   1

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Metro, despite the captioning of its notice, is not a real party in interest. It has no stake in the merits of this litigation, which involves tort claims stemming from the alleged sexual assault of Plaintiff by Defendant and related claims contesting the enforceability of the settlement agreement the parties previously reached. (*See* ECF No. 1.) Instead, Metro asks this Court to offer an advisory opinion on what is plainly a matter of state law—whether Metro can release documents under the Nevada Public Records Act ("NPRA," Nev. Rev. Stat. § 239.001 et seq.)—in a lawsuit that involves neither the agency holding the documents nor the news organization that requested them. The proper venue for Metro's legal concerns is state court. *See id.* § 239.011(1). In fact, Metro has commenced a state court action seeking the same thing it seeks here: an advisory opinion as to how it should handle the application of the NPRA to its investigative file.

Metro's criminal investigation into Defendant Ronaldo is related to, but separate from, this litigation. Likewise, Metro's investigative file, which contains presumptively public records that Metro was required to promptly produce in response to The Times's public records requests pursuant to the NPRA contains documents that are related to this matter. But they did not originate in this matter and their public or confidential status under the NPRA is not governed by this Court.

Here, rather than comply with its obligations under state law to promptly produce presumptively public records, such as the reports it creates, Metro has set a needless flurry of litigation into motion. First, Metro advised The Times and counsel for the parties that it would produce its investigative file regarding Plaintiff's allegations against Defendant "on or about December 1." (Ex. B to ECF No. 172.) This prompted the parties in this case to seek relief from this Court with regard to those public records. Those motions required The Times to seek leave to intervene so it could protect its rights to access public records. Then Metro filed a petition in state court seeking an order governing its production of public records. Finally, Metro, without following any of the procedural mechanisms to do so, filed its

2

"Notice" seeking guidance from this Court regarding the public records it is now long overdue in producing to The Times, by its own admission.

This Court should disregard, if not outright strike, Metro's Notice. Indeed, the Notice is a fugitive document, as it is not a filing permitted by LR 7-2 or by order of this Court. Metro is not a party to this matter, has not followed any of the procedural requirements to seek participation in this matter, and has no standing to solicit this Court's instructions regarding its duties under the NPRA. Metro has already petitioned Nevada's Eighth Judicial District for Judicial Confirmation with regard to the records at issue in this matter,[1] and the parallel litigation in state and federal court serves only to delay access to public records. This Court's proper role, as set forth in The Times's prior papers, is to make clear that its Protective Order does not govern Metro or its obligations under the NPRA.

## II.   **ARGUMENT**

### A.   **Metro's Notice Is a Fugitive Document and Should Be Stricken.**

As this Court has repeatedly noted, "[a] document not allowed by Local Rule 7-2, or otherwise permitted by order of this Court, is a fugitive document and must be stricken from the record." *Godwin v. Senior Garden Apartments*, No. 17-cv-02178, 2021 U.S. Dist. LEXIS 18543, at *2 (D. Nev. Feb. 1, 2021) (quoting *Reiger v. Nevens*, No. 12-cv-00218, 2014 U.S. Dist. LEXIS 15912, 2014 WL 537613, at *3 (D. Nev. Feb. 7, 2014)). Metro's Notice is not a motion, nor does it purport to be. Metro has also not moved for leave or otherwise attempted to obtain an order from this Court permitting it to file said Notice. Indeed, Metro is not a party, has not intervened, and has not demonstrated that it is a "real party in interest" under Fed. R. Civ. P. 17(a) in this matter. This Court should strike the Notice.

---

[1] *See* Petition for Judicial Confirmation, *In re Pub. Rec. Requests to Las Vegas Metro. Police Dep't.*, No. A-21-845702-P (Nev. Dist. Ct. filed Dec. 20, 2021) (attached hereto as **Exhibit 1**).

MCLETCHIE LAW

ATTORNEYS AT LAW
602 SOUTH TENTH ST.
LAS VEGAS, NV 89101
(702) 728-5300 (T) / (702) 425-8220 (F)
WWW.NVLITIGATION.COM

**B. Metro Is Neither a Party, Nor a Real Party in Interest.**

To protect its rights to access the records at issue, The Times moved to intervene under Fed. R. Civ. P. 24. (*See* ECF No. 176.) By contrast, Metro has not moved to intervene to protect its supposed interests[2] in not violating the Court's protective order in this matter (ECF No. 172, p. 7:22-23) and not committing criminal contempt (*id.*, p. 8:14-16) by releasing purportedly privileged or confidential information to The Times.

Although Metro claims that it is a "real party in interest," it fails to demonstrate why Fed. R. Civ. P. 17(a) applies. A real party in interest is a person who has the right to sue under substantive law. *U-Haul Int'l, Inc. v. Jartran, Inc.*, 793 F.2d 1034, 1038 (9th Cir. 1986). The purpose of Fed. R. Civ. P. 17(a)—a rule that governs party joinder—is to determine the appropriate plaintiff in an action in order "to protect the defendant against a subsequent action by the party actually entitled to recover, and to insure generally that the judgment will have its proper effect as res judicata." *Id.* at 1039; *see also Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 90 (2005). As noted, this case involves claims stemming from the alleged sexual assault of Plaintiff by Defendant (*see* ECF No. 1). It cannot reasonably be disputed that Metro is not the real party in interest in this underlying action, as it could not have brought any tort or contract claims against Ronaldo. Even if the Court were to look at only Ronaldo's Motion for a Protective Order and the issue of Metro's release of public records, the substantive law—the NPRA—does not provide Metro any substantive rights.[3]

---

[2] Metro's interests in nondisclosure are *de minimis*, as the NPRA immunizes governmental agencies from liability for disclosures made in good faith. Nev. Rev. Stat. § 239.012 ("A public officer or employee who acts in good faith in disclosing or refusing to disclose information and the employer of the public officer or employee are immune from liability for damages, either to the requester or to the person whom the information concerns.").

[3] Metro's reliance on *United States v. Loughner*, 807 F. Supp. 2d 828 (D. Ariz. 2011) (ECF No. 172, p. 7:6-23), is therefore misplaced, as *Loughner* is distinguishable in multiple ways. For one, *Loughner* specifically noted that "a district court presiding over a federal **criminal** case isn't bound by a state's public records law—especially when . . . the records at issue are **the product of a joint federal-state investigation**." *Loughner*, 807 F. Supp. 2d at 833. Here, the Court is exercising diversity jurisdiction over a civil matter, and the records at issue are entirely police documents that are part of a Metro investigation.

MCLETCHIE LAW
ATTORNEYS AT LAW
602 SOUTH TENTH ST.
LAS VEGAS, NV 89101
(702)728-5300 (T) / (702)425-8220 (F)
WWW.NVLITIGATION.COM

1    Because Metro fails to demonstrate that it has any rights that can be adjudicated by the Court

2    in this matter, it cannot be the real party in interest. Striking its Notice would not lead to

3    "forfeiture and injustice." *Goodman v. United States*, 298 F.3d 1048, 1053 (9th Cir. 2002).

4    The Court must disregard Metro's Notice.

5    **C.  This Court Lacks Jurisdiction Over NPRA Disputes.**

6          Although Metro seems to be seeking an advisory opinion from this Court as to how

7    it should handle its public records, that does not cure the jurisdictional issues raised in The

8    Times's other filings. *See Davis v. Yageo Corp.*, 481 F.3d 661, 678 (9th Cir. 2007)

9    (explaining that rule 17 does not give and cannot cure problems with standing). The NPRA

10   provides only one mechanism for court intervention: "If a request . . . is denied or

11   unreasonably delayed . . . ***the requester*** may apply to ***the district court in the county in***

12   ***which the book or record is located*** for an order." Nev. Rev. Stat. § 239.011(1) (emphases

13   added). Here, Metro is not the "requester;" The Times is. This Court is also not the district

14   court in Clark County, Nevada, where Metro (and the requested records) are located. Further,

15   Metro has filed a petition in state court seeking advice as to the issues it raises in its Notice.

16         If a governmental entity could avail itself of federal courts every time a purportedly

17   confidential portion of a public record is used as evidence in a federal case, it would

18   constitute an impermissible end-run around states' public record laws, which are subject to

19   adjudication solely in state courts. As federal courts' subject matter jurisdiction is

20   circumscribed by Article III, § 2 of the Constitution, accepting Metro's invitation to

21   adjudicate its rights under the NPRA is unconstitutional.[4] Thus, this Court should disregard

22   Metro's Notice.

23         As detailed in The Times's other filings, the fact that Defendant Ronaldo obtained

24   public records from Metro and subsequently designated them as confidential pursuant to the

---

[4] "A federal court's entertaining a case that is not within its subject matter jurisdiction is no mere technical violation; it is nothing less than an unconstitutional usurpation of state judicial power." *Freeman Holdings of Ariz., L.L.C. v. Doe*, No. CV-11-01877, 2013 U.S. Dist. LEXIS 8038, at *12 (D. Ariz. Jan. 18, 2013) (quoting 13D Charles A. Wright et al., Federal Practice and Procedure § 3522 (3d ed. 2009)).

Protective Order does not change this analysis. Protective orders govern the exchange of documents in litigation—they do not govern public agencies or public records. Thus, this Court can and should make clear that its Protective Order does not govern Metro's handling or production of public records.

### D. The NPRA Mandates Disclosure.

As argued at length in The Times's Proposed Responses in Opposition to Plaintiff's Motion for a Preliminary Injunction and Defendant's Motion for Protective Order (ECF Nos. 176-2 and 176-3), the attorney-client privilege and the work product privilege do not still apply to the widely disseminated "Football Leaks" documents—or any other portion of Metro's investigative file. Indeed, it impossible to understand how they may merit protection in light of the fact that Ronaldo produced the records to the Plaintiff in this litigation and Metro has reviewed the records and still has them in its possession.[5]

However, other than to make clear that the Protective Order does not govern Metro's disclosure obligations or limit The Times's rights under the NPRA, the Court should not address Metro's Notice. Should the Court decide to determine what Metro's obligations are under the NPRA, The Times respectfully requests the opportunity to provide further briefing on the NPRA access issues—as well as Metro's failures to meet its requirements.

### III.  CONCLUSION

For the foregoing reasons, this Court must disregard or strike Metro's Notice (ECF No. 172). While the Court should make clear that its Protective Order does not govern

---

[5] Moreover, even if some portions of the records were somehow attorney-client privileged material (or subject to some other exception against the presumption in favor of access to public records), that would still not justify wholesale withholding. Nev. Rev. Stat. § 239.010(3). Metro nonetheless argues that "[w]hen redaction of a file would constitute a pointless exercise, non-disclosure of the document is appropriate." (ECF No. 172, p. 15:3-6.) However, Metro does not set forth any evidence that any part of the investigative file is privileged (as required by Nev. Rev. Stat. § 239.0113), let alone all of it. In addition, if this were a matter litigated in state court pursuant to the NPRA, the requester would generally be entitled to a log listing the material being redacted and/or withheld. *See Reno Newspapers, Inc. v. Gibbons*, 127 Nev. 873, 882-83 (2011). This all further reinforces that the NPRA issues the Notice raises belong in state court.

MCLETCHIE LAW
ATTORNEYS AT LAW
602 SOUTH TENTH ST.
LAS VEGAS, NV 89101
(702) 728-5300 (T) / (702) 425-8220 (F)
WWW.NVLITIGATION.COM

1    Metro's treatment of the investigative file, it should not otherwise entertain the parties' or

2    Metro's efforts to embroil it in a matter of state law.

3

4           DATED this the 11th day of January, 2022.

5

6                                    /s/ Margaret A. McLetchie
                                     MARGARET A MCLETCHIE, Nevada Bar No. 10931
7                                    LEO S. WOLPERT, Nevada Bar No. 12658
                                     **MCLETCHIE LAW**
8                                    602 South Tenth St.
                                     Las Vegas, Nevada 89101
9                                    (702) 728-5300; maggie@nvlitigation.com
10                                   *Counsel for Proposed Intervenor,*
                                     *The New York Times Company*
11

12



13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

(Petition for Judicial Confirmation, *In re Pub. Rec. Requests to Las Vegas Metro. Police Dep't.*, No. A-21-845702-P (Nev. Dist. Ct. filed Dec. 20, 2021))

Electronically Filed
12/20/2021 3:48 PM
Steven D. Grierson
CLERK OF THE COURT

**Marquis Aurbach Coffing**
Nick D. Crosby, Esq.
Nevada Bar No. 8996
Jackie V. Nichols, Esq.
Nevada Bar No. 14246
Susan E. Gillespie, Esq.
Nevada Bar No. 15227
10001 Park Run Drive
Las Vegas, Nevada 89145
Telephone: (702) 382-0711
Facsimile: (702) 382-5816
ncrosby@maclaw.com
jnichols@maclaw.com
sgillespie@maclaw.com
Attorneys for Las Vegas Metropolitan Police Department

CASE NO: A-21-845702-P
Department 23

**DISTRICT COURT**

**CLARK COUNTY, NEVADA**

| In the Matter of the Public Record Requests to Las Vegas Metropolitan Police Department, | Case No.:<br>Dept. No.:<br><br>**Arbitration Exemption Requested:**<br>Declaratory Relief |
|---|---|

**PETITION FOR JUDICIAL CONFIRMATION**

Petitioner Las Vegas Metropolitan Police Department (hereinafter "Petitioner" or "LVMPD") by and through its attorneys of record, the law firm of Marquis Aurbach Coffing, pursuant to Nevada Revised Statute 43.100, hereby moves this Court for a judicial examination and determination of the validity of the power and authority of LVMPD to: (1) produce particular records of a closed criminal investigation in redacted format in accordance with the Nevada Public Records Act (NPRA), Nevada Revised Statute 200.3771, and the privacy interests of the victim, alleged subject, and witnesses as recognized by the Nevada Supreme Court in *Clark County School District v. Las Vegas Review-Journal*, 134 Nev. 700, 429 P.3d 313 (2018); and (2) withhold records in their entirety received from third-parties that contain attorney-client and work product information. Nevada Revised Statute 43.100 provides a valid mechanism for obtaining a judicial examination and determination of the validity of actions and the power of government entities, such as LVMPD, by providing certainty prior to the expenditure and

Page 1 of 19

MAC:14687-228 4571948_1 12/20/2021 3:19 PM

**MARQUIS AURBACH COFFING**
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

commitment of extensive public resources and possible liabilities against LVMPD, thereby promoting the public welfare.

## NATURE OF THE ACTION

1.      LVMPD is bound by the NPRA and provides a good faith effort to respond to each and every request appropriately.  At issue here, are public records requests for LVMPD's criminal investigative file of an alleged sexual assault for which no criminal charges were filed.

2.      Generally, government records are subject to disclosure under the NPRA, unless the records are declared by law to be confidential.  NRS 239.010.

3.      The Supreme Court, however, has expressly recognized that individuals may have privacy interests in particular government records, such as the case here, warranting non-disclosure of particular information.  *Clark County School District v. Las Vegas Review-Journal*, 134 Nev. 700, 429 P.3d 313 (2018); *Reno Newspapers v. Sheriff*, 126 Nev. 211, 218, 234 P.3d 922, 927 (2010).  When privacy interests are asserted, the Court must conduct a balancing test by weighing the privacy interests asserted against the public's significant interest in disclosure of the information.  *Id.*

4.      Moreover, the Nevada Legislature acknowledged the significant privacy interests held by sexual assault victims and deemed identifying information explicitly confidential.  *See* NRS 200.3771.

5.      Finally, it is well-established that attorney-client information and attorney work-product are confidential as a matter of law.  NRS 49.095; Nev. R. Civ. P. 26.

6.      Based on these privileges and privacy interests, LVMPD is requesting confirmation from this Court in how to respond to the pending public record requests in an effort to comply with all applicable laws and court orders and further avoid additional litigation regarding the requested records.

## JURISDICTION AND VENUE

7.      This Court possesses subject matter jurisdiction over this matter because Clark County, Nevada is the judicial district in which a substantial part of the events or omissions giving rise to the claims set forth herein occurred.

MAC:14687-228 4571948_1 12/20/2021 3:19 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

**STANDING**

8.      NRS Chapter 43 provides municipalities a recourse to request a judicial examination and determination of the validity of any power, instrument, act, or projection of any municipality.  NRS 43.020; NRS 43.100.  Under this Chapter, a petition may be filed, praying a "judicial examination and determination of the validity of any power conferred or of any instrument, act or project of the municipality, whether or not such power has been exercised, such instrument has been executed or otherwise made or such act or project has been taken."

**GENERAL ALLEGATIONS**

**A.      THE CRIMINAL INVESTIGATION.**

1.      LVMPD, as a metropolitan police department, is responsible, in part, for conducting investigations into alleged criminal conduct.

2.      In particular to this instant action, a victim reported to LVMPD an allegation of sexual assault sometime in 2009.

3.      LVMPD conducted an initial criminal investigation, but no criminal charges were filed as no person of interest was identified.

4.      Nearly a decade later, in 2018, the criminal investigation was reopened at the request of the victim who identified a person of interest and wanted to move forward with criminal charges.

5.      LVMPD received additional records from the victim and her counsel in an effort to support the reopening of the criminal investigation.  This included documents which have since been determined to be protected by the attorney-client and work product privilege between the person of interest and his counsel (these documents are referred as the "Football Leak" documents).

6.      While LVMPD further investigated the alleged sexual assault, the Clark County District Attorney's Office denied criminal charges.

**B.      THE CIVIL CASE.**

7.      In 2018, a civil lawsuit ensued stemming from the 2009 alleged sexual assault between the victim and the person of interest (hereinafter referred to as the "Civil Case").

MAC:14687-228 4571948_1 12/20/2021 3:19 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

8.   As part of the Civil Case, counsel representing the person of interest subpoenaed LVMPD for its entire criminal investigative file regarding the alleged sexual assault on March 31, 2021. This included information from both the 2009 and 2018 investigations.

9.   Prior to releasing the requested records, LVMPD requested and obtained a signed authorization from the victim in accordance with NRS 200.3771.

10.   It was also LVMPD's understanding that the released records would further be subject to a protective order prohibiting public disclosure of the records in the Civil Case.

11.   The Parties have confirmed that the criminal investigative file produced in response to the subpoena is deemed confidential and subject to the protective order in the Civil Case.

12.   Recently, the Magistrate Judge in the Civil Case concluded that the Football Leak documents are subject to the attorney-client and work product privileges. Based on the arguments presented by the person of interest, the Magistrate Judge recommended case-ending sanctions. This particular issue is currently pending before the District Court Judge.

**C.   THE PUBLIC RECORD REQUESTS AND LVMPD'S RESPONSE.**

13.   LVMPD received several public record requests for the criminal investigative file involving the alleged sexual assault that occurred in 2009.

14.   In particular, The New York Times ("NYT") submitted a request for the criminal investigative file involving the person of interest.

15.   LVMPD informed NYT that the records sought contained confidential information pursuant to NRS 200.3771 and that both the victim and the person of interest had non-trivial privacy interests in the information contained in the records and these interests outweighed NYT's interest in disclosure.

16.   NYT responded and claimed, because the victim has reported the alleged sexual assault to the media and initiated the Civil Case, any privacy interest that existed had diminished.

17.   Based on NYT's position, LVMPD concluded that it could produce certain requested records in a redacted format and remain in compliance with NRS 200.3771 and ensure that the privacy interests of the persons involved were protected. LVMPD informed NYT that it

1  would produce its criminal investigative file in redacted form but would not produce any records

2  that contained attorney-client and/or work-product information.

3       18.    Due to the fact that LVMPD understood that a protective order was in place in the

4  Civil Case and the requested records were subject to the protective order, LVMPD informed

5  counsel for both the victim and person of interest that it had received a public records request

6  and that LVMPD intended to comply with its obligations under the NPRA and produce the

7  criminal investigative file in redacted format.

8       19.    Both the victim and person of interest objected to the disclosure of the criminal

9  investigative file.

10      20.    As a result of LVMPD's intent to disclose the requested records, the person of

11 interest filed a Motion for a Protective Order in the Civil Case seeking to prohibit LVMPD from

12 disclosing the criminal investigative file.

13      21.    Upon receiving the Motion for Protective Order, LVMPD informed NYT that it

14 would not be disclosing the requested records until the federal District Court issued a decision on

15 the pending motion.

16      22.    Subsequently, the victim filed a Motion for Preliminary Injunction, requesting the

17 Court to enter an order prohibiting LVMPD from disclosing the Football Leak documents.

18      23.    Both motions are currently pending before the federal District Court.

19 **D.     LVMPD'S RESPONSIVE RECORDS.**

20      24.    As a result of the initial 2009 criminal investigation, an Incident Crime Report,

21 Property Report, and a Voluntary Statement were created.  These records contain personal

22 identifying information of the victim, including, but not limited to, name, address, birthdate,

23 social security number, telephone number, and details of the alleged sexual assault, including but

24 not limited to, when, where, and how the alleged sexual assault occurred.

25      25.    In relation to the re-opened 2018 investigation, LVMPD maintains the following

26 records: Declaration of Warrant/Summons; three voluntary statements from the victim; voluntary

27 statements from five witnesses; property reports; lab results; drawing by victim; copy of a letter

28

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:14687-228 4571948_1 12/20/2021 3:19 PM

1    by victim to person of interest; communications between LVMPD detectives and counsel for

2    victim, which include the Football Leak documents.

3    26.    The Declaration, voluntary statements, and property reports contain sensitive

4    information, including, names (including the name of the person of interest), addresses,

5    birthdates, social security numbers, telephone numbers, and details of the alleged sexual assault,

6    including but not limited to, when, where, and how the alleged sexual assault occurred.

7    27.    The drawing and personal statement by the victim also details the circumstances

8    involved in the alleged sexual assault.

9    28.    The lab results pertain to DNA results related to property impounded as evidence.

10   29.    The communications in the criminal investigative file include communications

11   between LVMPD detectives, the victim, and her counsel.  These communications include emails

12   and correspondence.  While LVMPD takes the position that the communications themselves are

13   subject to disclosure, the attachments, including the Football Leak documents are not subject to

14   disclosure.

15   30.    The Football Leak documents contain extensive email communication between

16   the person of interest, his counsel, and his representatives and additional documents created by

17   the person of interest's counsel. The communications include extensive sensitive details the

18   person of interest provided to his counsel at his counsel's request, a confidential agreement,

19   counsel's invoices with detailed explanations of the work completed by counsels, and private

20   investigation summaries and invoices.

21                              **LEGAL AUTHORITY**

22   **A.    THE NEVADA PUBLIC RECORDS ACT.**

23   The NPRA, codified at NRS 239.010 *et. seq.*, governs public records requests to

24   government agencies within Nevada.  Under the NPRA, all public books and public records of

25   governmental entities must remain open to the public, unless "otherwise declared by law to be

26   confidential."  NRS 239.010(1). "Under NRS 239.0107(1), upon being presented with a NPRA

27   request, a governmental entity must do one of four things within five business days of receiving

28   a public records request; as pertinent here, a governmental entity must provide notice that it will

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:14687-228 4571948_1 12/20/2021 3:19 PM

be unable to make the record available by the end of the fifth business day and provide '[a] date and time after which the public book or record will be available' to inspect or copy, NRS 239.0107(1)(c), *or* provide notice that it must deny the request because the record, or a part of the record, is confidential, and provide "[a] citation to the specific statute or other legal authority that makes the public book or record, or a part thereof, confidential,' NRS 239.0107(1)(d)." *Las Vegas Review-Journal v. City of Henderson*, 441 P.3d 546 (Nev. 2019) (unpublished).

If the confidentiality of a public record is at issue in a judicial proceeding, and a governmental entity withholds records on the basis of confidentiality, it bears the burden of proving, by a preponderance of the evidence, that the records are confidential. NRS 239.0113. *See Reno Newspapers, Inc. v. Gibbons*, 127 Nev. 873, 877–878, 266 P.3d 623, 626 (2011). A balancing-of-competing-interests test is employed "***when the requested record is not explicitly made confidential by a statute***" and the governmental entity nonetheless resists disclosure of the information. *Id.* at 878–879, 266 P.3d at 627 (emphasis added). This test weighs "the fundamental right of a citizen to have access to the public records" against "the incidental right of the agency to be free from unreasonable interference." *DR Partners v. Bd. of Cnty. Comm'rs*, 116 Nev. 616, 621, 6 P.3d 465, 468 (2000). "[A]n individual's privacy is also an important interest, especially because private and personal information may be recorded in government files." *Clark County School District v. Las Vegas Review-Journal*, 134 Nev. 700, 429 P.3d 313 (2018); *Reno Newspapers v. Sheriff*, 126 Nev. 211, 218, 234 P.3d 922, 927 (2010).

## B.    IDENTIFYING INFORMATION OF SEXUAL ASSAULT VICTIMS IS CONFIDENTIAL.

In recognizing the privacy interests of sex crime victims, the Legislature determined that personal information of victims is confidential unless the victim waives it in writing. NRS 200.3774. If someone releases this information without a waiver, they are guilty of a misdemeanor. NRS 200.3771(5). Also, NRS 41.1398 provides a victim of sexual assault an avenue to seek damages if disclosure of such information occurs in violation of NRS 200.3771-200.3774.

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:14687-228 4571948_1 12/20/2021 3:19 PM

Identifying information of victims of sexual offenses is expressly deemed confidential pursuant to NRS 200.3771. NRS 200.3771 provides that the personal identifying information of a victim of a sexual offense is confidential, including, but not limited to: name, photograph, likeness, address, or telephone number. It further provides the willful violation or the willful neglect of NRS 200.3771 is punishable as criminal contempt. When a statute or regulation expressly and unequivocally deems information confidential, this information is exempt from disclosure under the NPRA. *See City of Sparks v. Reno Newspapers, Inc.*, 399 P.3d 352, 357 (Nev. 2017) (exempting from disclosure under the NPRA the identifying information for medical marijuana businesses based upon NRS 453A.370(5) and NAC 453A.714(1)); NRS 239.010(1)).

More importantly, a public officer is prohibited from releasing such confidential information unless, *inter alia,* a court order is issued pursuant to NRS 200.3771. NRS 200.3773(1)(c). Only under limited circumstances may a Court order the disclosure of the identifying information. *Id.* In such instances, the person requesting the confidential information must demonstrate: (1) good cause exists for the disclosure; (2) disclosure will not place the victim at risk for personal harm; and (3) the victim must have notice of the application and the opportunity to be heard. *Id.*

LVMPD's criminal investigative file pertains to an alleged sexual assault that occurred in 2009. NRS 200.3771 clearly prohibits LVMPD from disseminating identifying information of the victim. Although the statute provides a list of identifying information that cannot be disclosed, it also explicitly includes the language "but not limited to . . . ." In Nevada, the phrasing "but not limited to" requires an expansive construction; *i.e.*, a narrow construction is error. *Sims v. Eighth Judicial Dist. Court*, 125 Nev. 126, 130, 206 P.3d 980, 983 (2009). In *Sims*, the Court was called on to construe NRS 178.415(3), which involves competency hearings. The statute provides that, upon receiving competency reports from the court-appointed competency examiners, the district court "shall permit counsel for both sides to examine the person or persons appointed to examine the defendant." Additionally, "[t]he prosecuting

MAC:14687-228 4571948_1 12/20/2021 3:19 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

attorney and the defendant may: (a) Introduce other evidence including, without limitation, evidence related to treatment to competency and the possibility of ordering the involuntary administration of medication; and (b) Cross-examine one another's witnesses." *Id.* at 130, 206 P.3d at 983 (emphasis added).   The Court held that the phrase "without limitation" is unambiguously broad:

> The plain and unambiguous language of NRS 178.415(3) is expansive and in no way limits the prosecuting attorney's or defense counsel's ability to introduce evidence during the competency hearing.   The plain meaning of the statute is evidenced by the phrases "other evidence" and "without limitation," which denote expansive legislative intent. *See Alsenz v. Clark Co. School Dist.*, 109 Nev. 1062, 1065, 864 P.2d 285, 287 (1993); *see also St. Paul Mercury Ins. Co. v. Lexington Ins. Co.*, 78 F.3d 202, 206-07 (5th Cir. 1996)   (word "including" is generally given expansive reading, even without additional language of "without limitation").

*Id.* [Emphasis added.]

Based on *Sims*, the "but not limited to" language in NRS 200.3771 must be construed broadly.   The mere fact that the statute lists certain identifying information without enumerating all imaginable identifying information is inconsequential given the Legislature's inclusion of the "but not limited to" language.   Thus, identifying information inherently includes details of the alleged sexual assault that would identify the victim, such as details of when and how the sexual assault occurred to the extent that it would lead a person to the victim's identity.

Accordingly, LVMPD asks this Court to confirm that it must redact the victim's name, address, telephone number, social security number, and any details of the alleged sexual assault that would lead to the victim's identity from the criminal investigative file prior to disclosure.

**C.    NEVADA'S INFORMER PRIVILEGE REQUIRES LVMPD TO REDACT INFORMATION THAT WOULD REVEAL THE IDENTITY OF ANY WITNESS.**

LVMPD's criminal investigative file also contains information from and pertaining to witnesses of the alleged incident. Nevada recognizes the inherent confidentiality of the identity of individuals that disclose information related to the commission of crimes to law enforcement agencies. NRS 49.335. Specifically, NRS 49.335 provides:

> The State or a political subdivision thereof has a privilege to refuse to disclose the identity of a person who has furnished to a law enforcement officer information purporting to reveal the commission of a crime.

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:14687-228 4571948_1 12/20/2021 3:19 PM

Importantly, this privilege is not limited to "confidential sources" or "confidential informants," but protects the identity of *any* individual who provides information to LVMPD that purports to reveal the commission of a crime. This interpretation is further supported by the fact that the privilege no longer exists once the person appears as a witness. NRS 49.355. Likewise, the term identity, albeit undefined, is not limited to the individual's name, but also includes any identifying information, such as the actual information provided to law enforcement officers. Indeed, statutory construction requires such an interpretation.

Generally, when a statute's language is plain and its meaning clear, the courts will apply that plain language. *Leven v. Frey*, 123 Nev. 399, 403, 168 P.3d 712, 715 (2007). If a statutory phrase is left undefined, the court will construe the phrase according to its plain and ordinary meaning. *In re Resort at Summerlin Litig.*, 122 Nev. 177, 182, 127 P.3d 1076, 1079 (2006). The court must interpret a statute in a reasonable manner, that is, "[t]he words of the statute should be construed in light of the policy and spirit of the law, and the interpretation made should avoid absurd results." *Desert Valley Water Co. v. State, Engineer*, 104 Nev. 718, 720, 766 P.2d 886, 886–87 (1988). In reviewing a statute, it "should be given [its] plain meaning and must be construed as a whole and not be read in a way that would render words or phrases superfluous or make a provision nugatory." *Mangarella v. State*, 117 Nev. 130, 133, 17 P.3d 989, 991 (2001) (internal quotation omitted).

Here, the term "identity" is not defined within the statutory scheme of NRS 49.335. LVMPD contends that the term "identity" is not limited to an individual's name but includes any information that would otherwise identify an individual. Had the Legislature limited NRS 49.335 to apply only to a person's name, it would have used the term "name." Instead, the Legislature cautiously chose the term "identity." The informer statutory scheme supports LVMPD's interpretation. In that respect, NRS 49.355 provides that informer privilege no longer exists if the "informer's interest in the subject matter of his or her communication has been disclosed." If NRS 49.335 simply applied to an informer's name, there would be no reason to preclude the privilege if the informer's interest in the subject matter of his/her communication has been disclosed. The definition of "identity" further supports such a construction. *See*

MAC:14687-228 4571948_1 12/20/2021 3:19 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1  IDENTITY, Black's Law Dictionary (11th ed. 2019) ("The distinguishing personality or

2  attributes of an individual. More generally, the qualities and attitudes that a person or group of

3  people have, differentiating them from others.")

4      Construing the term "identity" in NRS 49.335 to include information that would identify

5  the witness, LVMPD asks this Court to confirm that it must redact information that would

6  identify any witness to the alleged sexual assault.

7  **D.     ANY RECORDS THAT CONTAIN ATTORNEY-CLIENT OR WORK
          PRODUCT INFORMATION ARE CONFIDENTIAL.**

8      **1.     <u>The Attorney-Client Privilege.</u>**

9      The attorney-client privilege is a long-standing privilege at common law that protects

10  communications between attorneys and clients. *See Upjohn Co. v. United States*, 449 U.S. 383,

11  389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). The purpose of the attorney-client privilege is to

12  encourage clients to make full disclosures to their attorneys in order to promote the broader

13  public interests of recognizing the importance of fully informed advocacy in the administration

14  of justice. *Id.*

15     Nevada codified the attorney-client privilege at NRS 49.095. For this privilege to apply,

16  the communications must be between an attorney and client, for the purpose of facilitating the

17  rendition of professional legal services, and be confidential. *Id.* "A communication is

18  'confidential' if it is not intended to be disclosed to third persons other than those to whom

19  disclosure is in furtherance of the rendition of professional legal services to the client or those

20  reasonably necessary for the transmission of the communication." NRS 49.055. Protected

21  communications can be from a lawyer to a client or from a client to a lawyer. *See Upjohn*, 449

22  U.S. at 390, 101 S.Ct. 677. Communications may be disclosed to other persons within a

23  corporation or legal team in order to facilitate the rendition of legal advice without losing

24  confidentiality; however, the disclosure must only be to the limited group of persons who are

25  necessary for the communication, and attempts must be made to keep the information

26  confidential and not widely disclosed. *See Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d

27  854, 863 (D.C. Cir. 1980).

28

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:14687-228 4571948_1 12/20/2021 3:19 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

### 2. **The Work Product Privilege.**

The work-product doctrine protects more than just communications between a client and attorney, and is thus broader than the attorney-client privilege. *Hickman v. Taylor*, 329 U.S. 495, 508 (1947). "At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *United States v. Nobles*, 422 U.S. 225, 238 (1975). Thus, an attorney's work product, which includes "mental impressions, conclusions, opinions, and legal theories of counsel ..., are [protected from disclosure]." *Wardleigh v. Second Judicial Dist. Court*, 111 Nev. 345, 359, 891 P.2d 1180, 1189 (1995).

Nevada's work-product privilege is found at NRCP 26(b)(3), which provides, in relevant part:

> [A] party may obtain discovery of documents and tangible things ... prepared in anticipation of litigation ... by or for another party or by or for that other party's representative ... only upon a showing that the party seeking discovery has substantial need of the materials ... and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

Therefore, like its federal counterpart, FRCP 26(b)(3), NRCP 26(b)(3) protects documents with "two characteristics: (1) they must be prepared in anticipation of litigation or for trial, and (2) they must be prepared by or for another party or by or for that other party's representative." *In re Grand Jury Subpoena (Mark Torf/Torf Envtl. Mgmt.) (Torf)*, 357 F.3d 900, 907 (9th Cir. 2004) (internal quotation marks omitted).

In determining whether materials were prepared in anticipation of litigation, courts generally use one of two tests: (1) the "primary purpose" test or (2) the "because of" test. The Supreme Court has adopted the "because of" test for determining whether work was done "in anticipation of litigation." *See Wynn Resorts, Ltd. v. Eighth Jud. Dist. Ct. in & for Cty. of Clark*, 133 Nev. 369, 384–85, 399 P.3d 334, 348 (2017).

MAC:14687-228 4571948_1 12/20/2021 3:19 PM

1    Under the "because of" test, documents are prepared in anticipation of litigation when "in

2    light of the nature of the document and the factual situation in the particular case, the document

3    can fairly be said to have been prepared or obtained because of the prospect of litigation."

4    Restatement (Third) of the Law Governing Lawyers § 87 cmt. i (2000) (quoting 8 Charles A.

5    Wright et al., Federal Practice & Procedure § 2024, at 343 (2d ed. 1994) (emphasis added)). The

6    Restatement approach is consistent with Nevada caselaw examining work product and protecting

7    records prepared by or at the request of an attorney, but not records prepared in the normal

8    course of business since those are not prepared because of the prospect of litigation. *See, e.g.,*

9    *Columbia/HCA Healthcare Corp. v. Eighth Judicial Dist. Court,* 113 Nev. 521, 527–28, 936

10   P.2d 844, 848 (1997) (concluding that hospital's "occurrence reports" were not protected work

11   product because they were prepared in the normal course of business).

12   The anticipation of litigation must be the sine qua non for the creation of the document—

13   "but for the prospect of that litigation," the document would not exist. *Torf,* 357 F.3d 900, at 908

14   (quoting *United States v. Adlman,* 134 F.3d 1194, 1195 (2d Cir. 1998). However, "a document ...

15   does not lose protection under this formulation merely because it is created in order to assist with

16   a business decision." *Adlman,* 134 F.3d at 1202. "Conversely ... [this rule] withholds protection

17   from documents that are prepared in the ordinary course of business or that would have been

18   created in essentially similar form irrespective of the litigation." *Id.*

19   In determining whether the "because of" test is met, the Supreme Court also adopted the

20   "totality of the circumstances" standard based on the Ninth Circuit Court of Appeals reasoning in

21   *Torf. See Wynn,* 133 Nev. 369, 386.

22   In *Torf,* the Ninth Circuit Court of Appeals stated that

23   [t]he "because of" standard does not consider whether litigation was a primary or
     secondary motive behind the creation of a document. Rather, it considers the

24   totality of the circumstances and affords protection when it can fairly be said that
     the "document was created because of anticipated litigation, and would not have

25   been created in substantially similar form but for the prospect of that litigation[.]"

26   357 F.3d at 908 (second alteration in original) (quoting *Adlman,* 134 F.3d at 1195).

27   In evaluating the totality of the circumstances, the court should "look[ ] to the context of

28   the communication and content of the document to determine whether a request for legal advice

Page 13 of 19

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:14687-228 4571948_1 12/20/2021 3:19 PM

1   is in fact fairly implied, taking into account the facts surrounding the creation of the document

2   and the nature of the document." *In re CV Therapeutics*, 2006 WL 1699536, at *4. Lastly, the

3   court should consider "whether a communication explicitly sought advice and comment." *Id.*

### 3.   **Application of the Privileges.**

5       Here, LVMPD takes the position that the Football Leak documents are subject to the

6   above-mentioned privileges. First, the email communications all appear to be between the person

7   of interest, his representatives, and his various counsel. Additionally, all of the email

8   communications assist with facilitating the rendition of professional legal services. As such, the

9   attorney-client privilege likely applies to the email communications.

10      As for the other Football Leak documents, it is fairly clear they were created based on the

11  pending litigation and potential criminal charges and contain mental impressions, conclusions,

12  opinions, and legal theories of counsel. It is also important to note that LVMPD did not receive

13  these documents from the person of interest. The victim and her counsel provided LVMPD the

14  Football Leak documents. The person of interest actually alleges these communications and

15  documents were stolen during a computer hack and thus there is no waiver of the privileges.

16  Indeed, the Magistrate Judge in the Civil Case determined there was no waiver. The privilege

17  issue remains pending in the Civil Case before the District Court Judge.

18      Generally, the NPRA requires a government entity to redact, delete, conceal or separate,

19  including, without limitation, electronically, the confidential information from the information

20  included in the public book or record that is not otherwise confidential.  NRS 239.010(3); *Clark*

21  *County Sch. Dist. v. Las Vegas Review-Journal*, 134 Nev. 707, 429 P.3d 320 (2018). ***When***

22  ***redaction of a file would constitute a pointless exercise, non-disclosure of the document is***

23  ***appropriate.*** *Hunt v. F.B.I.*, 972 F.2d 286, 288 (9th Cir. 1992); *Republican Attorneys Gen. Ass'n*

24  *v. Las Vegas Metro. Police Dep't*, 136 Nev. Adv. Op. 3 (2020).

25      In *Republican Attorneys Gen. Ass'n,* the Supreme Court explicitly recognized that when

26  dealing with confidentiality, certain items are not subject to redaction, because the very nature of

27  the document itself, is not reasonably capable of redaction to avoid disclosing the confidential

28  information at issue. *Id.* The Court stated:

MAC:14687-228 4571948_1 12/20/2021 3:19 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

We determine that redaction is not possible because all portions of the bodycam footage contain confidential juvenile justice information, even those portions depicting Ford. We are aware that RAGA has not seen the bodycam footage, and we understand that the circumstances of this case require RAGA to trust this court's determination of confidentiality. Under a different set of facts, a governmental entity may be able to separate confidential periods of bodycam footage from substantial nonconfidential periods or blur the occasional juvenile's face to redact or otherwise edit out confidential material. But that is not the case here. Ford's depiction and any communications he makes are inextricably commingled with the confidential juvenile justice information.

*Id.*

Here, the records containing the attorney-client and work-product privilege would result in hundreds of pages entirely blacked out, warranting non-disclosure of these particular records.

### E.     THE PRIVACY INTERESTS OF THE VICTIM AND PERSON OF INTEREST REQUIRE REDACTION OF PERSONAL INFORMATION.

#### 1.   The *Cameranesi* Test and the Balancing of Privacy Interests.

In *Clark Cty. School Dist. v. Las Vegas Review-Journal*, 134 Nev. 700, 707-08, 429 P.3d 313, 320-21 (2018), the Supreme Court specifically found that privacy interests of individuals must be considered in the context of public record requests. In doing so, the Court adopted the two-part test articulated in *Cameranesi v. United States Department of Defense*, 856 F.3d 626, 637 (9th Cir. 2017), for determining if a government entity should withhold information in a public records request. *Id.* at 708, 429 P.3d at 321. The first step in a *Cameranesi* analysis requires the government to establish that disclosure implicates a personal privacy interest that is nontrivial or more than de minimis. If the government shows that the privacy interest at stake is nontrivial, *the requester must then show that the public interest sought to be advanced is a significant one and the information sought is likely to advance that interest*. *Id.* (Emphasis added). If the second prong is not met, the information should be redacted. *Id.* The *Cameranesi* test thus balances "individual nontrivial privacy rights against the public's right to access public information." *Id.* at 708, 429 P.3d at 321. This balancing test approach "ensures that the district courts are adequately weighing the competing interests of privacy and government accountability." *Id.* at 709, 429 P.3d at 321.

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:14687-228 4571948_1 12/20/2021 3:19 PM

**2.** <u>**The Victim and Person of Interest Maintain a Non-Trivial Privacy Interest in the Criminal Investigative File.**</u>

The criminal investigative records at issue contain personally identifying information of victims, witnesses, and sensitive information of an alleged crime where the person of interest was neither arrested nor criminally charged. If disclosed without redactions, this information provides the public with (1) the name of the victim and each witness; (2) a stigmatizing investigation concerning an alleged sexual assault where no arrest was made[1]; and (3) highly personal medical history.

In *Clark Cty. School Dist.*, the Supreme Court was presented with a similar question focusing on balancing disclosure under the NPRA with the privacy interests of individuals. 134 Nev. 707-08, 429 P.3d 320-21. There, the Court addressed the disclosure of victims of sexual harassment and support staff who allegedly were harassed by a public official. *Id.* Despite the fact the LVRJ maintained a compelling argument for disclosure based on the involvement of an elected official, the Court still found that privacy interests of the teachers, witnesses, or victims of the harassment were not appropriate for disclosure. *Id.*

More extreme than the issue presented in *CCSD*, this matter involves an alleged sexual assault. First, the privacy interests here are far more sensitive than those recognized by the Supreme Court in *Clark Cty. School Dist.*, as the documents sought have everything from full names, home addresses, details of private parties' intimacy, details of an alleged sexual assault, personal identifying medical information and treatment, and information pertaining to a criminal investigation.[2] Each of these interests weigh heavily on the scales of privacy and non-disclosure and are far from "trivial" privacy interests.

Here, when the above stated interests in favor of non-disclosure are weighed against any potential *significant* public interest any requester could assert, the scales remain unchanged in

---

[1] *See Stern v. Fed. Bureau of Investigation*, 737 F.2d 84, 91–92 (D.C.Cir.1984). (noting individuals have a "strong interest in not being associated unwarrantedly with alleged criminal activity").

[2] Courts consistently have found that "[t]here can be no clearer example of an unwarranted invasion of personal privacy than to release to the public that another individual was the subject of criminal investigation." *Republic of New Afrika v. FBI*, 656 F.Supp. 7, 11 (D.D.C. 1985).

MAC:14687-228 4571948_1 12/20/2021 3:19 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

favor of non-disclosure. This case has nothing to do with accountability of elected officials, does not deal with any arrest or criminal prosecution, and cannot further any legitimate type of public inquiry. While general allegations of a sexual assault by the victim against the person of interest may have made its way to the media, such bare-boned allegations are insufficient to warrant disclosure of the sensitive information, including intimate details of how the alleged sexual assault occurred. Furthermore, the lack of an arrest and criminal charges also warrant redaction of any information that could reasonably identify the person of interest. As such, there is no "*significant* public interest" to further by obtaining the non-disclosed material and redacted documents at issue. *Cameranesi* at 708, 429 P.3d at 321.

Accordingly, LVMPD requests the Court confirm that LVMPD must redact personal information related to the victim and person of interest, including, but not limited to, details of the sexual assault and any personal identifying information.

## PRAYER FOR RELIEF

WHEREFORE, Petition prays for the following relief:

1.  For a judicial confirmation that:

    a.  LVMPD must redact the victim's name, address, telephone number, social security number, and any details of the alleged sexual assault that would lead to the victim's identity from the criminal investigative file prior to disclosure.

    b.  LVMPD must redact information that would identify any witness to the alleged sexual assault.

    c.  LVMPD must withhold records containing the attorney-client and work-product privilege where redactions would be futile

    d.  LVMPD must redact personal information related to the victim and person of interest, including, but not limited to, details of the alleged sexual assault and any personal identifying information.

2.  Alternatively, LVMPD requests the Court conduct an in-camera review of LVMPD's unredacted investigative file and its proposed redactions to confirm LVMPD's proposed redactions are proper.

MAC:14687-228 4571948_1 12/20/2021 3:19 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

3.     For an award of reasonable attorney fees and costs of suit; and

4.     For any further relief as the Court deems to be just and proper.

Dated this 20th day of December, 2021.

MARQUIS AURBACH COFFING

By:   /s/ Jackie V. Nichols
      Nick D. Crosby, Esq.
      Nevada Bar No. 8996
      Jackie V. Nichols, Esq.
      Nevada Bar No. 14246
      Susan E. Gillespie, Esq.
      Nevada Bar No. 15227
      10001 Park Run Drive
      Las Vegas, Nevada 89145
      Attorneys for Las Vegas Metropolitan Police
      Department

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Page 18 of 19

MAC:14687-228 4571948_1 12/20/2021 3:19 PM

**VERIFICATION**

STATE OF NEVADA           )
                          ) ss.
COUNTY OF CLARK           )

SHERIFF JOSEPH LOMBARDO, being first duly sworn, deposes and says:

That I am the Sheriff for Las Vegas Metropolitan Police Department, the named Petitioner in the above-entitled action; that I have read the foregoing document and know the contents thereof; the same is true based upon my review of the documents and information relevant to the inquiries therein, except as to those matters therein stated on information and belief and, as to those matters, I believe them to be true based upon my review of the documents and information relevant to the inquiries therein.

_____
SHERIFF JOSEPH LOMBARDO

SUBSCRIBED AND SWORN to before
me this 20 day of December, 2021.

_____
NOTARY PUBLIC in and for said
County and State

AMELIA MARTINEZ
Notary Public, State of Nevada
No. 20-5292-01
My Appt. Exp. Aug. 20, 2024

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

Page 19 of 19

MAC:14687-228 4571948_1 12/20/2021 1:04 PM