# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| Kathryn Mayorga, | Case No.: 2:19-cv-00168-JAD-DJA |
| Plaintiff | **Order Overruling Objections, Adopting Report and Recommendation, Denying Relief on Reconsideration, and Dismissing Case** |
| v. | |
| Cristiano Ronaldo, | [ECF Nos. 111, 112, 124, 143, 152, 153, 154] |
| Defendant | |

Initially brought in an attempt to unwind a 2010 confidential settlement agreement, this case has devolved into a clash over the plaintiff's procurement and use of the defendant's cyber-hacked attorney-client privileged documents to revive long-since-released claims. When plaintiff Kathryn Mayorga's counsel, Leslie Stovall, Esq., first began attaching the purloined documents to his client's filings, the court found that defendant Cristiano Ronaldo had not waived privilege and struck them. But Stovall remained undeterred, and when the defense learned that he planned to use some of those documents in depositions and believed he had even more than he'd disclosed, they filed a motion for case-terminating sanctions. The magistrate judge recommends that I grant that motion; Mayorga objects and belatedly challenges the earlier order striking the documents. I find that the procurement and continued use of these documents was bad faith, and simply disqualifying Stovall will not cure the prejudice to Ronaldo because the misappropriated documents and their confidential contents have been woven into the very fabric of Mayorga's claims. So, although I recognize the gravity of this sanction and impose it reluctantly and only after comprehensively evaluating the universe of sanctions jurisprudence and carefully weighing all considerations, I grant the motion and dismiss this case with prejudice.

1

2

**Background**

**I.     The Football Leaks documents and the Las Vegas Metropolitan Police**
3      **Department's 2018 investigation**

4            In 2017, German newspaper *Der Speigel* began publishing a series of articles reporting

5   on terabytes of data it was given by "Football Leaks," a website purporting to expose corruption

6   by the world's soccer teams, players, and officials.[1]   As relevant here, *Der Speigel* reported on

7   leaked documents revealing Kathryn Mayorga's 2009 sexual-assault allegations against Cristiano

8   Ronaldo, a mainstay of European soccer for more than a decade.[2]   *Der Speigel* reported that

9   Ronaldo and Mayorga entered into a civil settlement after the alleged assault, in which Mayorga

10  agreed to accept $375,000 in exchange for, among other things, her agreement not to bring

11  criminal charges against Ronaldo.[3]   The article made it clear that its source documents included

12  confidential, internal communications between Ronaldo's American and European attorneys that

13  were stolen from their databases despite safeguards meant to protect confidential client

14  information.[4]   While *Der Speigel* did not publish most of the documents that its reporting was

15  founded on, it quoted extensively from them.[5]   Ronaldo's attorneys immediately undertook

16

17

---

18  [1] *See, e.g.*, ECF No. 61 at 99–138 (sealed).  I do not directly quote the articles here in the interest
    of mitigating the use of privileged material.  Instead I describe the contents of those privileged
19  documents in superficial terms and thus do not find that this order requires sealing.

20  [2] *See, e.g.*, *id.*

    [3] *Id.*

21  [4] *See, e.g.*, *id.* at 105–107, 134 (*Der Spiegel* article stating that the newspaper "has been able to
    reconstruct the strategy and methods of Ronaldo's lawyers thanks to documents made available
22  by . . . Football Leaks" and proceeding to quote sensitive attorney communications); *see also*
    ECF No. 111-25 (Ronaldo's prior attorney's declaration detailing the specific safeguards his firm
23  followed to protect confidential communications).

    [5] *Id.*

efforts to prevent *Der Speigel* from reporting on Mayorga's accusations and also sought preliminary injunctions to prevent further dissemination of the Football Leaks documents.[6]

In April 2018, Stovall began searching for the documents behind the *Der Spiegel* articles on Mayorga's behalf.  He reached out to *Der Speigel* and Mayorga's previous attorney, but they both refused his requests.[7]  So Stovall contacted the man behind Football Leaks—Stovall initially knew him as "John," but it was later revealed that his name is Rui Pinto—asking for:

> . . . any communications, emails, text messages, social media postings, documents, or other information you have regarding the sexual assault of my client, including but not limited to:
>
> 1.      the sexual assault[;]
>
> 2.      the employment of attorneys and investigators by Ronaldo to investigate my client, her family, witnesses[,] and friends after the sexual assault[;]
>
> 3.      the employment of attorneys and investigators to represent and defend Ronaldo after the sexual assault of my client[;]
>
> 4.      the reporting and communications of the attorneys and investigators that investigated Katie Mayorga, her family, witnesses, friends[,] and the attorney Katie hired to represent her[;]
>
> 5.      the reporting and communications of the attorneys and investigators representing and defending Ronaldo following the sexual assault thru the negotiations and conclusion of the settlement and non-disclosure agreement[;]
>
> [6].      the negotiations leading up to the agreement to mediate[;]
>
> [7].      the mediation itself[;]
>
> [8].      the evaluation of [M]ayorga's state of mind and emotional condition before, during[,] and after the mediation[;]

---

[6] ECF No. 111-26 at 3–5 (letter to *Der Spiegel* urging the newspaper to refrain from reporting on Mayorga's accusations); 7–32 (translated documents showing Ronaldo's efforts in Portgual and Germany to enjoin further dissemination of the Football Leaks documents).

[7] ECF No. 123 at 5 (sealed).

[9].     the evaluation or assessment of the attorney representing Katie Mayorga before, during[,] and after the mediation[;]

[10].    the terms of the settlement and non[-]disclosure agreement; [and]

[11].    Ronaldo's compliance or non-compliance with the settlement and non-disclosure agreement . . . .[8]

Pinto responded a few months later and gave Stovall hundreds of documents that contained just what Stovall asked for.[9]  The majority are internal emails between Ronaldo's lawyers discussing settlement strategies and potential liability, as well as communications between his lawyers and investigators they hired to look into the accusation.  Those emails are emblazoned with notices that their contents contain attorney-client communications and attorney work product.[10]  Some documents contain invoices with detailed descriptions of the work that Ronaldo's attorneys performed investigating the case; others are full of attorney comments analyzing questions to ask Ronaldo about the allegations and attorney opinions about the legal effect that Ronaldo's answers might have on his case.[11]

Stovall first turned over the documents in batches to the Las Vegas Metropolitan Police Department (Metro) in August and September of 2018,[12] prompting Metro to reopen its criminal case against Ronaldo and interview Mayorga about the alleged assault.  While recounting her version of events, Mayorga relied on the articles and documents to supply details from that

---

[8] ECF No. 111-4 at 30–31 (sealed).

[9] *See generally id.* at 30–98; ECF No. 111-5 (sealed); ECF No. 111-6 (sealed).

[10] *See, e.g.*, ECF No. 111-4 at 43, 65, 69, 77, 86, 95.

[11] *See, e.g.*, *id.* at 43–50, 71–75; ECF No. 111-5 at 13–38; ECF No. 111-6 at 10–88.

[12] ECF No. 111-18 at 22, 106–08 (sealed).

night.[13]  Metro issued a warrant for Ronaldo's arrest, but in July 2019, the Clark County District

Attorney's Office announced that it would not pursue criminal charges.[14]

## II.    The plaintiff's use of the Football Leaks documents in this litigation

The civil-litigation reboot of Mayorga's 2009 sexual-assault allegations against Ronaldo

started in Nevada state court.  In September 2018, Mayorga filed a verified complaint in

Nevada's Eighth Judicial District Court against Ronaldo and unidentified Doe and Roe

defendants.[15]  She alleges that Ronaldo sexually assaulted her in 2009, she had a rape kit

performed at University Medical Center, and she reported the incident to Metro.[16]  She theorizes

that when she eventually hired an attorney to pursue civil claims, Ronaldo hired "a team of

fixers[] known as personal[-]reputation[-]protection specialists" to investigate her allegations,

prevent their public disclosure, and avoid criminal repercussions for Ronaldo.[17]

The verified complaint describes details of the "fixers'" investigations and reports, refers

to written questions that the team asked Ronaldo about the night of the assault, and quotes from

internal emails discussing settlement negotiations and the team's impressions of the most

favorable outcomes for Ronaldo and his reputation.[18]  For example, it recounts "the 'team['s]'

. . . assessment of" how Metro would address Mayorga's report.[19]  It states that "at various times

---

[13] *Id.* at 21 (Mayorga answered an officer's question by stating, "I'm not sure, it said in the articles, in the, in the documents that . . . .").

[14] ECF No. 64 at 25 (district attorney's press release).

[15] ECF No. 112-1; ECF No. 125-2.  Although these documents are sealed, these allegations are repeated verbatim in the unsealed complaint in this case.  *See* ECF No. 1.

[16] ECF No. 125-2 at 3–4.

[17] *Id.* at 5.

[18] *Id.* at 5–12.

[19] *Id*. at 7.

the 'team' submitted written questions to Cristiano Ronaldo" and quotes the verbatim answers that he purportedly provided.[20]  It further hypothesizes that Ronaldo and this "team of fixers" conspired to obstruct Ronaldo's criminal prosecution by coercing Mayorga to agree to a civil settlement that would prevent her from pursuing criminal charges against him.[21]  Mayorga attests that Ronaldo's team knew that she "suffered severe psychological injuries as a result of the sexual assault" and "knew or should have known" that she lacked the capacity to enter into a settlement agreement.[22]  She accuses the team, aided by the mediator and her own attorney, of coercing her into settlement.[23]  Mayorga soon withdrew that verified complaint and filed the instant action in federal court against Ronaldo only; the factual allegations, theories, and claims are otherwise identical.[24]

In September 2019, Ronaldo moved to compel arbitration or dismiss this lawsuit based on the arbitration provision in the settlement agreement.[25]  The Football Leaks documents were attached to Mayorga's response.[26]  Ronaldo moved to strike those documents, arguing that they are attorney-client privileged and were obtained from a cyber hack.[27]  Mayorga opposed, arguing that Ronaldo waived his privilege by failing to safeguard the documents, disclosing them to third

---

[20] *Id.*

[21] *Id.* at 18–20, 21–22.  The complaint often appears to assert these claims against Ronaldo *and* his unnamed "team" though Ronaldo is the only named defendant.

[22] *Id.* at 25.

[23] *Id.* at 9–11.

[24] *Compare* ECF No. 1 (federal complaint) *with* ECF No. 125-2 (verified state-court complaint).

[25] ECF No. 26.

[26] This was the first time the documents were presented to opposing counsel.  A couple of weeks later, Mayorga attached them to her initial disclosures.  ECF No. 111-4 (Mayorga's initial disclosures, filed under seal).

[27] ECF No. 55.

parties, and putting them at issue by moving to strike.[28]  U.S. Magistrate Judge Daniel J. Albregts recommended granting the motion to strike,[29] and I adopted that recommendation in September 2020, finding that Mayorga's waiver arguments were unsupported.[30]  In the same order, I ruled that Mayorga must arbitrate all but one issue—that she lacked the mental capacity to assent to the settlement agreement—and I directed the parties to prepare for an eventual bench trial on that capacity issue.[31]

As discovery progressed, Stovall emailed defense counsel, requesting deposition availability for Ronaldo and his prior lawyers and agents.[32]  Defense counsel objected to those proposed depositions, contending that "[a]ny knowledge [those] deponents may have is either subject to the protections of the attorney[-]client and/or work[-]product privileges[] or is entirely irrelevant to this stage of the proceedings."[33]  Stovall insisted that the depositions of Ronaldo, his prior lawyers, and his agents would be relevant to Mayorga's mental capacity to enter into a settlement.[34]  While at an impasse on those depositions, counsel did schedule depositions of the mediator who handled the settlement negotiations in 2009 and his staff.[35]  Ronaldo's attorneys

---

[28] ECF No. 61.

[29] ECF No. 67.

[30] ECF No. 72.  Mayorga filed a notice of appeal to challenge that ruling but later voluntarily dismissed that appeal.  ECF No. 73; ECF No. 87.

[31] ECF No. 72 at 2.

[32] ECF No. 112-10 at 2.

[33] ECF No. 112-11 at 2.

[34] *See* ECF No. 112-14 at 2 (Stovall's letter to opposing counsel, stating that "the plaintiff has consistently taken the position that facts, and specifically, the conduct of the plaintiff, observed by the attorneys, investigator[,] and mediator (and his staff) are not privileged, are discoverable and relevant to the issue of capacity and the defendant's knowledge thereof.").

[35] ECF No. 112 at 8.

1   repeatedly pressed Stovall to agree that none of the Football Leaks documents could be used at

2   the deposition or in this litigation more generally, but he refused.[36]

3           With Mayorga's written authorization and as part of a joint request, the defense then

4   subpoenaed Metro's complete file pertaining to the alleged 2009 sexual assault.  Ronaldo

5   disclosed the resulting production to Mayorga in his second supplemental disclosures in April

6   2021.[37]  Metro's file contained the same Football Leaks documents attached to Mayorga's

7   response and disclosed in initial disclosures, plus approximately 400 additional documents that

8   also appear to be from Football Leaks.  About half of those additional documents are duplicates

9   of the original Football Leaks documents but in a different format; the other 200 documents did

10  not appear in the set that the plaintiff disclosed to the defense in this litigation but contain similar

11  communications between Ronaldo's and Mayorga's former lawyers and the mediator.[38]

12  **III.    Defendant's motion for sanctions and plaintiff's related motions**

13          In May 2021, Ronaldo filed a motion for case-terminating sanctions or, at a minimum, to

14  disqualify Stovall from this case for his continued insistence on using the ill-gotten Football

15  Leaks documents.[39]  He argues that Stovall acted in bad faith from the moment he sought to

16  obtain privileged documents and failed to inform opposing counsel that he was in possession of

17  such documents despite knowing their obvious privileged nature.[40]  Ronaldo also contends that

18  Stovall and Mayorga both extensively reviewed those documents, used them to craft the

19  complaint, and continue to pepper their filings with quotes from those documents despite them

20

---

21  [36] *Id.*

    [37] ECF No. 164 at 8.

22  [38] *See, e.g.*, ECF No. 111-18 (sealed).

23  [39] ECF No. 111 (sealed); ECF No. 112 (redacted).

    [40] ECF No. 112 at 15.

having been stricken.[41]   Mayorga responds that (1) she and Stovall were not the ones to misappropriate the documents from Ronaldo or his attorneys; (2) Ronaldo hasn't adequately shown that the documents are privileged; (3) Ronaldo waived privilege; (4) she believes the documents are subject to the crime-fraud exception to privilege but didn't seek a court ruling that the exception applies because the court held that her "illegality of contract" claim is arbitrable and therefore the exception is for the arbitrator to decide; and (5) Stovall did not provide the extra Football Leaks documents to Metro.[42]   The plaintiff also filed a motion for in camera review of all of the Football Leaks documents, arguing that they fall within the crime-fraud exception to attorney-client privilege.[43]

　　　　The magistrate judge conducted a hearing on the motions and issued a written order and recommendation.[44]   He found that Mayorga could not demonstrate that the crime-fraud exception applies based on the non-privileged documents that she presented and thus denied her motion for in camera review.[45]   He also recommends that I grant Ronaldo's motion for sanctions and dismiss this case because Stovall acted in bad faith when he used privileged information to prosecute this action.   The magistrate judge reasons that Stovall's disqualification would be an insufficient sanction because Mayorga also extensively reviewed the privileged documents, so "the [c]ourt will be unable to determine how much of her case is based on her independent recollection of events, or her recollection as influenced by the Football Leaks documents."[46]

---

[41] *Id.* at 15–16.

[42] ECF No. 123.

[43] ECF No. 124.

[44] ECF No. 142 (hearing transcript); ECF No. 143 (order and recommendation).

[45] *Id.* at 8–14.

[46] *Id.* at 15.

Mayorga appeals the magistrate judge's denial of in camera review.  I treat that objection to a non-dispositive motion as an appeal under Local Rule IB 3-1.[47]  Mayorga also objects to the magistrate judge's dismissal recommendation, contending primarily that Ronaldo never made a prima facie showing that each Football Leaks document is in fact privileged.[48]  And Mayorga belatedly moves to amend or correct my September 2020 order striking the then-disclosed Football Leaks documents, largely repeating the same arguments she raises in her objections.[49]

I deny the motion to amend because Mayorga does not adequately demonstrate that reconsideration is warranted.  I deny her appeal of the magistrate judge's in camera review order because she hasn't shown legal error.  And I overrule Mayorga's objections and adopt the magistrate judge's with-prejudice dismissal recommendation.  Stovall's repeated use of stolen, privileged documents to prosecute this case has every indicia of bad-faith conduct.  And because the record shows that he and Mayorga have extensively reviewed these documents and used them to fashion the very basis of Mayorga's claims, simply disqualifying Stovall will not purge the prejudice from their misuse.

## Analysis

### I.    Plaintiff's motion to amend or correct (ECF No. 154)

In an effort to chip away at the footings of the magistrate judge's case-terminating-sanctions recommendation, Mayorga belatedly asks me to reconsider the original adverse ruling on the Football Leaks documents: the order striking the documents that she attached to briefs more than two years ago.[50]  Under Local Rule 59-1, reconsideration of an interlocutory order

---

[47] L.R. IB 3-1.

[48] ECF No. 152; ECF No. 153.

[49] ECF No. 154.

[50] *See* order at ECF No. 72.

"may be appropriate if (1) there is newly discovered evidence that was not available when the original motion or response was filed, (2) the court committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law."[51]  Mayorga contends that there has been an intervening change in the law that warrants reconsideration and that I committed clear error "by applying . . . state law to determine applicability of the attorney[-]client privilege rather than . . . federal common law."[52]  Ronaldo responds that this motion is untimely; no change in controlling law warrants reconsideration; and no matter what privilege law is applied, the Football Leaks documents are obviously privileged and should remain struck.[53]

### A.  Plaintiff has not demonstrated that her reconsideration request is timely.

Under this district's local rules, motions for reconsideration "must be brought within a reasonable time."[54]  "Lack of diligence or timeliness may result in denial of the motion."[55]  Ronaldo contends that Mayorga's motion—brought more than a year after I granted his motion to strike—is patently untimely and should be denied on that basis.[56]  Mayorga responds that the motion is timely because she believes that previous court orders "deferred ruling on the applicability of the crime[-]fraud exception to the Football Leaks documents apparently to avoid encroaching upon the issue of illegality to contract" that I ruled must be resolved through

---

[51] L.R. 59-1(a).

[52] ECF No. 154 at 3–4.

[53] ECF No. 163.

[54] L.R. 59-1(c).

[55] *Id.*

[56] ECF No. 163 at 2–3.

arbitration.[57]  Mayorga apparently believes that, because the court did not address her crime-fraud-exception argument at the motion-to-strike stage, it intentionally meant to leave that issue for the arbitrator to decide.

I can find no language in my order or the magistrate judge's recommendation that supports plaintiff's interpretation.  Even assuming that her interpretation of those previous orders is reasonable, it does not justify plaintiff's 13-month failure to move for reconsideration of an order she believed to be legally flawed.  As explained more fully below, plaintiff's arguments boil down to the contention that the defense failed to comply with federal or state rules of civil procedure governing the assertion of privilege.  Those rules were in place with the same force one year ago that they are today, so I am inclined to deny this motion as untimely.  But given that plaintiff's arguments for reconsideration overlap with the issues undergirding the recommendation to dismiss this case, I address their merits and conclude that the original privilege finding was—and remains—sound.

**B.    Plaintiff's request for reconsideration merits no relief.**

In his November 2019 motion to strike, Ronaldo argued that the majority of the Football Leaks documents Mayorga attached—with the exception of some newspaper articles that did not reference privileged communications—are privileged under Nevada law.[58]  Mayorga responded that the documents are not privileged because the defense failed to adequately safeguard them and put them at issue by filing the motion to strike, and that they fall under the crime-fraud exception to privilege.[59]  I granted the motion to strike on the basis of privilege and found

---

[57] ECF No. 174 at 2 (citing ECF No. 67; ECF No. 72).

[58] ECF No. 55.

[59] ECF No. 61.

Mayorga's waiver arguments unconvincing.[60]  Now Mayorga raises three new arguments: there has been a change in Nevada law that requires a second look at Ronaldo's assertion of privilege; federal law should have governed the court's privilege inquiry; and Ronaldo waived privilege by his failure to comply with the federal and state rules of civil procedure.[61]  Each argument can be distilled to the same basic proposition: because Ronaldo did not provide a privilege log or describe how each and every Football Leaks document is privileged, he failed to properly assert the privilege.

### 1.    *The complaint sounds solely in state law, so Nevada law applies to the defendant's claim of privilege.*

Federal Rule of Evidence 501 provides that state law governs privilege inquiries "regarding a claim or defense for which state law supplies the rule of decision."[62]  In his motion to strike, Ronaldo argued that state privilege law applies because "all of [Mayorga's] claims are brought under state law."[63]  At the time, Mayorga did not squarely address the choice-of-law question, citing both state and federal court cases in her analysis.[64]  She now argues that Ronaldo "misconstrued the complaint" when he argued that it sounds solely in state law.[65]  She contends that "[a] number of claims alleged in the complaint are based upon corresponding federal and state laws."[66]  She argues that her first claim for battery is a federal one because "sexual assault

---

[60] ECF No. 72.

[61] ECF No. 154.

[62] Fed. R. Evid. 501.

[63] ECF No. 55 at 7.

[64] *See, e.g.*, ECF No. 61 at 22, 26–27.

[65] ECF No. 154 at 7.

[66] *Id.* at 6.

under federal law is a federal crime under 18 U.S.C. [§] 2241" and that her second claim for coercion and fraud implies federal criminal statutes 18 U.S.C. § 875(d) (extortion), 18 U.S.C. § 4 (misprision of a felony), 18 U.S.C. § 1343 (wire fraud), and 18 U.S.C. § 1962 and § 1964 (federal racketeering).[67]  Mayorga also contends that she brought a racketeering-and-civil-conspiracy claim, which is actionable under both state and federal law.[68]

This argument borders on frivolous.  "A plaintiff is the master of [her] complaint and responsible for articulating cognizable claims,"[69] but "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly ple[d] complaint."[70]  Despite plaintiff's attempt to paint her complaint as one presenting federal questions, it contains no federal claims—or any mention of federal statutes—on its face.  Plaintiff's causes of action are abuse of a vulnerable person under Nevada Revised Statutes (NRS) 200.5092, racketeering and civil conspiracy under NRS 207.470, battery, intentional infliction of emotional distress, coercion and fraud, defamation, abuse of process, negligence, and breach of contract.[71]  She also seeks declaratory relief under NRS 30.040.[72]  Most of these claims sound exclusively in state civil law.  Plaintiff's post hoc rationalization that her battery and fraud claims are federal because sexual assault, misprision of a felony, and extortion are also federal crimes fails because federal

---

[67] *Id.* at 7.

[68] *Id.*; *see also* 18 U.S.C. § 1962(a); Nev. Rev. Stat. § 207.400(1)(a).  I refer to these racketeering claims as "RICO" ones, the common shorthand for the federal Racketeer Influenced and Corrupt Organizations Act.

[69] *Newtok Village v. Patrick*, 21 F.4th 608, 616 (9th Cir. 2021).

[70] *Id.* (quoting *Caterpiller Inc. v. Williams*, 482 U.S. 386, 392 (1987)).

[71] *See generally* ECF No. 1.

[72] *Id.* at 27–29.

1 criminal statutes cannot serve as the bases of claims brought by private parties in this civil

2 context.[73]

3      Plaintiff's assertion that her complaint contains a federal RICO claim is demonstrably

4 false.  The complaint includes a claim for racketeering and civil conspiracy, but it expressly

5 states that the claim is brought under Nevada's civil RICO law.[74]  So plaintiff's contention that

6 her "federal" RICO claim confers federal-question jurisdiction falls flat.  And as further proof of

7 the purely state-law nature of the complaint, she included in it the allegation that diversity—not a

8 federal question—is her basis for invoking federal jurisdiction.[75]  Her revisionist effort to insist

9 otherwise does not comport with this circuit's policy that a well-pled complaint determines

10 jurisdiction.[76]  So I categorically reject plaintiff's attempts to transmute her state-law claims into

11 federal-law claims such that federal law should apply to the defendant's claim of attorney-client

12 privilege.

13           **2.      *Plaintiff identifies no change in controlling law.***

14      Mayorga's new-controlling-law argument is based on the Nevada Supreme Court's

15 opinion in *Superpumper, Inc. v. Leonard*.[77]  She contends that, before *Superpumper*, the only

16 "reported Nevada Supreme Court case discussing [Nevada Rule of Civil Procedure (NRCP)]

17

18

19

20 [73] *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) (finding that federal criminal
provisions "provide no basis for civil liability").

21 [74] ECF No. 1 at 22 (alleging that defendants engaged in racketeering activities "as defined by"
NRS 207.360(6) and (10) and that they are liable under NRS 207.470 for treble damages).

22 [75] ECF No. 1 at 1–2.

23 [76] *Patrick*, 21 F.4th at 616.

[77] *Superpumper, Inc. v. Leonard*, 495 P.3d 101, 107 (Nev. 2021).

26(b)(5)(A)"[78] was *Valley Health Systems, LLC v. Eighth Judicial District Court*.[79]  In a footnote in *Valley Health Systems*, the Court noted that a party claiming privilege "did not comply with NRCP 26(b)(5), which requires a party claiming privilege to describe the nature of the materials that are allegedly privileged."[80]  But because the parties did not brief the issue, the Court declined to rely on noncompliance with NRCP 26 in its decision.[81]  Mayorga contends that *Valley Health Systems* left it "unclear what standard would be applied to determine whether a party met the threshold burden to claim a privilege under NRCP 26(b)(5)(A)," and *Superpumper* clarified this "threshold burden of articulating [a] claim of privilege."[82]  The decision represents a change in controlling law, she argues, because the Nevada Supreme Court relied on the rule to reject a party's claim of privilege, finding that it "failed to identify specific information or documents that it believes are protected."[83]

But *Superpumper* changed nothing.  It merely reiterated the burden articulated in NRCP 26(b)(5)(A), which clearly states that the party withholding information on the basis of privilege "must expressly make the claim and describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."[84]  Plaintiff does not show how *Superpumper* altered the application of NRCP 26 to parties asserting

---

[78] ECF No. 154 at 4.

[79] *Valley Health Sys., LLC v. Eighth Jud. Dist. Ct.*, 252 P.3d 676 (Nev. 2011).

[80] *Id.* at 679 n.7.

[81] *Id.*

[82] ECF No. 154 at 5.

[83] *Id.* (quoting *Superpumper*, 496 P.3d at 107).

[84] Nev. R. Civ. P. 26(b)(5)(A) (cleaned up).

privilege.  Nor did she raise noncompliance with NRCP 26 in her initial response brief, despite the rule clearly articulating the burden that plaintiff now contends the defendant did not meet. So Mayorga has not demonstrated that an intervening change in controlling law merits reconsideration.

### 3.   *Plaintiff's argument that the defendant failed to comply with federal or state procedural rules when asserting privilege is unavailing.*

Plaintiff relatedly argues that *Superpumper* indicates that the Nevada Supreme Court is likely to "strictly construe" NRCP 26(b)(5)(A)'s requirements, much like the Ninth Circuit does with its federal corollary, Federal Rule of Civil Procedure (FRCP) 26(b)(5)(A).[85]  She contends that the Ninth Circuit places the burden on the party asserting the privilege to "establish[] the relationship and the privileged nature of the communication."[86]  "Blanket assertions [of privilege] are 'extremely disfavored,'" so the party asserting privilege must "identify specific communications and the grounds supporting the privilege as to each piece of evidence over which the privilege is asserted."[87]  The Ninth Circuit has endorsed the "privilege-log" approach to providing this information, in which the asserting party does not reveal the documents themselves, but must describe the documents in enough detail to "enable other parties to assess

---

[85] ECF No. 154 at 6.

[86] *Id.* at 8; *United States v. Bauer*, 132 F.3d 504, 507 (9th Cir. 1997); *Weil v. Inv./Indicators, Rsch. & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981) ("Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed.").

[87] *U.S. v. Martin*, 278 F.3d 988, 1000 (9th Cir. 2002) (first quoting *Clarke v. Am. Com. Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 1992); then citing *United States v. Osborn*, 561 F.2d 1334, 1339 (9th Cir. 1977)).

the claim."[88]  Plaintiff contends that the defense did not provide the information typically on a privilege log for each and every document and thereby waived privilege.[89]

As indicated by NCRP and FRCP 26(b)(5)(A)(ii), the reason behind the requirement that parties specifically identify documents through a privilege log is to allow them to describe the documents "in a manner that, *without revealing information itself privileged or protected, will enable other parties to assess the claim.*"[90]  The typical application of this rule happens when one party has documents responsive to a discovery request but chooses not to produce them because the holder of those documents believes they are privileged.  To protect those documents, the holder instead lists them in a privilege log with sufficient detail to indicate what the documents are and why they are privileged without revealing their contents.[91]  Ronaldo contends that he substantially complied with NRCP 26 in his motion to strike and that strict technical compliance is unnecessary because Mayorga already had the documents—indeed, she disclosed them—and therefore she does not need the benefit of a privilege log to assess how or why they are privileged.[92]

Even assuming that the Nevada Supreme Court would interpret NRCP 26 as strictly as the Ninth Circuit interprets FRCP 26, I find that the defense satisfied the spirit, if not the letter, of NRCP 26(b)(5)(A) under the unusual circumstances presented here.  Mayorga's argument that

---

[88] Nev. R. Civ. P. 26(b)(5)(A)(ii); Fed. R. Civ. P. 26(b)(5)(A)(ii).

[89] ECF No. 154 at 7.

[90] Fed. R. Civ. P. 26(b)(5)(A)(ii) (emphasis added).

[91] *See In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992) (stating that the Ninth Circuit has "recognized a number of means of sufficiently establishing the privilege, one of which is the privilege[-]log approach") (citing *Dole v. Milonas*, 889 F.2d 885, 888 n.3 (9th Cir. 1989)).

[92] ECF No. 163 at 5–8.

Ronaldo had to assert the privilege through a privilege-log format elevates form over substance to an absurd degree.  The purpose of a privilege log is to inform other parties of the existence of documents that may be relevant to a case but will not be turned over.  That purpose did not exist here because the plaintiff disclosed defendant's privileged documents in the first place.  Indeed, plaintiff—or, more accurately, plaintiff's counsel—was in a position to intuit the privileged nature of the documents when he explicitly asked a shady source for documents containing prior defense counsel's purloined communications.  To adopt plaintiff's interpretation of the privilege-log requirements would create a perverse incentive for unscrupulous attorneys or litigants to seek privileged documents outside of the discovery process in the hopes that the privilege-asserting party doesn't create a privilege log and thus waives privilege, allowing the documents to be used in court.  This "gotcha" result cannot be the intent of these procedural rules.[93]

Technical compliance aside, the Football Leaks documents clearly meet federal and state standards for privilege.  Nevada law[94] gives a client the privilege:

> to refuse to disclose, and to prevent any other person from disclosing, confidential communications between the client or the client's representative and the client's lawyer or the representative of the client's lawyer[, and] between the client's lawyer and the lawyer's representative[,] made for the purpose of facilitating the rendition of professional legal services to the client, by the client or the client's lawyer to a lawyer representing another in a matter of common interest.[95]

---

[93] Plaintiff also argues that the defense's refusal to authenticate the documents prevents the defendant from being able to establish the privilege.  ECF No. 154 at 17–18; ECF No. 153 at 2–3.  But the plaintiff's protestation that the defense has not strictly complied with the discovery rules, when it was her attorney's misconduct that prevented the usual process from playing out, is not well taken.

[94] As explained *supra* at pp. 13–15, Mayorga's claims sound purely in state law.

[95] Nev. Rev. Stat. § 49.095 (cleaned up).

A "representative of the lawyer" is defined as "a person employed by the lawyer to assist in the rendition of professional legal services."[96]  A communication is deemed confidential "if it is not intended to be disclosed to third persons other than those to whom disclosure is in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication."[97]

Defendant's claim that some of the documents are protected under the work-product doctrine is governed by FRCP 26(b)(3).[98]  "The attorney-work-product privilege protects from discovery in litigation 'mental impressions, conclusions, opinions, or legal theories of a party's attorney' that were 'prepared in anticipation of litigation or for trial.'"[99]  The privilege applies to documents created by investigators and consultants working for attorneys if they were prepared in anticipation of litigation.[100]

---

[96] *Id.* at § 49.085.

[97] *Id.* at § 49.055.

[98] Plaintiff argues for the first time in her motion for reconsideration that the work-product doctrine is governed by federal law in diversity cases.  ECF No. 154 at 11.  She did not raise this argument in her initial motion and does not represent that there has been any change in the controlling law or clear error that permits her to raise it now.  Regardless, the Ninth Circuit has not decided whether federal or state law governs work-product claims, but most district courts and other circuit courts to do so have held that the work-product doctrine is procedural and, thus, federal law applies.  *See, e.g.*, *Frontier Refining, Inc. v. Gorman-Rupp, Inc.*, 136 F.3d 695, 702 n.10 (10th Cir. 1998); *United Coal Cos. v. Powell Constr. Co.*, 839 F.2d 958, 966 (3d Cir. 1998); *Kandel v. Brother Intern. Corp.*, 683 F. Supp.2d 1076, 1083 (C.D. Cal. 2010); *McKenzie Law Firm, P.A. v. Ruby Receptionists, Inc.*, 333 F.R.D. 638, 641 (D. Or. 2019).  Defendant does not contest the applicability of federal law to the work-product doctrine analysis, and I agree with the majority of courts that have so held.

[99] *ACLU of N. Cal. v. U.S. Dep't of Justice*, 880 F.3d 473, 483 (9th Cir. 2018) (quoting Fed. R. Civ. P. 26(b)(3)).

[100] *Phillips v. C.R. Bard, Inc.*, 290 F.R.D. 615, 649 (D. Nev. 2013) (citing *In re Grand Jury Subpeona, Mark Torf/Torf Env't Mgmt.*, 357 F.3d 900, 907 (9th Cir. 2004)); *see also United States v. Nobles*, 422 U.S. 225, 239 (1975) (noting that the work-product doctrine "is an intensely practical one," acknowledging that "attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial," and thus

The Football Leaks documents are textbook examples of materials that fall squarely in the heartland of Nevada's attorney-client privilege and the federal work-product doctrine.  They contain privileged communications among Ronaldo's many lawyers and between those lawyers and an investigator hired to assist them in their representation of Ronaldo.  Those communications include counsel's impressions of the strengths and weaknesses of their client's case and discussions of legal analysis and strategies in preparation for civil (and possibly criminal) litigation.  They also include question-and-answer documents containing information that the defendant supplied only to his counsel, and on which the attorney wrote his thoughts and analyses of the questions and the legal implications of the possible answers.[101]  They contain summaries of work performed while rendering legal services.  And most of the communications bear conspicuous notices that they are attorney-client privileged and confidential.  Plaintiff's technical arguments do not change the plainly privileged nature of these documents.  So, having reconsidered the order striking the documents in light of the plaintiff's arguments, I conclude that no relief is merited.

## II.   Plaintiff's appeal of the magistrate judge's in camera review order (ECF No. 152)

Next, Mayorga challenges the magistrate judge's denial of her request for an in camera review of the Football Leaks documents to determine whether they satisfy the crime-fraud exception to the attorney-client privilege.  The crime-fraud exception, as explained by the Supreme Court in *United States v. Zolin*, exists to "assure that the seal of secrecy between lawyer

---

that the doctrine must "protect material prepared by [investigators] for the attorney as well as those prepared by the attorney himself").

[101] The defense disputes the authenticity of these documents and contends that some of them may have been fabricated.  My discussion here is not meant to imply that I believe the documents represent defendant's true answers to the questions asked or that the question-and-answer documents indeed memorialize any real discussions that he had with his lawyers.

and client does not extend to communications made for the purpose of getting advice for the commission of a fraud or crime."[102]  It allows a court to conduct an in camera review of attorney-client-privileged documents to determine whether they contain evidence of an ongoing or future crime, such that the privilege does not rightfully apply.[103]  But before a court is obligated to conduct such a review, the party asserting the exception must present non-privileged evidence "sufficient to support a reasonable belief that in camera review may yield evidence that establishes the exception's applicability."[104]

The magistrate judge denied plaintiff's motion for in camera review because she did not meet *Zolin*'s threshold showing.[105]  Plaintiff objects to the magistrate judge's finding largely based on his "presumption" that the Football Leaks documents are privileged.[106]  She asks me to "sustain [her] objection, find waiver based upon the defendant's failure to make a prima facie showing of privilege[,] and deny the motion for in camera review as moot or . . . order 'in camera review' to determine if the Football Leaks documents reveal evidence to establish the claim that the crime[-]fraud exception applies."[107]  A district judge may reconsider any non-dispositive matter that has been finally determined by a magistrate judge "when it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."[108]  A district court should overturn a magistrate judge's determination under this "significantly deferential"

---

[102] *United States v. Zolin*, 491 U.S. 554, 563 (1989) (cleaned up).

[103] *Id.*

[104] *Id.* at 574–75.

[105] ECF No. 143 at 10–14.

[106] ECF No. 152.

[107] *Id.* at 2.

[108] L.R. IB 3-1(a).

1  standard only if it has "a definite and firm conviction that a mistake [of fact] has been

2  committed"[109] or that a relevant statute, law, or rule has been omitted or misapplied.[110]

3        Mayorga's first contention that the defendant failed to make a prima facie showing of

4  privilege again relies on the misguided assertion that he did not satisfy the requirements in

5  NRCP 26.  That argument fails for the same reason it did not persuade me to reconsider my prior

6  orders,[111] and I do not address it again here.  Mayorga next contends that the magistrate judge

7  committed clear error in finding that he could not decide whether Ronaldo or his attorneys

8  concealed a crime because he would be required to "first decide that Ronaldo committed a crime

9  that night in 2009."[112]  Mayorga argues that it was error to require proof of a predicate crime at

10  the first step of the crime-fraud exception analysis.[113]  But the magistrate judge did not rely on

11  that finding to determine whether the crime-fraud exception applied.  He went on to explain that,

12  even if he assumed that Ronaldo committed a crime, Mayorga's non-privileged evidence did not

13  meet the threshold to show a reasonable belief that Ronaldo and his lawyers committed further

14  crimes when handling the settlement negotiations.[114]  So, to the extent that the magistrate judge's

15  analysis of the defendant's unproven predicate crime was error, it was harmless.

16

17

18

---

19  [109] *Concrete Pipe and Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602, 623 (1993) (internal quotation marks omitted).

20  [110] *See Grimes v. City and Cnty. of San Francisco*, 951 F.2d 236, 240–41 (9th Cir. 1991).

   [111] *See supra* at pp. 13–19.

21  [112] *Id.* at 4–5 (quoting ECF No. 143 at 9).

22  [113] *Id.*

23  [114] ECF No. 143 at 9 ("Even if the court did conclude that Ronaldo committed a crime that night in 2009, the court could not find that Ronaldo employed his attorneys to violate [the law] by negotiating the settlement agreement." (cleaned up)).

Mayorga then argues that the magistrate judge erred in finding that the non-privileged evidence she submitted did not satisfy *Zolin*'s threshold requirement.[115]  She presented eight documents that she claims show that Ronaldo and his attorneys were involved in the commission of a crime: a declaration by Stovall, Mayorga's verified complaint, two 2010 settlement agreements, two of Stovall's letters to Metro asking the police to re-open its investigation, the warrant that Metro issued against Ronaldo, and the Clark County District Attorney's press release declining to prosecute him.[116]  She claimed that these documents form a reasonable belief that Ronaldo and his attorneys conspired to conceal a crime when they required that the settlement contain clauses requiring Mayorga to drop all criminal charges, destroy all communications about her allegations, and refuse to discuss her account of the alleged sexual assault.[117]  She reasoned that these requirements "were for the express purpose of concealing, obstructing, and preventing the prosecution of the defendant for the crime of sexual assault."[118]

The magistrate judge evaluated this evidence.  He concluded that Stovall's declaration and Mayorga's verified complaint could not be considered because it is "impossible for the [c]ourt to determine which statements and allegations are based on Mayorga's independent recollection of the settlement negotiations and which are based on the Football Leaks documents."[119]  He found that the settlement agreements showed "no evidence that Ronaldo or his attorneys intimidated Mayorga or impeded law enforcement," reasoning that the agreements contain numerous clauses that would allow Mayorga to speak to law enforcement or engage in

---

[115] ECF No. 152 at 6.

[116] ECF No. 124 at 5–6.

[117] *Id.* at 6.

[118] *Id.* at 3.

[119] ECF No. 143 at 12.

judicial proceedings to the extent required by law.[120]  And he found that the Metro warrant and the District Attorney's press release do not support Mayorga's arguments because they merely show that Mayorga had already dropped her criminal charges against Ronaldo before she pursued civil action and began communicating with his lawyers, raising the inference that Mayorga chose not to pursue criminal prosecution independent of the settlement negotiations.[121]

Plaintiff raises no new arguments showing that these documents meet *Zolin*'s threshold showing or how the magistrate judge erred in his thorough and detailed written analysis.[122]  She instead repeatedly cites to privileged documents to undergird her arguments, in direct contravention of *Zolin*'s direction that the threshold showing can be met only through "relevant evidence, lawfully obtained, that has not been adjudicated to be privileged."[123]  On this record, I cannot find that the magistrate judge erred in his analysis of the facts or law, so I overrule plaintiff's objection and affirm that ruling.

### III.   Plaintiff's objection to the dismissal recommendation (ECF No. 153)

Finally, I turn to the most consequential issue in these myriad filings: the magistrate judge's recommendation that I dismiss this case with prejudice as a sanction for plaintiff's counsel's bad-faith efforts to obtain his adversary's privileged documents outside of the discovery process, and for his continued and insistent use of those documents in this case.[124] Mayorga objects to that recommendation, arguing that Ronaldo waived his privilege and is

---

[120] *Id.*

[121] *Id.* at 13.

[122] *See* ECF No. 143 at 8–13.

[123] *Zolin*, 491 U.S. at 575.

[124] ECF No. 143 at 14–22.

judicially estopped from seeking sanctions.[125]  She also contends that the magistrate judge erred by crediting the defense's unsupported assertion that Stovall failed to disclose additional documents that he previously gave to Metro.[126]  I first address each of Mayorga's objections and then consider de novo whether case-dispositive sanctions are warranted.[127]

### A.    Plaintiff's objections to the dismissal recommendation are meritless.

#### 1.    *The defendant did not waive privilege.*

Mayorga's first waiver theory is a repeat of the one she asserts in her motion to amend: Ronaldo waived privilege by failing to identify the documents that he claims are privileged in strict compliance with state and federal rules of civil procedure.[128]  But as explained *supra*, the defense met this burden under these circumstances.[129]  It would have been an exercise in futility for the defendant to create a privilege log for documents his adversary sought out and produced. Mayorga also re-raises the argument made in her response to Ronaldo's motion to strike that Ronaldo waived his privilege when he put the documents "at issue" by moving to strike them and making them the basis of his sanctions motion.[130]  But it was the plaintiff who put these documents at issue by attaching them as evidence in this case, and the defendant did not waive privilege by asserting it or by pursuing sanctions for the repeated use of these hacked documents.

---

[125] ECF No. 153 at 12–19.

[126] *Id.* at 19–23.

[127] *See* Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1)(B); L.R. IB 3-2(b) (requiring a district judge to review de novo only the portions of a report and recommendation addressing a case-dispositive issue to which a party objects).

[128] *Id.* at 3–12.

[129] *See supra* at pp. 13–19.

[130] *Id.* at 14–15.

Plaintiff contends that the defense also waived privilege by not doing enough to stop her from repeatedly disclosing the Football Leaks documents throughout this litigation.[131]  She highlights two of those disclosures—her October 7, 2019, initial disclosures and her attachment of the documents to her response to the motion for sanctions.[132]  But her characterization of the defense's efforts is specious.  The day after plaintiff's counsel first disclosed the possession of these documents, the defense informed him of the privileged nature of the documents and that they would act to ensure that the documents were stricken from the record.[133]  When they followed through, I granted that motion to strike on the basis of privilege.[134]  It was not unreasonable for the defense to assume that this would have brought an end to the matter—an order striking documents on the basis of privilege can be fairly interpreted to preclude a party from repeatedly filing and relying on those same documents.  And plaintiff's semantical argument that the court struck "Exhibits 4 and 5" from her motion-to-compel response but the ruling had no effect on the exact same documents plaintiff disclosed in different forms throughout this case, is illogical.[135]  Plaintiff's insistence on repeatedly attaching and citing to documents that the court had ruled were privileged and could not be utilized does not demonstrate that the defendant failed to protect those documents; it shows plaintiff's disregard for the court's order.

Mayorga's final waiver theory is that Ronaldo waived privilege by disclosing the Metro file containing the Football Leaks documents and attaching those documents under seal to his

---

[131] *Id.* at 13–14.

[132] *Id.*

[133] ECF No. 112-5.

[134] ECF No. 72.

[135] *See* ECF No. 153 at 14.

motion for sanctions.  I decline to rule that the defendant waived privilege by producing

documents received in response to a joint request and only with plaintiff's authorization,

particularly when those documents appeared at first glance to contain only repeats of the Football

Leaks documents that plaintiff's counsel supplied to Metro in the first place.  And assuming for

the sake of analysis that the defense did act carelessly in disclosing that file, plaintiff's counsel's

unprincipled conduct occurred long before the Metro file was produced.  Any missteps the

defense may have made in navigating this unorthodox predicament of plaintiff's making neither

excuse nor obscure the original discovery misconduct.  So I overrule plaintiff's waiver

objections.

### 2.    *The defendant is not judicially estopped from seeking sanctions.*

Mayorga next argues that Ronaldo is judicially estopped from seeking sanctions because

he moved to strike the Football Leaks documents instead.[136]  Judicial estoppel is an equitable

doctrine that "seeks to prevent the deliberate manipulation of the courts."[137]  "Courts have

recognized that the circumstances under which judicial estoppel may appropriately be invoked

are not reducible to any general formulation."[138]  But the Supreme Court has articulated a non-

exhaustive list of factors for a court to consider when exercising its discretion to invoke judicial

estoppel, the first of which requires that "a party's later position must be clearly inconsistent with

its earlier position."[139]

---

[136] ECF No. 153 at 16–19.

[137] *United States v. Ibrahim*, 522 F.3d 1003, 1009 (9th Cir. 2008) (quoting *Helfand v. Gerson*, 105 F.3d 530, 536 (9th Cir. 1997) (emphasis in *Ibrahim* removed)).

[138] *New Hampshire v. Maine*, 532 U.S. 742, 743 (2001).

[139] *Id.*

Mayorga has not established this threshold requirement.  She argues that Ronaldo should be estopped from moving to dismiss her case or disqualify her counsel because he originally only moved to strike the Football Leaks documents.  That motion was granted, but that didn't curb the violations.  Stovall continued to insist that he could use documents that he believes are not privileged—despite the court's ruling that they are—and without seeking further guidance from the court on the privilege's applicability.  So the defense escalated to the next step: a motion for sanctions.  Because the sanctions motion is entirely consistent with the motion to strike, I find that the defendant is not judicially estopped from seeking sanctions, and I overrule this objection.

### 3.   *The magistrate judge's recommendation does not rely on a finding that counsel failed to disclose relevant documents.*

Mayorga's final objection is to the "pretextual" reason for Ronaldo's resort to a motion for sanctions: the allegation that Stovall disclosed documents to Metro that he failed to disclose to Ronaldo in discovery.[140]  Mayorga contends that Ronaldo has not presented any evidence that the additional Football Leaks documents in the Metro file came from her counsel; indeed, Stovall has consistently maintained that he never saw those documents before Ronaldo's disclosure and did not provide that set to Metro.[141]  So Mayorga argues that the magistrate judge erred when he "adopt[ed]" Ronaldo's unsupported speculation that Stovall did, in fact, withhold discovery.

But the magistrate judge specifically notes in his report and recommendation that he does not base his ruling on Ronaldo's suspicion "that Stovall provided [Metro] with documents he did not produce to Ronaldo in this litigation."[142]  Because the magistrate judge does not rely on that

---

[140] ECF No. 153 at 19–22.

[141] *Id.*

[142] ECF No. 143 at 17 n.3.

1  accusation, I overrule Mayorga's objection.  And as the record does not demonstrate that Stovall

2  provided the additional documents to Metro, that allegation figures not in my sanctions analysis.

3  **B.    De novo assessment of case-terminating sanctions**

4  "District courts have an inherent power to control their dockets.  In the exercise of that

5  power they may impose sanctions including, where appropriate, default or dismissal."[143]  The

6  Ninth Circuit requires district courts to consider five factors before imposing the harsh sanction

7  of dismissal: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need

8  to manage its docket; (3) the risk of prejudice to the other party; (4) the public policy favoring

9  the disposition of cases on their merits; and (5) the availability of less drastic sanctions."[144]

10 Because the first two factors usually favor dismissal, while the fourth cuts against such a

11 sanction, "the key factors are prejudice and availability of lesser sanctions,"[145] and "[f]or

12 dismissal to be proper, the conduct to be sanctioned must be due to willfulness, fault, or bad

13 faith."[146]  Finally, "[d]ue process concerns further require that there exist a relationship between

14 the sanctioned party's misconduct and the matters in controversy such that the transgression

15 'threaten[s] to interfere with the rightful decision of the case.'"[147]

16 The magistrate judge carefully applied the standard for case-dispositive sanctions and

17 determined that the conduct in this case warrants the severe sanction of dismissal.[148]  He

18 concluded that Stovall acted in bad faith "by asking for, receiving, and using the Football Leaks

19

20 ───────────

[143] *Thompson v. Hous. Auth. of City of Los Angeles*, 782 F.2d 829, 831 (9th Cir. 1986).

[144] *Id.*

21

[145] *Wanderer v. Johnston*, 910 F.2d 652, 656 (9th Cir. 1990).

22

[146] *Anheuser-Busch, Inc. v. Nat. Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995).

23

[147] *Id.* (quoting *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 591 (9th Cir. 1983)).

[148] ECF No. 143 at 14–22.

documents to prosecute Mayorga's case."[149]  He found that the prejudice to the defense is great,

reasoning that "Mayorga's case against Ronaldo would probably not exist had Stovall not asked

for the Football Leaks documents," and he found that prejudice pervasive because "[t]he content

of Ronaldo's and his attorneys' privileged communications and work product is woven into

Mayorga's . . . complaint[], creating the basis for her causes of action."[150]  He also determined

that lesser sanctions like disqualifying counsel would not cure the prejudice because his actions

made it impossible to disentangle the facts gleaned from the improperly procured documents

from those based on his client's independent recollection or other admissible evidence.[151]

Plaintiff's many filings protesting dismissal are laser focused on the issue of privilege

and what the defense did and did not do to protect the Football Leaks documents from disclosure

and use throughout this litigation.  But whether this drastic sanction is warranted turns not on the

singular issue of these documents' privileged nature.  This inquiry is more broadly informed by

Stovall's questionable procurement of the documents, his failure to inform the defense that likely

privileged documents were in his possession, and his intentional circumvention of court

processes to address if and how these documents could be used to prosecute this case.  It is the

confluence of these transgressions that makes dismissal the only appropriate remedy here.

### 1.    Counsel's conduct amounts to bad faith.

As the sanction of dismissal is appropriate only to penalize conduct "due to willfulness,

fault, or bad faith," I start by considering whether Stovall's actions meet that threshold.  He

crossed the border of ethical behavior before he filed this action, and his disregard for the rules

---

[149] *Id.* at 17.

[150] *Id.* at 19.

[151] *Id.* at 21.

of this court has continued unabated.  After reading about Football Leaks and unsuccessfully

seeking those documents from more reputable sources—Mayorga's former attorney and the

German newspaper that first reported on them—Stovall reached out to Pinto directly, asking for

documents concerning "the employment of attorneys and investigators by Ronaldo" and "the

reporting and communications of th[ose] attorneys and investigators [that] . . . represent[ed] and

defend[ed] Ronaldo . . . ."[152]  This was, without question, a solicitation for privileged documents.

When Pinto responded with hundreds of clearly privileged documents, Stovall accepted

and reviewed them despite the many red flags their contents should have raised.  He then gave

the documents to his client to review and ultimately used them to craft the complaints he filed on

her behalf in state and federal court.  Counsel carefully worded those complaints to obscure the

fact that the defendant's "team of fixers"—whom he identified as Doe and Roe defendants in the

state-court complaint, despite knowing their names, and ultimately dropped as defendants in this

lawsuit—was in fact a team of lawyers, and that the quoted communications between those

"fixers" were largely hacked, internal emails between defendant's attorneys.[153]  Much of

plaintiff's complaint comes directly from the hacked documents and (despite naming Ronaldo as

the only defendant) levels serious accusations of fraud and conspiracy against his lawyers based

on their confidential communications.[154]  And after Stovall finally disclosed the documents by

---

[152] ECF No. 111-4 at 30–31.

[153] A review of the Nevada Rules of Professional Conduct should have alerted counsel that at least some action should have been taken to notify Ronaldo's attorneys that he had privileged documents.  Rule 4.4 provides that "[a] lawyer who receives a document . . . relating to the representation of a lawyer's conduct and knows or reasonably should know that the document . . . was inadvertently sent shall promptly notify the sender."  Nev. Rules of Prof'l Conduct R. 4.4.  Of course, there was nothing "inadvertent" about Stovall's procurement of these documents, but the spirit of the rule reflects Nevada's strong public policy against invading the attorney-client privilege.

[154] See, e.g., ECF No. 1 at 6–7 (allegations summarizing Ronaldo's team's internal assessment of Metro's investigation and quoting Ronaldo's answers to the team's written questions); id. at 11

first attaching them to a sealed response, only to have them stricken as privileged, he continued

citing to them and insisting that at least some of the documents were fair game for him to rely on

in depositions and the presentation of his client's case.

The good news is that the scarcity of cases addressing similar conduct suggests that few

lawyers, if any, stoop to this level; the bad news is that precedent to evaluate whether this

conduct constitutes bad faith is thin.  But the available authority supports the conclusion that

plaintiff's counsel acted in bad faith throughout this litigation.  The magistrate judge aptly

summarized and applied the Ninth Circuit's holding in *Gomez v. Vernon*, a case in which defense

counsel received and reviewed letters between inmate plaintiffs and their attorney despite

knowing the clearly confidential and privileged nature of those documents.[155]  In that case,

defense counsel intentionally sought out those documents, even after a state-bar official advised

them to stop reviewing the documents and turn them over to the court.[156]  The Ninth Circuit

affirmed the district court's award of monetary sanctions,[157] finding that the "confidential status

of the letters was facially evident" and that defense counsel was obligated to observe the *Zolin*

process for in camera review even if they believed that the crime-fraud exception applied to

those documents.[158]  The court also confirmed that the district court did not err "in finding [that]

---

(allegations quoting directly from an email between Ronaldo's attorneys discussing the
settlement agreement, opinions about the defendant's potential criminal exposure, and the
settlement's likely effect on Ronaldo's career and reputation).

[155] *Gomez v. Vernon*, 255 F.3d 1118, 1124 (9th Cir. 2001).

[156] *Id.*

[157] In *Gomez*, the inmates were granted declaratory and injunctive relief following a nineteen-day
bench trial before they moved for sanctions based on defense counsel's "conduct in reading,
using, and failing to disclose" their access to privileged documents.  *Id.* at 1125.  As the merits
had already been decided in the inmates' favor, the district court and the Ninth Circuit did not
have occasion to discuss the availability of case-dispositive sanctions for that conduct.

[158] *Id.* at 1132.

conduct tantamount to bad faith," reasoning that "[t]he notion that receipt of privileged communications imposes a duty on counsel to take some reasonable remedial action is hardly a novel concept" stemming from "common sense, ethical rules, and the origins of the privilege."[159]

Like the *Gomez* attorneys, Stovall read, reviewed, and failed to properly disclose his access to plainly privileged documents. But his misdeeds eclipse the conduct that irked the Ninth Circuit in *Gomez*. Stovall deliberately sought out his adversary's hacked, internal, privileged communications. Once he received them, he didn't seek ethical guidance on how to handle these clearly sensitive documents. Instead, he gave them to his client, ensuring that they would contaminate her memory and perception of events, and he built her complaint on their contents, as evidenced by plaintiff's sworn verification.[160] With that adulterated die cast, he then sat on the documents for fourteen months, nine of which he was actively litigating this case. And though this court struck the documents and found them privileged, counsel continues to rely on them in his filings and prosecution of the plaintiff's claims. This course of deliberate conduct is more than "tantamount" to bad faith, it is squarely bad faith.

Similar conduct has led other courts to find bad faith worthy of case-terminating sanctions. In *Jackson v. Microsoft Corporation*, a former employee sued Microsoft for

---

[159] *Id.* at 1134. The *Gomez* court partially relied on now-withdrawn American Bar Association (ABA) Formal Opinion 382 when making its decision. *Id.* at 1132. But, as the magistrate judge noted in his recommendation, the superseding ABA Formal Opinion 06-440 similarly recognizes that sanctions are available against attorneys who use information illegally obtained by a third person. *See* ECF No. 143 at 16 n.2; *see also* ABA Comm'n on Ethics & Prof'l Responsibility, Formal Op. 440 (2006) ("If the sender of privileged or confidential material has engaged in tortious or criminal conduct, a lawyer who receives and uses the materials may be subject to sanction by a court."). I thus find that the reasoning in *Gomez* remains as applicable to this case when supported by Formal Opinion 440 as it was when decided under Formal Opinion 382.

[160] ECF No. 125-2 at 33.

employment discrimination.[161]  Ten months after leaving the company and during his deposition, the employee disclosed materials stolen from Microsoft that he claimed he received on a CD from an undisclosed source.[162]  While the parties vigorously disputed how the CD ended up in the employee's possession, the district court found that the employee acted in bad faith warranting dismissal when he held on to documents that contained attorney-client work product and confidential information and relied on them in the prosecution of his case.[163]

Comparable bad-faith litigation tactics motivated the court in *Xyngular Corporation v. Schenkel* to award case-terminating sanctions.  One of Xyngular's shareholders asked an employee to collect documents—including contracts, balance sheets, financial projections, settlement communications, and employment agreements—allegedly evincing illegal behavior by the company's leaders.[164]  The company eventually sued the shareholder, and he responded with counterclaims of his own, attaching the illicitly obtained documents to his pleadings.[165] The company moved for case-terminating sanctions based on his use of stolen documents to prosecute his case.[166]  The district court granted that motion, reasoning that the founder acted in bad faith and "undermined the legitimacy of the[] proceedings" when he "skirted the discovery process," illicitly obtained company documents, and improperly relied on them to prosecute his counterclaims.[167]  The court rejected Schenkel's assertion that he was an "innocent, passive

---

[161] *Jackson v. Microsoft Corp.*, 211 F.R.D. 423, 425 (W.D. Wash. 2002).

[162] *Id.* at 426.

[163] *Id.* at 431–32.

[164] *Xyngular Corp. v. Schenkel*, 200 F. Supp. 3d 1273, 1284–86 (D. Utah 2016), *aff'd*, 890 F.3d 868 (10th Cir. 2018).

[165] *Id.* at 1290.

[166] *Id.* at 1297.

[167] *Id.* at 1317.

recipient of documents," noting that he asked a current employee to begin gathering

documentation of wrongdoing; accepted, reviewed, and relied on those documents in demand

letters and throughout the lawsuit; and did not inform the company that he had the documents

until litigation began.[168]

Stovall attempts to distinguish *Jackson* and *Schenkel* by distancing himself from the

cyber hack, stressing that he did not "directly participate[] in the acquisition of confidential

documents from the adverse litigation party" and that that they were obtained "by third parties,

having no relationship to the plaintiff or plaintiff's counsel."[169]  But the fact that he wasn't the

original thief adds no element of innocence to his calculated expropriation of documents from a

third party without concern for their obviously privileged and confidential nature or the

suspicious circumstances surrounding them.  The conduct here is even more reprehensible than

in *Jackson* and *Schenkel* for the simple reason that Stovall is a seasoned attorney, experienced in

civil discovery rules and procedures.  As the Ninth Circuit noted in *Gomez*, attorneys have an

ethical duty stemming from "common sense, ethical rules, and the origins of privilege."[170]  Yet

Stovall chose to circumvent the litigation process to obtain documents that would have surely

been withheld as privileged had he sought them through proper discovery, spoil his client's case

with them, ignore all established procedures for dealing with privileged materials, and then

disregard this court's order prohibiting their use.

Even now, that bad-faith conduct persists.  Despite his recent insistence that he no longer

intends to use at least some of the Football Leaks documents, counsel has repeatedly cited to or

---

[168] *Id.* at 1318.

[169] ECF No. 123 at 8.

[170] *Gomez*, 255 F.3d at 1134.

36

attached those very documents to Mayorga's response to Ronaldo's sanctions motion, her motion for in camera review, and her objections to the magistrate judge's order and recommendation.[171] He states that he intends to use documents that *he* deems not privileged, despite the court's findings to the contrary.[172]  He attempts to blame the defense for refusing to authenticate the documents, failing to appreciate that his conduct in seeking out stolen documents outside of discovery created the authentication problem in the first place.  And he does not adequately explain why he didn't promptly seek reconsideration of the order striking the Football Leaks documents.  In light of the totality of this bad-faith conduct, harsh sanctions are merited.

### 2.    *The first and second factors weigh in favor of dismissal, while the fourth weighs against it.*

As is generally the case, the first and second factors in the sanctions analysis—the public's interest in expeditious resolution of litigation and the court's need to manage its docket—weigh in favor of dismissal.  This case has been pending for nearly three years with hundreds of docket entries but little progress.  And as the magistrate judge remarked, "the [c]ourt's interest in managing its docket is particularly keen here, where motion practice is frequent and heated."[173]  While public policy favoring the disposition of cases on their merits weighs against dismissal, I find that this fourth factor is outweighed by the prejudice to the defense in allowing a case founded on, and contaminated by, information gleaned from stolen, privileged documents to proceed to the merits stage.

---

[171] *See* ECF No. 124; ECF No. 125-5; ECF No. 125-6; ECF No. 152 (all sealed).

[172] *See* 111-23 at 2 (Stovall's letter to opposing counsel stating his position that the attorney-client privilege did not extend to some Football Leaks documents and that those communications he believed were not privileged "could be used in discovery and could be the subject of discovery" (cleaned up)).

[173] ECF No. 143 at 14.

1
2
        ***3.***      ***The disclosure and use of the Football Leaks documents have***
                    ***irretrievably prejudiced the defense.***

3        Plaintiff does not address the prejudice factor.  But it is undeniable that the defense of

4  this case has been, and will continue to be, prejudiced by Mayorga's heavy reliance on the

5  Football Leaks documents.  As the magistrate judge found, this case "would probably not exist

6  had Stovall not asked for" them.[174]  The complaint is so largely based on information and

7  communications contained in privileged documents that it is impossible to say that Mayorga

8  would have the factual bases for her claims had she not reviewed this inside information.  This is

9  evidenced by her verification attached to the complaint when she filed it in state court, in which

10  she attests that she "knows the contents" of the complaint, "that the same is true of her own

11  knowledge, or to the best of her information and belief, and as to those matter[s], she believes

12  them to be true."[175]  Comparing the complaint against the information in the documents leaves

13  no doubt that those documents are the source of the detailed allegations about the internal

14  communications among Ronaldo's "team of fixers."

15        And those documents contain the most sensitive of protected communications—the

16  defendant's attorneys' assessments of the strengths and weaknesses of his defense, discussions

17  about his bargaining power in settlement negotiations, and both client and counsel's private

18  strategies and mental impressions.  The attorney-client privilege is "the oldest of privileges for

19  confidential communications known to the common law" and its purpose is an important one: "to

20  encourage full and frank communication between attorneys and their clients and thereby promote

21
22

---

23  [174] *Id.* at 19.

[175] ECF No. 125-2 at 33 (sealed).

broader public interests in the observance of law and administration of justice."[176]  Ronaldo's prior attorneys recognized the importance of protecting this privilege by safeguarding confidential documents in their possession and seeking to prevent further dissemination of the documents after they were stolen.[177]  Stovall's choice to seek plainly privileged documents from a questionable source and evade the court process for determining whether privilege rightfully applies not only prejudiced the defense, it demonstrated an unsettling willingness to ignore the broader purposes of this privilege.

### 4.   *Dismissal is the only suitable remedy.*

Finally, I consider the magistrate judge's conclusion that case-terminating sanctions are the only appropriate remedy in this case.  While the Supreme Court has long held that clients are accountable for their attorney's conduct,[178] dismissing an action based on the bad-faith conduct of a lawyer penalizes the client.  Mindful of this consequence, courts are generally reluctant to impose the harsh sanction of dismissal with prejudice when the plaintiff is not personally culpable, unless "any other sanction would fail to cure the harm that the attorney's misconduct

---

[176] *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).

[177] Plaintiff argued in earlier briefs that defendant failed to safeguard the Football Leaks documents when they were initially released in 2017.  I rejected that argument in my earlier order striking the privileged documents.  ECF No. 72 at 24.  Bolstering that ruling, defendant's prior attorneys have since submitted declarations that their firms "maintained safeguards and security measures to protect confidential client files," but nonetheless, "outside third party cyber hackers stole . . . documents and information related to [plaintiff's allegations]."  ECF No. 133 at 14, 17; *see also* ECF No. 111-25 (defendant's prior attorney's declaration detailing the specific safeguards followed to protect confidential communications).  They both attest that neither they nor their client "ever authorized or caused to be released any" of those documents.  *Id.* at 14, 18.

[178] *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 396 (1993) (noting that the Supreme Court has recognized in some contexts that "clients must be held accountable for the acts and omissions of their attorneys," even if that consequence is dismissal) (citing *Link v. Wabash R. Co.*, 370 U.S. 626, 633–34 (1962)).

would cause to the defendant."[179]  "The more the misconduct prejudiced the opposing party, the more appropriate dismissal becomes as a sanction."[180]

The magistrate judge thoughtfully considered less severe sanctions here but concluded that nothing short of dismissal can adequately penalize Stovall's bad-faith actions and cure the prejudice to the defense.[181]  He reasoned that it would be nearly impossible for this court or the arbitrator to excise the misappropriated documents from this case because Mayorga's independent recollection of the events was certainly enhanced or altered by what she learned through her review of these privileged communications and Stovall's other filings that incorporated them.  This contamination will continue to give Mayorga an unfair advantage and prejudice the defense as long as her claims are pending, regardless of who acts as her counsel.  As a New Jersey district judge put it in *Perna v. Electronic Data Systems, Corp.* when imposing case-terminating sanctions for the use of "purloined documents," "[o]ne can never be sure what Mr. Perna saw or copied, or what, if anything, he retained in his memory."[182]  The same is true for Mayorga.

Such a severe sanction here is also necessary to preserve the integrity of the litigation process.  As the Ninth Circuit explained in *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, "[i]t is well settled that dismissal is warranted [if] . . . a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings" because

---

[179] *Goforth v. Owens*, 766 F.2d 1533, 1535 (11th Cir. 1985); *see also Meyer v. Gwinnett Cnty.*, 2021 WL 3716652 at *8, *reconsideration denied*, 2021 WL 3716658 (N.D. Ga. 2021) ("Although the court is aware that dismissal with prejudice imposes a severe penalty, the court notes no other sanction would cure the prejudice inflicted on defendants" (cleaned up)).

[180] *King v. Fleming*, 899 F.3d 1140, 1151 (10th Cir. 2018).

[181] ECF No. 143 at 20–22.

[182] *Perna v. Elec. Data Sys., Corp.*, 916 F. Supp. 388, 400 (D.N.J. 1995).

1    "courts have inherent power to dismiss an action when a party has willfully deceived the court

2    and engaged in conduct utterly inconsistent with the orderly administration of justice."[183]

3    Plaintiff's counsel's deliberate circumvention of the discovery process to obtain and conceal

4    stolen, privileged documents for his client undermines the integrity of these proceedings and the

5    tribunal's ability to justly decide this case.

6          The Ninth Circuit has long recognized that case-terminating sanctions "must be available

7    to the district court in appropriate cases, not merely to penalize those whose conduct may be

8    deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in

9    the absence of such a deterrent." [184]  Allowing a case so infused with hacked, privileged

10   documents to proceed would only encourage unscrupulous attorneys to seek out such documents

11   to use as the basis for their claims.  As the magistrate judge astutely observed, less drastic

12   sanctions would "create the dangerous precedent that, so long as a party is willing to risk

13   changing attorneys or paying a fine, they can use privileged information to prosecute, and maybe

14   even win, their case."[185]

15         Of course, this court is sensitive to the gravity of case-terminating sanctions here.

16   Because of her attorney's abuses and flagrant circumvention of the proper litigation process,

17   Mayorga loses her opportunity to pursue this case and attempt to unwind the settlement of claims

18   that, themselves, implicate serious allegations of a highly personal nature.  But in light of the

19   depth and breadth with which the ill-gotten information has saturated her claims and other

20   filings—and likely her memory and perceptions of key facts—any other sanction would be an

21

22   [183] *Anheuser-Busch, Inc.*, 69 F.3d at 348 (cleaned up).

23   [184] *In re Phenylpropanolamine (PPA) Prods. Liab. Lit.*, 460 F.3d 1217, 1227 (9th Cir. 2006)
(quoting *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976)).

[185] ECF No. 143 at 22.

inadequate remedy.[186]  Nothing less than a with-prejudice dismissal will purge the taint that has permeated this case from its very inception and preserve the integrity of the litigation process.

### Conclusion

IT IS THEREFORE ORDERED that Mayorga's motion for reconsideration **[ECF No. 154] is granted, in that the court has reconsidered its ruling, but any relief from that ruling is DENIED**.

IT IS FURTHER ORDERED that Mayorga's objection **[ECF No. 152]** to the magistrate judge's order denying her motion for in camera review **is OVERRULED**.  The magistrate judge's order **[ECF NO. 124] is AFFIRMED**.

IT IS FURTHER ORDERED that Mayorga's objection to the magistrate judge's report and recommendation **[ECF No. 153] is OVERRULED**.  The magistrate judge's recommendation **[ECF No. 143]** to grant Ronaldo's motion for sanctions **[ECF Nos. 111 and 112]** and dismiss this case **is ADOPTED** consistent with this order.

IT IS FURTHER ORDERED that this case is **DISMISSED with prejudice**.  The Clerk of Court is directed ENTER JUDGMENT accordingly and to CLOSE THIS CASE.

_____
U.S. District Judge Jennifer A. Dorsey
June 10, 2022

---

[186] *See Halaco Eng'g Co. v. Costle*, 843 F.2d 375, 381 (9th Cir. 1988) (noting that "[t]he most critical criterion for the imposition of a dismissal sanction is that the misconduct penalized must relate to matters in controversy in such a way as to interfere with the rightful decision of the case" and therefore is not justified to punish conduct that only affects "peripheral matter[s]").