PETER S. CHRISTIANSEN, ESQ. (#5254)
pete@christiansenlaw.com
KENDELEE L. WORKS, ESQ. (#9611)
kworks@christiansenlaw.com
KEELY PERDUE CHIPPOLETTI, ESQ. (#13931)
keely@christiansenlaw.com
CHRISTIANSEN TRIAL LAWYERS
710 S. 7th Street
Las Vegas, Nevada 89101
Telephone:    (702) 240-7979
Facsimile:     (866) 412-6992
*Attorneys for Defendant Cristiano Ronaldo*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| KATHRYN MAYORGA, | CASE NO.:    2:19-cv-00168-JAD-DJA |
| Plaintiff, | |
| v. | **DEFENDANT CRISTIANO RONALDO'S REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS AGAINST LESLIE STOVALL, ESQ.** |
| CRISTIANO RONALDO, | |
| Defendant. | |

Defendant Cristiano Ronaldo ("Ronaldo") hereby submits his Reply in Support of Motion for Attorneys' Fees and Costs against Plaintiff's Counsel, Leslie Stovall, Esq. ("Stovall"). Based on this Court's finding that Stovall acted in bad faith throughout the course of this litigation, Ronaldo sought fees pursuant to 28 U.S.C. § 1927, and this Court's inherent power to impose sanctions against counsel who willfully abuse the judicial process. In opposition, Plaintiff and her Counsel attempt to rehash the same arguments forwarded in their unsuccessful bid to avoid case terminating sanctions. Tellingly however, Stovall appears to concede that based on the Court's finding he acted in bad faith, Ronaldo is entitled to an award of reasonable attorney's fees and costs incurred as a result of the bad faith conduct.  Stovall goes on to attack Defense Counsel's hourly rates and further contends Ronaldo is seeking fees somehow unrelated to the bad faith conduct despite that the entirety of this case arose from Stovall's bad faith transgressions.

Stovall also takes issue with the amount of time Ronaldo's Counsel dedicated to certain tasks. What Stovall ignores however, is that the time it took to complete what should have been simple tasks and filings in this case was consistently amplified as a result of Plaintiff's failure to

adhere to the Federal Rules of Civil Procedure and ignorance of this Court's orders and the local rules of practice. As a result of Stovall's bad faith and Plaintiff's litigation tactics, Ronaldo incurred and paid more than $569,320.00 in reasonable attorneys' fees and costs in the amount of $43,376.83. Accordingly, Ronaldo's request should be granted in its entirety.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   RELEVANT FACTS AND PROCEDURAL HISTORY

At this stage in the proceedings, this Court is intimately familiar with the relevant facts and procedural posture of this case. Thus, for the sake of brevity, Ronaldo will not repeat what has already been stated throughout the lengthy docket in this case.[1] To that same end, Ronaldo objects to the recitation of facts and procedural history set-forth at pages 2 through 7 of Plaintiff's Opposition (ECF 206) and notes all of these assertions are merely a restatement of the arguments Plaintiff made in opposition to case terminating sanctions (ECF 123), each of which was addressed in both the Magistrate's Report and Recommendation (ECF 143) and this Court's Order Affirming the Magistrate's Report and Recommendation and Dismissing Plaintiff's Complaint (ECF 195).

Although Plaintiff attempts to relitigate the arguments made in opposition to dismissal, she ultimately concedes because this Court made a finding of bad faith conduct,[2] Ronaldo is entitled to some award of attorneys' fees and costs. Plaintiff asks this Court to limit the time period for which Ronaldo may recover attorneys' fees and costs to the date of the filing of Ronaldo's Motion for Case Terminating Sanctions to the date of this Court's Order of dismissal, that is May 27, 2021, through June 6, 2022, with some additional allowance for the instant Motion for Attorneys' Fees and Costs. Plaintiff also takes issue with the reasonableness of hourly rates charged by Ronaldo's lawyers.

---

[1] For purposes of the Appellate Record, to the extent necessary, Ronaldo incorporates by reference herein, the factual and legal arguments set forth in his Motion for Case Terminating Sanctions (ECF 111), Reply in support thereof (ECF 133), and Ronaldo's Response to Plaintiff's Objection to the Magistrate's Report and Recommendation (ECF 164), in addition to the instant Motion for Attorneys' Fees and Costs (ECF 198).

[2] Plaintiff has filed a Notice of Appeal to the Ninth Circuit Court of Appeals. The parties engaged in a pre-mediation conference at which time it was determined the matter is not one in which mediation is likely to be beneficial. Accordingly, Ronaldo anticipates the Ninth Circuit will issue a briefing schedule in the coming weeks.

**A. PLAINTIFF'S COUNSEL AND PLAINTIFF'S EXPERT DISAGREE AS TO THE REASONABLE HOURLY RATES AND REASONABLE NUMBER OF HOURS FOR THE WORK PERFORMED.**

Attached to Plaintiff's Opposition are two declarations, one from Stovall and one from Nevada lawyer Rusty Graf, Esq. ("Graf"). ECF Nos. 206-43 and 206-44. Both offer opinions on the reasonableness of hourly rates charged by three of Ronaldo's lawyers. Curiously, Stovall and Graf disagree as to the reasonable hourly rate each believes Christiansen should be charging. Graf asserts Christiansen should be billing Ronaldo $700 per hour, instead of the $850 being charged. ECF 206-43. On the other hand, Stovall, despite presumably having hired Graf to render the $700 per hour opinion, disagrees and finds Christiansen worthy of only $600 per hour. ECF 206-44.

Ignoring that attorney Keely Perdue ("Perdue") in fact, billed this case at the rate of $350 per hour, both Graf and Stovall assert that attorneys Perdue and Kendelee Works ("Works") should both be charging just $350 per hour instead of $500 per hour. In reality, Perdue, has billed this case at the rate of $350 per hour, whereas Works has charged $500 per hour. Notably, Works has been barred in the State of Nevada since 2005, while Perdue has been a Nevada lawyer since 2016. Thus, it stands to reason Works would bill at a higher hourly rate given her additional years in practice. Christiansen has been practicing law in Nevada since 1994. Nevertheless, Stovall contends this Court should average the $600 hourly rate he hypothesizes is appropriate for Christiansen with the $350 that allegedly should be charged for Perdue and Works, to apply a $400 hourly rate across the board for all time billed.[3]

Neither Stovall nor Graf, provide any specific basis for their belief the hourly rates charged by Christiansen Trial Lawyers ("CTL") is excessive. To the contrary, Stovall apparently bases his opinions on the assertion he has "practiced law for 37 years in this jurisdiction" and is "familiar with the billing practices in both state and federal courts." ECF 206-44 at ¶ 3. Setting aside that to accept Stovall's calculations would require this Court to find credible the declaration of a lawyer already found to have acted in bad faith in this case, Stovall omits he was suspended

---

[3] How Stovall reaches a $400 "average" hourly rate is anyone's guess given that adding 600 + 350 + 350 and dividing by three to get the average would amount to $433.33 per hour. Adding 600 + 350 and then dividing by two for the "average" equals $475.00 per hour.

1   from the practice of law for two years from 2002-2004 after being convicted of tax fraud. *See*
2   Order In Re Discipline of Stovall, attached as **Exhibit A**.  Given that he was first licensed in
3   1985, it is inaccurate to say Stovall has practiced for 37 years. Stovall provides zero support for
4   the assertion that the respective hourly rates of three lawyers with vastly different years of
5   experience should simply be averaged to one hourly rate, which is lower than the true rates
6   actually and reasonably charged for two of the three lawyers.

7       Graf similarly leaves this Court with a paucity of support for the hourly rate reduction he
8   proffers should be applied.  Graf is careful to note he takes no issue with the quality of advocacy,
9   "including ability, training, education, experience, professional standing, and skill," and also does
10  not dispute whether CTL was successful in its defense of Ronaldo. ECF 206-43 at ¶¶ 31-32. He
11  simply avers generally based on his research into the amounts charged "by national firms for
12  similar work," and the "fees charged by local firms with AV ratings and nationally recognized
13  counsel," Christiansen should be charging $700 an hour instead of $850[4], and both Perdue and
14  Works should bill $350 per hour. *Id*. at ¶¶ 36–38. Like Stovall, Graf provides no specificity as to
15  which firms were assessed; the number of years, quality or type of experience the lawyers at such
16  firms possessed; the area(s) of practice; or results achieved in a given matter.

17      Stovall and Graf both neglect to address the supporting Declaration of J. Colby Williams,
18  Esq. ("Williams"), which was attached to the instant motion and attests to the reasonableness of
19  the hourly rates billed by each of Ronaldo's attorneys on this case.  ECF 195-5.

20      Graf further opines the 1201 hours expended over the course of this litigation was
21  unreasonable for the type of work performed and that a reasonable amount of time based on his
22  review of CTL's invoices would be 579.9 hours. *Id*. at ¶¶ 39–40. Notably, Graf offers no specific
23  explanation as to the basis for cutting 603.1 hours from the time actually incurred. Although
24  unclear from his declaration, it appears Graf then applied a $700 hourly rate for Christiansen's
25  time and a $350 rate for the hours expended by Perdue and Works to arrive at a total of
26  $245,250.00 in purportedly reasonable attorney's fees.  The number of hours cut specific to each

---

[4] Notably, Graf has referred clients to Christiansen who were charged and paid the same hourly rates as those requested here.

4

attorney is not provided. Thus, neither this Court, nor Ronaldo's Counsel, has any meaningful basis on which to assess which of the 1201 hours dedicated to this case that Graf believes were excessive.

Stovall again contradicts his own "expert" when he contends the total amount of reasonable fees should be $177,328.00, based on a formula wherein he suggests the court should apply a $400 "average" hourly rate to all services performed. Although Stovall attached a spreadsheet identifying the amount of time billed for a particular task versus the amount he believes should reasonably have been billed on each entry, the spreadsheet fails to provide any reason for the reduction. *See* ECF 206-33. Within the body of Plaintiff's Opposition, Plaintiff provides reasons her Counsel believes this Court should reduce the fee award for certain categories of tasks. In total, the opposition provides Plaintiff's reasoning for reducing approximately 718.09 hours of the total 1201 requested. ECF 206. Given that Plaintiff requests this Court reduce the total award by 757.68 hours, there are 38.78 hours which Plaintiff contends should be subtracted as unreasonable but for which no reason is provided. The majority of reasons underscoring the requested reductions are nothing more than the generalized and self-serving opinion of Plaintiff's Counsel. Nevertheless, Ronaldo will address Plaintiff's asserted basis for the proposed reductions in the Declaration of Kendelee L. Works, attached as **Exhibit B**.

**B.   PLAINTIFF OFFERS THREE INCONSISTENT ALTERNATIVE FEE AWARDS.**

Plaintiff provides three alternative methods her Counsel suggests could be used to calculate "reasonable fees" here. First, Plaintiff suggests this Court reduce the hours allowed from the 1201 hours expended, to the arbitrary 443.32 hours Stovall believes it should have taken to complete the work performed. Based on the fictional $400 "average" hourly rate Stovall dreamt up, this method would allow for an award of $177,328.00 in attorneys fees.

The second alternative Plaintiff proffers is to limit the time period for which fees are awarded to between May 27, 2021 (the date Ronaldo filed his motion for case terminating sanctions) and June 6, 2022 (the date this Court dismissed the case with prejudice), plus an allowance for the instant motion for attorney's fees. Curiously, Plaintiff fails to explain why the

triggering event should be the filing date of the motion for sanctions, yet Defendant should not be entitled to the fees incurred in preparing the successful motion. In total, Plaintiff asserts the reasonable amount of time expended during such time frame would be 197.8 hours, which would amount to $79,120.00 based on the imaginary $400 average hourly rate.

Lastly, Plaintiff offers a third alternative based on her "expert's" opinion that the reasonable value of work performed by CTL is $245,250.00. Graf bases his total on what he deems to be 597.9 hours as the reasonable number of hours "for this type of work." ECF 206-43 at ¶¶ 39-40. Graf does not identify which tasks or time entries he deems excessive or unreasonable, nor specify to which attorney the allegedly unreasonable hours are attributable. He does not provide a break-down of the number of hours to which he is applying a $700 rate versus the $350 hourly amount.  Notably, Graf speculates CTL should only have taken 597.9 hours to complete the work undertaken in this case, while Stovall believes such tasks should have been completed in just 443.32 hours. Neither Graf nor Stovall provide any explanation for this discrepancy.  Although Stovall provides specifics as to some of the categories of tasks he opines should have taken less time, Graf fails entirely to offer any such analysis.

In short, about all that is clear from Plaintiff's Opposition, is that even using Graf's and Stovall's math and substantial reductions, Ronaldo is entitled to between $79,120.00 and $245,250.00 in attorney's fees and costs. Yet, Plaintiff fails to provide any reliable support for such drastic reduction(s). Ronaldo does not dispute that certain tasks in this case took longer than what would typically be expected. However, at the hands of Stovall, this case transcended into quite the anomaly and his procurement and use of confidential and privileged documents (albeit the most glaring and egregious example), was only the beginning.

Menial tasks such as preparing and submitting discovery stipulations and the like often took double what they would in other cases because of Plaintiff's Counsel's ignorance of the Federal Rules of Civil Procedure and this Court's Local Rules of Practice, thereby requiring Defense Counsel to significantly revise and sometimes redraft such documents. *See* **Exhibit B**. Drafting motions, oppositions and other responses all took more time than that expended in other cases because doing so consistently required Defense Counsel to first sift through Plaintiff's

barrage of nearly incomprehensible arguments and stream of conscious thought ramblings; then provide the court with an interpretation of the arguments likely being made;[5] and finally, respond in opposition. *Id.* Plaintiff routinely provided incorrect and/or incomplete case citations sending the Defense on a wild chase to track down the correct filing or decision. *Id.* On at least one occasion, Defense Counsel had to request that Plaintiff's Counsel email a copy of the decision(s) upon which Plaintiff relied in written oppositions filed with this Court. *See* Email Correspondence attached as **Exhibit C** re: Plaintiff's Opposition to Defendant's first Motion to Strike the Football Leaks documents.  Plaintiff sought extension after extension to nearly every single filing deadline in this case, each requiring a stipulation, which Defense Counsel inevitably had to revise or face it being rejected.  *See* **Exhibit B**. On several occasions, Plaintiff sought extensions necessitating written stipulations, only to opt to not file anything at all.  *Id.*

Moreover, Plaintiff's bad faith conduct and multiplication of court proceedings goes beyond even this litigation. Ronaldo is not seeking attorneys' fees here for hours of time spent litigating the New York Times' request for the Las Vegas Metropolitan Police Department's ("LVMPD") investigative file, which initially came before this Court and is now proceeding in state court. Ronaldo has also incurred attorneys' fee in defense of the reopened criminal investigation—all of which was initiated at Plaintiff's request after her Counsel procured stolen and privileged documents. If there was any unnecessary work or multiplication of these proceedings, it was a direct product of Plaintiff's litigation conduct. Accordingly, this Court should reject Plaintiff's baseless invitation to reduce any award of fees in this case by more than half of the amount reasonably, necessarily and actually incurred in having this action dismissed.

## II.  LEGAL ARGUMENT

Federal law provides for an award of attorney's fees and costs reasonably incurred because of a lawyer's unreasonable and vexatious multiplication of proceedings. *See* 28 U.S.C. § 1927. Here, Plaintiff argues Ronaldo should only be permitted to recover fees from the date he filed his

---

[5] True to form, Stovall throws out the $400 "average" hourly rate without any numerical support or explanation as to how one arrives at that number or why an average should be applied. This is yet another example of why Defense Counsel has been forced to expend so much time deciphering Plaintiff's arguments in this matter in order to provide written responses.

CHRISTIANSEN
— TRIAL LAWYERS —

1    motion for case terminating sanctions through the date this Court entered its order of dismissal,

2    with some allowance for filing the instant motion for attorneys' fees and costs. Plaintiff further

3    asks this Court to arbitrarily reduce Defense Counsel's hourly rate(s) and the number of hours

4    expended despite that Plaintiff's Counsel and the expert he hired cannot agree as to the reasonable

5    amount of fees to be awarded.

### A.  PLAINTIFF'S COUNSEL ACTED IN BAD FAITH.

6          Plaintiff contends Ronaldo voluntarily continued to participate "in the litigation of the

7    issue of capacity" until filing his Motion for Case Terminating Sanctions on May 27, 2021, and

8    thus, fees accrued up to that date were not multiplied or increased by Stovall's bad faith conduct.

9    ECF 206 at 7:17-20. Yet again, Plaintiff and her Counsel attempt to shift blame to Ronaldo and

10   his Counsel claiming Ronaldo was somehow complicit in Stovall's bad faith conduct. Such

11   accusations are entirely undermined by the multitude of motions the Defense brought seeking

12   redress for Plaintiff's misuse of the stolen and privileged Football Leaks documents.

13         Plaintiff conveniently ignores this Court has repeatedly found Stovall's bad faith conduct

14   began when he first sought out privileged communications from an alleged cyber hacker. In

15   particular, this Court found that **both** the "procurement and continued use of [the Football Leaks]

16   documents was bad faith, and simply disqualifying Stovall will not cure the prejudice to Ronaldo

17   because the misappropriated documents and their confidential contents have been woven into the

18   very fabric of Mayorga's claims." ECF 195 at 1:17-20.

19         In recommending dismissal, the Magistrate Judge similarly pointed out, "Mayorga's case

20   against Ronaldo would probably not exist had Stovall not asked for the Football Leaks documents.

21   The content of Ronaldo's and his attorneys' privileged communications and work product is

22   woven into Mayorga's state court and federal court complaints, creating the basis for her causes

23   of action." ECF 143 at 19:14-17.  The Magistrate Judge further noted that even after Ronaldo

24   successfully moved to strike the subject documents, Stovall "wielded the documents in a

25   prejudicial way." *Id.* at 19:18-19. Indeed, it was Plaintiff's continued use of the privileged

26   Football Leaks documents, which ultimately lead to the motion for case terminating sanctions.

27   As this Court found, it was bad faith for Stovall to seek out privileged documents in the first

28

8

1    instance. *Id.* at 20:28-21:19. If he had ever taken action to remedy his missteps, a sanction lesser

2    than dismissal may have sufficed. *Id.* That does not negate however, that Stovall's bad faith

3    conduct and Plaintiff's use of the ill-gotten documents was the foundation for her Complaint. The

4    filing of Plaintiff's Complaint set into motion more than three and a half years of litigation in

5    which Ronaldo was forced to defend himself against Plaintiff's continued misuse and wielding

6    of the Football Leaks documents. As such, Ronaldo should be awarded reasonable attorneys' fees

7    and costs for time spent defending this case from its inception.

8                    **B.  PLAINTIFF  FAILS  TO  PROVIDE  ANY  CREDIBLE  BASIS  FOR
                          REDUCING THE FEES REQUESTED.**

9            When opposing a motion for attorneys' fees, the challenging party must specifically

10   identify which charges are disputed, "state with reasonable particularity the basis for the

11   opposition" and "include affidavits to support any contested fact." LR 54-14(d). The Ninth Circuit

12   has held that if a party opposing an award of fees "cannot come up with specific reasons for

13   reducing the fee request that the district court finds persuasive, it should normally grant the award

14   in full, or with no more than a haircut." *Moreno v. City of Sacramento*, 534 F. 3d 1106, 1116 (9th

15   Cir. 2008). In assessing the reasonableness of hours expended, courts are instructed to "focus on

16   the significance of the overall relief obtained by the [prevailing party] in relation to the hours

17   reasonably expended on the litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). "While

18   it is appropriate to consider the skill required to perform a task, the district court may not set the

19   fee based on speculation as to how other firms would have staffed the case." *Moreno*, 534 F.3d

20   at 1114.

21                   **C.  PLAINTIFF'S GENERALIZED SELF-SERVING DECLARATIONS ARE
                          INSUFFICIENT  TO  DEMONSTRATE  RONALDO'S  ATTORNEYS
22                        CHARGED UNREASONABLE RATES.**

23           As support for the assertion that Defense Counsel's hourly rates are unreasonable,

24   Plaintiff attaches the declarations of both Graf and Stovall. Neither declaration addresses the

25   supporting declaration of Williams, which was attached to Ronaldo's Motion and specifically

26   attests to his personal knowledge of the qualifications of CTL and the reasonableness of the hourly

27   rates the firm charged in this case. ECF 198-5 at ¶¶ 6, 8. Graf and Stovall do not opine that

28   Williams is somehow unqualified or lacks a sufficient foundation to render his opinions.

Graf takes no issue with the qualifications or skill of Defense Counsel, nor the quality of the result achieved. ECF 206-43 at ¶¶ 31-32. Instead based on his "research" into prevailing rates locally and nationally for "similar work," he opines that Christiansen should be billing Ronaldo at the rate of $700 per hour and Works and Perdue should be billing $350 per hour. *Id.* at ¶ 38. Given that CTL handles criminal defense and civil litigation in a variety of practice areas in both state and federal courts, it is unknown what Graf considered to be "similar work" in order to ascertain a prevailing or reasonable rate.

Unlike Williams who bases his opinions on personal knowledge of the quality and nature of representation provided by CTL, Graf simply offers no viable foundation for his opinions, nor any reason why Williams' opinions are not to be accepted. However, if that were not enough, attached is the Declaration of Williams' law partner, Donald J. Campbell, Esq. ("Campbell"). **Exhibit D**. Like Williams, Campbell is highly regarded nationally and throughout our state and local legal community. Campbell likewise attests he is personally familiar with CTL's skill level and nuanced practice which uniquely transcends criminal and civil law in both state and federal court. *Id*. Campbell further opines the hourly rates charged by CTL are consistent with prevailing rates and reasonable. *Id*.

For his part, Stovall also does not address Williams' opinions or provide any reason why Williams is unqualified or lacks foundation for his opinion that CTL's hourly rates are reasonable and consistent with the prevailing market. Instead, Stovall overstates his years in practice and claims he is familiar with "billing practices" in both state and federal courts. Without providing any additional foundation or factual basis, Stovall proclaims a reasonable rate for both Perdue and Works is $350 per hour and $600 per hour for Christiansen. Notably both Graf and Stovall fail to offer any explanation as to why Works and Perdue should bill at the same hourly rate when Works has been licensed to practice law in the State of Nevada since 2005 and Perdue was barred in 2016. Given there is no dispute Perdue is worthy of her $350 hourly rate, it is entirely reasonable for this Court to accept that Works' hourly rate of $500 is justified given her eleven additional years of experience practicing law in Nevada. Stovall provides no explanation for his disagreement with Graf regarding Christiansen's reasonable hourly rate, nor why he should

1    charge $600 an hour despite that he has been licensed for 28 years and has tried to verdict scores

2    of jury trials.

3          In sum, Stovall and Graf fail to state with any reasonable particularity the basis for their

4    opposition to Defense Counsels' hourly rates. Indeed, the two disagree with each other with

5    respect to a reasonable hourly rate for Christiansen. As to the basis for any "contested fact,"

6    neither articulate any reason why Williams' opinions are flawed and should not be accepted.

7    Because the declarations of Stovall and Graf are too generalized and self-serving to be persuasive,

8    particularly when compared with the Declarations of Campbell and Williams, this Court should

9    base any award of attorneys' fees on the full hourly rates actually and reasonably charged by

10   CTL.[6]

              **D.  PLAINTIFF'S SPECULATIVE CRITICISMS OF DEFENSE COUNSEL'S**
11            **USE OF TIME IGNORES FEDERAL LAW AND PLANTIFF'S**
              **COUNSEL'S MULTIPLICATION OF THESE PROCEEDINGS.**
12

13         Plaintiff's arguments regarding the hours CTL expended in this case are based on nothing

14   more than her Counsel's speculation as to how much time he predicts a given task should have

15   taken. Thus, in direct contradiction with *Moreno*, Plaintiff asks this Court to reduce the fee award

16   in this case based on Plaintiff's Counsel self-serving speculation as to how a different firm may

17   have staffed the case.  Exhibits 1-32 to Plaintiff's Opposition, allegedly provide support for

18   allegations that Defense Counsel expended more time than reasonable. However, a cursory

19   review of those exhibits reveals Plaintiff includes time entries in more than one category of task

20   or filing and thus, appears to be seeking reduction of certain entries more than once- effectively

21   double deducting. Plaintiff also reaches the totals for various motions and tasks by including

22   entries which include time spent on other filings or tasks. Despite that such objections are based

23   on rampant speculation intended to minimize overall financial risk to Stovall, Ronaldo's Counsel

24   nevertheless addresses each of the categories of time entries to which Plaintiff objects in the

25   attached Decl. of Counsel.  *See* **Exhibit B**.

26   _____

27   [6] Plaintiff calls into question whether Ronaldo was truly billed and/or paid the full amount of fees requested.  While,
     Ronaldo disputes the relevance of that objection, he nevertheless attaches the Declaration of Peter S. Christiansen
28   affirming CTL billed Ronaldo at the hourly rates requested and Ronaldo has paid based on those rates without a
     discount. **Exhibit E**.

1    Contrary to *Hensley*, Plaintiff would also have this Court ignore the significance of overall
2  relief Ronaldo's lawyers obtained on his behalf in relation to the hours expended. Plaintiff filed
3  her federal court complaint in January 2019. Thus, as of the filing of the instant Motion in June
4  2022, Ronaldo had been litigating this case for 42 months. Thus, CTL is seeking an average of
5  29 hours per month in attorney's fees (approximately 7 hours a week)—in a high profile case
6  defending an internationally renowned athlete in a case with more than 200 filings, not to mention
7  written discovery, depositions and necessary hours of legal research. Considering the overall
8  result achieved, which will avoid a bench trial and no doubt, countless more filings and arguments
9  before this Court, Ronaldo's Counsel obtained an extraordinary result, making the total fees
10 requested all the more reasonable.

**III.    CONCLUSION**

12    Defendant Cristiano Ronaldo requests attorneys' fees in the amount of $569,320.00 and
13 costs in the amount of $43,376.83, which were incurred in defending this matter, and fees in the
14 amount of $13,755.00 related to the instant motion, plus $26,605.00 in fees related to the instant
15 reply and response to Plaintiff's objection to Ronaldo's bill of costs, and any additional fees to
16 be incurred at the time of hearing, if any.

17    Dated this 27th day of August, 2022.

CHRISTIANSEN TRIAL LAWYERS

By _____
PETER S. CHRISTIANSEN, ESQ.
KENDELEE L. WORKS, ESQ.
KEELY P. CHIPPOLETTI, ESQ.
*Attorneys for Defendant Cristiano Ronaldo*





1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE

Pursuant to FRCP 5 and LR-5.1, I certify that I am an employee of CHRISTIANSEN TRIAL LAWYERS, and that on this 27th day of August, 2022, I caused the foregoing document entitled **DEFENDANT CRISTIANO RONALDO'S REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS AGAINST LESLIE STOVALL, ESQ.** to be filed and served via the Court's CM/ECF electronic filing system upon all registered parties and their counsel.

_____
An employee of Christiansen Trial Lawyers