**NOA**
LESLIE MARK STOVALL, ESQ.
Nevada Bar No. 2566
STOVALL & ASSOCIATES
2301 Palomino Lane
Las Vegas, NV 89107
Telephone (702) 258-3034
Eservice: court@lesstovall.com
*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

KATHRYN MAYORGA,                           )
                                           )          CASE NO.: 2:19-cv-00168-JAD-DJA
         Plaintiff                         )
vs.                                        )          DEPT NO.: 23
                                           )
CRISTIANO RONALDO,                         )
                                           )
         Defendant                         )
_____        )

## NOTICE OF APPEAL

PLEASE TAKE NOTICE that Plaintiff Kathryn Mayorga, hereby appeals the order

granting in part defendant's motion for attorney's fees, a copy of which is attached hereto as

**Exhibit 1,** and the clerk's memorandum taxing costs, a copy of which is attached hereto as

**Exhibit 2**, both of which were entered in this case on February 14, 2023 in the United States

District Court, District of Nevada.

DATED this ____ day of March, 2023.                    STOVALL & ASSOCIATES

                                                       _____
                                                       LESLIE MARK STOVALL, ESQ.
                                                       Nevada Bar No. 2566
                                                       2301 Palomino Lane
                                                       Las Vegas, NV 89107
                                                       Telephone: (702) 258-3034
                                                       *Attorney for Plaintiff*

1

**CERTIFICATE OF SERVICE**

2

Pursuant to Rule 5(b) of the Nevada Rules of Civil Procedure, I hereby certify under

3

penalty of perjury that I am an employee of LESLIE MARK STOVALL, ESQ., and that on the

4

10th day of March, 2023, I caused the foregoing notice of appeal to be served as follows:

5

6

Peter S. Christiansen,

7

Esq. Kendelee L. Works, Esq.

8

Keely Ann Perdue, Esq.
Christiansen Trial Lawyers

9

710 S. 7th Street, Suite B
Las Vegas, Nevada 89101

10

Counsel for Cristiano Ronaldo

11

12

____  Via us mail by placing said document in a sealed envelope, with postage prepaid

13

(N.R.C.P. 5(b))

14

__X__  Via electronic filing (N.E.F.R. 9(b))

15

__X__  Via electronic service (N.E.F.R. 9)

16

_____ Via facsimile (E.D.C.R. 7.26(a))

17

*/s/ Brittany Widmayer*

18

_____

19

an employee of Stovall & Associates

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| Kathryn Mayorga, | Case No.: 2:19-cv-00168-JAD-DJA |
| Plaintiff | **Order Granting in Part Defendant's Motion for Attorneys' Fees and Denying as Moot Plaintiff's Motion to Produce Retainer Agreement** |
| v. | |
| Cristiano Ronaldo, | |
| Defendant | [ECF Nos. 198, 200, 208] |

Judges don't relish the need to sanction a lawyer.  But when Kathryn Mayorga's attorney, Leslie Stovall, Esq., sought out and relied on the cyber-hacked, privileged documents of Cristiano Ronaldo's attorneys to resurrect Mayorga's long-since-released claims, tainting this case in a way that disqualification could not purge, I unenthusiastically dismissed it as a sanction for that bad-faith lawyering.

Ronaldo contends that dismissal didn't fully remedy the prejudice he suffered from Stovall's misconduct, so he now moves for reimbursement of his legal expenses under 28 U.S.C. § 1927, which authorizes an award of fees and costs against an attorney whose reckless conduct causes a litigant to incur them, and the court's inherent powers.  Mayorga responds that such relief is unwarranted or, at most, should be limited to recent filings and not the entirety of the case.  She also asks to see Ronaldo's contract with his attorneys so she can determine whether he got a discount on those bills.  Because defense counsel attests that Ronaldo paid the amounts sought in the attorneys' fees motion, obviating Mayorga's need for the retainer agreement, I deny the request for it as moot.  And because I find that Ronaldo would not have incurred a majority of the fees and costs that he spent on this litigation absent plaintiff's counsel's bad faith, I grant his motion in part and award him $334,637.50 against Mr. Stovall.

**Discussion**

**I.     Mayorga's need for the retainer agreement was mooted by counsel's declaration.**

In response to Ronaldo's motion for an award of his legal expenses, Mayorga seeks production of the retainer agreement between Ronaldo and his attorneys.[1]  She claims that defense counsel failed to show that "the recorded time and fees were agreed upon, billed, or paid by Ronaldo" and "does not disclose whether any billing was discounted or reduced."[2]  Ronaldo responds with a declaration from his counsel, Peter Christiansen, Esq., certifying that defense counsel "actually billed Ronaldo at the hourly rates requested" in the motion and that "Ronaldo has paid based on those rates without a discount."[3]  Given that defense counsel has certified under penalty of perjury the information that Mayorga needed the retainer agreement for, I deny as moot her request for a copy of it.

**II.     Ronaldo has demonstrated that an award of litigation expenses is warranted under 28 U.S.C. § 1927 and the court's inherent powers.**

The American Rule recognizes that each party in litigation must bear its own attorney's fees in the absence of a rule, statute, or contract authorizing an award of fees.[4]  One such statute is 28 U.S.C. § 1927, which gives district courts discretion to award "the excess costs, expenses, and attorneys' fees reasonably incurred because" an attorney "so multiplies the proceedings in any case unreasonably and vexatiously."[5]  "An award of sanctions under § 1927 'does not

---

[1] ECF No. 208.

[2] *Id.* at 1.

[3] ECF No. 216-5 at ¶ 3.

[4] *MRO Commc'n Inc. v. Tel. & Co.*, 197 F.3d 1276, 1281 (9th Cir. 1999).

[5] 28 U.S.C. § 1927.

distinguish between winners and losers, or between plaintiffs and defendants.'"[6]  Recklessness is all that is necessary to justify an award of fees and costs under § 1927,[7] and the award must be satisfied by the offending attorney personally—not the client.[8]  The "court's inherent power to assess attorneys' fees against counsel when counsel has acted in bad faith"[9] is an additional exception to the American Rule, which the Ninth Circuit and the Supreme Court have applied "when a party acts for an improper purpose" or where there's a "willful abuse of judicial processes."[10]  The authority under either provision "must be exercised with restraint and discretion."[11]  Ronaldo invokes both as the bases for his motion.

### A.    The court has already determined that Stovall acted in bad faith.

Sanctioning an attorney under these provisions is uncommon, but this was no ordinary case.  As I found in the 42-page order granting case-terminating sanctions,[12] Stovall got a hacker to send him Ronaldo's attorney-client privileged documents, gave them to his client to review,

---

[6] *Braunstein v. Arizona Dep't of Transp.*, 683 F.3d 1177, 1189 (9th Cir. 2012) (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 762 (1980)).

[7] *Id.*

[8] 28 U.S.C. § 1927.

[9] ECF No. 198 at 6 (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991)); *see also Roadway Express*, 447 U.S. at 765 (noting that "[t]he power of the court over members of its bar is at least as great as its authority over litigants," and finding that, "[i]f a court may tax counsel fees against a party who has litigated in bad faith, it certainly may assess those expenses against counsel who willfully abuse the judicial process"); *Matter of Beverly Hills Bancorp*, 752 F.2d 1334, 1340 (9th Cir. 1984) (noting that § 1927 remedies "exist along with a court's inherent power to award fees under equity whenever justice requires").

[10] *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001) (citing *In re Itel Sec. Litig.*, 791 F.2d 672 (9th Cir. 1986), and *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766 (1980)).

[11] *Lahiri v. Universal Music & Video Distribution Corp.*, 606 F.3d 1216, 1223 (9th Cir. 2010).

[12] ECF No. 195, also available at *Mayorga v. Ronaldo*, __ F. Supp. 3d __, 2022 WL 2093723 (D. Nev. June 10, 2022).  Because these facts are heavily outlined in both my order, ECF No. 195, and the magistrate judge's order and recommendation, ECF No. 143, I merely summarize them here but incorporate them all by reference as though fully set forth herein.

drafted complaints that relied on the documents in manner that intentionally obscured the

obvious attorney-client nature of the quoted communications in those documents, and waited

nine months into this litigation to disclose them.[13]   Once they were disclosed, defense counsel

successfully moved to strike them from the record and attempted to have Stovall stipulate that

they would not be used in any way in this case.   Stovall wouldn't make those promises.[14]   When

Ronaldo moved to sanction this bad-faith conduct, Stovall sought *in camera* review of

documents that had already been deemed privileged and stricken from the record, moved to

amend the year-old order striking those documents, and used his myriad filings to argue issues of

privilege and waiver that had already been ruled on.[15]

      The magistrate judge first,[16] and then I second, held that this conduct was bad faith:

> Stovall deliberately sought out his adversary's hacked, internal,
> privileged communications.  Once he received them, he didn't seek
> ethical guidance on how to handle these clearly sensitive
> documents.  Instead, he gave them to his client, ensuring that they
> would contaminate her memory and perception of events, and he
> built her complaint on their contents, as evidenced by plaintiff's
> sworn verification.  With that adulterated die cast, he then sat on
> the documents for fourteen months, nine of which he was actively
> litigating this case.  And though this court struck the documents
> and found them privileged, counsel continues to rely on them in his
> filings and prosecution of the plaintiff's claims.  This course of

---

[13] *See* ECF No. 195 at 3–4 (detailing Stovall's request for attorney-client privileged documents from a hacker); 32–33 (describing Stovall's bad-faith use of privileged documents in this litigation).

[14] *See id.* at 7–8.

[15] *See* ECF No. 124 (motion for *in camera* review); ECF No. 152 (objection to the magistrate judge's denial of *in camera* review motion); ECF No. 153 (separate objection to the magistrate judge's dismissal recommendation; ECF No. 154 (motion to amend September 30, 2020, order striking Football Leaks documents).

[16] ECF No. 143 at 15–19 (magistrate judge's conclusion that "Stovall has acted in bad faith to his client's—and the profession's—detriment").

deliberate conduct is more than "tantamount" to bad faith, **it is squarely bad faith**.[17]

I find no reason to retreat from that conclusion now.  Stovall spends a significant portion of his response to the attorneys' fees motion relitigating his culpability for using these documents.[18] He does not dispute that he specifically asked for attorney-client privileged information—known as "the Football Leaks documents"—from a suspicious source.  He instead argues that he never used them in discovery or threatened to do so, noting that he "agreed not to use as exhibits[] *certain* attorney-client privilege[d] communications" from the Football Leaks documents.[19]

But he does not deny that he refused to disclaim documents that he believed were not attorney-client privileged within the broad set of stricken Football Leaks documents without first confirming with the court that they were somehow outside of the privilege the court previously applied.  He only did so after confronted with the sanctions motion.   He also attempts to relitigate the issues of privilege and waiver that two judges have repeatedly and emphatically rejected, and he questions portions of the order dismissing this case.  This is not the appropriate vehicle for reconsideration of my prior order, and Stovall's regurgitated arguments do not persuade me that my previous bad-faith determination was in error.  So I confirm the bad-faith finding.

---

[17] ECF No. 195 at 34 (internal citations omitted) (emphasis added).

[18] ECF No. 206 at 2–7.

[19] *Id.* at 3 (emphasis added).

**B.    Ronaldo is entitled to an award of litigation expenses attributable to Stovall's Bad faith or multiplication of the proceedings.**

This bad-faith conduct in bringing[20] and maintaining this case on the basis of information contained in ill-gotten, attorney-client-privileged documents warrants an award of attorneys' fees under the court's inherent powers and because Stovall's tactics in response to Ronaldo's sanctions motion unreasonably multiplied the proceedings in this case, triggering § 1927 sanctions.  Decisions applying these standards are difficult to analogize to because evaluating sanctions-worthy conduct is intensely fact specific.  Generally, courts have awarded a combination of inherent-power and § 1927 sanctions against attorneys who recklessly and intentionally violate evidentiary rules[21] and relentlessly pursue frivolous claims.[22]

One Ninth Circuit case appears directly on point, however.  In *Gomez v. Vernon*, a case I discussed at length in my dismissal order, defense counsel intentionally sought out clearly privileged letters between the inmate plaintiffs and their attorney, reviewed them, and did not turn them over to the court.[23]  The district court awarded attorneys' fees for defense counsel's bad-faith conduct.[24]  The Ninth Circuit found that, "[i]n view of the circumstances surrounding the acquisition and use of the privileged documents, . . . the district court did not abuse its

---

[20] I recognize that "[t]he filing of a complaint may be sanctioned pursuant to Rule 11 or a court's inherent power, but it may not be sanctioned pursuant to § 1927."  *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 435 (9th Cir. 1996).  To the extent that I award Ronaldo his legal expenses for pre-sanctions-motion work, I do so under the court's inherent power and not § 1927.

[21] *See B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1107–09 (9th Cir. 2002).

[22] *Lahiri v. Univ. Music & Video Dist. Corp*, 606 F.3d 1216, 1219 (9th Cir. 2010); *see also Haynes v. City & Cnty. of San Francisco*, 688 F.3d 984 (9th Cir. 2012); *Trulis v. Barton*, 107 F.3d 685 (9th Cir. 1995).

[23] *Gomez v. Vernon*, 255 F.3d 1118, 1124 (9th Cir. 2001).

[24] *Id.* at 1134–35.

discretion in finding that the attorneys acted in bad faith and in imposing sanctions under the court's inherent power."[25]  The district court also "based its sanctions decision on § 1927," finding that "unnecessary litigation was created by the series of events of secretly acquiring, reading, retaining, sharing information with [defense] representatives, . . . and using the information for potential tactical advantage instead of promptly notifying opposing counsel and submitting the documents to the [c]ourt."[26]  The Ninth Circuit found that the district court's finding was sufficient to support the award of sanctions under § 1927.[27]

*Gomez*-like considerations lead me to find that Ronaldo is entitled to an award of fees engendered by Stovall's bad faith or multiplication of the proceedings here.  But not all of his legal expenses fall into these categories.  Ronaldo seeks a total of $609,680 in fees for defending against Mayorga's claims.[28]  That work can be divided into three phases: (1) the beginning (inception, up to the November 2019 motion to strike); (2) the end (the May 2021 motion for case-terminating sanctions through now); and (3) everything in between.

### 1. Phase 1: an award under the court's inherent powers

I use my discretion under the court's inherent sanction power to award attorneys' fees for work incurred on this case during phase 1 (from its inception to November 16, 2019—the date Ronaldo filed the motion to strike the hacked documents).  I rely on my previous findings that Stovall acted in bad faith when he brought this case on the basis of information obtained through hacked, privileged documents.  Thus, this case should not have been brought—at least not in this

---

[25] *Id.* at 1134.

[26] *Id.* at 1135.

[27] *Id.*

[28] Ronaldo also seeks $43,376 in costs.  ECF No. 197.  The Clerk of Court will assess Ronaldo's costs requests in a separate memorandum.

7

manner—and Ronaldo is entitled to reimbursement of his reasonable costs of initially defending this case under the court's inherent powers.

### 2.    *Phase 2: an award under both § 1927 and inherent powers*

I award fees for phase 2 (the sanctions phase of this case) under a combination of § 1927 authority and the court's inherent powers.  The sanctions motion itself falls under inherent authority, as Stovall's bad-faith conduct necessitated the motion.  The work spent responding to Stovall's unnecessarily repetitive flurry of motions, objections, and baseless arguments is sanctionable under § 1927.  In response to the initial sanctions motion, Stovall disputed the privileged nature of the documents and moved for *in camera* review of the documents, arguing that they were subject to the crime-fraud exception to privilege.  In response to the magistrate judge's recommendation and order, Stovall filed two separate objections to the order and sought to amend or correct the year-old order striking the privileged documents.

All of Stovall's filings contained overlapping and at times frivolous arguments involving attempts to (1) mischaracterize Mayorga's purely state-law complaint as one arising out of federal law; (2) argue that there was a "change" in controlling Nevada law that no reasonable attorney would characterize as such; and (3) recklessly raised arguments suggesting that Ronaldo's motion to strike those documents should be characterized as waiver of their privilege.[29]  These filings were often indecipherable; urged stale, decided, or frivolous issues; and appeared intentionally designed to multiply the proceedings in this case.  An award for defense counsel's time responding to those filings is warranted under 28 U.S.C. § 1927 as a combination of reckless, frivolous, and intentionally harassing.  As for the remainder of the work

---

[29] *See* ECF No. 195 at 13–29 (portion of dismissal order discussing Stovall's scattershot arguments).

defense counsel spent on case-terminating issues, I use the court's inherent power to award fees for that too.[30]  It is beyond cavil that the sanctions motion and defense counsel's work defending it were necessitated by Stovall's bad-faith conduct, so the fees for that work should be borne by him.

### 3. Phase 3: no award

The same is not true of the everything-in-between phase 3, as I cannot say that the way the case proceeded in the time between Ronaldo's motion to strike and his motion for case-terminating sanctions was due to Stovall's bad-faith conduct.  Ronaldo chose to move to strike the documents when he was first alerted to their use in this litigation in October 2019.  Even at that early stage of the litigation, it was clear from a brief comparison of Mayorga's complaint and the leaked documents that her allegations were rooted in the purloined materials.  But Ronaldo did not then seek case-terminating sanctions or to disqualify Stovall.  He proceeded with discovery and waited more than a year to move to dismiss.[31]  So Ronaldo shares at least part of the blame for this case dragging on for as long as it did although he had to recognize its dubious underpinnings.  I thus decline to award fees for the work Ronaldo's attorneys performed in discovery or preparation for trial, as that work could have been avoided.[32]

---

[30] I include the hours defense counsel spent internally responding to Stovall's motion for default against Ronaldo, filed after the sanctions motion and withdrawn without explanation six days later.  ECF No. 156; ECF No. 158.

[31] Ronaldo maintained that the impetus for the sanctions motion was the discovery that the Las Vegas Metropolitan Police Department (Metro) had more Football Leaks documents than Stovall produced to the defense, leading Ronaldo to believe that Stovall had those additional documents in his possession but did not disclose them.  Ronaldo provided no evidence to support that allegation and both I and Magistrate Judge Albregts rejected it as a basis for sanctions.  *See* ECF No. 195 at 29–30; ECF No. 143 at 17 n.3.

[32] For the same reasons, I excise discovery and trial work that was completed after the sanctions motion was filed.

9

Ronaldo argues that Stovall unreasonably multiplied the proceedings throughout this everything-in-between phase because he "filed various motions and objections, repeating many of the same frivolous arguments the [c]ourt previously rejected" and "sought repeated extensions to comply with deadlines in this case, causing unnecessary delay."[33]  As for the many motions and objections that Stovall filed in response to Ronaldo's sanctions motion, I include time spent responding to those in my fees award.  Seeking extensions, while disfavored, is a normal part of civil litigation, however, and defense counsel has not pointed to factors that warrant a more searching evaluation of Stovall's extension requests.  And the only specific action that defense counsel identifies in arguing that Stovall needlessly multiplied proceedings in the merits-portion of this case was the interlocutory appeal that he voluntarily dismissed after defense counsel flagged the Ninth Circuit's lack of jurisdiction to consider it.  But trial courts do not have discretion to award fees incurred on appeal, so I do not award fees for that venture.[34]

In summary, defense counsel has not demonstrated that Stovall unreasonably multiplied the proceedings of this case in the time between Ronaldo's motion to strike and his motion for sanctions, so I decline to award fees incurred during that timeframe.  Doing so excises 396.3 hours, billed at $195,364.00, from Ronaldo's total award.  With that limitation in mind, I turn to the task of assessing whether the remaining fees sought are reasonable.

---

[33] ECF No. 198 at 11.

[34] *See Cummings v. Connell*, 402 F.3d 936, 948 (9th Cir. 2005) (finding that district courts are not authorized to rule on requests for appellate attorney's fees unless they are transferred from the Ninth Circuit under Ninth Circuit Rule 39-1.8).

**C.** **The requested fees for the remainder of Ronaldo's bill are reasonable, with the exception of those expended to draft Ronaldo's motions to dismiss, to compel arbitration, and for sanctions.**

### 1. The lodestar method

The lodestar method is the required starting point for determining the reasonableness of a fee award and is calculated by "multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate."[35] "[T]here is a strong presumption that the lodestar figure is reasonable, but that presumption may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee."[36] Requests for attorney's fees must also meet the requirements of this district's local rule 54-14, which requires any fee application to include an attorney affidavit, "[a] reasonable itemization and description of the work performed," and a "brief summary" of 13 categories of information.[37] After calculating a lodestar figure, the court may review the reasonableness of the award under the factors adopted by the Ninth Circuit in *Kerr v. Screen Extras Guild, Inc.*:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.[38]

---

[35] *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) (citing *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001)).

[36] *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010) (internal quotation omitted).

[37] L.R. 54-14(a)–(b).

[38] *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975) (citation omitted).

### 2.    *Reasonableness of hours expended*

As I have deducted a portion of fees from Ronaldo's request because they were not attributable to Stovall's bad-faith conduct, I consider only the reasonableness of Ronaldo's legal bills for the period of time before November 11, 2019, (phase 1) and those associated with the termination of this case (phase 2).  Defense counsel provides a detailed itemization of this work.[39]  Stovall responds with a comprehensive analysis of those bills and his own estimate of how long each task should have taken.[40]  He also offers the declaration of local attorney Rusty Graf, Esq. who also opines that the number of hours worked on this case was excessive.[41]  Ronaldo replies that Stovall fails to point to any specific reasons for reducing the award and notes the inconsistencies and errors in Stovall's calculations.[42]  While Stovall did make numerous errors in sorting and accounting for hours spent on various tasks, his points are persuasive with respect to three motions: Ronaldo's motion to dismiss, motion to compel arbitration, and motion for sanctions.

### a.    *The motions to dismiss and to compel arbitration*

Defense counsel spent 247 hours drafting Ronaldo's initial motion to dismiss and to compel arbitration and later splitting those requests into separate motions after the court directed them to.[43]  This was grossly excessive.  The motion to dismiss involved a relatively

---

[39] Ronaldo moves to seal that exhibit under the attorney-client privilege and work-product doctrines, "as it contains confidential summaries of work performed while rendering legal services."  ECF No. 200 at 3.  Mayorga did not file an opposition to that sealing request.  I find good cause and compelling reasons to seal the exhibit and grant Ronaldo's motion.

[40] ECF No. 206 at 8–23; ECF No. 212-45 (Stovall's declaration).

[41] ECF No. 212-44.

[42] ECF No. 216; ECF No. 216-2 (declaration of defense attorney Kendelee Works).

[43] By my calculations, 189.4 hours and $90,990 were spent drafting the initial motion.  58.3 hours and $27,040 were spent splitting and revising the motions.  Stovall calculated 192.2 hours spent on the initial motion, and 56.6 hours on the revised motions.  ECF No. 206 at 11.  Defense

straightforward application of Federal Rule of Civil Procedure 12(b)(6) standards and a statute-of-limitations defense to uncomplicated state-law claims.[44]  The motion to compel arbitration, which started as a one-page alternative request in Ronaldo's oversized motion to dismiss, involved a relatively straightforward analysis of the arbitration clause in the parties' settlement agreement and the impact of Mayorga's argument that she lacked the mental capacity to agree to the settlement.  At that early stage in the litigation, the issues were not so numerous or complex to justify 250 hours of preparation and revision.  But I do recognize that Mayorga's complaint lodged 11 claims and that any response to it necessarily involved review of underlying documents like the settlement agreement and communications between the parties and attorneys who represented them in 2009, making it reasonable that defense counsel would have spent more time than average on these tasks.  So I use my discretion—informed by my own extensive civil-litigation practice plus a decade of reviewing legal bills from the bench—and find that 50% of the claimed time, for a total of 123.5 hours, is what would be reasonable for this work.

---

counsel takes issue with Stovall's calculations, contending that he included irrelevant tasks in his accounting, but the defense does not provide its own assessment of hours spent preparing and revising these motions.  ECF No. 216-2 at ¶ 13.  Nevertheless, my calculations are similar to Stovall's, and I only include irrelevant tasks to the extent that defense counsel's itemization of tasks includes entries that accounted for the motion to dismiss along with other tasks.  Defense counsel's accounting of fees includes several entries for seven hours or more without differentiating time spent on various tasks, making it difficult to assess the reasonableness of that time.  Defense counsel has the burden to show that their requested fees are reasonable, and these lumped entries do not meet that burden.  So I include those lumped entries in the motion-to-dismiss category whenever one of those lumped tasks concerned the motions to dismiss and compel.

[44] *See* ECF No. 13 (initial motion to dismiss); ECF No. 29 (revised motion to dismiss); ECF No. 23 (order denying Ronaldo's motion to exceed the page limit on his motion to dismiss, finding that there is "nothing remarkable" about Mayorga's claims that would necessitate additional briefing).

###### b.     The motion for case-terminating sanctions

The other outlier is Ronaldo's motion for case-terminating sanctions.  Stovall calculates that defense counsel spent 105.84 hours "related to the research, drafting, and filing" of the motion,[45] which he deems excessive. [46]  My math shows that 133.3 hours (billed at $66,250) were spent preparing the motion and its accompanying declarations and exhibits.[47]

Ronaldo explains that the motion "required substantial legal research[;] a tedious side[-]by[-]side comparison of documents produced by [Metro] versus those produced by [Mayorga;] communications with expert Janeen Isaacson, whose declaration was provided in support of the motion[;] a detailed review of the entire docket history in order to set forth a clear and concise history of the case and citations to each filing[; and] a significant number of hours drafting and revising the motion itself."[48]  I acknowledge that the sheer volume of exhibits examined and the novel questions raised by Stovall's egregious conduct warranted a longer-than-average amount of time to prepare this motion.  But I find that 133.3 hours for this single motion was overkill. So I use my discretion to deduct 25% off the hours billed on this project and find that the approximately 100 remaining hours were a reasonable expenditure for this work.

###### c.     Other work

Stovall also disputes the reasonableness of the time defense counsel spent on various other motions, responses, and discovery tasks throughout this litigation.  These include Ronaldo's motion to seal, motion for leave to file excess pages, notice of non-opposition to the

---

[45] ECF No. 206 at 16.

[46] Again, defense counsel takes issue with Stovall's calculations but doesn't provide their own assessment of the time spent preparing for the sanctions motion.  *See generally* ECF No. 216-2.

[47] This calculation includes some entries that account for other tasks because defense counsel lumped various tasks into single, block-time entries.

[48] ECF No. 216-2 at ¶ 24.

motion to dismiss, replies in support of the motions to dismiss and compel, motion to strike the

Football Leaks documents, reply in support of the sanctions motion, and response to Stovall's

motion for *in camera* review of the Football Leaks documents.  Having scrutinized those billed

items, I find that the time expended on them was reasonable, particularly in light of Stovall's

conduct throughout this litigation.  Defense counsel provides a declaration explaining that

Ronaldo's replies and responses took longer than average because Stovall's filings contained

incomplete or inaccurate citations, were written in an unorganized and at times indecipherable

manner, and included irrelevant or baseless arguments.[49]  I credit defense counsel's

representations, and I accept that responding to Stovall's filings would take even the most skilled

attorney extra time.  So I find the time expended on the various other tasks Stovall highlights was

reasonable.  But I deduct 8.2 hours billed at $4,100 from the overall award because defense

counsel concedes that there was one duplicate entry that should be removed.[50]  These various

deductions net a reduced fee award to Ronaldo of $334,637.50.

### 3.    *Reasonableness of hourly rates charged*

To determine that an hourly rate is reasonable, the court must find that it is "in line with

those prevailing in the community for similar services by lawyers of reasonably comparable

skill, experience, and reputation."[51]  Christiansen charged $850 per hour; Kendelee Works, Esq.

billed $500 per hour; and Keely Perdue Chippoletti, Esq. and Whitney J. Barrett, Esq., charged

---

[49] ECF No. 216 at 6–7.

[50] ECF No. 216-2 at ¶ 10.

[51] *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984); *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007).

Ronaldo $350 per hour.[52]  The attorneys certify that these fees were their customary ones when they charge an hourly rate for their services, and that they actually charged and were paid those rates in this case.[53]

Stovall disputes that Christiansen and Works are worth these pricey rates.  In his declaration, Stovall opines that Christiansen should be billed at $600 per hour and Works at $350, or "the hourly rates of the defendant attorneys and staff can be averaged to $400 per hour."[54]  He also retained Rusty Graf, another Nevada attorney, who opined that Christiansen's hourly rate should be $700 and all of his associates' work should be billed at $350 per hour.[55]  Neither Stovall nor Graf questions the credibility of Ronaldo's proffered fees expert, J. Colby Williams, Esq., another local litigator, who filed a declaration opining that counsel's rates "are well within the prevailing rates for civil litigation in Nevada before the United States District Court."[56]  Nor do they explain why Works (who has been practicing law since 2005 and did the lion's share of the work in this case) and Chippoletti (who was licensed in 2016 and was assigned to this case in a supporting role) should be compensated at the same rate.  Because Stovall's and Graf's declarations lack any explanation or market analysis to support their opinions, I find them only minimally persuasive on this point.

Based on the remaining record, my own civil-litigation practice in the Las Vegas community, and my review of hundreds of fees motions from the bench, I find that defense

---

[52] *See* ECF No. 198-1 at 3 (Peter S. Christiansen's declaration); ECF No. 198-2 at 3 (Kendelee L. Works's declaration); ECF No. 198-3 at 2 (Keely Perdue Chippoletti's declaration); ECF No. 198-4 at 2 (Whitney J. Barrett's declaration).

[53] *See id.*; *see also* ECF No. 216-5 at ¶ 3.

[54] ECF No. 212-45 at ¶ 5.

[55] ECF No. 212-44 at ¶ 38.

[56] ECF No. 198-5 at ¶ 7.

counsel's hourly rates are reasonable in this market and when considering the difficulties that

this case presented and the complex legal questions it posed.  Stovall attempts to paint this case

as a simple one concerning arbitration and the mental-capacity-to-contract issue that emerged as

the focal point after early motion practice.[57]  But this case was much more.  It involved attempts

to unwind a years-old settlement agreement regarding serious allegations of potentially criminal

acts, fraud, and civil conspiracy among an internationally known athlete and a team of "fixers"

that spanned multiple continents.  And because of counsel's bad-faith conduct, this case

devolved to center around novel questions concerning the propriety of using hacked, attorney-

client privileged documents to support all of the plaintiff's claims.

       The rates requested are commensurate with the experience and work involved.  This court

has approved rates similar to those charged by Works, Chippoletti, and Barrett.[58]  Although

Christiansen's rate is a bit higher than the average typically approved by courts in this district, in

light of the circumstances presented in this case, inflation, and the Christiansen firm's experience

and reputation in the legal community, it is justifiable.  These rates are additionally warranted

given the undesirability of this case.  This was a high-profile case that garnered significant media

attention, involved serious (and at times criminal) allegations against the defendant, and required

a time-consuming review of thousands of pages of hacked documents used to support plaintiff's

case.  It was time consuming and likely required defense counsel to forego other business

opportunities, as all five of the lawyers at the firm spent time working on this case in some

capacity.

---

[57] ECF No. 206 at 8.

[58] *See, e.g.*, *Pardee Homes of Nev. Corp. v. AG/RW-Canyons, LLC*, 2018 WL 10455160, at *2 (D. Nev. Mar. 27, 2018) (approving $600 hourly rate); *Int'l Institute of Mgmt. v. Org. for Econ. Coop. & Dev.*, 2019 WL 5578485, at *6 (noting that, "[f]or the Las Vegas market, this court has regularly awarded fees where the hourly rates at issue were $400 or less" and collecting cases).

The nature of counsel's relationship with the defendant also warrants the hourly rates charged. Christiansen represented Ronaldo through this civil case, but also as criminal defense counsel when Metro re-opened its investigation of alleged criminal conduct and as civil counsel defending against the public release of the hacked documents to the *New York Times*.[59]  And finally, defense counsel achieved a favorable result for their client: the case was dismissed without proceeding to trial or arbitration.  So I find that defense counsel's hourly rates are warranted by these factors, and I do not further reduce the fee award.

### Conclusion

IT IS THEREFORE ORDERED that Kathryn Mayorga's motion for production of Ronaldo's retainer agreement **[ECF No. 208] is DENIED.**

IT IS FURTHER ORDERED that Ronaldo's motion to seal **[ECF No. 200] is GRANTED**.  The Clerk of Court is directed to **MAINTAIN THE SEAL on ECF No. 199** (the confidential, itemized attorney billing statements that served as Exhibit E to defendant's motion for attorneys' fees [ECF No. 198]).

IT IS FURTHER ORDERED that Ronaldo's motion for attorneys' fees **[ECF No. 198] is GRANTED in part: Ronaldo is awarded fees of $334.637.50 against Leslie Stovall, Esq., personally.**

_____
U.S. District Judge Jennifer A. Dorsey
February 14, 2023

---

[59] *See* ECF No. 198-1 (Christiansen's declaration, stating that the firm "represented Ronaldo as criminal-defense counsel during [Metro's] re-opened investigation, the original matter filed in state court, and the most recent matter initiated by the *New York Times*' and *Las Vegas Review Journal*'s request to obtain [Metro's] investigative file" (cleaned up)).  Ronaldo does not seek fees incurred defending against the *New York Times*'s attempts to intervene in this case and retrieve those documents.  ECF No. 216 at 7.

# EXHIBIT 2

1
2
3
4                    UNITED STATES DISTRICT COURT
5                         DISTRICT OF NEVADA
6                                 * * *
7
8    Kathryn Mayorga,
                                    Plaintiff,
9                                                    Case No. 2:19-cv-00168-JAD-DJA
10          v.
11   Cristiano Ronaldo,
12                                  Defendants.
13
14          CLERK'S MEMORANDUM REGARDING TAXATION OF COSTS

15          On June 10, 2022, judgment was entered in favor of Cristiano Ronaldo and against

16   Kathryn Mayorga. ECF No. 196. On June 24, 2022, Ronaldo filed a bill of costs at ECF No. 197;

17   on August 10, 2022, Mayorga filed a response to the bill of costs. ECF No. 207. The court

18   deemed the response timely by granting two motions to extend the deadline. ECF No. 210.

19   Ronaldo filed his response on August 27, 2022. ECF No. 215. As a preliminary matter, and

20   addressing Mayorga's "additional objection," the clerk acknowledges Ronaldo as the prevailing

21   party in this matter and taxes costs under 18 U.S.C. §§ 1920, 1921, and 1923; Fed. R. Civ. P.

22   54(d)(1); and Local Rule 54.

23   **Fees for service of summons and subpoena:** Amount requested: $2,297.50.

24          Mayorga objected to costs where the server went to the wrong address, attempted an

25   improper service, when the deposition was vacated, or for duplicate service of process. The clerk

26   finds it normal and reasonable in litigation that multiple service attempts be made for various

27   reasons. Ronaldo explained in his response, and demonstrated in the exhibit attached to it, that

28   the need to hire a professional to locate witnesses was necessary. The clerk overrules these

objections.

       Amount allowed: $2,297.50.

**Fees for printed or electronically recorded transcripts necessarily obtained for use in the case:** Amount requested: $40.80.

       Local Rule 54-3 allows for the cost of transcripts of court proceedings if ordered by the court. Magistrate Judge Albregts ordered the transcript on September 30, 2021. ECF No. 141. The clerk overrules this objection.

       Amount allowed: $40.80.

**Fees and disbursements for printing:** Amount requested: $17.50.

       No objection was made to this cost.

       Amount allowed: $17.50.

**Fees for witnesses:** Amount requested: $270.00.

       Mayorga objected to the witness fees of Jason Mayorga as not necessary. Local Rule 54-5(a) allows fees even if the witness did not testify and Local Rule 54-4(1)(1) allows depositions to be taken for discovery or trial. Ronaldo responded that Jason Mayorga's deposition and witness fee was taken for discovery and the clerk will tax this cost. Mayorga also objected to the remaining fees as the deposition were "vacated by defendant." A review of the docket reflects that Magistrate Judge Albregts ordered the depositions to be stayed. The clerk finds these fees reasonable in anticipation of the depositions.

       Amount allowed: $270.00.

**Other Costs:** Amount requested: $40,751.03.

       Expert fees $19,937.50 are not taxed. Local Rule 54-11(h).

       Travel expenses $1,160.65 are not taxed. Local Rule 54-11(k).

       Legal Research costs $4,118.00 are not taxed. Local Rule 54-11(g).

       Deposition costs $7,378.50. Mayorga objected to the depositions of Jason Mayorga, Cheryl Mayorga, and Larry Mayorga as not necessary or used to support the motion for sanctions. Ronaldo asserted in his response that these depositions were taken for discovery. Mayorga also objected to cancellation fees, but as stated above, the cancellations were resulted

1   from the court's order. The clerk overrules both objections and taxes deposition costs at

2   $7,378.50.

3          Translator costs $4,355.10. Mayorga objected to this cost as not supported by an invoice,

4   but the clerk finds invoices attached to the bill of costs. ECF No. 197 pages 56-57. Local Rule

5   55-5(b) states in part, "[t]he reasonable fee of a competent translator is taxable if the document

6   translated is necessarily filed or admitted into evidence." The clerk finds the translated

7   documents were filed at ECF No. 112 in support of the motion for case terminating sanctions and

8   taxes this cost at $4,355.10.

9          Investigative costs $3,760.48 are not taxed. Local Rule 54-11(i).

10         Postage and delivery costs $40.80. No objection was made to this cost. The clerk must

11  tax $40.80 under Local Rule 54-1(d).

12         Amount allowed:  $11,777.40.

13         Costs are taxed in the amount of **$14,403.20** and are included in the judgment.

14

15  Dated:  February 16, 2023                    DEBRA K. KEMPI, CLERK

16

17                                     By:       /s/ Lia Griffin
                                                 Deputy Clerk
18

19

20

21

22

23

24

25

26

27

28

- 3 -